THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

6

7

8

9       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
10                    AT SEATTLE

11

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE & ERISA LITIGATION | No. 2:08-md-1919 MJP |
| ——————————————— | **UNDERWRITER DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION | [UW-3] |
| This document relates to: ALL ACTIONS | Lead Case No. C08-387 MJP |
| | NOTE ON MOTION CALENDAR: October 9, 2009 |
| | **ORAL ARGUMENT REQUESTED** |

22

23

24

25

26

# <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 5

III.  CLAIMS RELATING TO THE AUGUST 2006, SEPTEMBER 2006, AND
      DECEMBER 2007 OFFERINGS SHOULD BE DISMISSED FOR LACK OF
      STANDING .......................................................................................................... 5

      A.    The August 2006 Offering of 5.50% Notes ........................................... 5

      B.    The September 2006 Offering................................................................. 9

      C.    The December 2007 Offering ............................................................... 11

IV.   CLAIMS ARISING FROM THE SEPTEMBER 2006, OCTOBER 2007, AND
      DECEMBER 2007 OFFERINGS MUST BE DISMISSED ON "NEGATIVE
      CAUSATION" GROUNDS .............................................................................. 12

      A.    Negative Causation Is Shown On The Face Of The Complaint  As
            To The September 2006 Offering .......................................................... 13

      B.    Negative Causation Is Shown On the Face Of The Complaint As
            To The December 2007 Offering............................................................ 14

      C.    Negative Causation Is Shown On the Face of The Complaint  As to
            the October 2007 Offering .................................................................... 18

V.    CONCLUSION ................................................................................................. 20

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### Cases

4

*Amchem Products, Inc. v. Windsor*,
5
   521 U.S. 591 (1997) ................................................................ 6

6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................... 10, 11

7

8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................... 10, 11

9

*Caiafa v. Sea Containers Ltd.*,
10
   525 F. Supp. 2d 398 (S.D.N.Y. 2007) ....................................... 8

11

*Caiafa v. Sea Containers Ltd.*,
   2009 WL 1383457 (2d Cir. May 19, 2009) ............................ 7, 8

12

13

*Casey v. Lewis*,
   4 F.3d 1516 (9th Cir. 1993) ..................................................... 6

14

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
15
   504 F. Supp. 2d 151 (N.D. Tex. 2007) ..................................... 7

16

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................. 18

17

18

*Feiner v. SS&C Techs., Inc.*,
   47 F. Supp. 2d 250 (D. Conn. 1999) ....................................... 7

19

*Get Outdoors II, LLC v. City of San Diego*,
20
   506 F.3d 886 (9th Cir. 2007) ................................................... 6

21

*Gustafson v. Alloyd, Inc.*,
   512 U.S. 561 (1995) ................................................. 3, 7, 8, 11

22

23

*In re Alamosa Holdings, Inc. Sec. Litig.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ................................... 12

24

*In re Comverse Technology Sec. Litig.*,
25
   2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ............................ 12

26

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-mld-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

ii

1

**TABLE OF AUTHORITIES (cont.)**

2

<u>Page(s)</u>

3

4

*In re Cosi, Inc. Sec. Litig.*,
    379 F. Supp. 2d 580 (S.D.N.Y. 2005) ............................................................... 7

5

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) .............................................. 11

6

7

*In re DDi Corp. Sec. Litig.*,
    2005 WL 3090882 (C.D. Cal. July 21, 2005) ............................................ 7, 11

8

9

*In re DNAP Sec. Litig.*,
    2000 WL 1358619 (N.D. Cal. Sept. 14, 2000) .................................... 13

10

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ............................................ 10

11

12

*In re Levi Strauss & Co. Sec. Litig.*,
    527 F. Supp. 2d 965 (N.D. Cal. 2007) ........................................... 7, 8

13

14

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006) ............................................ 6

15

*In re Shoretel Inc. Sec. Litig.*,
    2009 WL 248326 (N.D. Cal. Feb. 2, 2009) .................................... 12, 15

16

17

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
    222 F. Supp. 2d 216 (E.D.N.Y. 2002) ........................................... 8

18

19

*In re Surebeam Corp. Sec. Litig.*,
    2005 WL 5036360 (S.D. Cal. Jan. 3, 2005) .................................... 9

20

*In re Ultrafem Inc. Sec. Litig.*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000) ............................................. 7

21

22

*In re Valence Technology Sec. Litig.*,
    1996 WL 37788 (N.D. Cal. Jan. 23, 1996) ..................................... 7

23

*In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litig.*,
    2009 WL 1393679 (W.D. Wash. May 15, 2009) ..................... 2, 5, 6, 13, 15, 19

24

25

*In re Worldcom, Inc. Sec. Litig.*,
    2005 WL 375314 (S.D.N.Y. Feb. 17, 2005) ................................... 12

26

**UNDERWRITER DEFENDANTS'**               GIBSON, DUNN & CRUTCHER LLP               K&L GATES LLP
**MOTION TO DISMISS PLAINTIFFS'**            333 SOUTH GRAND AVENUE              925 FOURTH AVENUE, SUITE 2900
**AMENDED CONSOLIDATED CLASS**             LOS ANGELES, CA 90071-1512            SEATTLE, WA  98104-1158
**ACTION COMPLAINT [UW-3]**                 Phone: (213) 229-7000                Phone: (206) 623-7580
(No. 2:08-md-1919 MJP)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# <u>TABLE OF AUTHORITIES</u> (cont.)

<u>Page(s)</u>

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................ 10

*Meltzer Inv. GMBH v. Corinthian Colleges, Inc.,*
    540 F.3d 1049 (9th Cir. 2008) .......................................................................... 14

*Securities Investment Protection Corp. v. Lehman Brothers Inc.,*
    Case No. 08 CIV 8119 (S.D.N.Y. Sept. 19, 2008) .............................................. 1

*Solomon v. Peat, Marwick, Main & Co.*,
    1992 WL 231098 (9th Cir. Sept. 21, 1992) ...................................................... 12

## Statutes

11 U.S.C. § 362(a) ......................................................................................................... 1

15 U.S.C. § 77e(b) ......................................................................................................... 8

15 U.S.C. § 77k(a) ..................................................................................................... 6, 9

15 U.S.C. § 77k(e) ....................................................................................................... 12

## Rules

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 14

SEC Rule 158(c) .......................................................................................................... 10

SEC Rule 174 ................................................................................................................. 8

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

iv

1    The Underwriter Defendants[1] respectfully submit this memorandum of law in support of

2    their motion to dismiss the Amended Consolidated Class Action Complaint (the "Amended

3    Complaint").[2]

4    **I.    INTRODUCTION**

5    As discussed more fully below, the Amended Complaint must be dismissed for two

6    independent reasons.  First, the newly-added named plaintiffs lack standing to sue under Sections

7    11 and 12(a)(2), and do not cure the standing defects noted by the Court in its Order on Defendants'

8    Motions to Dismiss dated May 15, 2009 (the "Dismissal Order").  Second, negative causation is

9    made out on the fact of the Amended Complaint, as to three of the four Offerings of WaMu

10   securities that are the subject of the Section 11 and 12(a)(2) claims in this case.  Despite being

11   given a second opportunity to plead facts to overcome the defense of negative causation, plaintiffs

12   have stood firm on their pleading, and have simply repeated the same mistake.  Indeed, through

13   their addition of certain of the newly named plaintiffs, they have *compounded* the error by

14   proposing plaintiffs whose history of purchases of WaMu securities demonstrate negative

15   causation of their face as well.

16   This Court's Dismissal Order granted the Underwriter Defendants' motion as to three of the

17   four public offerings at issue in this litigation (the "August 2006 Offerings," the "September 2006

18

19   [1]  Defendants Goldman, Sachs & Co. ("Goldman Sachs"), Morgan Stanley & Co. Incorporated ("Morgan
     Stanley"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), Deutsche Bank Securities Inc. ("Deutsche
20   Bank"), UBS Securities LLC ("UBS"), Banc of America Securities LLC ("Banc of America"), J.P. Morgan
     Securities Inc. ("J.P. Morgan"), Barclays Capital Inc. ("Barclays"), Keefe, Bruyette & Woods, Inc. ("Keefe
21   Bruyette"), Cabrera Capital Markets, LLC ("Cabrera Capital"), The Williams Capital Group, LLC ("Williams
     Capital"), Citigroup Global Markets Inc. ("Citigroup"), Greenwich Markets, Inc. ("Greenwich"), BNY Capital
22   Markets, Inc. ("BNY"), and Samuel A. Ramirez & Company. Inc. ("Ramirez & Co.") are collectively referred
     to herein as the "Underwriter Defendants."  On September 19, 2008, the United States District Court for the
23   Southern District of New York entered an Order on the Complaint and Application of the Securities Investment
     Protection Corporation in an action entitled *Securities Investment Protection Corp. v. Lehman Brothers Inc.*,
24   Case No. 08 CIV 8119 (S.D.N.Y. Sept. 19, 2008), staying certain proceedings (including this proceeding)
     against Lehman Brothers Inc. pursuant to 11 U.S.C. § 362(a).  Consistent with the Court's Brief Numbering
25   Scheme, the Underwriter defendants have adopted the designation "UW."

26   [2]  The Underwriter Defendants join in the WaMu Director and Officer Defendants' and Deloitte & Touche LLP's
     Motions to Dismiss filed contemporaneously herewith.

UNDERWRITER DEFENDANTS'          GIBSON, DUNN & CRUTCHER LLP          K&L GATES LLP
MOTION TO DISMISS PLAINTIFFS'        333 SOUTH GRAND AVENUE          925 FOURTH AVENUE, SUITE 2900
AMENDED CONSOLIDATED CLASS           LOS ANGELES, CA 90071-1512          SEATTLE, WA  98104-1158
ACTION COMPLAINT [UW-3]                 Phone: (213) 229-7000          Phone: (206) 623-7580
(No. 2:08-md-1919 MJP)

1

Offering," and the "December 2007 Offering"), holding that the named plaintiffs lacked standing to sue. *See In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litig.*, 2009 WL 1393679, at *14 (W.D. Wash. May 15, 2009). The Court expressly found that Section 11 grants standing to sue "only as to the registration statement or statements that governed his purchase of securities," and that "the plaintiff class currently has Section 11 standing as to the October 2007 offering only." *Id.* The Court therefore directed plaintiffs' counsel to amend the complaint to add additional named plaintiffs "to obtain standing as to the other three offerings." *Id.*

The Amended Complaint purports to add three new named plaintiffs to cure the standing defects on the three offerings. Specifically, (1) Pompano Beach Police & Firefighters' Retirement System ("Pompano Beach") is added as named plaintiff for the August 2006 Offerings; (2) Harlan Seymour ("Seymour") is added as named plaintiff for the September 2006 Offering; and (3) the Police & Fire Retirement System of the City of Detroit ("Detroit P&F") is added as named plaintiff for the December 2007 Offering. As admitted in their sworn certifications, however, these three newly-added named plaintiffs lack standing to sue:

- Pompano Beach purchased only the Floating Rate Notes offered in the August 2006 Offerings (Amended Complaint ¶ 11), but is not alleged to have purchased the 5.50% Notes in the August 2006 Offerings.[3] No other named plaintiff purchased the 5.50% Notes. Therefore, no named plaintiff has standing to sue on behalf of a class of purchasers of the 5.50% Notes issued in the August 2006 Offerings.

- Seymour purchased only the Series K Preferred Stock (Amended Complaint ¶ 12), but his certification attached to the Amended Complaint concedes that he did not purchase until July 15, *2008*—almost *two years* after the first offering of the Series K preferred stock, and eight days prior to the expiration of the class period in this action. Because the Amended Complaint fails to plead actual reliance by Seymour

---

[3]    The August 2006 Offerings reflected two separate issuances of (i) 5.50% Notes and (ii) Floating Rate Notes.

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

2

1    as required under Section 11(a) for a late purchaser, Seymour does not have

2    standing to sue on the September 2006 Offering.

3    • Neither Pompano Beach nor Seymour have alleged facts demonstrating that they

4    purchased their securities in the August or September 2006 Offerings as required by

5    Section 12(a)(2). Accordingly, their purchases of securities in the secondary market

6    are insufficient to confer standing under the U.S. Supreme Court's holding in

7    *Gustafson v. Alloyd, Inc*., 512 U.S. 561 (1995).

8    • Detroit P&F purchased only the Series R preferred stock issued on December 17,

9    2007. (Amended Complaint ¶ 14). Detroit P&F's certification, however, establishes

10    that Detroit P&F was a classic "in and out" trader in the Series R Preferred Stock,

11    having purchased and sold all of its Series R securities between December 17, 2007

12    and January 14, 2008, prior to any alleged curative disclosure. As a result, it lacks

13    standing to sue, since on the face of the Amended Complaint it cannot establish

14    damages on the December 2007 Offering—a key element of its cause of action.

15    Accordingly, the Underwriter Defendants now move to dismiss all claims against them relating to

16    the August 2006 Offering of 5.50% Notes, and September 2006 and December 2007 Offerings, for

17    lack of standing.

18    Beyond these standing issues, the Underwriter Defendants also respectfully revisit here

19    their argument presented in the previous round of motions that the Amended Complaint's *own*

20    *allegations* demonstrate that the facts that plaintiffs allege were concealed from WaMu investors

21    *were fully disclosed to the market before the October and December Offerings even occurred.* By

22    the time of the October and December Offerings, it is undisputed that the prices of the securities

23    sold in those offerings were not artificially inflated due to the concealed risks of substandard

24

25

26

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

3

1    underwriting standards, weak internal controls, or understated reserves for loan losses—the three

2    areas of WaMu's lending practices that this Court held survive dismissal.[4]

3            It is indisputable that the December 2007 Offering was expressly undertaken *for the*

4    *purpose of* addressing WaMu's liquidity crisis caused by the meltdown of the global financial

5    markets, the crash of the housing market, and the subsequent freezing up of credit and home

6    lending throughout the United States.  Further, this Offering occurred after a series of disclosures

7    by WaMu of firm-specific problems arising from its sub-prime lending operations, including the

8    announcement of the huge write-downs of the value of its loan portfolio due to losses in its home

9    mortgage business unit.  Accordingly, any losses Plaintiffs suffered as a result of purchasing

10   securities in the December 2007 Offering cannot have been caused by alleged misstatements or

11   omissions in the Offering Documents for that offering.  For the same reasons, the Underwriter

12   Defendants renew their motion to dismiss on negative causation grounds as to the October 2007

13   Offering, an argument not apparently addressed by the Dismissal Order.

14           Finally, negative causation is apparent on the face of the Amended Complaint based on the

15   stock purchases of the newly-added plaintiffs.  Specifically, negative causation is made out on the

16   face of the Amended Complaint as to the September 2006 Offering on the Section 11 and 12(a)(2)

17   claims of named plaintiff Seymour, because his purchase of Series K Preferred Stock in July 2008

18   admittedly occurred after *nine months* of curative disclosures, the cumulative effect of which

19   dooms his claim.  Moreover, negative causation is made out as to the December 2007 Offering,

20   because plaintiff Detroit P&F purchased securities in the December Offering on December 17,

21   2007, but *sold all of those securities by January 14, 2008*.  According to the allegations in Section

22   IV of the Amended Complaint—"Claims Brought Pursuant to the Securities Act"—there was no

23   curative disclosure between the date of purchase and the date of sale of securities by Detroit P&F,

24   _____

25   [4]   These arguments were either not addressed in the Dismissal Order, or were obscured in the tome of
         submissions leading to it.  Either way, they merit further consideration in the context of the Amended
26       Complaint.

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

4

1    and therefore any losses realized by Plaintiff Detroit P&F cannot have been caused by any alleged

2    misrepresentations and omissions in the Offering Documents for the December 2007 Offering.

3    **II.    STATEMENT OF FACTS**

4        This Court is familiar with the procedural history of this case, which will not be repeated

5    here, except to say that in its Dismissal Order, the Court made clear that to survive dismissal,

6    plaintiffs must at a minimum have standing to sue on each of the classes of securities at issue

7    herein.  2009 WL 1393679, at *14.  Moreover, the Court rejected arguments that a single named

8    plaintiff that purchased in one of the four offerings nevertheless could purport to represent

9    investors who purchased different securities in different offerings.  2009 WL 1393679, at *14.

10   Having been given leave of Court to cure their standing problems, but having failed to "designate

11   additional named plaintiffs to obtain standing as to the other three offerings," *id.*, plaintiffs have

12   not cured the residual standing issues from their original class action complaint.

13       Moreover, the Amended Complaint repeats without any variation the same litany of

14   curative disclosures that the Underwriter Defendants previously argued gave rise to the defense of

15   "negative causation."  The Amended Complaint does nothing to alter any of the material

16   allegations with respect to the alleged misrepresentations or omissions in the Offering Documents

17   for the December 2007 Offering, and does nothing to amended the allegations that make clear that

18   by the time of the December 2007 Offering, the alleged concealed risks had fully materialized.

19   **III.   CLAIMS RELATING TO THE AUGUST 2006, SEPTEMBER 2006, AND**
20          **DECEMBER 2007 OFFERINGS SHOULD BE DISMISSED FOR LACK OF**
            **STANDING**

21          **A.    The August 2006 Offering of 5.50% Notes**

22          ***Pompano Beach's Section 11 Standing.***  Plaintiffs' Section 11 and Section 12(a)(2) claims

23   relating to the 5.50% Notes issued in the August 2006 Offering should be dismissed for the reason

24   that no named Plaintiff purchased those securities, and Pompano Beach should not be permitted to

25   represent a class of investors with respect to securities it did not itself purchase.

26

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

5

1    This Court's Dismissal Order makes clear that standing on Section 11 claims is available

2    only to "any person acquiring [a] security."  2009 WL 1393679, at *14 (citing 15 U.S.C. § 77k(a)).

3    Because no plaintiff named in the Amended Complaint purchased or otherwise acquired the

4    5.50% Notes, no plaintiff could have suffered any injury relating to those notes, and accordingly

5    no named plaintiff has standing to sue on those notes.  *See Casey v. Lewis*, 4 F.3d 1516, 1519 (9th

6    Cir. 1993) ("At least one *named* plaintiff must satisfy the actual injury component of standing in

7    order to seek relief on behalf of himself or the class.  The inquiry is whether any named plaintiff

8    has demonstrated that he has sustained or is imminently in danger of sustaining a direct injury as

9    the result of the challenged conduct.") (internal citation omitted) (emphasis in original).[5]

10    Plaintiff's Section 11 claims relating to the 5.50% Notes issued in the August 2006 Offering

11    should accordingly be dismissed.

12       ***Pompano Beach's Section 12(a)(2) Standing.***  According to its certification, Pompano

13    Beach purchased Floating Rate Notes on January 12, 2007—almost five months following the

14    August 2006 Offering of those securities.  Because Pompano Beach did not purchase the Floating

15    Rate Notes "in" the August 2006 Offering, and did not purchase the 5.50% Notes at all, Pompano

16    Beach does not have Section 12 standing to sue on the August 2006 Offerings.

17    _____

18    [5]  Plaintiffs may argue that because the 5.50% Notes were sold pursuant to the "same" registration statement as
19       the Floating Rates Notes that were purchased by Pompano Beach, Pompano Beach therefore has standing to
       sue on behalf of putative class members of *both* securities issued in the August 2006 Offerings.  But Pompano
20       Beach did not suffer injury relating to the 5.50% Notes, and accordingly does not have standing to pursue any
       claims relating to those Notes.  *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892-93 (9th Cir.
21       2007) (noting that the standing inquiry involves a careful analysis of the exact ",nature of the alleged injuries
       and their *specific* causes"); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607
22       (S.D.N.Y. 2006) ("With regard to the sixty-eight funds of which Plaintiffs own no shares, Plaintiffs do not have
       standing to assert any claims because Plaintiffs cannot satisfy the standing requirements.").  Moreover, the
23       Underwriter Defendants respectfully submit that the litigation and resolution of the claims of these two classes
       of purchasers will involve different issues, different potential damages claims and theories, and potentially
24       different "negative causation" defenses.  For example, it is apparent that because of the different terms,
       conditions, and maturities of the two class of notes, the class members who purchased 5.50% Notes may have
25       different arguments on causation and damages.  Given this, the Underwriter Defendants submit that a separate
       named plaintiff for the 5.50% Notes is warranted.  *See, e.g.*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591,
       625 (1997) (requiring separate class representatives to represent different forms of injured class members).

26

**UNDERWRITER DEFENDANTS'**                 GIBSON, DUNN & CRUTCHER LLP            K&L GATES LLP
**MOTION TO DISMISS PLAINTIFFS'**              333 SOUTH GRAND AVENUE          925 FOURTH AVENUE, SUITE 2900
**AMENDED CONSOLIDATED CLASS**                 LOS ANGELES, CA 90071-1512           SEATTLE, WA  98104-1158
**ACTION COMPLAINT [UW-3]**                       Phone: (213) 229-7000               Phone: (206) 623-7580
(No. 2:08-md-1919 MJP)

6

1    Plaintiffs' Amended Complaint demonstrates on its face that Pompano Beach does not have

2    Section 12 standing.  The Amended Complaint generically alleges that Pompano Beach purchased

3    the Floating Rate Notes "on and/or traceable to" the Offering.  (Amended Complaint ¶ 11).  But a

4    long line of cases in this Circuit and elsewhere interpreting the Supreme Court's decision in

5    *Gustafson*, 513 U.S. at 580-84, specifically hold that such "traceable" language is insufficient to

6    create standing on a Section 12(a)(2) claim.  *See In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at

7    *17 (C.D. Cal. July 21, 2005) (dismissing Section 12(a)(2) claim with prejudice "insofar as it is

8    asserted on behalf of those who purchased DDi common stock 'traceable to,'" rather than "pursuant

9    to," the Prospectus); *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D. Cal.

10    2007) ("Although plaintiffs are correct that the *Feiner* court extended § 12(a)(2) liability to

11    aftermarket transactions, the court did not hold that § 12(a)(2) applies to all aftermarket

12    transactions so long as the transaction is traceable to the public offering.") (referring to decision in

13    *Feiner v. SS&C Techs.,Inc.*, 47 F. Supp. 2d 250 (D. Conn. 1999)); *In re Valence Tech. Sec. Litig.*,

14    1996 WL 37788, at *4 (N.D. Cal. Jan. 23, 1996) ("*Gustafson* makes irrelevant whether the

15    transaction is 'traceable' to a public offering.").[6]

16    Indeed, the Second Circuit's recent decision in *Caiafa v. Sea Containers Ltd.,* 2009 WL

17    1383457 (2d Cir. May 19, 2009), confirms that plaintiffs must plead facts sufficient to demonstrate

18    that they purchased their securities "in" the public offering itself.  *Id.* at *2 ("[P]laintiffs failed to

19    allege that they purchased the securities at issue in an initial public offering").  In *Caiafa*, the

20    Second Circuit affirmed the district court's decision, which noted that Section 11 standing may be

---

[6]  *See also Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 159 (N.D. Tex. 2007)
("[S]ection 12(a)(2) standing is more narrow than section 11 standing in that it is limited to shareholders who
acquired securities directly in the initial offering; it is not sufficient to allege that the shares can be 'traced back'
to the offering."*); In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005) ("Well reasoned
opinions in this Circuit after *Gustafson* have rejected the plaintiffs' argument [that a purchase 'pursuant to or
traceable to the Prospectus is sufficient to state a claim under § 12(a)(2)'] and interpreted *Gustafson* to preclude
purchasers in private or secondary transactions from bringing actions pursuant to § 12(a)(2) based on those
purchases."); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 693-94 (S.D.N.Y. 2000) (finding claim based
on purchase made "pursuant to the Offering, i.e., in the Offering" could be brought under § 12, as opposed to
purchases made "pursuant or traceable" to offering).

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

7

1    satisfied by an allegation that a plaintiff purchased securities "traceable" to a misleading

2    registration statement, whereas a Section 12(a)(2) standing claim "may only be maintained by a

3    purchaser who purchased [securities] *in* the public offering at issue rather than in a secondary

4    market transaction."  *Caiafa v. Sea Containers Ltd.,* 525 F. Supp. 2d 398, 407-08 (S.D.N.Y.

5    2007).[7]

6        Consistent with the Second Circuit's ruling in *Caiafa,* district courts within the Second and

7    Ninth Circuits have held that even where a plaintiff's purchases are at the same time of, or

8    immediately subsequent to, an offering, Section 12(a)(2) standing does not lie.  In *In re Levi*

9    *Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D. Cal. 2007), for example, the district

10   court held that a purchase in the secondary market that occurred shortly after a public offering of

11   securities appeared inconsistent with the holding of *Gustafson*, and dismissed plaintiffs' Section

12   12(a)(2) claims because "the complaint does not allege when plaintiffs' after market purchases

13   occurred" and "[i]n any event, the majority of the cases appear to hold that, based on *Gustafson*, §

14   12 is limited to transactions purchased pursuant to a public offering and, therefore, does not extend

15   to *any* after market transactions."[8]

16

17

18   _____

19   [7]    In its affirmance, the Second Circuit noted that "plaintiffs have failed to allege that they purchased securities
     under circumstances requiring the delivery of a prospectus and therefore fail to state a claim."  2009 WL

20   1383457, at *2.  The prospectus delivery period referenced in *Caiafa* refers to time periods set by SEC statutes
     and rules.  Section 5(b) of the Securities Act prohibits the sale of new securities unless "accompanied or

21   preceded by a prospectus."  15 U.S.C. § 77e(b).  Section 4(3) establishes a period of 90 days for transactions
     "if securities of the issuer have not previously been sold pursuant to an earlier effective registration statement."

22   For certain classes of  transactions, including secondary stock offerings, Section 4(3) specifies a period of forty
     days.  The prospectus delivery period under SEC Rule 174 applies to broker-dealers who execute trades in the

23   securities on behalf of purchasers.  Here, although the Underwriter Defendants are not alleged to have had
     prospectus delivery obligations, since they are not sued as broker-dealers, it is undisputed on the face of the

24   Amended Complaint that Pompano Beach purchased well beyond the lapse of any prospectus delivery period,
     and therefore under *Caiafa*, could not have purchased "in" the August 2006 offering of Floating Rate Notes.

25   [8]    *See also In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 245-46 (E.D.N.Y. 2002) (holding
     that, even though plaintiffs' purchases were close in time to the offering and could have been made in the

26   offering, "plaintiffs should specify at the pleading stage whether they made these purchases in the offering or in
     the secondary market").

UNDERWRITER DEFENDANTS'                GIBSON, DUNN & CRUTCHER LLP              K&L GATES LLP
MOTION TO DISMISS PLAINTIFFS'              333 SOUTH GRAND AVENUE          925 FOURTH AVENUE, SUITE 2900
AMENDED CONSOLIDATED CLASS                 LOS ANGELES, CA 90071-1512          SEATTLE, WA  98104-1158
ACTION COMPLAINT [UW-3]                        Phone: (213) 229-7000              Phone: (206) 623-7580
(No. 2:08-md-1919 MJP)

8

In short, as a matter of law Pompano Beach cannot establish that it purchased Floating Rate Notes "in" the August 2006 offering of Floating Rate Notes.

**B.**    **The September 2006 Offering**[9]

***Seymour's Section 11 Standing***.  Because the only newly named plaintiff who acquired the securities issued in the September 2006 Offering—Seymour—did not purchase those securities until nearly two years after the Offering date, plaintiffs' Section 11 claims relating to the September 2006 Offering date must be dismissed on standing grounds, for reasons this Court did not address in its Dismissal Order, since Seymour is required to plead—but has failed to plead—actual reliance.

Section 11(a) requires that a plaintiff must plead actual reliance if he or she acquires securities after an issuer has made available an earnings statement covering a twelve-month period following the effective date of the registration statement—as opposed to presumed reliance—on the alleged false and misleading registration statement under Section 11(a).[10]  *See generally In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at *15 (S.D. Cal. Jan. 3, 2005) ("Reliance is not required under Section 11 *unless* the purchaser 'acquired the security after the issuer has made generally available . . . an earnings statement covering a period of at least twelve months beginning after the effective date of the registration statement.'") (emphasis added).

Seymour admittedly purchased well after a full twelve months of earnings had been made generally available to WaMu investors following the September 2006 Offering.  Plaintiffs' Amended Complaint alleges that the September 2006 Offering was conducted on September 18,

---

[9]    The Underwriter Defendants join in the arguments of Deloitte & Touche and the WaMu Director and Officer Defendants that the claims relating to the September 2006 Offering should be dismissed because Plaintiffs fail to allege any material misstatements or omissions with respect to those Offering Documents.

[10]    15 U.S.C. § 77k(a) ("If such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, then the right of recovery under this subsection shall be conditioned on proof that such person acquired the security relying upon such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omission.").

UNDERWRITER DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

9

2006.  (Amended Complaint ¶¶ 677, 765).[11]  After that time, and as the Amended Complaint concedes, WaMu issued its 2006 financial results on Form 10-K on March 31, 2007 and issued 2007 financial results on Form 10-K on March 31, 2008.  Plaintiff Seymour purchased his Series K preferred stock issued in the September 2006 Offering on July 15, 2008—months after the 2007 10-K had been issued.  The Amended Complaint fails to plead any particularized facts demonstrating that Seymour relied on the September 2006 Offering Documents.  The only mention of the word "reliance" is a boilerplate allegation that is not specific to Seymour, or the September 2006 Offering:  "Plaintiffs acquired these securities [referring to all securities across all Offerings] relying upon the statements in the Registration Statement (as updated by the Offering Documents) shown above to be untrue and/or relying upon Registration Statements (as updated by the Offering Documents) and not knowing the omitted material facts set forth above."  (Amended Complaint ¶ 841).  This generic allegation is patently insufficient.  *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 641 (S.D. Tex. 2003) ("[B]ecause Lead Plaintiff has failed to plead reliance by any of [the named plaintiffs], these claims under § 11 must be dismissed.").  Indeed, even under the "notice pleading" standards of Rule 8(a), the Supreme Court has made clear that to survive dismissal, a complaint must state *factual* matter that is "plausible on its face."  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In *Iqbal*, the Court stated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.  Here, plaintiff's threadbare allegation of standing (and reliance) fails the test of plausibility set forth by the Supreme Court in *Iqbal*.  The elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

**Seymour's Section 12(a)(2) Standing.**  Plaintiffs also lack standing to pursue their claims

---

[11]  Pursuant to Rule 158(c) of the Securities Act, the effective date of the registration statement for the September 2006 Offering is September 11, 2006.

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

10

relating to the September 2006 Offering under § 12(a)(2), because as discussed, *supra*, in Section III(B), standing under that statute is limited to persons who purchased securities "in" an offering made via a prospectus, and does not extend to individuals who purchased securities in the secondary market or under private sales contracts. *Gustafson*, 513 U.S. at 580-84. The Amended Complaint does not plead that Seymour purchased the September 2006 Series K preferred stock "in" the Offering. Rather—in sharp contrast to their claims relating to the October and December 2007 Offerings (Amended Complaint ¶¶ 13-14)—the Amended Complaint merely recites that Seymour purchased Series K Stock "traceable to the Offering that was announced on September 11, 2006." (Amended Complaint ¶ 12). Seymour's certification further admits that he did not purchase Series K securities until July 15, 2008, when he purchased 800 shares at $6.00 per share.[12] Here, as in the case of Pompano Beach's secondary market purchases of Floating Rate Notes, there can be no doubt that Plaintiff Seymour's purchases of Series K stock—made nearly *two years* after the September 2006 Offering—were not made "in" the Offering. Accordingly, Plaintiffs' Section 12(a)(2) claims relating to the September 2006 Offering must be dismissed.[13]

**C.    The December 2007 Offering**

Finally, no named plaintiff has Section 11 or Section 12(a)(2) standing as to the December 2007 Offering. The only new named plaintiff alleged to have purchased in the December 2007

---

[12]   The purchase price of $6 per share is itself indicative that Seymour did not purchase "in" the September 2006 Offering, since the original offering price for the Series K securities was $25 per share. *See* Lawrence Decl. Exh. A (Prospectus Supplement, at Cover Page). Defendants request judicial notice of the facts and of the documents set forth in the Declaration of Paul J. Lawrence in Support of Underwriter Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint ("Lawrence Decl.").

[13]   Plaintiffs' Section 12(a)(2) claims also lack standing because Plaintiffs "fail to plead that they purchased the securities directly from specific underwriters, or directly traceable to specific underwriters, as required." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008). Although this Court in its May 15, 2009 ruling relied on *DDi* on this point to uphold standing as to the October 2007 Offering, the Underwriter Defendants respectfully submit that *DDi* is superseded by the same district court's later decision in *Countrywide* on this issue, and by the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), which require that Plaintiffs' allegations be *plausible*. Because Plaintiffs do not allege that they purchased securities directly from any of the Underwriter Defendants, their Section 12(a)(2) claims relating to all the Offerings should be dismissed.

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

11

Offering, Detroit P&F, purchased its shares of 7.75% Series R Preferred Stock on December 17, 2007. However, according to its sworn certification, Detroit P&F began to sell its shares almost immediately thereafter, beginning on December 20, 2007, and completed the sale of all of its Series R securities by January 14, 2008. Section IV of the Amended Complaint does not allege that there was any intervening curative disclosure between December 17, 2007 and January 14, 2008, when Detroit P&F completely sold out its position in the Series R Preferred Stock. Thus, according to Plaintiffs' pleaded claim, Detroit P&F is an "in-and out" trader that purchased after alleged misstatements had been made, but sold prior to any corrective disclosure. *Solomon v. Peat, Marwick, Main & Co.*, 1992 WL 231098, at *5 (9th Cir. Sept. 21, 1992) ("[Plaintiff] is an 'in-and-out trader,' one who purchased after the alleged misrepresentation but sold before the corrective disclosure. In order to recover, [plaintiff] must show a link between the alleged fraud and his loss.") (affirming summary judgment in favor of defendants); *see also In re Comverse Tech. Sec. Litig.*, 2007 WL 680779, at *3-6 (E.D.N.Y. Mar. 2, 2007) (denying lead plaintiff status to a party that had been "in and out" of the company's stock, finding it lacked standing to sue). Accordingly, the Section 11 and 12(a)(2) claims as to the December 2007 Offering should be dismissed for lack of standing.

## IV.    CLAIMS ARISING FROM THE SEPTEMBER 2006, OCTOBER 2007, AND DECEMBER 2007 OFFERINGS MUST BE DISMISSED ON "NEGATIVE CAUSATION" GROUNDS

Negative causation can be established on the face of a complaint if "the loss in the value" was "due to something other than the alleged misrepresentation on which the Section 11 claim is premised." *In re Worldcom, Inc. Sec. Litig.*, 2005 WL 375314, at *5 (S.D.N.Y. Feb. 17, 2005); *see also* 15 U.S.C. § 77k(e); *In re Shoretel Inc. Sec. Litig.*, 2009 WL 248326, at *5 (N.D. Cal. Feb. 2, 2009) (dismissing complaint because "negative causation is apparent from the allegations of the Complaint"); *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 865-66 (N.D. Tex. 2005) (dismissing complaint because "Plaintiffs' own pleadings demonstrate that any loss experienced by Plaintiffs could not be attributable to an alleged misrepresentation or omission from

UNDERWRITER DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

12

1   the Registration Statement"); *In re DNAP Sec. Litig.*, 2000 WL 1358619, at *3 (N.D. Cal. Sept. 14,

2   2000) (dismissing Section 11 claim because where no reasonable basis exists to conclude that

3   disclosure of information would have led to merger opposition, "[l]oss causation simply cannot be

4   shown").  The Court's Dismissal Order declined to find as a pleading matter that "loss causation

5   does not exist because the recent downturn in the housing market, not any disclosures regarding

6   WaMu's financial health, caused WaMu's stock price to plummet."  2009 WL 1393679, at *18.

7   While that proposition may prove correct based on an evidentiary record, it was not, and is not, the

8   Underwriter Defendants' negative causation argument at this motion stage.  Rather, the

9   Underwriter Defendants' argument hinges on the way the Amended Complaint is pled as opposed

10  to how actual causation is ultimately decided.  That is, the Underwriter Defendants submit that

11  because the alleged adverse financial condition of WaMu was well known by the time of the

12  October 2007 and December 2007 Offerings, as alleged in the numerous disclosures recited in the

13  Amended Complaint, plaintiffs' losses could not have been caused by misstatements in those

14  Offering Documents.  Accordingly the absence of loss causation—or negative causation—is

15  established on the face of the Amended Complaint.  Defendants respectfully submit that for that

16  reason, which was not addressed by the Court in its Dismissal Order, as well as for reasons specific

17  to certain of the newly-added plaintiffs, negative causation is established on the face of the

18  Amended Complaint for the September 2006, October 2007, and December 2007 Offerings.

**A.      Negative Causation Is Shown On The Face Of The Complaint
As To The September 2006 Offering**

Plaintiff Seymour's certification shows that he purchased his Series K Preferred Stock on

July 15, 2008—8 days prior to the end of the July 23, 2008 class period.  Seymour purchased the

stock on July 15, 2008 at a purchase price of $6.00 per share, after a series of negative

announcements by WaMu, a significant plunge in the prices of WaMu common stock, and a $7

billion "bail out" financing by Texas Pacific Group in April 2008 to stave off WaMu's potential

**UNDERWRITER DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

13

bankruptcy.[14]  It is evident on the face of the Amended Complaint that Seymour cannot demonstrate that he lost any money as a result of any alleged misrepresentations and omissions that were still "alive" at the time of his purchase in July 2008.  Indeed, Plaintiffs conveniently bury the fact that the price of WaMu's Series K stock *rose* from Plaintiff's purchase price of $6.00 to close at $7.53 at the end of the class period.  (Amended Complaint ¶ 623) (citing Series K Stock price of "$7.53 per share on July 23, 2008").

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires plaintiffs to allege a facially plausible causal relationship between the fraudulent statements and/or omissions and plaintiffs' economic loss.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (plaintiffs must plead "that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses").  Because there is no facially plausible causal relationship between the misstatements alleged in the September 2006 Offering Documents and this plaintiff's losses, plaintiffs' claims relating to the September 2006 must be dismissed because negative causation is shown on the face of the Amended Complaint.

**B.    Negative Causation Is Shown On the Face Of The Complaint As To The December 2007 Offering**

*Negative Causation Is Established As to the Entire Putative Class.*  Despite being given a preview of the Underwriter Defendants' negative causation arguments relating to the December 2007 Offering in the prior motion to dismiss, Plaintiffs' Amended Complaint remains unchanged, and begs dismissal on negative causation grounds.  Plaintiffs' losses cannot have been caused by misstatements in the December 2007 Offering Documents because that Offering was conducted after extensive disclosure of the facts that plaintiffs allege were concealed, and indeed the Offering Documents themselves extensively disclosed the facts that Plaintiffs allege were concealed.

---

[14]  See Amended Complaint ¶ 603; Lawrence Decl. Exh. B (April 9, 2008 Form 8-K) (announcing $7 billion Texas Pacific Group capital investment).

**UNDERWRITER DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

14

1    Accordingly, Plaintiffs' losses cannot have been caused by the "materialization of a concealed

2    risk," *not* because Plaintiffs' losses may have been caused "by the recent downturn in the housing

3    market," 2009 WL 1393679, at *18, but because *there was no concealed risk by the time of the*

4    *December 2007 Offering* as pled by plaintiffs.  *Shoretel*, 2009 WL 248326, at *5-6.  Per the

5    plaintiffs' own allegations, because the market was well aware of WaMu's adverse financial

6    condition by the time of the December 2007 Offering, the Offering Documents could not have been

7    misleading on these issues, and could not have caused Plaintiffs' losses.

8         The misrepresentations and omissions in the October 2007 Offering Documents that this

9    Court found to be actionable centered on three areas of WaMu's lending practices:  substandard

10   underwriting practices, inadequate internal controls, and inadequate loan loss reserves.  As the

11   Amended Complaint admits on its face, all of these issues had become the subject of widespread

12   public disclosure by the time of the December 2007 Offering.[15]  For example, the Amended

13   Complaint admits that on October 17, 2007, the Company announced that it "expected its loan loss

14   provision to grow to as much as $1.3 billion in the fourth quarter of 2007."  (Amended Complaint

15   ¶ 557).  And "[i]n response" to this announcement, "numerous analysts downgraded their ratings of

16   WaMu, citing concerns over the Company's ability to maintain its dividend and the Company's

17   projections for an increased loan loss provision in the fourth quarter."  (Amended Complaint

18   ¶ 558).  The Complaint also alleges that the New York Attorney General sued First American on

19   November 1, 2007, "investors were shocked by revelations about WaMu's improper manipulation

20   of appraisal values," (Amended Complaint ¶ 561), and that "this disclosure of WaMu's appraisal

21   manipulations caused WaMu's stock price to drop to its lowest closing price since September 2000

22   _____

23   [15]  To this end, it is notable that the first complaint in this action alleging Section 11 claims, the Brockton
     Complaint filed on May 13, 2008, *did not even sue on the December 2007 offering*.  Although the Brockton

24   Complaint and the present Amended Complaint share identical Section 11 claims, the Brockton Complaint
     alleged that the fraud was disclosed on November 1, 2007—the date of the New York Attorney General's

25   lawsuit against First American and eAppraiseIT.  (Brockton Complaint ¶ 1 (asserting class period ending on
     November 1, 2007); ¶¶ 50-59 (describing alleged disclosures in New York Attorney General lawsuit filed on

26   November 1, 2007)).

UNDERWRITER DEFENDANTS'                  GIBSON, DUNN & CRUTCHER LLP          K&L GATES LLP
MOTION TO DISMISS PLAINTIFFS'            333 SOUTH GRAND AVENUE              925 FOURTH AVENUE, SUITE 2900
AMENDED CONSOLIDATED CLASS               LOS ANGELES, CA 90071-1512          SEATTLE, WA  98104-1158
ACTION COMPLAINT [UW-3]                  Phone: (213) 229-7000               Phone: (206) 623-7580
(No. 2:08-md-1919 MJP)

15

1   and resulted in a two-day market capitalization loss of more than *$3 billion*" (Amended Complaint

2   ¶ 564) (emphasis in original).  Moreover, the Amended Complaint states that on November 8,

3   2007, numerous analysts voiced concern over WaMu, citing "the materialization of the Company's

4   undisclosed and improper lending practices."  (Amended Complaint ¶ 571).  The disclosures

5   *immediately prior* to the December 2007 Offering, as alleged in the Amended Complaint, were the

6   most dire—the Amended Complaint alleges that on December 10, 2007, the Company was

7   "projecting a full year 2008 loan loss provision of approximately $7.2 to $8.0 billion" (Amended

8   Complaint ¶ 576); the Company disclosed its plans to discontinue subprime lending which

9   "highlight[ed] the substantial and material impact that the Company's improper lending practices

10  had on the Company's financial and operational condition" (Amended Complaint ¶ 577); and the

11  Company "implicitly acknowledg[ed] that the growth and profitability that the Company had

12  experienced in its lending operations were dependent, at least in part, on the Company's fraudulent

13  lending practices, including the issuance of high-risk loans to unqualified borrowers and the

14  manipulation of appraisals" (Amended Complaint ¶ 577).  These disclosures led to numerous

15  downgrades and speculation concerning the Company's credit quality.  (Amended Complaint ¶¶

16  579-583).

17         The Prospectus Supplement relating to the December 2007 Offering itself stated that the

18  offering was being undertaken for the precise purpose of addressing the company's recent financial

19  setbacks, and to fund the remedial actions described in the Offering.  *See* Lawrence Decl. Exh. C

20  (Prospectus Supplement, at S-2).  The disclosures in the Prospectus Supplement included an entire

21  section entitled "Capital and Liquidity Strengthening Measures," which included an

22  acknowledgement that one of the remedial measures it was taking was "this offering."  *Id.* at S-2.

23  WaMu further stated that the mortgage market was "undergoing a fundamental shift due to credit

24  dislocation," and therefore WaMu was going to substantially reduce its home loan business.  *Id.*

25  As a result of all the remedial measures and changes in the business, WaMu stated that it planned

26

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

16

to take an after-tax charge of $1.6 billion for the write-down of assets associated with its mortgage business. *Id.* Likewise, it stated that it was expecting the fourth quarter 2007 loan loss reserve to be between $1.5 and $1.6 billion—*twice* the level of expected fourth quarter net charge-offs. *Id.* WaMu also disclosed to investors that "several rating agencies have recently downgraded or assigned a negative outlook to our credit ratings" (*id.* at S-11), and that the deterioration of credit quality in its loan portfolio "has had, and could continue to have, a negative impact on our business" (*id.* at S-12-S-13). Finally, WaMu included in the Prospectus Supplement a detailed disclosure concerning the New York Attorney General action. *Id.* at S-17. The Company's Form 10-Q filed on November 9, 2007, and incorporated as part of the December 2007 Offering Documents, mirrored the disclosures in the Company's press releases, noting the "severe contraction in secondary market liquidity during the third quarter of 2007," and that while this market condition persisted, "the Company's ability to raise liquidity through the sale of mortgage loans in the secondary market will be adversely affected." Lawrence Decl. Exh. D (November 9, 2007 Form 10-Q at 25, 27). The 10-Q also disclosed the accelerating pace of delinquencies in the housing market, as a result of which WaMu's "nonperforming assets [delinquent loans] to total assets ratio" almost *tripled* year-over-year while its annualized loan charge-offs [write offs of bad loans] more than *quadrupled*. *Id.* at 27, 56. The 10-Q further disclosed that "with housing market conditions expected to deteriorate further, the Company expects the delinquencies and loss severities throughout its single-family mortgage residential mortgage portfolios will continue to increase in the fourth quarter of 2007." *Id.* at 27.

Clearly, according to the Amended Complaint, as a result of the amount of information available in the marketplace, the adverse information disclosed in the December 2007 Offering Documents themselves, and the financial statements incorporated within the Offering Documents, there was no concealed risk at the time of the December Offering, and accordingly negative causation is established on the face of the Amended Complaint.

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

***Negative Causation Is Established As to Detroit P&F.***  Negative causation also is apparent on the face of the Amended Complaint as to Detroit P&F for the same reasons discussed in Section III(C), *supra*, namely, that Detroit P&F was an "in and out" trader that sold its entire position prior to the any further curative disclosure that entered the market between December 17, 2007 and January 14, 2008.  The Supreme Court's discussion in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), is illustrative:

> [A]s a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value.  Moreover, the logical link between the inflated share purchase price and any later economic loss is not invariably strong.  Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.

*Id.* at 342-43.[16]  Accordingly, Detroit P&F bought and sold its holdings *prior* to any new curative disclosures.  In such a situation, Plaintiff cannot show loss causation, and negative causation is accordingly evident on the face of the complaint.

**C.**    **Negative Causation Is Shown On the Face of The Complaint As to the October 2007 Offering**

In their prior motion to dismiss, the Underwriter Defendants argued that, with respect to the October 2007 Offering, the combination of the disclosure of adverse information preceding the offering, and the subsequent stock price declines, compelled dismissal of the Section 11 and 12(a)(2) claims against the Underwriter Defendants as to that offering because the defense of negative causation was made out on the face of the complaint.  The Amended Complaint does not

---

[16]  The only "disclosure" alleged in the Amended Complaint between the time that Detroit P&F purchased and sold its Series R stock is a December 21, 2007 article in the *Wall Street Journal* reporting that the SEC had launched an inquiry into the Company's mortgage lending practices.  (¶ 586).  However, that allegation is not included in the 1933 Act claims set forth in Section IV of the Amended Complaint.  In any event, information concerning regulatory scrutiny of WaMu's lending practices were already well known to the market by this time as a result of numerous disclosures such as the announcement of the November 1, 2007 New York Attorney General lawsuit.  Thus, the disclosure of a similar SEC investigation cannot be said to constitute a corrective disclosure.

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

18

1   alter the allegations pertinent to this issue in any respect, and therefore the Underwriter Defendants

2   respectfully submit that this Court should revisit this issue again on this motion.  Although this

3   Court's Dismissal Order denied motions to dismiss as to the October 2007 Offering on "loss

4   causation" grounds, the Court's opinion appears to have been addressing arguments made by

5   WaMu's directors and officers in *their* motion to dismiss, but *not* the "negative causation"

6   arguments advanced by the Underwriter Defendants.

7          The Court stated, for example, that "Defendants argue that loss causation does not exist."

8   2009 WL 1393679, at *18.  But that is *not* the premise of the argument advanced by the

9   Underwriter Defendants in their prior motion to dismiss.  Instead, the Underwriter Defendants

10  argued that the absence of loss causation—or negative causation— was made out on the face of the

11  complaint with respect to the October and December 2007 Offerings because in light of the

12  substantial disclosures prior to the October and December 2007 Offerings, any losses suffered by

13  plaintiffs could not have been caused by misleading statements relating to the Offering Documents

14  for those offerings.  Again, it is the manner of pleadings, rather than the ultimate resolution of the

15  question of loss causation that is relevant to the Underwriter Defendants' argument.  To that end,

16  the Court stated that "if a disclosure reveals adverse information about WaMu's financial health

17  that the misrepresentation had concealed, and this causes a drop in stock price, then the

18  misstatement and the stock decline are causally related and loss causation exists."  2009 WL

19  1393679, at *18.  That statement by the Court *supports* the argument advanced by the Underwriter

20  Defendants because, according to the allegations of plaintiffs' original and amended complaints, by

21  the time of the October 2007 Offering, WaMu's financial condition was fully revealed.

22         The Court's observations in the Dismissal Order compel the conclusion that the adverse

23  disclosures preceding the October 2007 Offering vitiated any claim by purchasers in the October

24  2007 Offering that they were somehow misled.  As was demonstrated in the prior motion, the

25  October 2007 Offering was preceded by significant adverse disclosures by WaMu in the areas of

26

**UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

19

alleged misrepresentations and omissions upon which this Court has focused —substandard underwriting standards, allegedly weak internal controls, and understated reserves.  As alleged in the Amended Complaint, WaMu expressly disclosed that it was significantly increasing its loss reserves, that it was experiencing significantly higher charge-off rates and delinquencies, and other similar disclosures, all of which plaintiffs contend are reflective of the allegedly substandard underwriting practices and internal control weakness at WaMu.  (Amended Complaint ¶¶ 557-560).  For these reasons, and for the other reasons previously set forth in the Underwriter Defendants' prior motion to dismiss, we respectfully submit that the Section 11 and 12(a)(2) claims as to the October 2007 Offering are subject to dismissal on negative causation grounds.  Since the Underwriter Defendants do not believe that the Court specifically addressed these arguments in the Dismissal Order, we renew them here.

## V.    CONCLUSION

For all the reasons stated herein, and for the reasons stated in the WaMu Officers' Motion to Dismiss and Deloitte & Touche LLP's Motion to Dismiss, the Underwriter Defendants respectfully request that the Court dismiss the Section 11 and 12(a)(2) claims in the Amended Complaint.

DATED:  July 17, 2009

GIBSON, DUNN & CRUTCHER LLP

Dean J. Kitchens (*dkitchens@gibsondunn.com*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Phone: (213) 229-7000

Jonathan Dickey (*jdickey@gibsondunn.com*)
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-2400

Admitted *pro hac vice*

K & L GATES LLP

By:  */s/ Paul J. Lawrence*
Paul J. Lawrence (WSBA No. 13557)
*paul.lawrence@klgates.com*

925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Phone:  (206) 623-7580

Attorneys for the Underwriter Defendants

UNDERWRITER DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

20