The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES & ERISA LITIGATION | ) ) ) ) ) |
| | No.   2:08-md-1919 MJP |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION | ) ) ) |
| | Lead Case No. C08-387 MJP |
| This Document Relates to:  ALL CASES | ) ) ) |
| | UW-3 |
| | **LEAD PLAINTIFF'S OPPOSITION TO THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | *Note on Motion Calendar*: August 25, 2009 |
| | Oral Argument Requested |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   ARGUMENT .................................................................................................... 3

    A.    Applicable Legal Standards .................................................................. 3

    B.    The Underwriters Have Not Demonstrated
         Negative Causation On The Face Of The Amended
         Complaint ............................................................................................... 4

         1.    There Is No Reason To Reconsider The
              Court's Analysis Of Negative Causation ................................... 6

         2.    The Truth About WaMu Was Not
              Completely Disclosed Seven Months Before
              The End Of The Class Period ..................................................... 7

         3.    Plaintiff Seymour's Purchases Do Not
              Establish Negative Causation For The
              September 2006 Offering ......................................................... 10

    C.    Plaintiffs Have Standing To Assert Securities Act
         Claims For Each Of The Offerings ..................................................... 12

         1.    Pompano Beach Has Standing To Represent
              All Investors In The August 2006 Offering .............................. 12

         2.    The Amended Complaint Sufficiently
              Alleges Actual Reliance By Plaintiff
              Seymour ................................................................................... 14

         3.    Detroit P&F Is Not An "In And Out" Trader
              And Has Standing To Represent Investors In
              The December 2007 Offering .................................................. 16

         4.    Plaintiffs Have Standing To Represent The
              Class For Section 12(a)(2) Claims .......................................... 17

III.  CONCLUSION ............................................................................................... 18

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page i

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re AEP ERISA Litig.,*
   327 F. Supp. 2d 812 (S.D. Ohio 2004) ..................................................................15

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)..........................................................................................14

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (U.S. 2009)........................................................................3,16, 18

*Bell Atl. Corp. v. Twombly,*
   127 S. Ct. 1955 (2007)...........................................................3, 10, 15, 16, 18

*Casella v. Webb,*
   883 F.2d 805 (9th Cir. 1989) ............................................................................4

*Casey v. Lewis,*
   4 F.3d 1516 (9th Cir. 1993) ...........................................................................14

*In re Comverse Technology Sec. Litig.,*
   No. 06-CV-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)..............................17

*In re Consumers Power Co. Sec. Litig.,*
   105 F.R.D. 583 (E.D. Mich. 1985) ...................................................................12

*In re Countrywide Fin. Corp. Sec. Litig.,*
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................5, 8, 10

*In re Daou Sys., Inc.,*
   411 F.3d 1006 (9th Cir. 2005) ..........................................................................3

*In re DDi Corp. Sec. Litig.,*
   CV 03-7063 NM, 2005 WL 3090882  (C.D. Cal. July 21, 2005).......................4, 9, 13, 14, 18

*DeMaria v. Andersen,*
   318 F.3d 170 (2d Cir. 2003)............................................................................15

*Doe v. GTE Corp.,*
   347 F.3d 655 (7th Cir. 2003) (Easterbrook, J.)...............................................5-6

*Eminence Capital, L.L.C. v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir. 2003) ........................................................................19

*In re Enron Corp. Sec., Deriv. & ERISA Litig.,*
   258 F. Supp. 2d 576 (S.D. Tex. 2003) .............................................................16

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page ii

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

*First Bank Richmond v. Credit Suisse First Boston Corp.*,
No. 07-cv-1262, 2008 WL 4410367 (S.D. Ind. Sept. 24, 2008)................................16

*Fouad v. Isilon Sys., Inc.*,
No. C07-1764 MJP, 2008 WL 5412397
(W.D. Wash. Dec. 29, 2008)....................................................................3

*Get Outdoors II, LLC v. City of San Diego*,
506 F.3d 886 (9th Cir. 2007) ..............................................................14

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ............................................................10

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1990) ..............................................................9

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)..............................................................................4

*Hertzberg v. Dignity Partners, Inc.*,
191 F.3d 1076 (9th Cir. 1999) ........................................................12, 15

*Lee v. Ernst & Young, LLP*,
294 F.3d 969 (8th Cir. 2002) ..............................................................15

*Lehocky v. Tidel Tech.*,
220 F.R.D. 491 (S.D. Tex. 2004)..........................................................12

*Levine v. AtriCure, Inc.*,
508 F. Supp. 2d 268 (S.D.N.Y. 2007)....................................................5

*Makor Issues, Ltd. v. Tellabs, Inc.*,
256 F.R.D. 586 (N.D. Ill. 2009)..........................................................10

*In re Metro. Sec. Litig.*,
532 F. Supp. 2d 1260 (E.D. Wash. 2007)............................................15

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)..............................................................4

*In re MobileMedia Sec. Litig.*,
28 F. Supp. 2d 901 (D.N.J. 1998) ..................................................13, 14

*Moss v. United States Secret Service*,
--- F.3d ----, 2009 WL 2052985 (9th Cir. July 16, 2009) ...................3, 15

*OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys.*,
503 F. Supp. 2d 490 (D. Conn. 2007).................................................16

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page iii

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2006 WL 2385250 (N.D. Cal. Aug. 17, 2006)........................5

*In re Salomon Smith Barney Mutual Funds Fee Litig.*,
  441 F. Supp. 2d 579, 605-08 (S.D.N.Y. 2006) ........................................14

*Solomon v. Peat Marwick, Main & Co.*,
  No. 91-55453, 1992 WL 231098 (9th Cir. Sept. 21, 1992) ........................17

*Sterling Federal Bank v. Credit Suisse First Boston Corp.*,
  No. 07-C-2922, 2008 WL 4924926 (N.D. Ill. Nov. 14, 2008) ...................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  127 S. Ct. 2499 (2007)..................................................................3

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. CV-07-02204, 2009 WL 2151838 (D. Ariz. July 17, 2009)...............13

*In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*,
  No. 2:08-MD-1919, 2009 WL 1393679 (W.D. Wash. May 15, 2009) ..........*passim*

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) .........................................................4

**STATUTES & OTHER AUTHORITIES**

Securities Act of 1933 § 11(a), 15 U.S.C. § 77k(a) .....................2, 3, 5, 7, 13, 14, 15, 16

Securities Act of 1933 § 11(e), 15 U.S.C. § 77k(e) .......................................5

Securities Act of 1933 § 12(a), 15 U.S.C. § 77*l*(a)................................2, 4, 5, 18

Securities Act of 1933 § 12(b), 15 U.S.C § 77*l*(b) . ....................................5

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b).............................4

Fed. R. Civ. P. 8 ...............................................................................3, 16

Fed. R. Civ. P. 8(a) ..........................................................................3

Fed. R. Civ. P. 12(b)(6)......................................................................3

Fed. R. Civ. P. 15(a) .......................................................................19

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page iv

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

I.     **PRELIMINARY STATEMENT**

        In its May 15, 2009 Order, the Court rejected all of the Underwriter Defendants'
substantive arguments for dismissal of Lead Plaintiff's claims against them under the Securities
Act of 1933 (the "Securities Act") and sustained Lead Plaintiff's claims with respect to the
October 2007 Offering by Washington Mutual, Inc. ("WaMu" or the "Company").   *In re
Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*, No. 2:08-MD-1919, 2009 WL
1393679, at *20 (W.D. Wash. May 15, 2009) (the "May 15 Order").[1]  While the Court noted that
the "allegations regarding the August 2006, September 2006, and December 2007 offerings are
identical or substantially similar to those regarding the October 2007 offering," *id.* at *14 n.10,
for standing reasons, it directed Lead Plaintiff to re-plead with named plaintiffs for each
Offering.  *Id.* at *14, *20.[2]

        Lead Plaintiff has identified additional Plaintiffs in its Amended Consolidated Class
Action Complaint (the "Amended Complaint" or "Complaint") for claims under the Securities
Act for the August 2006, September 2006, and December 2007 Offerings.  These Plaintiffs
include Pompano Beach Police and Firefighters' Retirement System ("Pompano Beach"), which
purchased Floating Rate Notes on or traceable to the August 2006 Offering; Harlan Seymour
("Seymour"), who purchased Series K Stock traceable to the September 2006 Offering; and the
Police and Fire Retirement System of the City of Detroit ("Detroit P&F"), which purchased
Series R Stock on the December 2007 Offering.  The Court in its May 15 Order found that
Brockton Contributory Retirement System ("Brockton"), which purchased 7.250% Notes on the
October 2007 Offering, had standing to represent claims of investors in the October 2007
Offering.  May 15 Order at *14.

        Despite the Court's May 15 Order, the Underwriter Defendants (the "Underwriters")
continue to make many of the same arguments that the Court previously rejected, as well as

---

[1]  All subsequent "*" references to the May 15 Order are to the Westlaw version of the Order.

[2]  As discussed in Lead Plaintiff's Opposition To Deloitte & Touche LLP's motion to dismiss, Lead Plaintiff has
sufficiently alleged that the Offering Documents included false or materially misleading statements.  To the extent
the Underwriters join in arguments made by other Defendants, Lead Plaintiff respectfully refers the Court to Lead
Plaintiff's briefs in opposition to the other Defendants' motions to dismiss.

raising issues that are properly considered at class certification, not on a motion to dismiss. First, the Underwriters argue that Lead Plaintiff's § 11 claims fail because "negative causation," or the absence of loss causation, appears on the face of the Complaint. As explained below, the Underwriters – again – fail to meet their heavy burden of establishing negative causation on the pleadings. The Underwriters repeat their arguments, previously rebuffed by the Court, that investors were fully informed of the truth about WaMu before the October 2007 Offering, but the Underwriters do not offer any basis for the Court to reconsider its prior ruling. The Court's reasoning applies with equal force to the Underwriters' identical arguments with respect to the December 2007 Offering and the September 2006 Offering. The Underwriters' narrow challenges to the timing of Seymour's and Detroit P&F's purchases of WaMu securities are inappropriate for determination by the Court on the pleadings.

Second, the Underwriters' arguments regarding the standing of the newly named Plaintiffs ignore both the Complaint's allegations and well-established law. The Underwriters again inappropriately ask the Court to prematurely resolve matters that cannot be resolved without a factual record (typically on a motion for class certification). Pompano Beach, which purchased one of two series of debt securities issued in the August 2006 Offering, has standing to represent all purchasers in that Offering, for reasons the Court articulated in its May 15 Order. Moreover, only by ignoring the clear allegations in the Complaint can the Underwriters argue that Seymour has not alleged actual reliance in relation to the September 2006 Offering. Similarly, the Underwriters' challenge to Detroit P&F's standing clearly rests on a misreading of the Complaint and should be rejected. Finally, the Underwriters repeat their arguments with respect to Plaintiffs' standing to maintain § 12(a)(2) claims on behalf of investors, but here too the Court has previously considered and rejected the Underwriters' reasoning, and they offer no reason for the Court to reconsider now.

For the reasons stated herein, the Underwriters' motion should be denied.[3]

---

[3] This brief refers to the Underwriter Defendants' motion to dismiss as the "UW Mot."

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 2

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

## II.    ARGUMENT

### A.    Applicable Legal Standards

The standards for review on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) are well-settled. In assessing the Complaint, the Court must accept Lead Plaintiff's allegations as true and construe them in the light most favorable to Lead Plaintiff. *In re Daou Sys., Inc.,* 411 F.3d 1006, 1013 (9th Cir. 2005); *Fouad v. Isilon Sys., Inc.*, No. C07-1764 MJP, 2008 WL 5412397, at *2 (W.D. Wash. Dec. 29, 2008) (Pechman, J.) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007)). Dismissal is appropriate only where, viewed in its totality, a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007); *see also Moss v. United States Secret Service*, --- F.3d ----, 2009 WL 2052985, at *6 (9th Cir. July 16, 2009) (to survive a motion to dismiss, a complaint "must be plausibly suggestive of a claim entitling the plaintiff to relief").

As the Court determined in its May 15 Order (and the Underwriters do not dispute), the Complaint's Securities Act allegations against the Underwriters (and the other non-fraud Defendants) should be evaluated under Rule 8 of the Federal Rules of Civil Procedure. *Id.* at *20. Rule 8(a) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009). For a complaint to pass muster under Rule 8(a), a defendant need only be put on notice of the claims. *Tellabs*, 127 S. Ct. at 2507 ("the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'") (citations omitted).

Section 11 of the Securities Act provides a private cause of action against underwriters and other participants in any public securities offering made under a registration statement that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Section 11 imposes a "stringent standard of liability." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). A plaintiff "need only show a material misstatement or omission to

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 3

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

establish his prima facie case," which "places a relatively minimal burden on a plaintiff." *Id.* at 382. Lead Plaintiff here asserts claims under § 11 against the Underwriters (among other Defendants), and the Complaint specifies which Underwriters sold securities in each Offering. ¶¶834-37.

Section 12(a)(2) provides a private cause of action against anyone who offers or sells a security by means of a prospectus which "includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77*l*(a). Lead Plaintiff asserts claims under § 12(a)(2) against the Underwriters, which solicited and sold securities in the Offerings to members of the Class.

**B.    The Underwriters Have Not Demonstrated Negative Causation On The Face Of The Amended Complaint**

Under § 11, there "is effectively 'a factual presumption that any decline in value is caused by the misrepresentation in the registration statement.'" *In re DDi Corp. Sec. Litig.,* 2005 WL 3090882, at *14 (C.D. Cal. July 21, 2005) (citing *Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989)). Contrary to the Underwriters' assertion (UW Mot. at 14 (citing *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008), which is an Exchange Act § 10(b) case)), and as the Court previously held, a plaintiff asserting § 11 and 12(a)(2) claims is not required to plead loss causation. Instead, lack of loss causation is an affirmative defense for which the Underwriters bear the burden of proof. May 15 Order at *18 (citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994)). Defendants must establish that, based on the facts alleged on the face of the Complaint, Plaintiffs' loss "represents [something] other than the depreciation in value of [the] securit[ies] resulting from [the allegedly untrue] part of the registration statement . . . not being true or omitting to state a material fact . . . ." 15 U.S.C. § 77k(e); *see also* 15 § U.S.C. 77*l*(b) (same with respect to prospectus). The negative-causation affirmative defense is fact-specific and generally inappropriate for determination on a motion to dismiss. *See In re Countrywide Sec. Litig.*, 588 F. Supp. 2d 1132, 1170 (C.D. Cal. 2008)

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 4

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

1  ("Because an analysis of causation is often fact-intensive, negative causation is generally

2  established by a defendant on a motion for summary judgment or at trial") (quoting *Levine v.*

3  *AtriCure, Inc.*, 508 F. Supp. 2d 268, 272-73 (S.D.N.Y. 2007)).  Here, "the complaint on its face

4  does not foreclose the possibility that defendants caused plaintiffs' losses," and thus the

5  Underwriters have failed to establish negative causation.  *See* May 15 Order at *18 (quoting *In re*

6  *Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2006 WL 2385250, at *3-4 (N.D. Cal.

7  Aug. 17, 2006)).

8        The Court has already determined that Defendants have not demonstrated that negative

9  causation exists with respect to the October 2007 Offering.  *See* May 15 Order at *18.  As

10  discussed below, the Underwriters dispute the Court's analysis of negative causation in its May

11  15 Order.  *See* UW Mot. at 13 ("While [the Court's analysis] may prove correct on an

12  evidentiary record, it was not, and is not, the Underwriter Defendants' negative causation

13  argument at this motion stage").  The Underwriters are mistaken, as the Court directly addressed

14  Defendants' arguments and the appropriate negative causation standard in the May 15 Order.

15  Furthermore, the Court's analysis of negative causation regarding the October 2007 Offering

16  applies with equal force to the December 2007 and September 2006 Offerings.  Absent new

17  controlling authority (which the Underwriters do not provide), the Underwriters' arguments

18  regarding the standard for negative causation should be summarily rejected, as should their

19  arguments based exclusively on the trading patterns of the named Plaintiffs.  The Underwriters

20  do not argue that negative causation exists with respect to the August 2006 Offering.

21        As discussed below, the Complaint's allegations go well beyond Lead Plaintiff's

22  obligations under §§ 11 and 12 by alleging corrective disclosures that revealed facts that had

23  been misstated at the time of each of the Offerings and thus caused losses.  *See Doe v. GTE*

24  *Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) (Easterbrook, J.) ("[L]itigants need not try to plead

25  around defenses.").

26

27

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 5

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1. **There Is No Reason To Reconsider
The Court's Analysis Of Negative Causation**

As noted above, the Court has already determined that negative causation does not exist on the pleadings with respect to the October 2007 Offering. May 15 Order at *18. The Court based its conclusion on the extensive series of corrective disclosures alleged by Lead Plaintiff, beginning in October 2007 with WaMu's first announcement of dramatically increased loan loss provisions (*see* ¶557), extending through, among other disclosures, the announcement of the New York Attorney General's lawsuit regarding WaMu's inflated appraisals (*see* ¶¶561-65), the announcement of the SEC's broad investigation into WaMu's lending and accounting practices (*see* ¶586), until the Class Period ended on July 23, 2008 with the Company's announcement of its dismal third quarter 2008 results. Throughout this time period, Lead Plaintiff alleges that WaMu's stock price fell after each corrective disclosure, declining over 85% from October 17, 2007 until July 23, 2008. ¶621.

The Complaint contains substantially identical allegations that the Court found did not establish "negative causation" for the prior complaint. ¶¶557-623. The Complaint provides additional details regarding post-Class Period events showing that the market did not fully understand WaMu's true condition, as even more information and analysis emerged regarding WaMu's deteriorating financial condition. *See* ¶624 (on September 9, 2008, Standard & Poor's changed ratings outlook from neutral to negative, WaMu stock and bond prices fall substantially); ¶625 (on September 23 and 24, 2008, Moody's and Standard & Poor's cut WaMu's debt rating to the lowest possible status, with substantial negative effect on the price of WaMu stock and bonds). The Complaint alleges that when, on September 26, 2008, the federal government seized WaMu and named the FDIC as a receiver, the market finally understood the truth about WaMu's concealed risks and, among other consequences, the price of Series K Stock fell over 90%. ¶¶626-27.

Notwithstanding the extensive series of partial corrective disclosures that extended to the end of the Class Period and beyond, the Underwriters challenge the Court's May 15 Order

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 6

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

1    sustaining § 11 claims for the October 2007 Offering and rejecting the Underwriters' negative

2    causation arguments for that Offering.  UW Mot. at 18.  The Underwriters argue that the Court

3    ignored their arguments regarding negative causation and did not address the argument that the

4    truth was entirely disclosed to the market before the October 2007 Offering.  *Id*.  A fair reading

5    of the Court's May 15 Order compels the opposite conclusion.

6           In the May 15 Order, the Court analyzed the corrective disclosures alleged in the prior

7    complaint and directly addressed the Underwriters' argument:

8           Plaintiffs allege that a series of public disclosures, beginning in October of 2007
            and continuing until July of 2008, gradually and incrementally revealed
9           previously undisclosed facts about WaMu's true financial condition. (¶¶687-753.)
            Plaintiffs further allege that the price of WaMu stock fell after each of these
10          disclosures, and that the disclosures caused the drop in price by revealing
            information previously concealed by Defendants through their misrepresentations.
11          (*Id.*) No single disclosure laid bare the full extent of WaMu's misstatements and
            omissions, and WaMu occasionally slowed the process by making new
12          misrepresentations. (*Id.*)

13          Because "the complaint on its face does not foreclose the possibility that
            defendants caused plaintiffs' losses," Defendants have not established negative
14          causation.

15   May 15 Order at *18 (internal case citations omitted); *see* ¶¶557-621.

16          By the time of the October 2007 Offering on October 25, 2007, the truth about the

17   misstatements in WaMu's financial statements had barely begun to leak out in the form of an

18   October 17, 2007 press release announcing a dramatically increased loan loss provision.  ¶557.

19   Thus, to say that the misstatements in the October 2007 Offering Documents were "well known"

20   by October 25, 2007, as the Underwriters claim (UW Mot. at 13), ignores almost a full year of

21   subsequent corrective disclosures regarding appraisal inflation, failures of underwriting

22   standards, and financial misstatements.   ¶¶561-627.   The Underwriters' arguments were

23   appropriately rejected by the Court in its May 15 Order and should not be reconsidered now.

24          **2.     The Truth About WaMu Was Not Completely Disclosed
                     Seven Months Before The End Of The Class Period**
25

26          The December 2007 Offering Documents contained numerous misstatements regarding

27   the Company's lending practices (¶¶819-21), financial results (¶¶822-26), and internal controls

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 7

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

(¶¶827-30). As discussed above, although the truth about WaMu's lending and accounting practices began to leak out in October 2007, numerous additional corrective disclosures took place following the December 2007 Offering, continuing through July 2008 until the Company's bankruptcy in September 2008. *See* ¶¶557-627.

The Underwriters repeat the arguments they made with respect to the October 2007 Offering, which the Court rejected in its May 15 Order – namely, that disclosures before the December 2007 Offering revealed the entirety of the risk investors undertook in purchasing Series R Stock. UW Mot. at 13. However, as the Court earlier observed, "[n]o single disclosure laid bare the full extent of WaMu's misstatements and omissions, and WaMu occasionally slowed the process by making new misrepresentations." May 15 Order at *18; *see also Countrywide Sec.*, 588 F. Supp. 2d at 1172 ("Where, as here, a plaintiff alleges a complex series of misrepresentations and omissions over a long period of time, it is likely that some information came to the market, but the full extent of the decline attributable to the misrepresentations and omissions were not priced into the security until later, more significant disclosures."). Although the December 2007 Offering prospectus supplement discussed, for example, the fact that ratings agencies had downgraded WaMu's credit ratings and a (self-serving) discussion of the New York Attorney General suit (UW Mot. at 16-17), the Underwriters do not argue that these items were new pieces of information and were not mere echoes of disclosures already made to investors. Moreover, the Underwriters do not claim that the prospectus supplement made a complete admission of the as-yet-undisclosed facts that trickled out over the nine months following the December 2007 Offering.

Furthermore, the Underwriters' argument that some information had been disclosed to the market before the December 2007 Offering, and thus none of the losses on the Series R Stock could be attributable to the disclosures that followed the December 2007 Offering, defies common sense. The December 2007 Offering was a new offering of securities, and all information known to the market at the time of the offering was incorporated into the initial price of the securities. The fact that the price of Series R Stock dropped in value *over fifty percent*

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 8

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1    from the time of the December 2007 Offering until the end of the Class Period (¶623) clearly

2    demonstrates that new information emerged and additional corrective disclosures occurred.

3         The Underwriters again claim that negative causation exists because an earlier action,

4    which was consolidated with the current action, did not allege claims based on the December

5    2007 Offering.  UW Mot. at 15 n. 15.  This is another attempted diversion, as it does not relate to

6    whether, at the time of the December 2007 Offering, the market was aware of the full extent of

7    the misstatements contained in the December 2007 Offering Documents.  Moreover, the

8    Complaint is now the operative pleading and supersedes all prior complaints filed in the

9    consolidated actions.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546

10   (9th Cir. 1990) ("[A]n amended pleading supersedes the original."); *DDi*, 2005 WL 3090882, at

11   *8 ("[T]he SAC has now superseded the CAC and is the operative complaint.").

12        The Underwriters' "in and out trader" argument is similarly misplaced.  UW Mot. at 18.

13   In defiance of the facts alleged in the Complaint, the Underwriters argue that there were no

14   corrective disclosures between the time that Detroit P&F purchased its shares of Series R Stock

15   and when it sold its shares on January 14, 2008.  The Underwriters argue that their (incorrect)

16   claim somehow establishes negative causation as to Detroit P&F.  First, the Underwriters are

17   factually wrong.  The Complaint clearly alleges that on December 21, 2007, the *Wall Street*

18   *Journal* announced that the SEC had launched an inquiry into the Company's mortgage lending

19   practices.  ¶586.  Further, the *Wall Street Journal* article announced that the SEC was focused on

20   whether "the company properly accounted for its loans in financial disclosures to investors of the

21   company."  *Id.*  At the same time, the Company confirmed the SEC's investigation, but again

22   denied any wrongdoing.  *Id.*  Following the disclosure of this investigation (and despite the

23   Company's attempt to mitigate the announcement), the Company's common stock price fell,

24   resulting in a one-day decline of almost 4%.  *Id.*  Notwithstanding this negative price reaction,

25   the Underwriters claim that the SEC investigation "cannot" be a corrective disclosure, because

26   the New York Attorney General's complaint had already been filed.  UW Mot. at 18 n.16.  This

27   argument ignores (1) the greater scope of the SEC's investigation, including not just appraisal

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 9

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1   inflation, but all "mortgage lending practices" *and* the accuracy of the Company's financial

2   disclosures to shareholders; (2) the heightened impact on investors of a broad federal

3   investigation into disclosures, in addition to a state investigation into appraisals; and (3) the stock

4   price reaction to the announced SEC investigation.  The extent to which the announcement of the

5   SEC investigation was a corrective disclosure is a matter for the fact finder.  *Cf. In re Gilead*

6   *Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (Loss causation pleading requirement under

7   10b-5 "is not 'a probability requirement . . . [I]t simply calls for enough facts to raise a

8   reasonable expectation that discovery will reveal evidence of' loss causation.") (quoting

9   *Twombly*, 127 S. Ct. at 1965); *Countrywide Sec.*, 588 F. Supp. 2d at 1170.

10          Second, the Underwriters' "in and out trader" argument is premature; the Court may

11   evaluate the facts concerning Detroit P&F's purchases and sales of WaMu's Series R stock at the

12   class certification stage, if necessary.  *See Makor Issues, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586,

13   601 (N.D. Ill. 2009) (certifying class and rejecting challenges to typicality of class representative

14   who was allegedly an "in and out" trader).[4]   The Underwriters' attempt to dress up a class

15   certification question for determination at the motion to dismiss stage should be denied.

16          Because "'the complaint on its face does not foreclose the possibility that defendants

17   caused plaintiffs' losses,'" the Underwriters have not carried their burden to prove negative

18   causation with regard to the December 2007 Offering.  May 15 Order at *18 (citation omitted).

### 3.     Plaintiff Seymour's Purchases Do Not Establish Negative Causation For The September 2006 Offering

19
20          The Underwriters do not claim that the truth about WaMu was publicly known at the time

21   of the September 2006 Offering; indeed, given the Court's previous decision that the truth was

22
23   not fully disclosed prior to the October 2007 Offering (over a year later), they cannot.  Instead,

24   the Underwriters argue that the timing of Plaintiff Seymour's purchases establishes negative

25   causation on the face of the Complaint because the truth about the misstatements in the

26
27   ─────────────────
    [4] As discussed herein, Detroit P&F sold its shares after a corrective disclosure and thus should be found to be a
    proper class representative at class certification.

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 10                                              Bernstein Litowitz Berger & Grossmann LLP
                                                     1285 Avenue of the Americas
                                                     New York, NY  10019
                                                     (212) 554-1400

1   September 2006 Offering Documents was purportedly known to the market by the time Seymour

2   made his purchases.  UW Mot. at 13-14.  The Underwriters are incorrect.

3           The Complaint alleges that the September 2006 Offering Documents contained a number

4   of misstatements concerning WaMu's lending practices (¶¶769-72), financial results (¶¶773-83),

5   and internal controls (¶¶784-88).  As discussed above, long after the September 2006 Offering

6   and only beginning in October 2007, WaMu announced the first in a series of disclosures that

7   slowly revealed the truth about WaMu's lending and accounting practices, causing losses to

8   purchasers of Series K Stock.  ¶¶557-627.  Thus, the Complaint alleges a link between the

9   misstatements in the Offering Documents and the Class's losses – a link that the Underwriters do

10  not attempt to break.

11          Instead, the Underwriters argue that at the time Plaintiff Seymour purchased Series K

12  Stock, all of the truth was available to the market.  However, the Complaint clearly alleges that

13  the misrepresentations and omissions in the September 2006 Offering Documents (which were

14  substantially similar to misrepresentations repeated throughout the Class Period) were "still

15  'alive' at the time of [Seymour's] purchase."  UW Mot. at 14.  Any Class member who

16  purchased Series K Stock during the Class Period, including Seymour, is alleged to have

17  purchased at an inflated price based on those misrepresentations and omissions, and at the

18  pleading stage, Defendants cannot meet their burden of proving that the subsequent declines in

19  the price of Series K Stock were not caused by those misrepresentations and omissions.

20          In any event, the Underwriters' argument is off-point.  Negative causation is not

21  determined based on an individual named plaintiff's purchases.  Rather, the Underwriters'

22  burden is to establish that the facts alleged in the Complaint "*foreclose the possibility* that

23  defendants caused" the losses suffered by Series K Stock purchasers.  *See* May 15 Order at *18.

24  Similarly, the Underwriters' argument that the price of Series K Stock rose from the time of

25  Seymour's purchase to the end of the Class Period is nothing more than a diversion.  As the

26  Complaint alleges, the price of Series K stock dropped dramatically following Seymour's

27  purchases, including dropping *95%* in value the day the federal government seized WaMu.

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 11

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

¶626. The Underwriters' argument is, at best, a matter for class certification. Even at that stage, however, courts routinely deny such challenges. *See*, *e.g.*, *Lehocky v. Tidel Tech.*, 220 F.R.D. 491, 502 (S.D. Tex. 2004) ("'Late purchasers have a special incentive to prove the case of the earlier purchasers.'") (quoting *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 608 (E.D. Mich. 1985)).

In sum, the Underwriters have not carried their burden to prove negative causation for the September 2006 Offering.

### C.  Plaintiffs Have Standing To Assert Securities Act Claims For Each Of The Offerings

#### 1.  Pompano Beach Has Standing To Represent All Investors In The August 2006 Offering

In the August 2006 Offering, WaMu issued two series of senior debt securities: the Floating Rate Notes and the 5.50% Notes. As the Underwriters must acknowledge (UW Mot. at 6 n.5), the Offering used a single prospectus supplement, incorporated the same SEC filings, and the same Underwriters sold and solicited both series of notes, without distinction between the two. Plaintiff Pompano Beach purchased WaMu's Floating Rate Notes on or traceable to the August 2006 Offering. ¶11. In distinguishing between purchasers who have standing to sue on different offerings, the Court held in its May 15 Order that a named plaintiff derives its § 11 standing from the registration statement or statements that governed his purchase of securities. May 15 Order at *14 (citing *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999)). Accordingly, Pompano Beach has standing to assert § 11 claims of all purchasers of securities in or traceable to the August 2006 Offering.

However, the Underwriters argue that although Pompano Beach is admittedly an appropriate Plaintiff to represent purchasers of Floating Rate Notes, Pompano Beach's standing to represent purchasers of the 5.50% Notes is suspect. The Underwriters claim that because the Floating Rate Notes and the 5.50% Notes (both debt securities, rather than different types of securities such as debt securities and common stock) have different maturity rates, Class members "may have different arguments on causation and damages." UW Mot. at 6 n.5. The

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 12

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

1    Underwriters do not give an example of such an argument, and, indeed, they would be unable to

2    do so; § 11 damages are strictly dictated by the statute.  Moreover, even Class members who

3    purchased the *same* security will have different damages calculations, which does not prevent

4    one Class member from representing the others.  *See*, *e.g.*, *Tsirekidze v. Syntax-Brillian Corp*.,

5    No. CV-07-02204, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009) (certifying class and noting

6    that "differences in the amount of damages, the size or manner of [stock] purchaser, the nature of

7    the purchaser, and even the specific document influencing the purchase will not render a claim

8    atypical in most securities cases") (internal citations omitted).

9        Courts commonly find standing on the part of purchasers of different types of securities

10    in the *same offering*.  For example, in *DDi*, the court rejected challenges to the lead plaintiff's

11    standing to represent purchasers of convertible notes, when the named plaintiff had purchased

12    only common stock.  2005 WL 3090882, at *6.  The court noted that the convertible notes and

13    the common stock were issued in the same offering – thus, the purchaser of the common stock

14    had standing to sue on claims deriving from misstatements in the registration documents

15    pursuant to which the offering was performed.  *See also In re MobileMedia Sec. Litig.*, 28 F.

16    Supp. 2d 901 (D.N.J. 1998) (finding standing for purchaser of different securities where

17    "[p]laintiffs have alleged an injury traceable to the Secondary Offering – the *same offering* in

18    which the Notes were issued.").  Here, where the two securities are both debt securities, rather

19    than different types – one equity, one debt – as in *DDi* and *MobileMedia*, the argument for

20    standing is even stronger.

21        In contrast, the Underwriters do not offer any precedent for the proposition that a plaintiff

22    does not have standing to represent all purchasers in the same offering.  The court in *In re*

23    *Salomon Smith Barney Mutual Funds Fee Litigation* rejected a plaintiff for lack of standing

24    where the plaintiff sought to sue sixty-eight different mutual funds against which the plaintiff

25    had no claim, for behavior that did not personally affect the plaintiff.  441 F. Supp. 2d 579,

26    605-08 (S.D.N.Y. 2006) (*cited at* UW Mot. at 6); *see also Get Outdoors II, LLC v. City of San*

27    *Diego*, 506 F.3d 886, 892-3 (9th Cir. 2007) (*cited at* UW Mot. at 6 n.5) (named plaintiff had

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 13

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

standing only to challenge municipal regulations that applied to it); *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (*cited at* UW Mot. at 6) (named plaintiff did not demonstrate any injury in fact). Here, by contrast, Pompano Beach suffered damages resulting from the same misstatements, in which the same Underwriters participated, as did all of the other investors in the August 2006 Offering.

Yet again, the Underwriters are attempting to shoehorn a class certification issue of typicality into the consideration of their motion to dismiss. The extent to which Pompano Beach is a suitable class representative will be determined by this Court at class certification. The Underwriters' reliance on *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), a leading Supreme Court decision about class certification, only emphasizes the appropriateness of waiting until class certification to address their objections.

### 2. The Amended Complaint Sufficiently Alleges Actual Reliance By Plaintiff Seymour

Plaintiff Seymour purchased WaMu's Series K Stock in an aftermarket purchase traceable to the September 2006 Offering. ¶12. It is well-settled in the Ninth Circuit that plaintiffs such as Seymour, who purchased after the issuer released a new annual earnings statement, have standing to bring suit under § 11. Indeed, "where a material fact is misstated or omitted from a registration statement accompanying a stock filing with the [SEC], 'any person acquiring such security' may bring an action for losses caused by the misstatement or omission." *Hertzberg*, 191 F.3d at 1079 (citing 15 U.S.C. 77k(a)). In *Hertzberg*, the Ninth Circuit made it clear "that purchasers in the aftermarket are intended to have a cause of action under Section [11]." 191 F.3d at 1081 (reversing dismissal of § 11 claims on basis of standing).

Standing for § 11 purposes is subject at the pleadings stage only to "the long-recognized requirement that the plaintiff must directly trace his or her security to the allegedly defective registration statement at issue in the case . . . ." *Lee v. Ernst & Young, LLP*, 294 F.3d 969, 977 (8th Cir. 2002); *see also DeMaria v. Andersen*, 318 F.3d 170, 178 (2d Cir. 2003) (same); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1280 (E.D. Wash. 2007) (plaintiff not required to prove

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 14

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

1    traceability at the pleadings stage, only required to allege traceability in the complaint).

2        In fact, § 11(a) expressly provides standing for purchasers such as Seymour, requiring a

3    "person acquir[ing] the security after the issuer has made generally available to its security

4    holders an earning statement covering a period of at least twelve months beginning after the

5    effective date of the registration statement" to allege that the acquirer relied upon the registration

6    statement and did not know of the material omitted facts.  15 U.S.C. 77k(a).  Significantly, § 11

7    expressly provides that "such reliance may be established without proof of the reading of the

8    registration statement by such person."  *Id.*  The Complaint plainly states that the Plaintiffs,

9    including Seymour, acquired the securities "relying upon the statements in the Registration

10   Statement . . . and not knowing the omitted material facts set forth above"  ¶841.

11       Defendants claim that the Complaint's allegations of reliance are insufficient with respect

12   to Seymour, arguing that the Complaint's allegations are not plausible under *Twombly*.  UW

13   Mot. at 9-10.  However, Plaintiffs' allegations are sufficient at the pleadings stage as they meet

14   the substantive statutory requirements and are "plausibly suggestive of a claim entitling the

15   plaintiff to relief."  *Moss*, 2009 WL 2052985, at *6.  Indeed, allegations of reliance are generally

16   accepted in the form pled in the Complaint.  *See*, *e.g.*, *In re AEP ERISA Litig.*, 327 F. Supp. 2d

17   812, 833 (S.D. Ohio 2004) ("Plaintiffs allege: '[t]he Plan, and the Participants acting on behalf of

18   the Plan, relied upon, and are presumed to have relied upon, Defendants' representations and

19   nondisclosures to their detriment.'  Under Rule 8, Plaintiffs have sufficiently plead reliance . . .

20   .").  The only case that the Underwriters offer in support of their argument, *In re Enron Corp.*

21   *Securities, Derivative & ERISA Litigation*, dismissed § 11 claims where the plaintiff failed to

22   plead reliance at all, which is not the case here.  *See* 258 F. Supp. 2d 576, 541 (S.D. Tex. 2003).

23       Neither *Twombly*, 127 S. Ct. 1955, nor *Iqbal*, 129 S. Ct. 1937 (applying *Twombly* outside

24   of antitrust context) has changed the conclusions reached above.  *Twombly* "requir[es] a flexible

25   'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations

26   in those contexts where such amplification is needed to render a claim plausible."  *OBG Tech.*

27   *Servs., Inc. v. Northrop Grumman Space & Mission Sys.*, 503 F. Supp. 2d 490, 502 (D. Conn.

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 15

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1  2007).  No further "amplification" is necessary to render Plaintiffs' claims of reliance plausible.

2  Two recent post-*Twombly* decisions are instructive in this respect.  In *Sterling Federal Bank v.*

3  *Credit Suisse First Boston Corp.*, No. 07-C-2922, 2008 WL 4924926 (N.D. Ill. Nov. 14, 2008),

4  and *First Bank Richmond v. Credit Suisse First Boston Corp.*, No. 07-cv-1262, 2008 WL

5  4410367 (S.D. Ind. Sept. 24, 2008), plaintiffs alleged claims under Illinois and New York law

6  for negligent misrepresentations contained in prospectuses.  These claims required allegations of

7  *reasonable* reliance on the prospectuses, a standard even higher than that required by § 11.  In

8  both decisions, applying the *Twombly* standard, the courts rejected the same argument asserted

9  by the Underwriters here, that the complaint "contain[ed] no factual allegations that would

10 demonstrate actual reliance."  *Sterling Fed. Bank*, 2008 WL 4924926, at *5.  The courts both

11 determined that allegations that plaintiffs relied on misrepresentations contained in the

12 prospectuses were sufficient, even in the absence of factual allegations that the plaintiffs received

13 and reviewed the offering documents.  *Id.*; *First Bank Richmond*, 2008 WL 4410367, at *6.

14 Because § 11 explicitly rejects any requirement of proof that Plaintiffs read the prospectus, the

15 pleading burden on Plaintiffs to allege reliance is even lower than in *Sterling Federal Bank* and

16 *First Bank Richmond*.  Plaintiffs have adequately alleged reliance on the part of Seymour.

### 3.    Detroit P&F Is Not An "In And Out" Trader And Has Standing To Represent Investors In The December 2007 Offering

17

18

19 The Underwriters make the same argument against Detroit P&F's standing that they

20 assert establishes negative causation for the December 2007 Offering – that Detroit P&F is an

21 "in and out" trader that sold before any corrective disclosure following its purchase.  UW Mot. at

22 11-12.  This argument is refuted above at pages 9-10.  Again, Defendants have simply ignored

23 the Complaint's allegations.  There was at least one significant intervening disclosure between

24 Detroit P&F's purchase of Series R Stock and its eventual sale of those shares.  Namely, on

25 December 21, 2007, the *Wall Street Journal* announced that the SEC had launched an

26 investigation of WaMu's mortgage lending practices, specifically focused on whether "the

27

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 16

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

1    company properly accounted for its loans in financial disclosures to investors of the company."

2    ¶586.[5]

3         Thus, *Solomon v. Peat Marwick, Main & Co*, cited by the Underwriters for the

4    proposition that plaintiffs do not possess standing where the complaint did not allege a corrective

5    disclosure until after the named plaintiffs sold their shares (UW Mot. at 12), is irrelevant. *See*

6    *Solomon v. Peat Marwick, Main & Co.*, No. 91-55453, 1992 WL 231098 (9th Cir. Sept. 21,

7    1992) (plaintiff sold shares in April 1988 when undisclosed facts were not alleged to have been

8    disclosed until August 1998).   The Underwriters are simply incorrect in their analysis of *In re*

9    *Comverse Technology Securities Litigation*.  UW Mot. at 12.  There, the court, in deciding a lead

10   plaintiff motion and determining which movant had the largest financial interest in the litigation,

11   discounted one movant's losses by the amount that it had lost before any alleged corrective

12   disclosure.  *See* No. 06-CV-1825, 2007 WL 680779, at *3-6 (E.D.N.Y. Mar. 2, 2007).  The court

13   did not address the movant's standing to sue at all.  *Id.* at *5 (noting "the court finds that it need

14   not decide the issue of [the movant's] standing on its motion").

### 4.  Plaintiffs Have Standing To Represent The Class For Section 12(a)(2) Claims

16         In order to allege a violation of § 12(a)(2) of the Securities Act, Plaintiffs must:  (1)

17   allege materially untrue statements in the Offering Documents and (2) "plead that Defendants

18   were sellers of the securities, and that Plaintiffs purchased the securities from Defendants."  May

19   15 Order at *19.  As discussed in Lead Plaintiff's Opposition to Deloitte & Touche LLP's

20   Motion to Dismiss, the Complaint sufficiently alleges that the Offering Documents contained

21   materially untrue and misleading statements.   The Complaint further alleges that the

22   Underwriters solicited and sold WaMu securities to members of the Class.  ¶852.

23         "Plaintiffs need not allege 'which underwriter sold securities to each plaintiff' to state a

24   claim under Section 12(a)(2)."  May 15 Order at *19 (quoting *DDi Corp.*, 2005 WL 3090882, at

25

26   [5] To the extent that the Underwriter Defendants are relying upon the fact that the allegations related to the SEC
     investigation appear in Section III of the Complaint, rather than in Section IV, this observation should be given no
27   weight.  This is particularly true where, as here, the Underwriter Defendants freely rely upon facts alleged in Section
     III in an attempt to prove "negative causation" throughout the remainder of their brief.  *See* UW Mot. at 14-15, 18.

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 17

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1    *20).  Requiring proof beyond the Complaint's allegations that Plaintiffs purchased "on the

2    offering" as Defendants again demand (UW Mot. at 11, n.13) is inappropriate at the pleading

3    stage.  The Underwriters dispute the Court's citation to *In re DDi Corp.* in the May 15 Order,

4    and claim that *Twombly* and *Iqbal* superseded the *DDi* court's analysis.  UW Mot. at 11, n.13.

5    The Underwriters ignore the fact that the Court in its May 15 Order relied upon *Twombly* as the

6    standard to evaluate Plaintiff's claims.  May 15 Order at *2.  Further, the Underwriters made this

7    precise argument in their reply papers in support of their original motion to dismiss (UW Mar.

8    30, 2009 Reply Mot. at 5, n. 5) and merely seek to relitigate issues that the Court has considered

9    and decided.  In any event, the Complaint's allegations that Detroit P&F (and Brockton, to the

10    extent that the Underwriters are again challenging its standing) purchased on the Offerings are

11    certainly sufficient, given the timing and pricing of their purchases as provided in their

12    certifications attached to the Complaint.[6]

13    **III.    CONCLUSION**

14          For the foregoing reasons, the Underwriter Defendants' motion to dismiss should be

15    denied in its entirety.  If the Court dismisses any of Lead Plaintiff's claims (and it should not),

16    Lead Plaintiff requests leave to replead.  *See* Fed. R. Civ. P. 15(a); *Eminence Capital, L.L.C. v.*

17    *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

18

19

20

21

22

23

24

25

26

27

---

[6] The allegations regarding Brockton's and Detroit P&F's purchases on their respective Offerings are distinct from the allegations regarding Pompano Beach's and Seymour's purchases, which, as discussed above, are traceable to the August 2006 and September 2006 Offerings.

LEAD PLAINTIFF'S OPPOSITION TO THE
UNDERWRITERS' MOTION TO DISMISS [UW-3]
Master No: 2:08-md-1919 MJP
Page 18

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1    Dated:  August 14, 2009                         Respectfully submitted,

2

3                                                    BERNSTEIN LITOWITZ BERGER &
                                                        GROSSMANN LLP

4                                                    By:  /s/  Chad Johnson
                                                     Chad Johnson (pro hac vice)
5                                                    Hannah Ross (pro hac vice)
                                                     Jerald Bien-Willner (pro hac vice)
6                                                    Katherine M. Sinderson (pro hac vice)
                                                     1285 Avenue of the Americas
7                                                    New York, New York  10019
                                                     Tel:    (212) 554-1400
8                                                    Fax:    (212) 554-1444
                                                     Email: chad@blbglaw.com
9                                                           hannah@blbglaw.com
                                                           jerryb@blbglaw.com
10                                                          katherine@blbglaw.com

11                                                   *Counsel for Lead Plaintiff*
                                                     *Ontario Teachers' Pension Plan Board*
12                                                   *and Lead Counsel for the Class*

13                                                   BYRNES & KELLER LLP
                                                     Bradley S. Keller, WSBA# 10665
14                                                   Jofrey M. McWilliam, WSBA# 28441
                                                     1000 Second Avenue, Suite 3800
15                                                   Seattle, Washington  98104
                                                     Tel:    (206) 622-2000
16                                                   Fax:    (206) 622-2522
                                                     Email: bkeller@byrneskeller.com
17                                                          jmcwilliam@byrneskeller.com

18                                                   *Liaison Counsel for the Class*

19

20

21

22

23

24

25

26

27

1

## CERTIFICATE OF SERVICE

2

3

        I hereby certify that on August 14, 2009, I electronically filed the foregoing with the

4

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

e-mail addresses on the Court's Electronic Mail Notice list.

5

6

7                                          BERNSTEIN LITOWITZ BERGER &
                                           GROSSMANN LLP
8
                                           By: _/s/ Chad Johnson_____
9                                          Chad Johnson (pro hac vice)
                                           Hannah Ross (pro hac vice)
10                                         Jerald Bien-Willner (pro hac vice)
                                           Katherine M. Sinderson (pro hac vice)
11                                         1285 Avenue of the Americas
                                           New York, New York  10019
12                                         Tel:    (212) 554-1400
                                           Fax:    (212) 554-1444
13                                         Email: chad@blbglaw.com
                                                   hannah@blbglaw.com
14                                                 jerryb@blbglaw.com
                                                   katherine@blbglaw.com
15
                                           *Counsel for Lead Plaintiff*
16                                         *Ontario Teachers' Pension Plan Board*
                                           *and Lead Counsel for the Class*
17
                                           BYRNES & KELLER LLP
18                                         Bradley S. Keller, WSBA# 10665
                                           Jofrey M. McWilliam, WSBA# 28441
19                                         1000 Second Avenue, Suite 3800
                                           Seattle, Washington  98104
20                                         Tel:    (206) 622-2000
                                           Fax:    (206) 622-2522
21                                         Email: bkeller@byrneskeller.com
                                                   jmcwilliam@byrneskeller.com
22
                                           *Liaison Counsel for the Class*
23

24

25

26

27

---

LEAD PLAINTIFF'S OPPOSITION TO THE                    Bernstein Litowitz Berger & Grossmann LLP
UNDERWRITERS' MOTION TO DISMISS [UW-3]                        1285 Avenue of the Americas
Master No: 2:08-md-1919 MJP                                      New York, NY  10019
                                                                   (212) 554-1400