1

2

3                                   THE HONORABLE MARSHA J. PECHMAN

4

5

6

7

8

9

10

11                      UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
12                                AT SEATTLE

13

| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE & ERISA LITIGATION | No. 2:08-md-1919 MJP |
|---|---|
| _____ | **UNDERWRITER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION | [UW-3] |
| This document relates to: ALL ACTIONS | Lead Case No. C08-387 MJP |
| | NOTE ON MOTION CALENDAR: October 9, 2009 |
| | **ORAL ARGUMENT REQUESTED** |

14

15

16

17

18

19

20

21

22

23

24

25

26

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

1

# TABLE OF CONTENTS

2

Page

3

I.    INTRODUCTION ............................................................................................... 1

4
5

II.    THE OPPOSITION FAILS TO DEMONSTRATE THAT THE NEWLY-
ADDED PLAINTIFFS HAVE STANDING TO SUE ON THE AUGUST
2006, SEPTEMBER 2006, AND DECEMBER 2007 OFFERINGS ........................... 2

6
7
8

    A.    The Opposition Concedes That No Named Plaintiff Purchased Any
Securities "In" the August 2006 Offering, and That No Named
Plaintiff Suffered Actual Injury In Connection with the Purchase of
The 5.50% Notes .................................................................................... 2

9
10
11

    B.    The Opposition Concedes That Named Plaintiff Seymour Lacks
Section 12(a)(2) Standing to Sue On The September 2006
Offering, And Fails To Allege Actual Reliance As Required By
Section 11 ............................................................................................... 4

12
13
14

    C.    The Opposition Fails To Rebut The Underwriter Defendants'
Showing That, On the Face of the Complaint, Detroit P&F Was An
"In And Out" Trader Without Standing To Sue On The December
2007 Offering ......................................................................................... 5

15
16

III.    THE OPPOSITION FAILS TO REBUT THE UNDERWRITER
DEFENDANTS' NEGATIVE CAUSATION ARGUMENTS AS TO THE
SEPTEMBER 2006, OCTOBER 2007, AND DECEMBER 2007 OFFERINGS ....... 7

17

    A.    The Current Motion Is *Not* a "Motion for Reconsideration" ............... 7

18
19

    B.    Negative Causation Is Shown On The Face Of The Amended
Complaint As To The September 2006 Offering .................................. 8

20

    C.    Negative Causation Is Shown On the Face Of The Amended
Complaint As To The December 2007 Offering ................................... 9

21
22
23

    D.    Plaintiffs Fail to Demonstrate that Any Post-Offering WaMu
Disclosures From December 15, 2007, through July 22, 2008,
Were "Corrective" .............................................................................. 11

24

IV.    CONCLUSION .............................................................................. 12

25
26

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

1

## TABLE OF AUTHORITIES

2

Page(s)

3

### Cases

4

*Amchem Products, Inc. v. Windsor,*
5
   521 U.S. 591 (1997)............................................................................4

6

*Anderson v. Clow,*
   1994 WL 525256 (S.D. Cal. June 29, 2994) ...................................11

7

*Ashcroft v. Iqbal,*
8
   129 S.Ct 1939 (2009)......................................................................2, 4, 5

9

*Bell Atlantic Corp. v. Twombly,*
10
   550 U.S. 544 (2007).........................................................................2, 4, 5

11

*Caiafa v. Sea Containers Ltd.,*
   2009 WL 1383457 (2d Cir. May 19, 2009) ......................................3

12

*Casey v. Lewis,*
13
   4 F.3d 1516 (9th Cir. 1993) ..............................................................3

14

*Congregation of Ezra Sholom v. Blockbuster, Inc.,*
15
   504 F. Supp. 2d 151 (N.D. Tex. 2007) ............................................3

16

*Doe v. GTE Corp.,*
   347 F.3d 655 (7th Cir. 2003) ............................................................9

17

*Dura Pharm., Inc. v. Broudo,*
18
   544 U.S. 336 (2005)..........................................................................7

19

*First Bank Richmond v. Credit Suisse First Boston Corp.,*
20
   2008 WL 4410367 (S.D. Ind. Sept. 24, 2008) .................................5

21

*Get Outdoors II, LLC v. City of San Diego,*
   506 F.3d 886 (9th Cir. 2007) ............................................................4

22

*Gustafson v. Alloyd, Inc.,*
23
   512 U.S. 561 (1995)........................................................................1, 3

24

*In re AEP ERISA Litig.,*
   327 F. Supp. 2d 812 (S.D. Ohio 2004) ............................................5

25

26

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

ii

1

## TABLE OF AUTHORITIES (cont.)

2

Page(s)

3

*In re Alamosa Holdings, Inc. Sec. Litig.*,
4    382 F. Supp. 2d 832 (N.D. Tex. 2005) ..................................................................9

5    *In re Compuware Sec. Litig.*,
     386 F. Supp. 2d 913 (E.D. Mich. 2005) ..............................................................6

6
     *In re Cosi, Inc. Sec. Litig.*,
7    379 F. Supp. 2d 580 (S.D.N.Y. 2005) ..................................................................3

8    *In re DDi Corp. Sec. Litig.*,
9    2005 WL 3090882 (C.D. Cal. July 21, 2005) ......................................................3

10   *In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
     2009 WL 2169197 (2d Cir. July 22, 2009) ..........................................................5

11
     *In re Hansen Natural Corp. Sec. Litig.*,
12   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..............................................................11

13   *In re Impax Labs., Inc. Sec. Litig.*,
14   2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ..............................................5, 9, 11

15   *In re Levi Strauss & Co. Sec. Litig.*,
     527 F. Supp. 2d 965 (N.D. Cal. 2007) ..................................................................3

16
     *In re Maxim Integrated Prods., Inc. Sec. Litig.*,
17   2009 WL 2136939 (N.D. Cal. July 16, 2009) ....................................................11

18   *In re MobileMedia Sec. Litig.*,
19   28 F. Supp. 2d 901 (D.N.J. 1998) ........................................................................4

20   *In re Shoretel Inc. Sec. Litig.*,
     2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ....................................................9, 11

21
     *In re Sterling Foster & Co., Inc., Sec. Litig.*,
22   222 F. Supp. 2d 216 (E.D.N.Y. 2002) ..................................................................3

23   *In re Surebeam Corp. Sec. Litig.*,
     2005 WL 5036360 (S.D. Cal. Jan. 3, 2005) ........................................................5
24
     *In re Ultrafem Inc. Sec. Litig.*,
25   91 F. Supp. 2d 678 (S.D.N.Y. 2000) ....................................................................3

26

UNDERWRITER DEFENDANTS'          GIBSON, DUNN & CRUTCHER LLP          K&L GATES LLP
REPLY IN SUPPORT OF MOTION TO    333 SOUTH GRAND AVENUE         925 FOURTH AVENUE, SUITE 2900
DISMISS PLAINTIFFS' AMENDED      LOS ANGELES, CA 90071-1512        SEATTLE, WA 98104-1158
CONSOLIDATED CLASS ACTION           Phone: (213) 229-7000            Phone: (206) 623-7580
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

iii

1

## TABLE OF AUTHORITIES (cont.)

2

Page(s)

3

*In re Valence Tech. Sec. Litig.,*
4
    1996 WL 37788 (N.D. Cal. Jan. 23, 1996) ...............................................................3

5

*In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litig.,*
    2009 WL 1393679 (W.D. Wash. May 15, 2009) ....................................................1, 7

6

*Lentell v. Merrill Lynch & Co.,*
7
    396 F.3d 161 (2d Cir. 2005) ...................................................................................10

8

*Makkor Issues & Rights, Ltd. v. Tellabs, Inc.,*
    256 F.R.D. 586 (N.D. Ill. 2009).................................................................................6

9

10

*McCalden v. California Library Ass'n,*
    955 F.2d 1214 (9th Cir. 1990) .................................................................................10

11

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
12
    540 F.3d 1049 (9th Cir. 2008) ........................................................2, 6, 7, 8, 11, 12

13

*Moss v. United States Secret Service,*
14
    2009 WL 2052985 (9th Cir. July 16, 2009) ..............................................................5

15

*Rubin v. MF Global, Ltd.,*
    2009 WL 2058590 (S.D.N.Y. July 16, 2009)............................................................9

16

*Scott v. Kuhlmann,*
17
    746 F.2d 1377 (9th Cir. 1984) ..................................................................................9

18

*Sterling Federal Bank v. Credit Suisse First Boston Corp.,*
    2008 WL 4924926 (N.D. Ill. Nov. 14, 2008) ...........................................................5

19

20

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.,*
    2009 WL 890479 (D. Ariz. Mar. 31, 2009)............................................................11

21

**Statutes**

22

15 U.S.C. § 77k(a) .......................................................................................................5

23

24

25

26

---

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

1    **I.    INTRODUCTION**

2          Having been given the opportunity to amend their complaint to cure their standing defects,

3    but having failed to do so, Plaintiffs' Opposition now admits almost all the key facts, but urges the

4    Court to defer its ruling on these threshold issues until the class certification stage.  This Court,

5    however, has already rejected Plaintiffs' argument that standing is a class certification issue, and

6    previously dismissed all claims relating to the August 2006, September 2006, and December 2007

7    Offerings precisely on standing grounds in its Order on Defendants' Motions to Dismiss dated May

8    15, 2009 (the "Dismissal Order").  *In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litig.*, 2009

9    WL 1393679, at *14 (W.D. Wash. May 15, 2009).  Plaintiffs' discussion of these issues—relegated

10   to the back of their Opposition—presents no justification for deferring the inevitable.

11         *First*, the Opposition does not dispute that Named Plaintiff Pompano Beach Police &

12   Firefighters' Retirement System ("Pompano Beach") did not purchase securities "in" the August

13   2006 Offerings.  The Underwriter Defendants showed in the Opening Brief that under the Supreme

14   Court decision in *Gustafson v. Alloyd*, secondary market purchasers simply do not have standing to

15   sue under Section 12(a)(2)—yet the Opposition *does not even mention this controlling case.*

16         *Second*, and for the same reason, the Opposition concedes that Named Plaintiff Harlan

17   Seymour ("Seymour") has no Section 12(a)(2) standing in connection with his purchase of Series K

18   securities issued in the September 2006 Offering, since he, too, was a secondary-market purchaser.

19         *Third*, Plaintiffs' Opposition does not dispute the Underwriter Defendants' showing that

20   Pompano Beach suffered no actual injury in connection with the August 2006 Offering of 5.50%

21   Notes, as required for both Section 11 and Section 12(a)(2) standing.

22         *Fourth*, the Opposition concedes that Seymour must plead "actual reliance" in connection

23   with his Section 11 claim, because his purchase came over one year after the offering and after the

24   issuance of at least twelve months of earnings by WaMu.  But the Opposition points to no *facts* that

25   satisfy the actual reliance element of his cause of action, other than a conclusory allegation of

26   "reliance" that is insufficient as a matter of law under the recent Supreme Court decisions in

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

1

1    *Twombly* and *Iqbal*.

2    *Finally*, Plaintiffs fail to overcome the argument that Named Plaintiff The Police & Fire

3    Retirement System of the City of Detroit ("Detroit P&F") lacks Section 11 standing because it was

4    an "in and out" purchaser of Series R securities, and lacks standing because it suffered no damage.

5    While Plaintiffs rely on a Wall Street Journal article to support its contention that Detroit P&F sold

6    its Series R stock after a "corrective disclosure," that argument is based on an allegation that is not

7    within the 1933 Act claim as pled, and in all events is simply meritless.

8    Beyond these standing deficiencies, the Amended Complaint also founders on negative

9    causation grounds.  In attempting to defeat the negative causation defense, Plaintiffs

10    mischaracterize this Court's prior Dismissal Order, take liberties with the allegations in their own

11    Amended Complaint, and fundamentally misread or ignore the loss causation case law applicable

12    to their claims, including the controlling Ninth Circuit decision in *Metzler v Corinthian Colleges*,

13    discussed below.  Plaintiffs' central contention that this Court already has decided these negative

14    causation arguments as a pleading matter is incorrect.  Indeed, negative causation is powerfully

15    made out on the face of the Amended Complaint as to the December 2007 Offering—an issue that

16    this Court never reached in its prior Dismissal Order, which it expressly limited to the October

17    2007 Offering given the absence of standing with respect to all of the other Offerings.  And, even

18    with respect to the October 2007 Offering, the Court did not address the arguments advanced by

19    the Underwriter Defendants in the prior motion, which are ripe for resolution now.

20    **II.    THE OPPOSITION FAILS TO DEMONSTRATE THAT THE NEWLY-
       ADDED PLAINTIFFS HAVE STANDING TO SUE ON THE AUGUST 2006,**

21    **SEPTEMBER 2006, AND DECEMBER 2007 OFFERINGS**

22    **A.    The Opposition Concedes That No Named Plaintiff Purchased
           Any Securities "In" the August 2006 Offering, and That No**

23    **Named Plaintiff Suffered Actual Injury In Connection with the
       Purchase of The 5.50% Notes**

24

25    Plaintiffs' Opposition effectively concedes that there is no Section 12(a)(2) standing on

26    their claims related to the August 2006 Offerings.  The undisputed fact that Pompano Beach

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

2

1   purchased Floating Rate Notes in a *secondary market transaction* is fatal to its Section 12(a)(2)

2   standing under *Gustafson v. Alloyd, Inc.*, 512 U.S. 561 (1995)—a case not even mentioned in the

3   Opposition—and the other cases cited in the Underwriter Defendants' Opening Brief.[1]

4          Plaintiffs' Opposition suggests that the Court's prior Dismissal Order somehow establishes

5   Pompano Beach's standing to sue.  But the Dismissal Order is unhelpful to Plaintiffs for two

6   reasons.  First, the Underwriter Defendants' prior motion to dismiss raised an entirely different

7   Section 12(a)(2) standing issue—the "purchaser-seller" rule under *Pinter v. Dahl*—*not* the "public

8   offering" limitation for standing under *Gustafson.*  Second, unlike the new Named Plaintiffs, the

9   different Named Plaintiff at issue in the Court's prior ruling, Brockton, clearly purchased "in" the

10  October 2007 Offering—literally on the day of that Offering, at the Offering price—and therefore

11  Brockton's example only underscores why Pompano Beach lacks standing to sue.  Further, the

12  Dismissal Order cited *In re DDi Corp. Sec. Litig.*, 2005 WL 3090882 (C.D. Cal. July 21, 2005), a

13  case that *dismissed* a Section 12(a)(2) claim "insofar as it is asserted on behalf of those who

14  purchased DDi common stock 'traceable to,'" rather than "pursuant to," the Prospectus.  *Id.* at *17.

15  Like the plaintiff in *DDi,* Pompano Beach only alleges that it purchased securities "traceable to"

16  the September 2006 Offering.

17         With respect to Section 11 standing to sue on the August 2006 Offerings, the Opposition

18  argues that because Pompano Beach purchased securities traceable to the same Registration

19  Statement as the 5.50% Notes, it therefore has standing to represent a class of purchasers of the

20  5.50% Notes.  However, Plaintiffs do not allege that Pompano Beach suffered any actual *injury*

21  relating to the 5.50% Notes, as required by the Ninth Circuit.  *See Casey v. Lewis*, 4 F.3d 1516,

22  1519 (9th Cir. 1993) ("At least one named plaintiff must satisfy the *actual injury* component of

23  standing in order to seek relief on behalf of himself or the class.  The inquiry is whether any named

24

25  [1]   *See Caiafa v. Sea Containers Ltd.*, 2009 WL 1383457, at *2 (2d Cir. May 19, 2009); *In re Levi Strauss & Co.
    Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D. Cal. 2007); *In re Valence Tech. Sec. Litig.*, 1996 WL 37788, at *4
    (N.D. Cal. Jan. 23, 1996); and other cases cited at pp. 7-8 of the Underwriter Defendants' Opening Brief.

26

UNDERWRITER DEFENDANTS'              GIBSON, DUNN & CRUTCHER LLP        K&L GATES LLP
REPLY IN SUPPORT OF MOTION TO        333 SOUTH GRAND AVENUE            925 FOURTH AVENUE, SUITE 2900
DISMISS PLAINTIFFS' AMENDED          LOS ANGELES, CA 90071-1512       SEATTLE, WA  98104-1158
CONSOLIDATED CLASS ACTION            Phone: (213) 229-7000            Phone: (206) 623-7580
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

3

1  plaintiff has demonstrated that he has sustained or is imminently in danger of sustaining a direct

2  injury as the result of the challenged conduct.") (emphasis added); *Get Outdoors II, LLC v. City of*

3  *San Diego*, 506 F.3d 886, 892-93 (9th Cir. 2007).[2]  Plaintiffs' Section 11 claims relating to the

4  5.50% Notes issued in the August 2006 Offering therefore must be dismissed.[3]

5

     **B.**     **The Opposition Concedes That Named Plaintiff Seymour**

6              **Lacks Section 12(a)(2) Standing to Sue On The September**
            **2006 Offering, And Fails To Allege Actual Reliance As**

7              **Required By Section 11**

8       For the same reasons discussed in Section II(A) *supra*, the Opposition offers no credible

9  rebuttal to the argument that Seymour lacks Section 12(a)(2) standing to sue on the September

10  2006 Offering.  Indeed, Seymour's standing problems are glaring—he not only did not purchase

11  "in" the September 2006 Offering, he did not even come close—he admittedly did not purchase

12  any Series K securities until almost *two years* after those securities were offered to the public.  As

13  in the case of Pompano Beach, Seymour is alleged to have purchased Series K securities not in the

14  Offering itself, but merely "traceable to the Offering," (¶ 12).  Seymour's certification further

15  admits that he did not purchase Series K securities until July 15, 2008.  Clearly, Seymour did not

16  purchase "in" the September 2006 Offering.

17       With regard to Seymour's standing under Section 11, the Opposition concedes the central

18  legal issue that Seymour must plead actual reliance because he purchased Series K securities long

19  after WaMu had made available an earnings statement covering a twelve-month period following

20

---

21  [2]  *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901 (D.N.J. 1998), upon which Plaintiffs rely (Opp. at 13),
22  actually supports defendants:  there, the court held that plaintiffs had established standing because they
"sufficiently alleged individual cognizable injuries" in connection with the purchase of securities.  *Id.* at 911
23  n.7.  Plaintiffs have failed in this case to allege *any* "individual cognizable injuries" in connection with the
5.50% Notes.

24  [3]  Plaintiffs argue that *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997) (requiring separate class
representatives to represent different forms of injured class members), "emphasizes the appropriateness of
25  waiting until class certification to address" Plaintiffs' standing to sue on the 5.50% Notes (Opp. at 14).
However, *Amchem* was decided before *Twombly* and *Iqbal*, which require that standing be plead with more
than "mere conclusory statements" to survive dismissal.  129 S. Ct. at 1949; 550 U.S. at 570.

26

---

**UNDERWRITER DEFENDANTS'**       GIBSON, DUNN & CRUTCHER LLP       K&L GATES LLP
**REPLY IN SUPPORT OF MOTION TO**     333 SOUTH GRAND AVENUE     925 FOURTH AVENUE, SUITE 2900
**DISMISS PLAINTIFFS' AMENDED**     LOS ANGELES, CA 90071-1512     SEATTLE, WA  98104-1158
**CONSOLIDATED CLASS ACTION**     Phone: (213) 229-7000     Phone: (206) 623-7580
**COMPLAINT [UW-3]**
(No. 2:08-1919 MJP)

4

1    the effective date of the Registration Statement, and thus he must plead actual reliance.[4]  The

2    Opposition then pays lip service, however, to this pleading requirement, relying exclusively on the

3    boilerplate allegation of "reliance" in ¶841.  ("Plaintiffs acquired these securities relying upon the

4    statements in the Registration Statement (as updated by the Offering Documents) shown above to

5    be untrue and/or relying upon Registration Statements (as updated by the Offering Documents) and

6    not knowing the omitted material facts set forth above.").[5]  Plaintiffs offer no authority that such a

7    bald "say so" suffices, and the Underwriter Defendants made clear in their Opening Brief, the

8    pleading of a *legal conclusion* is not enough under the Supreme Court decisions in *Twombly* and

9    *Iqbal.*  129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by

10   mere conclusory statements, do not suffice.").

   **C.    The Opposition Fails To Rebut The Underwriter Defendants'
          Showing That Detroit P&F Was An "In And Out" Trader
          Without Standing To Sue On The December 2007 Offering**

13         The Opposition argues that the issue of whether Detroit P&F has standing to sue under the

14   1933 Act should be deferred until class certification, but fails to refute the case law holding that "in

15   and out traders" lack standing to sue. The Opposition merely seeks to delay the inevitable.[6]

---

17   [4]   15 U.S.C. § 77k(a).  *See generally In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at *15 (S.D. Cal. Jan.
        3, 2005).

18   [5]   The cases cited in Plaintiffs' Opposition are inapposite.  In *Sterling Fed. Bank* (Opp. at 16), the complaint
        alleged reliance in connection with a specific security, which Plaintiffs have failed to do here.  2008 WL
19      4924926, at *5 (reliance sufficiently pled where "multiple instances within the Second Amended Complaint in
        which Plaintiff states that it 'reasonably and justifiably relied on misrepresentations made by [the
20      Defendants]'").  In *First Bank Richmond* (Opp. at 16), the court merely held that the failure to allege that
        plaintiff "actually read and reviewed the Prospectus and Prospectus Supplement" was not dispositive.  2008
21      WL 4410367, at *6.  *In re AEP ERISA Litig.* (Opp. at 15) is distinguishable because it is an ERISA case that
        does not address pleading of reliance under Section 11, and in any event was decided before the pleading
22      standard under Rule 8 was heightened by *Twombly* and *Iqbal*.  327 F. Supp. 2d at 833.  *Moss* (Opp. at 15),
        merely restates the pleading standard under *Iqbal* and in fact grants the defendants' motion to dismiss.  2009
23      WL 2052985, at *8.

24   [6]   *See, e.g., In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943, at *7 (N.D. Cal. Apr. 17, 2008) (granting
        motion to dismiss because named plaintiff sold all of its shares prior to the corrective disclosure); *see also In re*
25      *Flag Telecom Holdings, Ltd. Sec. Litig.*, 2009 WL 2169197, at *10 (2d Cir. July 22, 2009) (barring in-and-out
        trader from serving as class representative ); *In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 920 (E.D.
26      Mich. 2005) (case dismissed because plaintiff "traded out of Defendant's stock long before the alleged inflated
                                                                    [Footnote continued on next page]

| UNDERWRITER DEFENDANTS' | GIBSON, DUNN & CRUTCHER LLP | K&L GATES LLP |
| REPLY IN SUPPORT OF MOTION TO | 333 SOUTH GRAND AVENUE | 925 FOURTH AVENUE, SUITE 2900 |
| DISMISS PLAINTIFFS' AMENDED | LOS ANGELES, CA 90071-1512 | SEATTLE, WA  98104-1158 |
| CONSOLIDATED CLASS ACTION | Phone: (213) 229-7000 | Phone: (206) 623-7580 |
| COMPLAINT [UW-3] | | |
| (No. 2:08-md-1919 MJP) | | |

5

1    Plaintiffs also attempt to inject a "fact issue" into whether Detroit P&F was an "in-and-out"

2    trader by trying to import into their 1933 Act claims allegations that are conspicuously *not pled* in

3    those Counts—suggesting that the allegation in ¶ 586 of the Amended Complaint identifying a

4    December 21, 2007 Wall Street Journal article about an SEC inquiry into WaMu appraisal

5    practices was a "corrective" disclosure.  (¶ 586).  While Plaintiffs admit that this allegation is *not*

6    *pled* in their 1933 Act claims (Opp. at 17 n.5), they argue that they should be given leave to rely on

7    allegations from the rest of their 1934 Act claims in order to cure the pleading defects in their 1933

8    Act claims.  The Court should reject this transparent effort to re-write the Amended Complaint.

9    In all events, the Wall Street Journal article, entitled "*SEC Probes WaMu on Appraisals,*"

10   does *not* indicate that the SEC had launched an inquiry that was broader than WaMu's loan

11   appraisal practices.  WaMu appraisal issues were already well known to the market by virtue of the

12   very public lawsuit filed by the New York Attorney General in November 2007.[7]  The Court also

13   can take judicial notice of the fact that the disclosure in the Wall Street Journal article *caused no*

14   *loss to Detroit P&F,* because the prices of Series R securities—the only securities that Detroit P&F

15   purchased—did not decline after the Wall Street Journal article was published, they *went up.*[8]

16   Finally, and most important, the alleged "fact dispute" over the Wall Street Journal article

17   assumes that the announcement of a regulatory investigation is sufficient under *Dura Pharm., Inc.*

18   *v. Broudo*, 544 U.S. 336, 342-43 (2005), to establish loss causation.  But that is contrary to the

19

20   [Footnote continued from previous page]
     price began to leak out of Defendant's stock price").  Plaintiffs cannot properly rely on *Makkor Issues & Rights,*
21   *Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 596-97 (N.D. Ill. 2009), which merely held that  "in-and-out" traders "who
     suffered damage as a result of their purchase of Tellabs stock during the Class Period" had standing.

22   [7]  *See* Supplemental Declaration of Paul J. Lawrence, dated August 25, 2009 ("Supp. Lawrence Decl."), Ex. A.
     This Court may take judicial notice of this article, which is expressly referred to in the Amended Complaint.

23   [8]  *See* Supp. Lawrence Decl., Ex. B.  This Court may take judicial notice of the public trading prices of the Series
24   R securities, particularly since the Amended Complaint elsewhere makes reference to the trading prices of
     Series R securities.  (¶¶ 622, 623).  The very slight drop in the price of Series R securities in subsequent days
25   also makes this case analogous to *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir.
     2008), in which the Ninth Circuit found a lack of loss causation where there was a  "modest 10% drop"
     following the announcement of a regulatory investigation.  *Id.* at 1064.

26

UNDERWRITER DEFENDANTS'          GIBSON, DUNN & CRUTCHER LLP          K&L GATES LLP
REPLY IN SUPPORT OF MOTION TO    333 SOUTH GRAND AVENUE              925 FOURTH AVENUE, SUITE 2900
DISMISS PLAINTIFFS' AMENDED      LOS ANGELES, CA 90071-1512         SEATTLE, WA  98104-1158
CONSOLIDATED CLASS ACTION        Phone: (213) 229-7000              Phone: (206) 623-7580
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

6

1  Ninth Circuit's decision in *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064

2  (9th Cir. 2008) (announcement of investigation held insufficient to establish loss causation).

3  **III.    THE OPPOSITION FAILS TO REBUT THE UNDERWRITER**
        **DEFENDANTS' NEGATIVE CAUSATION ARGUMENTS**

4

5        **A.    The Current Motion Is *Not* a "Motion for Reconsideration"**

6        The Opposition seeks to deflect the substance of the Underwriter Defendants' negative

7  causation argument by contending that this issue already was decided in the Court's prior Dismissal

8  Order.  The Opposition studiously avoids citation to that part of the Dismissal Order that stated that

9  "[a]t present, the Court is limited to a review on the merits of the only offering for which Plaintiffs

10  have standing, the October 2007 Offering."  2009 WL 1393679, at *14.  The Dismissal Order

11  explicitly did *not* rule on negative causation on the September 2006 or December 2007 Offerings.

12        Similarly, although the Opposition pejoratively describes the Underwriter Defendants'

13  arguments as to the October 2007 Offering as a "motion for reconsideration," the Opening Brief

14  made clear why the Court's prior ruling does not appear to have addressed the arguments that were

15  actually advanced by the Underwriter Defendants.  As we pointed out, in the prior motion the

16  Underwriter Defendants did *not* "argue that loss causation does not exist because the recent

17  downturn in the housing market, *not any disclosure regarding WaMu's financial health*, caused

18  WaMu's stock price to plummet."  2009 WL 1393679, at *18 (emphasis added).  The Underwriter

19  Defendants argued precisely the *opposite*—namely, that *specific disclosures regarding WaMu's*

20  *financial health*—under Plaintiffs' theory of the case—*did* cause loss, and that those disclosures

21  occurred *before* the October and December 2007 Offerings.  As Underwriter Defendants showed in

22  the Opening Brief, the case law makes clear that if, as Plaintiffs contend, there were *material*

23  *concealed risks* due to WaMu's alleged improper appraisal practices and deviation from

24  underwriting standards, *those risks had materialized by the time of the October and December*

25  *2007 Offerings*—and most certainly by the time of the December 2007 Offering.

26        Finally, the negative causation issue relating to the September 2006 Offering is a new issue

---

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

1    created by the addition of Plaintiff Seymour for the first time in the Amended Complaint. Seymour

2    purports to assert claims long after all the "corrective" disclosures had been made. Far from a

3    "motion for reconsideration," the negative causation issues on this motion are newly-created by the

4    addition of a seriously flawed named plaintiff. We address that issue first.

**B.    Negative Causation Is Shown On The Face Of The Amended Complaint As To The September 2006 Offering**

7    The Opposition does not dispute that Seymour purchased his Series K Preferred Stock on

8    July 15, 2008, after a long series of adverse disclosures by WaMu, and a significant plunge in

9    the prices of Series K securities (¶¶ 622, 623). The Opposition utterly fails to show that

10   Seymour lost any money as a result of alleged misrepresentations and omissions in the Series K

11   Offering Documents that were still "alive" at the time of his purchase.[9] Plaintiffs must plead

12   "that the practices that the plaintiff contends are fraudulent were revealed to the market and

13   caused the resulting losses." *Metzler*, 540 F.3d at 1063. But the Opposition fails to point to any

14   revelations of fraud subsequent to Seymour's July 15, 2008, purchase.[10] The disclosure that

15   ends the class period a few days later revealed nothing "corrective" about alleged misstatements

16   in the September 2006 Registration Statement. Under *Metzler*, Plaintiffs must show more than

17   an announcement of negative news—the announcement must reveal the existence of a material

18   misstatement in the Offering Documents, which the end-of-class-period disclosures failed to do.

19   In tacit acknowledgement of the weaknesses of their position, Plaintiffs argue that

20   negative causation cannot be determined based on an individual plaintiff's purchases. Opp. at

21   11. But that assertion flies in the face of a number of recent decisions rejecting plaintiffs who,

---

[9]  Plaintiffs admit that the price of the Series K stock *rose* after Plaintiff's purchase (¶ 623) (noting that the Series K securities price was "$7.53 per share on July 23, 2008").

[10] Plaintiffs inexplicably point to the fact that the stock dropped several months later, upon the September 26, 2008 receivership—an event that has nothing to do with this case and is well outside the class period. At the oral argument on the prior motions to dismiss, Plaintiffs' counsel submitted to the Court a "Loss Causation Timeline" that nowhere even mentioned this post-class period event.

UNDERWRITER DEFENDANTS'                GIBSON, DUNN & CRUTCHER LLP          K&L GATES LLP
REPLY IN SUPPORT OF MOTION TO          333 SOUTH GRAND AVENUE              925 FOURTH AVENUE, SUITE 2900
DISMISS PLAINTIFFS' AMENDED            LOS ANGELES, CA 90071-1512          SEATTLE, WA  98104-1158
CONSOLIDATED CLASS ACTION              Phone: (213) 229-7000               Phone: (206) 623-7580
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

like Seymour, cannot establish loss causation. *See, e.g.*, *In re Shoretel Inc. Sec. Litig.*, 2009 WL 248326, at *5-6 (N.D. Cal. Feb. 2, 2009) (granting motion to dismiss where negative causation evident from named plaintiff's allegations); *Impax Labs*, 2008 WL 1766943, at *7 (granting motion to dismiss on loss causation grounds based on named plaintiff's trading history).

Finally, Plaintiffs resort to the argument that the Underwriter Defendants' negative causation defense should simply be deferred until class certification, when courts "routinely deny such challenges." Opp. at 12. But the Opening Brief cited decisions dismissing claims *at the pleading stage* when it was shown that a purchaser's losses cannot have been caused by statements in the offering documents. *See, e.g.*, *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 865-66 (N.D. Tex. 2005). Plaintiffs do not dispute this line of cases. Opp. at 4.[11]

In short, because there is no facially plausible relationship between the misstatements alleged in the September 2006 Offering Documents and Seymour's alleged losses several years later, his claims relating to the September 2006 Offering must be dismissed.

**C.    Negative Causation Is Shown On the Face Of The Amended Complaint As To The December 2007 Offering**

In attempting to refute the Underwriter Defendants' argument that negative causation is shown on the face of the Amended Complaint as to the December 2007 Offering, Plaintiffs cite no cases, ignore the facts, and mischaracterize the Underwriter Defendants' arguments.[12]

***Negative Causation as to the Entire Class.*** The Opposition clearly misstates the law when

---

[11] Since the Opening Brief was filed, additional authority confirms this Court's power to decide this issue at the pleading stage, and to not await class certification. *See Rubin v. MF Global, Ltd.*, 2009 WL 2058590, at *8 (S.D.N.Y. July 16, 2009) (granting motion to dismiss where evident on face of complaint that losses were caused by disclosures unrelated to alleged misrepresentations).

[12] Courts routinely grant motions to dismiss where the affirmative defense of loss causation is apparent on the face of the complaint. In citing *Doe v. GTE* (Opp. at 5) for the proposition that "litigants need not try to plead around defenses," Plaintiffs misstate Ninth Circuit law. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact.") (internal citation omitted); *see also McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) ("For a complaint to be dismissed because the allegations give rise to an affirmative defense the defense clearly must appear on the face of the pleading.").

---

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

9

it contends that to establish the defense of negative causation, the prospectus supplement for the December 2007 Offering must have made a "complete admission of the as-yet-undisclosed facts that trickled out over the nine months following the December 2007 Offering." Opp. at 8. That contention is contrary to the cases holding that loss causation is established where, as here, the complaint demonstrates the *materialization of a concealed risk. See, e.g.*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (holding that to sufficiently plead loss causation, plaintiff must allege that the loss was "caused by the materialization of the concealed risk").

Second, Plaintiffs' own allegations concede that by the time of the December 2007 Offering, *the materialization of the risk of material credit losses and write-downs due to allegedly improper underwriting practices, had become public knowledge,* and that the entire point of the Offering was to try to stabilize a teetering company. (¶ 575-585) Indeed, the Amended Complaint specifically calls WaMu's disclosures on November 7, 2007, and the reactions of Wall Street analysts thereto, as *evidence of "the materialization of the Company's undisclosed and improper lending practices."* (¶ 571). Among the disclosures the Opposition concedes occurred prior to the December 2007 Offering were the announcements in October and November 2007 of huge new losses and major increases to the company's loan loss reserves (Opp. at 7-8), the "bombshell" disclosure of the NYAG lawsuit in November 2007 (¶ 814), and the announcement of the total restructuring of WaMu's business to try to address its sudden liquidity crisis caused by these loan losses. Plaintiffs concede that WaMu's disclosures of these adverse facts in the December 2007 Prospectus Supplement were not "new"; rather, Plaintiffs admit that they were "echoes of disclosures already made" prior to the December 2007 Offering. Opp. at 8.

The market so plainly recognized that the allegedly concealed risks had materialized that *investors already had filed the first securities class action lawsuits by the time of the December 2007 Offering.* Plaintiffs attempt to trivialize these prior lawsuits by calling them a "distraction," and that those complaints have been "superseded." But it is a judicially noticeable *admission* that

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

10

by November 2007, when the first class suits were filed, investors had concluded that WaMu had engaged in securities fraud, dating back to at least March 2006, and that WaMu had concealed risks associated with its alleged acts of appraisal fraud, and that they therefore were suing to recover their losses. *See Anderson v. Clow*, 1994 WL 525256, at *11 n.16 (S.D. Cal. June 29, 2994) ("Plaintiffs' allegations in their prior pleading are admissible against them as admissions.").

       ***Negative Causation as to Detroit P&F.***  Negative causation also is apparent on the face of the complaint as to Detroit P&F, an "in and out" trader that sold its entire position prior to the any alleged corrective disclosure.  Courts have dismissed claims of "in and out" traders in similar circumstances.  *Impax Labs.*, 2008 WL 1766943, at *7.[13]  Despite these precedents, Plaintiffs argue that whether a disclosure is "corrective" is a matter for the fact-finder.  Opp. at 10.  But that is contrary to the law in this Circuit.  See *Metzler*, 540 F.3d at 1064 (finding a that disclosure of regulatory investigation was not "corrective" as matter of law and granting motion to dismiss).[14]

> ### D.    Plaintiffs Fail to Demonstrate that Any Post-Offering WaMu Disclosures From December 15, 2007, through July 22, 2008, Were "Corrective"

       The linchpin of the Opposition's argument that negative causation cannot be made out on the face of the complaint is the baseless assertion that "corrective" information continued to "leak" into the market throughout the rest of the class period.  Without elaboration, the Opposition points to a "block" of allegations in the Amended Complaint as the supposed evidence of this, contending

---

[13] As discussed in Section II(C) *supra*, in an effort to create a fact dispute over whether Detroit P&F was an "in and out trader," Plaintiffs purport to rely upon a December 21, 2007 Wall Street Journal article reporting that the SEC was investigating WaMu's appraisal practices. (¶ 586).  But the article did not disclose anything "corrective."  Moreover, the price of the Series R shares did not decline as a result of the article—the price went *up* the next day.  *See* Supp. Lawrence Decl., Ex. B.

[14] Besides *Meltzer*, trial courts within the Ninth Circuit recently have found as a matter of law that disclosures of a regulatory inquiry are not corrective. *See, e.g.*, *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 2009 WL 2136939, at *6 (N.D. Cal. July 16, 2009) ("[D]isclosures regarding compliance with an SEC investigation, . . . are not corrective disclosures for which Plaintiffs can plead loss causation."); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 2009 WL 890479, at *56 (D. Ariz. Mar. 31, 2009) ("the fact that a public company is subject to a 'regulatory investigation[,]' . . . does not amount to a corrective disclosure").

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
Phone: (206) 623-7580

11

1  that "numerous additional corrective disclosures took place—through July 2008." Opp. at 8 (citing

2  ¶¶ 557-627). However, this attempt to incorporate by reference literally scores of paragraphs of the

3  Amended Complaint to establish loss causation must fail, for several reasons. First, *none of these*

4  *allegations is included in the 1933 Act claims as pled.* Second, most of the alleged "corrective"

5  disclosures are nothing of the kind—they are third party analyst and press reports, that do nothing

6  more than report on the Company's new disclosures, or provide analyst opinions and forecasts, and

7  themselves do not report anything "corrective." Third, the new disclosures made by WaMu that

8  are included in this "block" of allegations are few in number, and short on anything "corrective."

9  As a matter of law, the mere fact that WaMu reported *new* financial information, or news of

10  executive departures or restructuring efforts, is not a "corrective" disclosure. *Metzler*, 540 F.3d at

11  1063. Plaintiffs' counsel conceded as much when it submitted its "Loss Causation Timeline" at

12  oral argument before this Court in November 2008—and *did not include* most of the disclosures it

13  now contends are "corrective." Plaintiffs' argument, if accepted by this Court, would lead to the

14  absurd result that even after pervasive, adverse Company disclosures, loss causation is never fully

15  established until the last cent of stock price has been wrung out of the Company by the

16  marketplace. That is not the law, and in the absence of the pleading of *corrective* disclosure, the

17  Ninth Circuit instructs that these claims must be dismissed. *Meltzer v Corinthian Colleges,*

18  *supra.*[15]

19  **IV.    CONCLUSION**

20        For all the reasons stated herein, the Underwriter Defendants respectfully request that the

21  Court dismiss the Section 11 and 12(a)(2) claims in the Amended Complaint.

22  //

23  //

24

25  [15]  A summary of WaMu's alleged "corrective" disclosures made after the offerings, and why they must fail, is set
      forth in Appendix A to this Reply Brief.

26

**UNDERWRITER DEFENDANTS'**
**REPLY IN SUPPORT OF MOTION TO**
**DISMISS PLAINTIFFS' AMENDED**
**CONSOLIDATED CLASS ACTION**
**COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

12

DATED:  August 25, 2009

GIBSON, DUNN & CRUTCHER LLP

Dean J. Kitchens
(*dkitchens@gibsondunn.com*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Phone: (213) 229-7000

Jonathan C. Dickey
(*jdickey@gibsondunn.com*)
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-2400

Admitted *pro hac vice*

K & L GATES LLP

By:  */s/ Paul J. Lawrence*
      Paul J. Lawrence (WSBA No. 13557)
      *paul.lawrence@klgates.com*

925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Phone:  (206) 623-7580

Attorneys for the Underwriter Defendants

UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

13

1

<u>CERTIFICATE OF SERVICE</u>

2

3

I hereby certify that on the 25th day of August 2009, I electronically filed the foregoing

with the Clerk of the Court using CM/ECF system which will send notification of such filing

4

to all counsel of record.

5

6

By: _/s/ Paul J. Lawrence_____
Paul J. Lawrence (WSBA No. 13557)

7

K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Phone:  (206) 623-7580

8

9

_paul.lawrence@klgates.com_

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNDERWRITER DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT [UW-3]**
(No. 2:08-md-1919 MJP)

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071-1512
Phone: (213) 229-7000

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
Phone: (206) 623-7580

14

**APPENDIX A**

**SUMMARY OF POST-OFFERING ALLEGED "CURATIVE" DISCLOSURES**

**(AMENDED COMPLAINT, PARAGRAPHS 586-627)**

| AMENDED COMPLAINT CITE | DATE | DISCLOSURE TYPE | TOPIC | ON ORIGINAL "TIMELINE"? | REASONS NOT "CORRECTIVE" |
|---|---|---|---|---|---|
| ¶ 586 | 12/21/07 | Wall Street Journal press article, with quotes attributed to WaMu spokespersons | SEC inquiry into WaMu appraisal practices, in light of accusations in NY Attorney General lawsuit | yes | Substance of SEC inquiry into appraisal practices was not new—the New York Attorney General already had filed a well-publicized lawsuit challenging WaMu's appraisal practices—which the complaint described as a "bombshell" disclosure on November 1, 2007. The WaMu statements quoted in Press Release (Supp. Lawrence Decl., Ex. __) contain no corrective statements, and do not admit that any appraisals were false or fraudulent. No disclosure in the Wall Street Journal article shows that any statements in the Registration Statements were false. The article's speculation about possible accounting issues is not attributed to WaMu, the SEC, or any other identified source, and amounts to press speculation. |
| ¶¶ 589-90 | 1/17/08 | WaMu press release & conf. call | 2007 year-end earnings | **no** | Announcement of fourth quarter and year-end results did not reveal any "corrective" facts. Press release repeated information already disclosed by WaMu re cut in dividend, and loan loss provision for the fourth quarter was within range of $1.5 to $1.6 million. |
| ¶ 593 | 1/29/08 | WaMu Form 10-K | 2007 annual report | **no** | The annual report simply repeated financial information disclosed in January 17 earnings release—this allegation admits that the "2007 Form 10-K repeated the financial results set forth in the Company's January 17 press release." |

| AMENDED COMPLAINT CITE | DATE | DISCLOSURE TYPE | TOPIC | ON ORIGINAL "TIMELINE"? | REASONS NOT "CORRECTIVE" |
|---|---|---|---|---|---|
| ¶ 603 | 4/08/08 | WaMu press release | Q1 2008 earnings | yes | Earnings release announced first quarter financial results, but nothing that was "corrective" of prior statements.  Announcement of new loan loss provision was not "corrective." Announcement that WaMu as closing offices and eliminating jobs was "new news," not corrective. Announcement of new direct sale of equity securities to TPG was not corrective. The alleged "massive dilution" caused by TPG deal in 2008 was not corrective of any misstatements in the Registration Statements in 2006 and 2007. |
| ¶ 608 | 4/29/08 | WaMu press release | Cathcart resignation | no | Disclosure that Cathcart had left the company was not corrective. No allegation that his departure was due to fraud or misconduct. |
| ¶ 609 | 5/12/08 | WaMu Form 10-Q | Q1 2008 earnings | no | Form 10-Q for first quarter of 2008 merely repeated financial information disclosed in Q1 2008 earnings release issued on April 8. No "corrective" disclosure was made in the Form 10-Q. |
| ¶ 610 | 6/2/08 | WaMu press release | Killinger steps down as Chairman of the Board, but continues as a director | no | Announcement of Killinger's replacement by Stephen Frank is not "corrective" disclosure. The Company made no statements indicating that Killinger engagement in any fraud or misconduct. |
| ¶ 616 | 7/14/08 | WaMu press release | WaMu sufficiently capitalized and had excess liquidity | no | WaMu's press release describing its capitalization and liquidity as of July 14, 2008 was not "corrective" of any prior false or misleading statements in the Registration Statements. |

2

| AMENDED COMPLAINT CITE | DATE | DISCLOSURE TYPE | TOPIC | ON ORIGINAL "TIMELINE"? | REASONS NOT "CORRECTIVE" |
|---|---|---|---|---|---|
| ¶¶ 617-19 | 7/22/08 | WaMu press release & conf. call | Q2 2008 earnings | yes | The Company's second quarter results were not "corrective" of any alleged false or misleading statements in the Registration Statements. Newly announced loan losses, and loss reserves, was "new news." New loan loss reserves were based on "significant changes in key assumptions" used to estimate incurred losses, but such change is not indicative that prior assumptions were false or fraudulent. Increases in losses during 2008 are not "corrective" facts. |