1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation | Case No. 2:08-md-1919 MJP |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>    C09-664 MJP<br>    C09-816 MJP | ORDER GRANTING THE DIRECTOR DEFENDANTS' AND DELOITTE & TOUCHE LLP'S MOTIONS TO DISMISS |

This matter comes before the Court on the Director Defendants'[1] and Deloitte & Touche LLP's ("Deloitte") motions to dismiss Plaintiffs' California state law claims against them.  (Dkt. Nos. 447, 448.)  Having reviewed the motions, Plaintiffs' responses (Dkt. Nos. 482, 483), the replies (Dkt. Nos. 494, 496), and all papers submitted in support thereof, and having heard oral argument on April 21, 2010, the Court GRANTS both motions to dismiss. The Court has reviewed Deloitte's request for judicial notice, and GRANTS the request.

\\

\\

---

[1] The Director Defendants are Stephen Frank, Thomas Leppert, Phillip Matthews, Michael Murphy, William Reed, Jr., and Orin C. Smith.  (Consolidated Amended Complaint ¶¶ 28-33.)

**Background**

A.        Allegations[2]

Plaintiffs Lou Solton, Monterey County Treasurer, and the City of San Buenaventura allege three causes of action against the Director Defendants and Deloitte, among others. Plaintiffs allege the Director Defendants and Deloitte made both fraudulent and negligent misrepresentations in three Annual Reports (Forms 10-K) filed with the Securities and Exchange Commission ("SEC") and violated the California Corporations Code.  These allegations largely mirror those asserted in the Securities Class Action complaint filed in the ongoing MDL action (No. 08-md-1919, No. 08-387 (lead case)).

Relevant to the pending motions, Plaintiffs allege Washington Mutual ("WaMu" or the "Company"), including the Director Defendants and WaMu's "long-time auditor" Deloitte, deceived Plaintiffs as to the level of risk assumed by the Company and its abandonment of "recognized underwriting standards used to evaluate both 'prime' mortgages and 'subprime' loans."  (Consolidated Amended Complaint ("Complaint") ¶ 3.)  WaMu "secretly minimized the effectiveness of WaMu's risk management group by relegating the group to a 'customer service' role and adopting policies designed to encourage loan volume over credit risk management."  (Id. ¶ 5.)  At the same time, WaMu pressured appraisers to inflate appraisals values, which permitted WaMu to originate loans with artificially low loan-to-value ("LTV") ratios.  (Id. ¶ 6.)  WaMu also failed to maintain, report, and periodically adjust its Allowance of Loan and Lease Losses in accord with generally accepted accounting principles ("GAAP")."  (Id. ¶ 8.)  For example, WaMu's Loan Performance Risk Model ("LPRM"), which was used to calculate the Allowance, "failed to take into account important credit risks. . . ."  (Id.)  As a result, WaMu "misstated its financial results by under-

_____

[2] The following allegations are taken from the Consolidated Amended Complaint and are accepted as true solely for the purpose of deciding the pending motions.  Nothing should be construed as acceptance of these allegations as proven fact.

1   provisioning the Allowance and reporting artificially inflated net income in each quarter

2   during 2005-2007." (Id.)

3        The Director Defendants were integral to the function of the Company and signed

4   WaMu's Annual Reports. (Compl. ¶ 338.) Each of the Director Defendants served on

5   WaMu's Audit Committee and all but Defendant Leppert served on the Finance Committee.

6   (Id. ¶¶ 28-33.) WaMu's Forms 10-K for 2006 and 2007 state "the Board of Directors,

7   assisted by the Audit and Finance Committees on certain delegated matters, oversees the

8   Company' monitoring and controlling of significant risk exposures, including the Company's

9   policies governing risk management." (Id. ¶ 339.) WaMu's 2006 10-K stated that the

10  Finance Committee "approved a set of credit risk concentration limits . . . that better enables

11  credit risk management to proactively manage credit risk." (Id. ¶ 275.) On April 3, 2008,

12  WaMu filed a Schedule 14A with the SEC stating that "our entire board are and have been

13  actively engaged in formulating and overseeing management's implementation of risk

14  management policies." (Id. ¶ 344.) Plaintiffs also detail the role and duties of these

15  committees in overseeing risk and financial reporting at the Company. (Id. ¶¶ 339-43.)

16       Deloitte served as WaMu's auditor during the relevant time period, and issued "clean"

17  audit opinions in WaMu's Annual Reports for 2005-2007 that "misrepresented the true

18  financial condition of WaMu" and Deloitte's "compliance with professional standards of

19  care." (Compl. ¶¶ 326, 315.) The audit opinions were not filed in compliance with generally

20  accepted accounting standards ("GAAS"), despite the fact Deloitte was "intimately familiar

21  with WaMu's business model, its employees, its products, and its increasing exposure by

22  virtue of its loan practices." (Id. ¶¶ 326, 314.) Deloitte reviewed WaMu's internal controls,

23  reviewed its risk exposure, real estate loan valuations, and loan practices, audited large

24  transactions, and participated in drafting and reviewing WaMu's quarterly press releases.

25  (Id.) Deloitte also "reviewed drafts of WaMu's filings with the SEC prior to filing" and

    "attended and made presentations at Board of Director meetings, where it discussed the

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS - 3

1    results of its examination of WaMu's financial statements." (Id. ¶ 314.)  "Deloitte knew or

2    recklessly disregarded the true financial condition and exposure of WaMu, the value of

3    WaMu's loan 'assets,' the true credit risks, and WaMu's deteriorating financial condition,

4    which contradicted the unqualified audit reports on WaMu's financial statements meant to be

5    distributed to the market."  (Id. ¶ 327.)

6    B.    Judicial Notice

7          Deloitte asks the Court to take judicial notice of several documents the Court

8    previously noticed in deciding motions to dismiss in the MDL.  (See Dkt. No. 450 (citing

9    Exhibits 1-5, 7, 9 to the Lutz Declaration).)  The Court takes notice of these documents.

10   Deloitte also requests judicial notice of three documents that contain auditing standards not

11   previously noticed by the Court.  (Lutz Decl. Exs. 6, 8, 10.)  Plaintiffs do not oppose the

12   request, and the Court takes notice of these documents.  Deloitte also requests the Court take

13   notice of two SEC filings that have not previously been noticed.  (Lutz Decl. Exs. 11-12.)

14   Plaintiffs refer to them in their complaint and the Court takes notice of them.  The Court does

15   not draw any inferences in favor of Defendants from these judicially-noticed facts.  See

16   McGuire v. Dendreon, No. 07-800MJP, 2008 WL 1791381, at *4 (W.D. Wash. Apr. 18,

17   2008).

                                          **Analysis**

19   A.    Standard

20          When dealing with allegations of fraud, Rule 9(b) imposes a heightened standard,

21   requiring that "the circumstances constituting fraud or mistake . . . be stated with

22   particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), a plaintiff must plead his claim with

23   "particularized allegations of the circumstances constituting fraud," which should include

24   "[t]he time, place, and content of an alleged misrepresentation" in addition to "the

25   circumstances indicating falseness." In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-48 (9th

     Cir. 1994) (emphasis omitted).  "[C]onclusory allegations of fraud . . . punctuated by a

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS - 4

1    handful of neutral facts" are insufficient.  <u>Id.</u> at 1548 (quotation omitted).  Ultimately, "[t]he

2    plaintiff must set forth what is false or misleading about a statement, and why it is false."  <u>Id.</u>

3    at 1548.  The pleading must be "specific enough to give defendants notice of the particular

4    misconduct . . . so that they can defend against the charge and not just deny that they have

5    done anything wrong."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)

6    (internal quotation omitted).  Rule 9(b) permits the plaintiff to plead intent and knowledge

7    generally, but the plaintiff still has the obligation to "set forth facts from which an inference

8    of scienter could be drawn."  <u>Cooper v. Pickett</u>, 137 F.3d 616, 628 (9th Cir. 1997) (quoting

9    <u>GlenFed</u>, 42 F.3d at 1546).

10           When a plaintiff "allege[s] a unified course of conduct and rel[ies] entirely on that

11   course of conduct as the basis of the claim[,] . . . the claim is said to be 'grounded in fraud' or

12   to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity

13   requirement of Rule 9(b)."  <u>Vess</u>, 317 F.3d at 1103.  Here, Plaintiffs' negligent

14   misrepresentation claims are based on the same course of conduct alleged to constitute fraud,

15   and they are therefore subject to Rule 9(b).  <u>Id.</u>; <u>see also</u> <u>Meridian Project Sys., Inc. v. Hardin</u>

16   <u>Constr. Co., LLC</u>, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005) ("It is well settled in the

17   Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule

18   9(b)'s particularity requirement.");  <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d

19   1101, 1141 (C.D. Cal. 2003) (same).

20   B.     <u>Group Pleading</u>

21           The Director Defendants argue Plaintiffs' fraud and negligent misrepresentation

22   claims fail because Plaintiffs do not cite to any statements made by the Director Defendants.

23   Plaintiffs respond they have satisfied the "group pleading doctrine," which permits them to

24   sue the Director Defendants for statements contained in SEC filings they signed.  Plaintiffs

25   are correct.

1    Under the group pleading doctrine, there is a presumption that allegedly false and

2    misleading group-published information is the collective action of officers and directors.  In

3    re GlenFed, Inc. Sec. Litig., 60 F.3d 591, 593 (9th Cir. 1995). "'Group-published information'

4    is information contained in documents such as annual reports and press releases." In re

5    Secure Computing Corp. Sec. Litig., 120 F. Supp. 2d 810, 821 (N.D. Cal. 2000).  Under the

6    group-pleading doctrine, Plaintiffs can attribute statements to individual defendants based on

7    their positions, rather than pleading facts that show that a defendant actually made, authored,

8    or communicated a statement.  To do so, Plaintiffs must allege the defendants either

9    "participated in the day-to-day corporate activities, or had a special relationship with the

10   corporation, such as participation in preparing or communicating group information at

11   particular times." In re GlenFed, 60 F.3d at 593.

12   Plaintiffs have alleged sufficient facts satisfying the "group pleading doctrine."

13   Plaintiffs explain the Director Defendants' roles on the Audit or Finance Committees and

14   their duty, "power[,] and authority to control the statements made" in SEC filings they signed.

15   (Compl. ¶¶ 28-34, 338-39.)  More importantly, Plaintiffs allege the Director Defendants

16   participated in setting credit risk limits and touted the Director Defendants' role in both

17   "formulating and overseeing management's implementation of risk management policies."

18   (Compl. ¶¶ 275, 344.)  Plaintiffs thus plead more than the Director Defendants' roles on the

19   committees, which alone would be insufficient.  See In re GlenFed, 60 F.3d at 593 (committee

20   membership alone is insufficient to satisfy the doctrine); Schwartz v. KPMG LLP, 476 F.3d

21   756, 765 (9th Cir. 2007) (suggesting that "detailed allegations of an agreement between the

22   defendants and the various roles played in the alleged conspiracy" would satisfy the doctrine).

23   The Court DENIES the Director Defendants' motion on this issue.

24   C.    Fraudulent Misrepresentation

25   To sustain their fraudulent misrepresentation claims, Plaintiffs must allege in

accordance with Rule 9(b) that (1) Defendants made misrepresentations or omissions; (2)

1   Defendants knew of the falsity (scienter); (3) Defendants had an intent to defraud or to induce

2   reliance; (4) Plaintiffs justifiably relied on Defendants' statements or omissions; and (5)

3   Plaintiffs suffered damages.  Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173-74 (2003).

4         Deloitte and the Director Defendants argue that Plaintiffs' fraudulent

5   misrepresentation claims fail to allege sufficiently particularized facts as to each element to

6   survive dismissal.  (Dkt. Nos. 447 at 12-19, 448 at 13-21.)  While Plaintiffs have alleged

7   sufficient facts as to falsity, scienter, and intent, they have not adequately alleged facts to

8   support the element of justifiable reliance.

9         Plaintiffs' allegations of misrepresentation attributable to Deloitte and the Director

10  Defendants are limited to the Annual Reports filed with the SEC (Forms 10-K).  Deloitte

11  allegedly issued its audit opinions in the Forms 10-K, and the Director Defendants signed the

12  Forms 10-K.  The Court's analysis is limited to statements made in three Forms 10-K (2005-

13  2007).

14        1.   Falsity

15        Deloitte argues the complaint fails to identify the falsity of Deloitte's audit

16  certifications.  The Court has already sustained under Rule 9(b) the falsity of representations

17  made in the 2005 and 2006 Forms 10-K regarding WaMu's compliance with GAAP and the

18  soundness of its risk management, appraisals, underwriting, financial statements, and internal

19  controls.  (Dkt. No. 381 at 10-28.)  The allegations in the present complaint are sufficient to

20  show the falsity of Deloitte's certification that WaMu was in compliance with GAAP.  (See

21  Compl. ¶¶ 105-06, 116, 130, 163, 193, 211, 234, 244, 245, 274, 275, 276.)  However, the

22  Court has not considered the falsity of Deloitte's certification in the 2007 Annual Report.

23        Plaintiffs allege Deloitte violated GAAS by providing a clean audit opinion in

24  WaMu's Annual Report for 2007 when it could not have legitimately done so.  (Compl. ¶

25  315.)  The complaint states that WaMu's 2007 Annual Report continued to conceal the

    Company's "improper lending, accounting practices and deficient risk management practices

1    as well as the true extent of the Company's loss exposure."  (Id. ¶ 294.)  The complaint

2    alleges with detail that WaMu failed to provision properly its Allowance, maintain proper risk

3    management, or keep disciplined lending and underwriting guidelines throughout 2007.  (See,

4    e.g., id. ¶¶ 252-64.)  WaMu allegedly violated GAAP by not increasing its Allowance in a

5    "manner commensurate with the decreasing credit quality of [its] home mortgage products."

6    (Id. ¶ 253.)  In spite of these deficiencies, "Deloitte certified that its audits of WaMu's books

7    were done in accordance with GAAP and GAAS.  They were not."  (Id. ¶ 337.)  These

8    allegations are sufficient to show the falsity of Deloitte's certification in the 2007 Form 10-K.

9    The Director Defendants do not challenge the falsity of the alleged misrepresentations

10   attributable to them.  The Court finds these to be sufficiently alleged.

11            2.    Scienter and Intent

12            The Director Defendants argue there are insufficient facts showing their scienter.

13   Deloitte makes the same argument and adds that the allegations as to intent are also

14   insufficient.  The allegations in the complaint survive dismissal.

15            Plaintiffs must set forth sufficient general facts from which an inference of scienter

16   and intent to induce reliance can be drawn.  As to Deloitte, to satisfy scienter and intent,

17   Plaintiffs must allege Deloitte "has no belief in the truth of the statement[s], and makes it

18   recklessly, without knowing whether it is true or false. . . ."  Bily v. Arthur Young & Co., 3

19   Cal. 4th 401, 415 (1992).  Plaintiffs need not show "the auditor's actual knowledge of the

20   false or baseless character of its opinion."  Id.  As to both Deloitte and the Director

21   Defendants, Plaintiffs may allege generally scienter and an intent to defraud.  Fed. R. Civ. P.

22   9(b).  Plaintiffs argue they may satisfy scienter "simply by saying that scienter existed."  (Dkt.

23   No. 483 at 19 (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1547 (9th Cir. 1994)).)  Even

24   though scienter may be established generally, such a conclusory allegation would be

25   insufficient under Rule 9(b) particularly since similar allegations would fail Rule 8(a).  See

     Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (Rule 8(a) requires plaintiffs to plead

1   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

2   action      . . ."); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (same).

3          The allegations suffice to show the Director Defendants' scienter as to statements

4   regarding WaMu's risk management and credit risk.  Two SEC filings affirmatively state the

5   Director Defendants were knowledgeable of and participated in the oversight and

6   development of risk management and credit risk guidelines.  (Compl. ¶¶ 275, 344.)  Plaintiffs

7   also point to the Director Defendants' knowledge of WaMu's risk management through their

8   membership on the Finance and Audit Committees.  (Id. ¶¶ 28-33, 275, 338-44.)  Plaintiffs

9   allege, too, that William Longrake, a former senior WaMu executive repeatedly warned the

10  Board of Directors that the housing market was becoming too risky and that WaMu should

11  limit its exposure. (Id. ¶ 184.)  These allegations taken together are sufficient as to scienter

12  with regard to statements in the Forms 10-K related to risk management and credit risk.

13  Plaintiffs fail to satisfy scienter related to other areas of business in which WaMu was active.

14  Plaintiffs rely only on the Director Defendant's committee positions and responsibilities,

15  which is insufficient.  See In re GlenFed, 60 F.3d at 593 (allegations are insufficient against

16  outside directors when they describe only committee membership and responsibilities).

17          Plaintiffs' allegations of scienter and intent to defraud against Deloitte are also

18  adequate.  Plaintiffs allege Deloitte was "intimately familiar with WaMu's business model, it

19  employees, its products, and its increasing exposure by virtue of its loan practices."  (Compl.

20  ¶ 314.)  Plaintiffs state that Deloitte reviewed WaMu's internal controls, "paying specific

21  attention to loan practice, real estate loan valuations and risk exposure."  (Id.)  Deloitte

22  allegedly participated in drafting quarterly press releases, reviewing drafts of WaMu's SEC

23  filings, and making presentation to the Board of Director and Committee meetings, where "it

24  discussed the results of its examination of WaMu's financial statements."  (Id.)  Deloitte is

25  squarely alleged to have been aware of WaMu's risky real-estate practices, inadequate

    Allowance, and its weak internal controls and risk management.  Taken together, these

1  allegations suffice to show that the "clean" audit reports Deloitte issued were done without

2  belief in their truth or that Deloitte acted recklessly. See Bily, 3 Cal. 4th at 415.  The

3  allegations satisfy both scienter and intent.

4        Deloitte attacks the complaint's "must have known" allegations by relying on three

5  cases decided under the PSLRA's heightened pleading standard.  (Dkt. No. 448 at 20.)

6  Deloitte argues that courts routinely reject allegations similar to Plaintiffs', where the auditor

7  is alleged to be familiar with the company and had access to the business' internal

8  information.  (Id.)  The proposition is convenient for Deloitte, but inapplicable to Plaintiffs'

9  complaint for the simple reason that Plaintiffs need not allege facts that strongly compel an

10 inference of fraudulent intent or scienter.  See Fed. R. Civ. P. 9(b).  Plaintiffs have satisfied

11 their burden under Bily and Rule 9(b).  The Court DENIES both Defendants' motion on this

12 issue.

13      3.    Reliance

14      The Director Defendants and Deloitte attack the allegations of justifiable reliance.

15 Defendants correctly point out that Plaintiffs' allegations of reliance are inadequate.

16      A cause of action for "deceit based on a misrepresentation" requires the plaintiff to

17 allege that "he or she actually relied on the misrepresentation."  Mirkin v. Wasserman, 5 Cal.

18 4th 1082, 1088 (1993).  The plaintiff must allege "specific reliance on the defendants'

19 representations: for example, that if the plaintiff had read a truthful account of the

20 corporation's financial status the plaintiff would have sold the stock, how many shares the

21 plaintiff would have sold, and when the sale would have taken place."  Small 30 Cal. 4th at

22 184.  "The plaintiff must allege actions, as distinguished from unspoken and unrecorded

23 thoughts and decisions, that would indicate that the plaintiff actually relied on the

24 misrepresentations." Id.

25      Plaintiffs rely on two allegations to show the adequacy of their reliance with regard to

the fraudulent misrepresentation claim:

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS - 10

354.   . . . If Plaintiffs had known the true facts, they would not have invested in or continued to hold the WaMu notes, and would have divested of them immediately.

355.   Plaintiff reasonably relied on these representations, including Deloitte's unqualified audit reports, in investing in and continuing to hold WaMu securities and their reliance was justified since the Defendants had exclusive knowledge of the true facts.

(Compl. ¶¶ 354-55.)  These generic allegations of reliance do not satisfy the particularity standards of Rule 9(b).  Plaintiffs only suggest that they read the Forms 10-K and Deloitte's certifications, without expressly alleging which documents they read, when the read them or how they impacted their decision to purchase or retain WaMu debt securities.  Plaintiffs paint with a broad brush and do not meet the particularity requirements of Rule 9(b).

Plaintiffs argue that they have adequately alleged forebearance.  (See Dkt. Nos. 482 at 20-21, 483 at 16-18 (citing Mirkin, 5 Cal. 4th at 1093); Compl. ¶ 354.)  However, Plaintiffs must still allege with particularity facts showing that "had [they] read a truthful account of the corporation's financial status [they] would have sold the stock, how many shares [they] would have sold, and when the sale would have taken place."  Small, 30 Cal. 4th at 184.  Here, Plaintiff's allegations are conclusory and without sufficient detail.  The Court GRANTS the motion on this issue and DISMISSES Plaintiffs' fraudulent misrepresentation claims against the Director Defendants and Deloitte.

D.     Negligent Misrepresentation

1.     Deloitte

Deloitte argues that Plaintiffs cannot pursue their negligent misrepresentation claims because Plaintiffs are not of the class of persons to whom Deloitte owed a duty.  Deloitte is correct.

Under California law, Deloitte, as an auditor, has limited liability for negligent misrepresentations.  Generally, an auditor is only liable to a class of persons who are the intended beneficiaries of the auditor's opinion.  See Bily, 3 Cal. 4th at 410.  An auditor who

1    performs an annual audit is not liable to all investors, except in limited circumstances.  <u>Id.</u> at

2    393 (quotation omitted).  One court applying <u>Bily</u> concluded that an auditor who does an

3    annual opinion for no special particular purpose has no duty to third parties.  <u>Indus. Indem.</u>

4    <u>Co. v. Touche Ross & Co.</u>, 13 Cal. App. 4th, 1087, 1094 (1993).  However, when an auditor

5    prepares a transaction-specific audit statement or is informed of the intended audience distinct

6    from the general investing public, liability can attach.  <u>See Bily</u>, 3 Cal. 4th at 393-94, 413-14.

7         Plaintiffs have not specified why Deloitte's annual audits of WaMu's financials fall

8    outside of the bar set forth in <u>Bily</u>.  Nothing in the complaint sets Plaintiffs apart from the

9    general investing public.  Plaintiffs have only alleged Deloitte made statements in annual

10   audits that were part of the Forms 10-K.  They have not shown any other allegations that

11   Deloitte knew their audits would be relied on by Plaintiffs or any class other than the general

12   public.  Plaintiffs' reliance on <u>Bily</u>'s statement that auditors are presumed to know that

13   persons rely on their reports is unpersuasive.  (Dkt. No. 482 at 21.)  The section Plaintiffs cite

14   in <u>Bily</u> is dicta and conflicts with the case's holding on this narrow issue.  Plaintiffs' negligent

15   misrepresentation claim is fatally flawed as to Deloitte.

16        Plaintiffs try to avoid the bar on auditor liability set out in <u>Bily</u> by relying on a case

17   that is factually distinct and of little support.  <u>See Nutmeg Secs., Ltd. v. McGladrey & Pullen</u>,

18   92 Cal. App. 4th 1435, 1444 (2001); (Dkt. No. 482 at 22.)  Plaintiffs rely heavily on one

19   statement in <u>Nutmeg</u> that an auditor may be liable "for negligent misrepresentation to those

20   third parties who reasonably and foreseeably relied on the financial records, the audit, or

21   both."  <u>Nutmeg</u>, 92 Cal. App. 4th at 1444 (citing <u>Bily</u>, 3 Cal. 4th at 389-92).  In <u>Nutmeg</u>, the

22   court held that the plaintiffs had met this standard by alleging the auditor had participating in

23   preparing the company's "most significant financial records" and had manipulated them after

24   being threatened by the company to do so.  <u>Nutmeg</u>, 92 Cal. App. 4th at 1443.  Here,

25   however, Deloitte is not alleged to have fabricated any financial reports.  Rather, it only

     prepared auditor reports and reviewed quarterly information.  Deloitte is not alleged to have

1   participated in manipulating or influencing the financial statements.  <u>Nutmeg</u> is inapposite and

2   of no support to Plaintiffs.  The Court GRANTS Deloitte's motion and DSIMISSES the

3   negligent misrepresentation claim as to Deloitte.

4        2.   <u>Merits</u>

5        On the merits, Plaintiffs' negligent misrepresentation claims against the Director

6   Defendants and Deloitte are flawed for the same reason as the fraudulent misrepresentation

7   claim: the allegations of reliance are deficient.  <u>See</u> <u>Cadlo v. Owens-Illinois, Inc.</u>, 125 Cal.

8   App. 4th 513, 519 (2004) (stating that the requirements for a negligent misrepresentation

9   claim mirror those of a fraudulent misrepresentation claim except Plaintiff need not allege

10  scienter).  Plaintiffs' allegations as to reliance lack the particularity required to survive

11  dismissal under Rule 9(b).  Defendants' motions are GRANTED and the claims DISMISSED.

12  E.   <u>Aiding and Abetting</u>

13       Plaintiffs contend in their response briefs that the Director Defendants and Deloitte are

14  liable for fraudulent and negligent misrepresentation as aiders and abettors to the primary

15  violations committed by other defendants.  (Dkt. Nos. 482 at 23-24, 483 at 23-25.)  This

16  argument is without merit.

17       Plaintiffs have not pleaded a separate claim for aiding and abetting.  This alone is

18  fatal.  The merits of such a claim are also inadequately supported by the pleadings.  To satisfy

19  a claim of aiding and abetting of an intentional tort (fraudulent misrepresentation), Plaintiffs

20  must allege the Director Defendants and Deloitte knew "the other[ defendants'] conduct

21  constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other

22  to so act or . . . [gave] substantial assistance to the other in accomplishing a tortious result and

23  the person's own conduct, separately considered, constitutes a breach of duty to the third

24  person."  <u>See</u> <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 846 (1994).  Plaintiffs must

25  allege Deloitte and the Director Defendants had actual knowledge of the primary violation.

<u>Howard v. Superior Court</u>, 2 Cal. App. 4th 745, 749 (1992).  Plaintiffs have not so alleged,

1    nor have they alleged how these defendants provided substantial encouragement or assistance.

2    See Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1119-1120 (C.D. Cal. 2003)

3    (finding allegations sufficient where the complaint specifically alleged the defendants knew

4    another was committing fraud and actively participated in the fraud).  The Court GRANTS

5    the motions to dismiss and DISMISSES this claim.

6    F.    California Corporations Code

7          Defendants move to dismiss Plaintiffs' state law claims brought pursuant to California

8    Corporation Code § 25400, et seq.  (Dkt. No. 447.)  In response, Plaintiffs clarify for the first

9    time that they are pursuing claims against the Director Defendants pursuant to California

10    Corporations Code § 25504 and against Deloitte pursuant to California Corporations Code §

11    25403(b) and § 25504.1.  (Dkt. Nos. 482 at 24-26, 483 at 25-27.)

12          Under California Corporations Code § 25504 and § 25504.1, Deloitte and the Director

13    Defendants can be liable only if Plaintiffs have allege a primary violation of California

14    Corporations Code § 25401.  To do so, Plaintiffs must allege that one of the defendants was

15    the seller of the securities and plaintiff must be in privity with the seller.  See Lubin v.

16    Sybedon Corp., 688 F. Supp. 1425, 1453 (S.D. Cal. 1988); S.E.C. v. Seaboard Corp., 677

17    F.2d 1289, 1296 (9th Cir. 1982).  Plaintiffs have not alleged who they purchased the securities

18    from or whether the seller is one of the Defendants.  At oral argument Plaintiffs conceded that

19    they likely purchased them from a third-party.  The allegations in the complaint are therefore

20    inadequate and the claims under California Corporations Code §§ 25504 and 25504.1 are

21    defective.  The Court GRANTS Defendants' motions on this claim.

22          Deloitte argues further that there is not private right of action under § 25403(b) and

23    Plaintiffs attempt to pursue this cause of action is fatally flawed.  See Apollo Capital Fund,

24    LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 255 (2007) (holding that no

25    private right of action under § 25403 exists).  Deloitte is correct. The Court GRANTS

1   Deloitte's motion and DISMISSES the California Corporations Code claims against both

2   Defendants.

3                                              **Conclusion**

4           Plaintiffs have not adequately pleaded viable fraudulent and negligent

5   misrepresentation claims against Deloitte and the Director Defendants.  Plaintiffs' threadbare

6   allegations as to reliance are inadequate to proceed on either claim.  The complaint does not

7   alleged sufficient facts to sustain a negligent misrepresentation claim against Deloitte given

8   the rule set forth in <u>Bily</u>.  Plaintiffs' aiding and abetting claim is no substitute.  The fatal

9   defects in Plaintiffs' California Corporations Code warrant dismissal.  The Court GRANTS

10  Deloitte's and the Director Defendants' motions to dismiss and DISMISSES the claims

11  against them.  The Court GRANTS Deloitte's request for judicial notice.

12          The Clerk is directed to send a copy of this order to all counsel of record.

13          DATED this 28th day of April, 2010.

14

15

16                                                    Marsha J. Pechman
17                                                    United States District Judge

18

19

20

21

22

23

24

25

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS - 15