UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation | Case No. 2:08-md-1919 MJP |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION<br><br>This document relates to:<br><br>09-cv-1756 | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |

This matter comes before the Court on three motions to dismiss filed by the Defendants. (09-cv-1756,[1] Dkt. Nos. 53, 56, 58.) Having reviewed the motions, Defendant Kerry Killinger's joinder (Dkt. No. 57), Plaintiffs' response (Dkt. No. 70), Defendants' replies and Kerry Killinger's joinder (Dkt. Nos. 84, 85, 86, 87), Plaintiffs' surreply (Dkt. No. 91), all papers submitted in support thereof, and having heard oral argument on June 8, 2010, the Court GRANTS in part and DENIES in part Defendants' motions. The Court DENIES Plaintiffs' motion to strike and GRANTS the parties' requests for judicial notice.

\\

\\

\\

---

[1] All references to the docket refer to 09-cv-1756, unless otherwise indicated.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS - 1

**Background**

The following allegations are taken from the Amended Complaint (Dkt. No. 46 ("Compl.")) and are accepted as true solely for the purpose of deciding the pending motions. Nothing should be construed as acceptance of these allegations as proven fact.

Plaintiffs are four closed-end management investment companies incorporated in Maryland with their principal place of business in California. (Compl. ¶ 24.) They are: Flaherty & Crumrine Preferred Income Fund Incorporated, Flaherty & Crumrine Preferred Income Opportunity Fund Incorporated, Flaherty & Crumrine/Claymore Preferred Securities Income Fund Incorporated, and Flaherty & Crumrine/Claymore Total Return Fund Incorporated. (Id.) Plaintiffs purchased Washington Mutual ("WaMu") Preferred Funding Trust Securities ("WaMu Trust Securities") through two offerings in 2006 and 2007. (Compl. ¶¶ 1-3.) The WaMu Trust Securities were composed, in part, of the conveyances of home equity loans and adjustable rate mortgages originated by WaMu. (Id. ¶¶ 166, 207.) The offerings of the WaMu Trust Securities included "Offering Circulars," which described the securities and portions of WaMu's business operations, and incorporated certain WaMu filings with the Securities and Exchange Commission ("SEC") and press releases.

Flaherty & Crumrine, Inc., a non-party, served as Plaintiffs' investment advisor and portfolio manager. (Compl. ¶ 24.) As investment advisor to Plaintiffs, Flaherty & Crumrine, Inc. read and relied on the Offering Circulars. (Id. ¶¶ 164, 205.) Plaintiffs do not allege they read or relied on any statements made by Defendants.

Plaintiffs purchased the WaMu Trust Securities from Goldman, Sachs & Co., Morgan Stanley & Co. Inc., and Credit Suisse Securities (USA) LLC (collectively referred to as the "Initial Purchaser Defendants"). (Compl. ¶¶ 47-49.) These defendants purchased WaMu Trust Securities directly from WaMu and resold them to qualified investors. (Id. ¶ 116.) As part of the resale, the Initial Purchaser Defendants included disclaimers of liability in the Offering Circulars. For example, a February 24, 2006 Offering Circular states that "[t]he Initial Purchasers named

herein make no representation or warranty, express or implied, as to the accuracy or completeness of such information, and nothing contained in this offering circular is, or shall be relied upon as, a promise or representation by the Initial Purchasers." (Dkt. No. 54-2 at 2.)

The core allegations of Plaintiffs' complaint track those made in the WaMu Multi-District Litigation and in the other tag-along actions, and need little explication. (See, e.g., 08-md-1919, Dkt. Nos. 277, 381, 581.) Put briefly, Defendants hid from the public "(i) [that] WaMu did not maintain or comply with underwriting standards and risk management procedures; (ii) the Company artificially inflated appraisals to get loans approved to be able to sell loans to investors; (iii) the true extent of the Company's exposure to a decline in the housing market; (iv) the Company's true creditworthiness; (v) the Company's ineffectual internal controls; (vi) the Company's ineffectual risk management; and (vii) [that] the Company's financial statements did not comply with GAAP." (Comp. ¶¶ 4, 118.)

The truth about WaMu's true financial condition began to surface on November 1, 2007, when New York Attorney General Andrew Cuomo announced an expanded investigation into WaMu's fraudulent appraisal practices. (Compl. ¶¶ 220-21.) On December 20, 2007, the SEC announced its investigation into WaMu's financial disclosures. (Id. ¶ 225.) Downgrades to WaMu's debt rating and losses in its share price continued through 2008 as more information about WaMu's dire financial condition became public. (Id. ¶¶ 226-36.) On September 25, 2008 the FDIC took control of WaMu, which caused Plaintiffs' WaMu Trust Securities to transform into preferred stock that was "worthless." (Id. ¶¶ 16, 237.)

The Offering Circulars contain misstatements about WaMu's underwriting, appraisal practices, and credit risk management. (Compl. ¶¶ 163-175, 204-219.) Plaintiffs set forth facts showing that WaMu lacked proper underwriting guidelines, manipulated and inflated appraisals, and ran afoul of prudent credit risk management. (Id. ¶¶ 52-106.) The Offering Circulars also incorporate several SEC filings and press releases that contain false or misleading information about WaMu's true financial condition. (Id. ¶¶ 4, 143-219.) The Officer Defendants

(Defendants Killinger, Rotella, Casey, Cathcart, and Schneider) made the statements alleged to be false and misleading, while the Director Defendants (Defendants Farrell, Frank, Leppert, Lillis, Matthews, Montoya, Murphy, McQuade, Pugh, Reed, Jr., Smith, Stever, and Wood, Jr.) signed the SEC filings containing most of these actionable statements.

Through the Offering Circulars, the Initial Purchaser Defendants "disseminated false and misleading information to Plaintiffs" by failing to disclose the truth about WaMu's financial condition. (Compl. ¶ 118.) The Initial Purchaser Defendants knew of WaMu's true financial condition because of their "extensive business operations in the residential mortgage market" (Compl. ¶ 120), "access to all of the underlying loan documents" by virtue of underwriting unrelated mortgage-backed securities from WaMu (Comp. ¶ 123), and access to WaMu's non-public reports on WaMu's credit risk oversight (Compl. ¶ 124). Goldman Sachs also engaged in double-dealing. That is, Goldman Sachs was both selling and promoting the WaMu Trust Securities at the same time it was "secretly insisting for its own purposes that securities backed by residential subprime mortgage loans were significantly impaired and their valuations had to be written down." (Id. ¶ 137.)

Plaintiffs filed suit in California state court on October 16, 2009, which Defendants removed to federal court. (Dkt. No. 3.) The proceedings were transferred to the Judicial Panel on Multidistrict Litigation and then to this Court. (Dkt. Nos. 9, 40.) After voluntarily dismissing several counts, Plaintiffs pursue the following claims: (1) fraud against the Officer Defendants including claims pursuant to Cal. Civil Code §§ 1709 and 1710 and California common law; (2) negligent misrepresentation against all Defendants; (3) violation of the California Corporations Code §§ 25400, 25500, and 25504.1 against the Officer Defendants, and violations of Cal. Corp. Code §§ 25401 and 25501 against Goldman Sachs; (4) violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 against the Officer Defendants; (5) violations of § 18 of the Securities Exchange Act of 1934 against the Individual Defendants (the Officer and Director

1  Defendants); and (6) separate violations of § 20 of the Securities Exchange Act of 1934 against
2  the Officer and Director Defendants.  Defendants move to dismiss all claims.

**Analysis**

A.   Pleading Standard

Rule 8(a) prescribes a notice-pleading standard for reviewing the sufficiency of a complaint, requiring "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009).  Rule 9(b) imposes a heightened pleading standard, which requires "the circumstances constituting fraud or mistake . . . . be stated with particularity." Fed. R. Civ. P. 9(b).  Under Rule 9(b), a plaintiff must explain "[t]he time, place, and content of an alleged misrepresentation" in addition to "the circumstances indicating falseness." In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-48 (9th Cir. 1994) (emphasis omitted).  "[C]onclusory allegations of fraud . . . punctuated by a handful of neutral facts" are insufficient. Id. at 1548 (quotation omitted).  "The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. at 1548.  Rule 9(b) does permit the plaintiff to plead intent and knowledge generally.

Plaintiffs concede their claims against the Officer Defendants must be pleaded with particularity under Rule 9(b).  However, Plaintiffs argue that Rule 8 should apply to all of their other claims against the Director and Initial Purchaser Defendants.  Plaintiffs are incorrect.

When a plaintiff "allege[s] a unified course of conduct and rel[ies] entirely on that course of conduct as the basis of the claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  The claims against the Director Defendants must meet Rule 9(b) because they are grounded in the same course of conduct alleged to be fraudulent. See id.  As the Court previously held, claims against

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS - 5

the Director Defendants under California common law for negligent misrepresentation must meet Rule 9(b). (See 08-md-1919, Dkt. No. 581 at 4-5.) Here, Plaintiffs allege the Director Defendants were unaware of the fraud, but incongruously allege their deep knowledge and involvement of WaMu's deceptive conduct and their role in "participat[ing] in making materially false and misleading statements without reasonable grounds to believe the statements were true." (Compl. ¶¶ 5, 269.) Plaintiffs have sufficiently tied the Director Defendants to the course of fraudulent conduct alleged against the Officer Defendants, such that Rule 9(b) applies. The Court notes that it previously held claims by the WaMu Securities Class Action Plaintiffs against the Director Defendants under the Securities Act to a Rule 8(a) standard. (See 08-md-1919, Dkt. No. 277 at 21.) This decision hinged on the fact that the Class Plaintiffs had only alleged § 20 control person liability against the Director Defendants, which did "not directly touch on the circumstances that constitute fraud." (Id.) Here, to the contrary, Plaintiffs' negligent misrepresentation and § 18 claims against the Director Defendants specifically touch on and link the defendants to the circumstances that constitute the fraud.

The claims against the Initial Purchaser Defendants need only meet Rule 8(a). Plaintiffs allege that the Initial Purchaser acted without awareness of the fraud and their conduct is not part of the same fraud allegedly perpetrated by the Individual Defendants. See Vess, 317 F.3d at 1103; (Compl. ¶ 5.) The Court applies the Rule 8(a) pleading standard to the claims against the Initial Purchaser Defendants.

B.   Judicial Notice

Plaintiffs request the Court take judicial notice of several Form 4 filings made by the Officer Defendants with the SEC. (Declaration of David Thorpe, Ex. D.) The Court takes notice of these documents. (See 08-1919, Dkt. No. 381 at 3-4.)

The Initial Purchaser Defendants request judicial notice of the Offering Circulars and underlying Purchase Agreements. (Dkt. No. 54 at 10 n.3.) The Court takes notice of these documents. The Initial Purchaser Defendants also include two excerpts from Plaintiffs' website,

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS - 6

1  but they fail to ask for judicial notice of them.  (Dkt. Nos. 54-9, 54-10, 54-11.)  The Court takes
2  no notice of these documents.
3  C.     Fraud
4       The Officer Defendants move to dismiss the common law and statutory claims of fraud
5  against them on the sole basis that Plaintiffs have not adequately alleged reliance.  Plaintiffs have
6  not met their burden to allege actual reliance.
7       A cause of action for "deceit based on a misrepresentation" requires the plaintiff to allege
8  that "he or she actually relied on the misrepresentation."  Mirkin v. Wasserman, 5 Cal. 4th 1082,
9  1088 (1993).  The plaintiff must allege "specific reliance on the defendants' representations: for
10 example, that if the plaintiff had read a truthful account of the corporation's financial status the
11 plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the
12 sale would have taken place."  Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 184 (2003).  "The
13 plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and
14 decisions, that would indicate that the plaintiff actually relied on the misrepresentations."  Id.
15 Plaintiffs pursuing claims under Cal. Civ. Code § 1709 must also plead reliance.  See City
16 Solutions, Inc. v. Clear Channel Commc'ns, 365 F.3d 835, 840 (9th Cir. 2004).
17       Defendants first argue that because only the non-party Flaherty & Crumrine, Inc. read the
18 statements in question there has been no showing that Plaintiffs themselves relied on any
19 statements from the Officer Defendants.  The argument is without merit.  California law permits
20 a principal to show reliance if its agent read and relied on the statement.  Mirkin, 5 Cal. 4th at
21 1098.  This concept also exists with regard to derivative reliance in Rule 10b-5 actions. See Itoba
22 Ltd. v. LEP Group PLC, 54 F.3d 118, 122 (2d Cir. 1995).  Here, Plaintiffs' pleadings establish
23 the agency relationship between them and their investment advisor, Flaherty & Crumrine, Inc.
24 The fact that they did not personally read and rely on the statements is not fatal.
25       Defendants argue the pleadings lack the particularity required to demonstrate actual
26 reliance.  Plaintiffs only allege that Flaherty & Crumrine, Inc. "read and relied upon the Offering

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS - 7

Circulars and the documents incorporated by reference. . . ." (Compl. ¶ 24.) This thin allegation does not satisfy the particularity standard of Rule 9(b) or the requirements of pleading actual reliance under California law. Similar to the allegations in the California Securities Action in this MDL (08-md-1919, Dkt. No. 581), the allegations are too vague and unspecific to survive dismissal. See Small, 30 Cal. 4th at 184. The Court GRANTS the motion and DISMISSES the common law and statutory (Cal. Civ. Code §§ 1709 and 1710) fraud claims.

D.     Negligent Misrepresentation

All Defendants move to dismiss the negligent misrepresentation claims against them. The claims fail for the same reason Plaintiffs' fraud claim fails: the allegations of reliance are inadequate. Defendants raise other legal impediments to Plaintiffs' claim that the Court addresses separately here.

   1.     Reliance

Plaintiffs have failed to make sufficient allegations of reliance as to all Defendants. As explained above, Plaintiffs must do more than simply pronounce that they read the Offering Circulars and relied on them. See Small, 30 Cal. 4th at 184. Plaintiffs have failed to satisfy their pleading burden under Rule 9(b) to allege reliance as to the Officer and Director Defendants. The allegations of reliance as to the Initial Purchaser Defendants are also inadequate even under the pleading standard of Rule 8(a). The allegations are too conclusory and vague to raise them from the possible to the plausible. See Twombly, 550 U.S. at 570. The Court GRANTS the motions on these claims and DISMISSES them as to all Defendants.

The Director Defendants also argue that Plaintiffs cannot allege reliance because they are not of a class who may rely on the statements made by the Director Defendants. (Dkt. No. 587 at 15-16.) Defendants derive this theory from Bily v. Arthur Young & Co., 3 Cal. 4th 370 (1992), a case that Defendants struggle to make on point. Bily held that with regard to independent auditors, only certain classes of persons can rely on their audit opinions. The Director Defendants urge the Court to adopt this rule as applied to them, regardless of the fact that the

court in Bily limited its holding as to reliance on audit opinions to auditors. Bily has no bearing on corporate directors, no matter how much Defendants plead to the contrary. The Court REJECTS Defendants' meritless argument.

  2.  Disclaimer does not limit liability

The Initial Purchasers seek dismissal on the theory Plaintiffs cannot allege reliance because they accepted the waivers of reliance in the Offering Circulars. (Dkt. No. 584 at 8-9.) The disclaimers in the Offering Circulars are void under California law.

Section 1668 of the California Civil Code declares unlawful as against public policy "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent. . . ." California courts have held that negligent misrepresentation claims, which involve deceit, cannot be barred by exculpatory clauses such as the one in the Offering Circular. See Continental Airlines, Inc. v. McDonnell Douglas Corp., 216 Cal. App. 3d 388, 403 (1989) (citing multiple cases).

Plaintiffs' negligent misrepresentation claim is not barred by the disclaimer in the Offering Circular. The disclaimer operates as a means to avoid any fraud or negligent misrepresentation claim simply by requiring the purchaser to disclaim reliance on the contents of the Offering Circular. This type of waiver is void in California. See Continental, 216 Cal. App. 3d at 403.

The only marginally relevant California case the Initial Purchasing Defendants rely on is distinguishable. (See Dkt. No. 84 at 8 (citing Werner v. Knoll, 89 Cal. App. 2d 474 (1948)).) Werner addressed the validity of a contract seeking to relieve an individual from liability in a wrongful death (negligence) action, which did not involve a tort of deceit or fraud. See id. at 475-76. The court's holding that such a waiver was valid does not apply to waivers from claims involving deceit. The case does not support Defendants' position. The Court DENIES the motion on this issue.

  3. <u>Lack of reasonable grounds</u>

The Initial Purchaser Defendants argue that Plaintiffs have not properly alleged the Initial Purchaser Defendants lacked reasonable grounds for believing the Offering Circulars were accurate. The allegations are sufficiently pleaded.

To sustain their negligent misrepresentation claim, Plaintiffs must demonstrate the Initial Purchaser Defendants made a false statement without reasonable grounds to believe they were true. See <u>Bily</u>, 3 Cal. 4th at 407. Plaintiffs have alleged sufficient detail to sustain this element of their claim. Plaintiffs allege that the Defendants had access to WaMu's internal reports showing the poor quality of WaMu's loans, WaMu's lack of credit risk management, and its distorted appraisal practices. (Compl. ¶¶ 115-42.) Plaintiffs also allege the Initial Purchasers were actively writing down the value of subprime loans they owned at the same time they promoted the sale of WaMu Trust Securities which could be adversely affected by a downturn in the subprime market. (<u>Id.</u> ¶¶ 126-41.) Taken together, these claims are sufficient to show the Initial Purchaser Defendants lacked a reasonable ground to believe the statements in Offering Circulars were accurate. Defendants' arguments to the contrary simply raise disputes of fact that cannot be resolved on a motion to dismiss. The Court DENIES Defendants' motion on this issue.

  4. <u>Director Defendants' statements</u>

The Director Defendants argue that Plaintiffs have not alleged they made any statements in the Offering Circulars or the documents incorporated therein. Defendants' argument is without merit.

The Court previously held that the plaintiffs in <u>Solton v. Killinger</u>, 09-cv-664, adequately pleaded the Director Defendants made negligent misrepresentations under the group pleading doctrine. (08-cv-1919, Dkt. No. 581 at 6.) The Director Defendants' signatures on SEC filings were sufficient because they allegedly participated in certain day-to-day functions of the company and had a special relationship with the company. (<u>Id.</u>) Here, Plaintiffs' pleadings

satisfy the group pleading doctrine. In spite of this, Plaintiffs disclaim reliance on the doctrine for fear of somehow imposing an added element into their cause of action. (Dkt. No. 70 at 48.) The Court is satisfied that the pleadings meet the group pleading doctrine and that the doctrine adds no new elements to Plaintiffs' claims.

The Court notes that the authority Plaintiffs rely on in their opposition does not present a viable alternative theory for liability against the Director Defendants. (Dkt. No. 70 at 48.) Plaintiffs invoke Howard v. Everex Sys., Inc., 228 F.3d 1057 (9th Cir. 2000), in which the court held that a CEO with scienter of the fraud who signed an SEC filing he did not prepare was nonetheless liable for the contents of the document. Id. at 1061-62. The Court made no determination as to whether an outside director's signature alone on an SEC filing is sufficient. Both In re Zoran Corp. Deriv. Litig., 511 F. Supp. 2d 986, 1011 (N.D. Cal. 2007) and In re Maxim Integrated Prods., Inc. Deriv. Litig., 574 F. Supp. 2d 1046, 1063 (N.D. Cal. 2008), rely on Everex and present no new authority. The Court rejects Plaintiffs' reliance on these cases. Regardless, the allegations in the complaint satisfy the group pleading doctrine and the Court DENIES Defendants' motion on this issue.

E.  Section 10(b) Claim

The Officer Defendants seeks dismissal of Plaintiffs' § 10(b) Securities Act claim on the basis that Plaintiffs have not alleged actual reliance. Defendants are correct. Under Rule 9(b), Plaintiffs must plead with particularity that they read and relied upon the statements Defendants made. Plaintiffs instead only state generically that they "read and relied" upon all of the statements made in the Offering Circulars and the incorporated SEC filings. This broad and undifferentiated assertion is inadequate, as explained variously above. The Court GRANTS the motion and DISMISSES this claim.

F.  Section 18 Claims

The Officer and Director Defendants move to dismiss Plaintiffs' § 18 Exchange Act claims on the basis that they are time-barred. Defendants are correct.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS - 11

The Court has previously held that a one-year statute of limitations applies to § 18 claims despite the Sarbanes-Oxley Act's extension of certain statute of limitations periods. Reese v. Malone, No. C08-1008 MJP, Dkt. No. 120 at 15 (W.D. Wash. Feb. 27, 2009). Plaintiffs urge the Court to reverse course on the basis of certain comments by Senator Leahy in the legislative history of the Sarbanes-Oxley Act. (Dkt. No. 70 at 35 n.10.) The statements do not convince the Court to apply a different statute of limitations. The Court therefore applies a one year statute of limitations to Plaintiffs' § 18 claims.

Plaintiffs' § 18 claims are time-barred. Plaintiffs allege they began to discover the inaccuracy of the statements Defendants made starting in November 2007. By September 25, 2008, WaMu was taken into receivership and Plaintiffs' holdings became "worthless." (Compl. ¶¶ 16, 237.) Yet Plaintiffs did not file suit until October 16, 2009, which is over one year from the time Plaintiffs allege they knew or had reason to know of the alleged fraud and misrepresentations. The Court GRANTS Defendants' motion and DISMISSES the claims with prejudice.

G.     Section 20(a)

Plaintiffs' § 20 Exchange Act claims require viable primary violations of the Exchange Act. Everex, 228 F.3d at 1065. Because Plaintiffs have not pleaded actionable § 10(b) or § 18 claims, the Court GRANTS Defendants' motion and DISMISSES the § 20(a) claims.

H.     California Corporations Code

The Officer Defendants and Goldman Sachs move to dismiss Plaintiffs' claims brought pursuant to the California Corporations Code. Both claims survive dismissal.

1.     Section 25400 and 25500

The Officer Defendants seek dismissal on the theory that § 25400 and § 25500 require the defendant to be a seller or offeror of the exact same security Plaintiffs purchased. The Court disagrees.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS - 12

Section 25400(d) makes it unlawful to induce persons to purchase securities by making false or misleading statements as to a material fact. Section 25500 provides a private right of action to recover from those who violate § 25400(d). The persons liable for violating § 25400(d) are "broker-dealer[s] or other person[s] selling or offering for sale or purchasing or offering to purchase the security." Cal. Corp. Code § 25400(d).

The parties dispute whether the California Code requires the defendant to have purchased the same type of security that the plaintiff purchased in order for liability to attach. Here, Plaintiffs did not purchase the same WaMu securities the Officer Defendants sold. This distinction is not fatal to Plaintiffs' claim.

Defendants' cite one Los Angeles County Superior Court decision as support for their narrow reading of § 25400(d) that the defendant must have purchased or sold the identical security that the plaintiff bought or sold. (Dkt. No. 85 (citing McMahon v. Marsh & McLennan Cos., No. BC 339808 at 2 (Cal. Super. Ct. Los Angeles County, Jan. 6, 2009)).) In McMahon, the plaintiffs had made "puts" on defendant's common stock, while the defendants were alleged only to have purchased and sold their own stock. The court concluded that the defendants were not liable because they had not sold or purchased the same security the plaintiffs bought and sold.

Plaintiffs cite compelling authority that convinces the Court their claim is not defective. A leading treatise on California's securities law, authored by two members of the committee that drafted California's Corporate Securities Law of 1968, have stated with regard to subdivision § 25400(d) that "it is required that the defendant must have engaged in market activity in order to be liable." 1 Marsh & Volk, Practice Under the Cal. Securities Laws (1998) § 14.05[4], p. 14-52. This broad view of persons who may be liable has been shared by one justice of the California Supreme Court who concluded that "plaintiff must prove that the defendant was engaged in market activity at the time of the misrepresentations." Mirkin, 5 Cal. 4th at 1123 (Kennard, J., concurring and dissenting); see Reiger v. Altris Software, Inc., 1999 WL 540893, at *10 (S.D.

1  Cal. Apr. 30, 1999) (holding that liability under § 25500 requires the defendant to have directly
2  participated "in the sale of securities or some other 'market activity'").  The California Supreme
3  Court has also held that the defendants' sale of stock to employees that was not made on the
4  open market was sufficient to place defendants in the class of those liable for violating § 25400.
5  StorMedia Inc. v. Superior Ct., 20 Cal. 4th 449, 458-60 (1999).

6  Plaintiffs' position is more persuasive and faithful to the text and purpose of § 25400(d).
7  Section 25400(d) seeks to punish activity that artificially manipulates the value of securities to
8  the defendant's benefit.  Here, the Officer Defendants were engaged in market activity when they
9  sold WaMu stock at the same time Plaintiffs purchased WaMu Trust Securities.  Both types of
10 securities were originally sold by WaMu and the allegedly false and misleading statements
11 Defendants made impacted the value of both types of securities.  The Officers Defendants
12 allegedly benefitted by deceiving the market of investors in WaMu securities, whether the
13 investors purchased common stock, debt securities, or preferred trust securities.  This is not
14 analogous to the situation in McMahon, where the Plaintiffs were dealing in securities not issued
15 by the defendants or their company.  The Court declines to stretch McMahon to stand for the
16 proposition that a preferred trust security and common stock issued by the same company are
17 distinguishable for purposes of § 25400(d).  The Court DENIES Defendants' motion on this
18 issue.

19        2.       Sections 25401, 25501, & 25504.1

20        Goldman Sachs seeks dismissal of Plaintiffs § 25401 and § 25501 claims on the theory
21 that Plaintiffs have not adequately alleged the sale or purchase of the WaMu Trusts Securities
22 took place in California.  The Court does not agree.

23        Section 25401 make it unlawful "for any person to offer or sell a security in this state or
24 buy or offer to buy a security in this state by means of any written or oral communication which
25 includes an untrue statement of material fact. . . ."  California's code explains that "[a]n offer or
26 sale of a security is made in this state when an offer to sell is made in this state, or an offer to buy

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS - 14

1  is accepted in this state, or (if both the seller and the purchaser are domiciled in this state) the
2  security is delivered to the purchaser in this state." Cal. Corp. Code § 25008(a).

3     Defendants assert the complaint fails with any specificity to explain how the purchase or
4  sale occurred in California. While Defendants argue the allegation that Plaintiffs "purchased the
5  . . . Trust Securities in California" lacks specifity, the Court is unconvinced. Plaintiffs allege that
6  their principal place of business is in California and that they purchased the securities in
7  California. That Goldman Sachs ultimately took receipt of the money in New York is of no
8  moment. It does not contradict that the purchase took place in California. See Parvin v. Davis
9  Oil Co., 524 F.2d 112, 117 (9th Cir. 1975) (holding that payment by virtue of check mailed from
10 California constituted a sale of securities in California). The Court DENIES Defendants'
11 motion.

12    The Court also DENIES the Officer Defendants' motion to dismiss the § 25504.1 claim,
13 which is derivative of and reliant on Plaintiffs' § 25401 claim. Because the § 25401 claim is
14 viable, the § 25504.1 claim is also actionable.

15 I.  Motion to Strike

16    Plaintiffs move to strike an argument Defendants raised in their reply briefs regarding
17 Plaintiffs' failure to allege they read and relied on the Offering Circulars. (Dkt. No. 91.) The
18 Court DENIES the motion to strike. Defendants adequately raised the issue in their opening
19 briefs and the Court Defendants' argument as explained above.

20             **Conclusion**

21    Plaintiffs' complaint suffers from several pleading deficiencies that render their federal
22 securities law claims and their California common law claims inoperable. Plaintiffs have not
23 adequately alleged reliance to survive dismissal of their § 10(b), § 20(a), common law and
24 statutory fraud, and negligent misrepresentation claims. The Court GRANTS Defendants'
25 motions on these claims and DISMISSES them without prejudice. Plaintiffs' § 18 claim is time-
26 barred and dismissed with prejudice. Defendants have not shown a pleading defect in Plaintiffs'

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS - 15

California Corporations Code claims.  The Court DENIES the motions on these claims. The Court GRANTS the parties' requests for judicial notice and DENIES Plaintiffs' motion to strike.

The Clerk shall transmit a copy of this Order to all counsel of record.

Dated this 21st day of June, 2010.

Marsha J. Pechman
United States District Judge