.

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES & ERISA LITIGATION | ) ) ) ) ) ) | No.   2:08-md-1919 MJP |

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION

This Document Relates to:  ALL CASES | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Lead Case No. C08-387 MJP

PLC-19

**LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

NOTE ON MOTION CALENDAR: June 30, 2011 |

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENTS
[PLC-19]
Master No: 2:08-md-1919 MJP

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

I.  Lead Plaintiff Conducted An Extensive And Fruitful
    Investigation And Vigorously Litigated The Action For
    Nearly Three Years ......................................................................................... 3

II.  The Settlements Are The Result Of Intense And Protracted
     Settlement Negotiations And Mediation Sessions ........................................... 9

III.  The Terms of the Settlements ......................................................................... 10

ARGUMENT ............................................................................................................ 11

I.  The Proposed Settlements Warrant Preliminary Approval ............................... 11

    A.  The Settlements Were Negotiated At Arms' Length And Are
        Supported By Lead Plaintiff And Experienced Counsel ........................ 13

    B.  The Substantial Benefits Obtained For The Class, Especially In
        Light Of The Risks Of Litigation, Support Approval Of The
        Settlements ............................................................................................. 14

    C.  The Stage Of The Proceedings And The Discovery Completed
        Support Approval Of The Settlements ..................................................... 15

    D.  The Settlements Are Beneficial to the Class And Do Not Grant
        Any Preferential Treatment To Class Representatives Or Segments
        Of The Class ............................................................................................ 16

II.  The Proposed Notice To The Class Satisfies All The
     Requirements Of Rule 23, The PSLRA And Due Process ............................... 16

SCHEDULE OF SETTLEMENT EVENTS ............................................................. 18

CONCLUSION ........................................................................................................ 19

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page i

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008) ........................................................12

*Carter v. Anderson Mech., LP*,
  No. EDCV 08-00025, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010) .........................13

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...........................................................17

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..........................................................11

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .......................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................11, 12

*In re Heritage Bond Litig.*,
  No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005).............................13

*Hughes v. Microsoft Corp.*,
  No. V98-1646C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) .....................14

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ..........................................................12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)....................................................................18

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..........................................................12

*Pierce v. Novastar Mortg., Inc.*,
  No. C05-5835 RJB, 2007 WL 1847216 (W.D. Wash. June 27, 2007)....................12

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page ii

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*In re Portal Software, Inc. Sec. Litig.*,
   No. C003-5183, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................................................18

*In re Portal Software, Inc. Sec. Litig.*,
   No. C003-5183, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)...............................................14

*Riker v. Gibbons*,
   No. 3:08-cv-00115, 2010 WL 4366012 (D. Nev. Oct. 28, 2010)............................................13

*Satchell v. Fed. Express Corp.*,
   No. C03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................13

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ...................................................................................................18

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
   No. CV 09-5416, 2011 WL 280991 (C.D. Cal. Jan. 26, 2011) .............................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................................17

*Washington Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989) ..........................................................................................14

*Williams v. Costco Wholesale Corp.*,
   No. 02cv2003, 2010 WL 761122 (S.D. Cal. Mar. 4, 2010).....................................................12

**STATUTES & RULES**

11 U.S.C. § 362(a) ............................................................................................................................6

15 U.S.C. § 78u-4(a)(7) .........................................................................................................3, 16, 18

15 U.S.C. § 77z-1(a)(4).........................................................................................................3, 16, 18

Fed. R. Civ. P. 23 ........................................................................................................................3, 17

Fed. R. Civ. P. 23(b)(3)....................................................................................................................17

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................................17, 18

Fed. R. Civ. P. 23(e) ..................................................................................................................11, 12

Fed. R. Civ. P. 23(f) ..........................................................................................................................8

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page iii

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1   **OTHER AUTHORITIES**

2   Douglas L. Davies & Laura Marquez-Garrett, "Financial Misconduct is Not Just a Civil

3       Matter," U.S. BANKER (June 2009)..........................................................................................4

4   NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) .................................................................12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page iv

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

# PRELIMINARY STATEMENT

Lead Plaintiff Ontario Teachers' Pension Plan Board ("Ontario Teachers"), on behalf of itself and other members of the Class, has reached agreements to settle this consolidated securities class action (the "Action"), subject to Court approval, with the Individual Defendants[1], the Underwriter Defendants[2], and Deloitte & Touche LLP ("Deloitte") for a total recovery of $208.5 million.  The Settlements provide for payments of $105 million in connection with the settlement with the Individual Defendants, $85 million by the Underwriter Defendants, and $18.5 million by Deloitte in exchange for the dismissal of all claims against the Settling Defendants and the release of the Settled Claims against the Settling Defendants, Banc of America Securities LLC, and their related parties, on the terms set forth in three respective Stipulations.[3]  If approved, the Settlements will conclude the Action.

As set forth below, these Settlements were reached only after Lead Plaintiff had completed an extensive and fruitful investigation into WMI's risk management, loan origination,

[1] The Individual Defendants are Kerry K. Killinger, Thomas W. Casey, Stephen J. Rotella, Ronald J. Cathcart, David C. Schneider, John F. Woods, Melissa J. Ballenger, Anne V. Farrell, Stephen E. Frank, Thomas C. Leppert, Charles M. Lillis, Phillip D. Matthews, Regina Montoya, Michael K. Murphy, Margaret Osmer McQuade, Mary E. Pugh, William G. Reed, Jr., Orin C. Smith, James H. Stever and Willis B. Wood, Jr.  Under the terms of the Settlement with the Individual Defendants, Washington Mutual, Inc ("WMI") also is a Settling Defendant.

[2] The Underwriter Defendants are Goldman, Sachs & Co., Morgan Stanley & Co. Incorporated (now known as Morgan Stanley & Co. LLC) , Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., UBS Securities LLC, J.P. Morgan Securities Inc., Barclays Capital Inc., Keefe, Bruyette & Woods, Inc., Cabrera Capital Markets, LLC, The Williams Capital Group, L.P., Citigroup Global Markets, Inc., Greenwich Capital Markets, Inc. (now known as RBS Securities Inc.), BNY Mellon Capital Markets LLC (successor to BNY Capital Markets, Inc.), and Samuel A. Ramirez & Company, Inc.  The Individual Defendants, WMI, the Underwriter Defendants and Deloitte are collectively referred to as the "Settling Defendants".

[3] The Stipulations are: (i) the Stipulation and Agreement of Settlement with Individual Officer and Director Defendants and with Washington Mutual, Inc. dated June 30, 2011 (the "D&O Stipulation"), attached hereto as Exhibit 1; (ii) the Stipulation and Agreement of Settlement with the Underwriter Defendants dated June 30, 2011 (the "Underwriters Stipulation"), attached hereto as Exhibit 2; and (iii) the Stipulation and Agreement of Settlement with Defendant Deloitte & Touche LLP dated June 30, 2011 (the "Deloitte Stipulation"), attached hereto as Exhibit 3.  Unless otherwise specified, all capitalized terms used herein have the meaning ascribed to them in the Stipulations.

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

and accounting practices, had vigorously litigated the Action for nearly three years against well-funded and highly skilled opposing counsel, had conducted extensive fact and class certification discovery, and had participated in an extensive mediation process overseen by a former federal judge.  The Settlements were achieved after intense, arms'-length negotiations with each set of Defendants and at a time when all parties had a thorough understanding of the strengths and weaknesses of their positions.  Lead Plaintiff and Lead Counsel believe that the proposed Settlements represent an excellent result and are in the best interests of the Class.  The Settlements, totaling $208.5 million in cash, provide substantial monetary benefits to the Class. These benefits should be compared to the real risk that protracted and contested litigation, including trial and likely appeals, could ultimately lead to no recovery, or a far smaller recovery, against the Settling Defendants.

At the final settlement approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the proposed Settlements, and will be asked to make a determination as to whether the Settlements are fair, reasonable and adequate under all the circumstances surrounding the Action.  At this time, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlements so that notice of the Settlements may be sent to the Class.  Specifically, Lead Plaintiff respectfully requests that the Court enter the [Proposed] Order Preliminarily Approving Proposed Settlements and Providing for Notice ("Preliminary Approval Order"), which is attached as Exhibit A to each Stipulation, and which will, among other things:

(i)     preliminarily approve the Settlements on the terms set forth in the respective Stipulations;

(ii)    approve the form, substance and requirements of the Notice of (I) Pendency of Class Action and Proposed Settlements, (II) Settlement Fairness Hearing, and (III) Motion for An Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), the Proof of Claim form (the "Claim Form"), and the Summary Notice of (I) Pendency of Class Action and Proposed Settlements, (II) Settlement Fairness Hearing, and (III) Motion for An Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Summary Notice"), which are attached as Exhibits 1, 2 and 3, respectively, to the Preliminary Approval Order;

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 2

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

(iii) find that the procedures established for mailing and distribution of the Notice and publication of the Summary Notice, substantially in the manner and form set forth in the Preliminary Approval Order, constitute the best notice practicable under the circumstances, and are in full compliance with the requirements of due process, Fed. R. Civ. P. 23 and the Private Securities Litigation Reform Act, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7); and

(iv) set forth the schedule and the procedures for dissemination of the Notice, publication of the Summary Notice, for submitting papers in support of final approval of the Settlements, for requesting exclusion from the Class and objecting to the Settlements, and for the Settlement Hearing.

## STATEMENT OF FACTS

### I.   Lead Plaintiff Conducted An Extensive And Fruitful Investigation And Vigorously Litigated The Action For Nearly Three Years

The Settlements were reached only after Lead Plaintiff and the Settling Defendants had vigorously litigated the Action for nearly three years, which included Lead Plaintiff's extensive pre-filing investigation into WMI's lending practices; the filing of two substantial consolidated complaints; two thoroughly briefed sets of motions to dismiss; an extensive, nationwide discovery process; an intensely contested motion for class certification; and a high-stakes motion for judgment on the pleadings.

Beginning in November 2007, three securities class actions were commenced in the United States District Court for the Southern District of New York against WMI and certain of its officers and directors. A fourth putative securities class action was also commenced in the United States District Court for the Western District of Washington in November 2007 and was voluntarily dismissed without prejudice on March 3, 2008. In early 2008, the United States Judicial Panel on Multidistrict Litigation ordered that these securities actions be centralized for coordinated pretrial proceedings in the United States District Court for the Western District of Washington and, on May 7, 2008, this Court entered an order that consolidated those securities actions and any related pending or subsequently filed actions into the Action; appointed Ontario Teachers as Lead Plaintiff, Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel and Byrnes Keller Cromwell LLP as Liaison Counsel for Plaintiffs in the Action; and ordered that

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 3

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

1   Lead Plaintiff file a consolidated amended complaint.

2         Prior to filing the Consolidated Class Action Complaint (the "Consolidated Complaint")

3   on August 5, 2008, Lead Plaintiff conducted an extensive investigation into the facts and

4   circumstances of WMI's mortgage loan business, including its risk management, loan

5   underwriting practices, appraisal process, and the appropriateness of its accounting for its loans

6   and its loss reserves.  Lead Counsel reasonably believes that its investigation was one of the most

7   wide-ranging and fruitful investigations ever conducted in this practice area.  The investigation

8   included interviews with nearly 500 percipient witnesses, including hundreds of former WMI

9   employees and third-party witnesses, and resulted in uncovering critical internal documents that

10  had never previously been made public.  As a result of this investigation, Lead Plaintiff was able

11  to present evidence from 89 confidential witness statements in the Consolidated Complaint and

12  cite to many previously-undisclosed documents.  In the course of its investigation, Lead Counsel

13  carefully reviewed the results of the investigation of the New York Attorney General ("NYAG")

14  into appraisal fraud at WMI through WMI's appraisal vender eAppraiseIT, but extended the

15  scope of Lead Counsel's investigation well beyond the parameters of the NYAG's investigation.

16  Lead Counsel's broadened investigation successfully uncovered additional evidence of alleged

17  appraisal misconduct at WMI, including evidence of appraisal inflation nationwide and evidence

18  relating to misconduct by a second vendor, Lender Services Inc. ("LSI").

19        Lead Plaintiff's highly successful investigation was critical to the advancement of this

20  case and, ultimately, in obtaining the result achieved in the Settlements.  Indeed, the significance

21  of the facts uncovered in Lead Plaintiff's investigation is highlighted by the fact that at least

22  some of the evidence developed was subsequently used by government regulatory authorities,

23  including the U.S. Attorney for the Western District of Washington, the U.S. Senate, and the

24  FDIC.  The U.S. Attorney's Office reportedly made use of the facts detailed in Lead Plaintiff's

25  complaint in connection with its grand jury investigation of the alleged wrongdoing at WMI.  *See*

26  Douglas L. Davies & Laura Marquez-Garrett, "Financial Misconduct is Not Just a Civil Matter,"

27  U.S. BANKER (June 2009), *available at* http://www.americanbanker.com/usb_issues/119_6/-

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 4

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1   380011-1.html  ("In the ongoing criminal investigation of Washington Mutual, for example,

2   federal authorities admit that they are utilizing evidence emerging from a massive shareholder

3   class-action lawsuit against the thrift and its officers.")  The staff of the U.S. Senate Permanent

4   Subcommittee on Investigations, which has conducted its own inquiry into the circumstances

5   leading to WMI's collapse, contacted Lead Counsel and requested information obtained through

6   Lead Plaintiff's investigation.  The FDIC, as receiver for Washington Mutual Bank, has recently

7   filed two civil actions that track certain of the allegations in the Consolidated Complaint.

8   Specifically, in March 2011, the FDIC filed a civil action against three of the Officer Defendants

9   raising claims based on many of the same facts and circumstances alleged by Lead Plaintiff in

10  this Action.  And, in May 2011, the FDIC filed suit against LSI – the company whose role in

11  WMI's flawed appraisal process was first discussed at length in the Consolidated Complaint –

12  alleging that it had breached its contract with Washington Mutual Bank, acted with gross

13  negligence, and violated professional appraisal standards.

14          Based on this investigation, Lead Plaintiff filed the Consolidated Complaint, which

15  included Brockton Contributory Retirement System as an additional named plaintiff and asserted

16  claims against WMI, Killinger, Casey, Cathcart, Rotella, and Schneider under Section 10(b) and

17  Rule 10b-5 of the Securities Exchange Act of the 1934 (the "Exchange Act"); and against

18  Killinger, Casey, Cathcart, Rotella, Schneider, Woods, Ballenger, and certain of the Outside

19  Director Defendants under Section 20(a) of the Exchange Act.  The Consolidated Complaint

20  alleged that the Defendants named in these Exchange Act claims made, or controlled others who

21  made, materially false and misleading statements about the effectiveness of WMI's risk

22  management procedures, the fairness and reliability of the appraisals received in connection with

23  WMI's loans, the quality of WMI's underwriting practices and WMI's financial results,

24  including the appropriate allowances for its loan losses, and that these false and misleading

25  statements caused the prices of WMI's securities to be artificially inflated.  The Consolidated

26  Complaint also asserted claims against WMI, Killinger, Casey, Woods, the Outside Director

27  Defendants, Deloitte, the Underwriter Defendants, Lehman Brothers Inc. ("Lehman"), and Banc

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 5

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

of America Securities LLC ("BOA") under Section 11 of the Securities Act of 1933 (the "Securities Act"); against WMI, the Underwriter Defendants, Lehman, and BOA under Section 12(a)(2) of the Securities Act; and against Killinger, Casey, Woods, Ballenger, and the Outside Director Defendants under Section 15 of the Securities Act.   The Consolidated Complaint alleged that the Defendants named in the Securities Act claims were statutorily liable for materially untrue statements and misleading omissions in the registration statement and offerings documents for four public offerings that WMI conducted in during the Class Period.

On September 26, 2008, WMI filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, causing the Action to be stayed against it pursuant to 11 U.S.C. § 362(a).[4]

On December 8, 2008, all Defendants (except WMI and Lehman against whom the Action had been stayed) moved to dismiss the Consolidated Complaint, and on May 15, 2009, the Court entered an order granting in part and denying in part the motions to dismiss and ordering that certain claims be re-pled.   On June 15, 2009, Lead Plaintiff filed the Amended Consolidated Class Action Complaint (the "Amended Complaint").   In addition to Lead Plaintiff Ontario Teachers and named plaintiff Brockton, the Amended Complaint named Pompano Beach Police and Firefighters' Retirement System, Harlan Seymour, and Police and Fire Retirement System of the City of Detroit as other named plaintiffs.   The Amended Complaint alleged claims substantially similar to those in the Consolidated Complaint and again alleged claims under Sections 10(b), 20(a) and Rule 10b-5 of the Exchange Act and Sections 11, 12(a)(2) and 15 of the Securities Act.

On July 17, 2009, Defendants again filed motions to dismiss.   On October 27, 2009, the Court entered an Order largely sustaining the claims asserted in the Amended Complaint.   The Court sustained the Exchange Act claims against all the Defendants against whom they were

---

[4]   On September 15, 2008, Lehman Brothers Holdings, Inc. filed for bankruptcy protection and, on September 19, 2008, the United States District Court for the Southern District of New York entered an Order staying certain proceedings, including this Action, against Lehman pursuant to 11 U.S.C. § 362(a).

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 6

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

asserted.  The Court dismissed Securities Act claims relating to certain securities on standing grounds, but sustained all other Securities Act claims asserted.

Both rounds of motions to dismiss were extensively briefed by the parties and were forcefully argued by some of the nation's most prominent and highly skilled defense law firms, including Simpson Thacher & Bartlett LLP, which represented the Officer Defendants out of its New York and Los Angeles offices; Gibson, Dunn & Crutcher LLP, which represented the Underwriter Defendants out of its New York and Los Angeles offices; Latham & Watkins, LLP, which represented Deloitte out of its New York and Los Angeles offices; and Perkins Coie LLP, of Seattle, which represented the Outside Director Defendants.  The detailed evidence developed in Lead Plaintiff's extensive pre-filing investigation and included in the complaints was instrumental in Lead Plaintiff's successful efforts to maintain all Exchange Act claims and the majority of the Securities Act claims asserted in the face of this forceful opposition.

Formal discovery began in November 2009, following the resolution of the motions to dismiss.  Discovery in this Action was an extensive, nationwide process that ultimately included more than 23 million pages produced by WMI, the other Settling Defendants, and numerous third parties.  Plaintiffs' Counsel took 26 depositions in locations across the country, including numerous depositions of WMI employees and employees of certain of the other Settling Defendants.  In connection with class certification, Plaintiffs' Counsel also defended 12 depositions of each of the proposed class representatives and their financial advisors.  Both fact and class certification discovery was intensely litigated with several disputes between the parties that required briefing and resolution before the Court.  Lead Counsel and the experts retained by Lead Plaintiff carefully reviewed and analyzed the evidence developed through the discovery process and were able to gain a deeper and more detailed understanding of the facts supporting Lead Plaintiff's claims and to begin preparing to prove those claims at trial.

On April 30, 2010, Lead Plaintiff filed its motion for class certification and, following thorough briefing and argument before the Court, Lead Plaintiff succeeded in obtaining certification of an appropriate class.  The Court's October 12, 2010 Class Certification Order

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 7

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

largely approved Lead Plaintiff's proposed class, excluding purchasers of one security from the certified class on standing grounds.  The Settling Defendants filed three petitions in the Ninth Circuit seeking interlocutory review of the Court's class certification order under Rule 23(f), which Lead Plaintiff successfully defended.  The Ninth Circuit denied review of the petitions on December 10, 2010.

During this same time period, Lead Plaintiff was fighting in the Bankruptcy Court in Delaware to ensure that the Class's claims against WMI would be preserved.  In connection with this effort, Lead Plaintiff filed an objection to the confirmation of WMI's Plan of Reorganization and engaged in negotiations and discussions with counsel for WMI and for JP Morgan Chase that resulted in an agreement that protected the Class's claims against WMI from being released in the Bankruptcy Action.

On December 1, 2010, the Underwriter Defendants moved for judgment on the pleadings, a motion in which all other non-stayed Defendants joined, contending that certain of the remaining Securities Act claims were barred by the statute of limitations.   Lead Plaintiff successfully opposed the motion, which the Court denied on January 28, 2011 after oral argument.

Throughout the litigation, as appropriate, Lead Counsel consulted extensively with experts in accounting and auditing, loan underwriting and statistical analysis, risk management, loss reserve modeling and damages.  Prior to the Settlements, Lead Counsel had already begun substantial work with these experts to prepare their testimony for summary judgment and trial.  The extensive preparation of these experts – which became apparent to Defendants during the motion for class certification and the mediation process – demonstrated to Defendants that Lead Plaintiff was prepared to try the case to a jury and was instrumental in obtaining the favorable Settlements achieved.

Representatives of Ontario Teachers, a sophisticated institutional lead plaintiff, were actively involved in every facet of the litigation, including reviewing the pleadings and key briefs, attending numerous court hearings and the mediation sessions, and playing an active role

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 8

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

in the settlement negotiations.   Lead Plaintiff and Lead Counsel also benefited from the extensive substantive involvement of Liaison Counsel for Plaintiffs in the prosecution of the case.   Liaison Counsel took and defended multiple depositions, conducted witness interviews, worked with experts and was directly involved in the mediation.   Counsel for the other Class Representatives also played substantive roles in the prosecution of the action, including preparing their clients for depositions on class certification issues and participating in the discovery process, which work was coordinated by Lead Counsel to avoid duplication of efforts.

## II.   The Settlements Are The Result Of Intense And Protracted Settlement Negotiations And Mediation Sessions

The Settlements are the result of arms'-length settlement negotiations that extended over several months and included multiple mediation sessions.   The mediations were overseen by Judge Layn R. Phillips, former United States District Judge for the Western District of Oklahoma and former United States Attorney for the Northern District of Oklahoma, who is one of the most experienced and respected mediators in the field of securities class actions.   The mediation process began in October 2010 and included submission of multiple sets of mediation statements on liability and damages by the parties.   The joint mediation sessions, which took place in New York City at the request of Defendants, occurred on multiple dates in February and March 2011 (the sessions with the Individual Defendants and their Insurers occurred on February 18 and March 22 and 23, and those with the Underwriter Defendants and Deloitte took place on February 18 and 23 and March 24).   Agreements in principle to settle with the Individual Defendants and Deloitte were reached on the day of the final mediation session with each of these sets of Defendants – March 23, 2011 and March 24, 2011, respectively.   Lead Plaintiff was not able to reach an agreement with Underwriter Defendants then, and intense settlement negotiations continued with the Underwriter Defendants for another week until an agreement in principle was reached on March 30, 2011.    Even after agreements-in-principle to settle were reached, the mediation process continued as the parties sought the input of the mediator to resolve disputes that arose during the preparation of the final settlement papers.

Throughout the settlement negotiation process, the Court's structured scheduling order,

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 9

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

which made clear that the Court was moving this Action forward toward trial, encouraged all parties to engage in serious and sustained negotiations and was instrumental in the success of the settlement discussions.

### III.   The Terms of the Settlements

The Settlements, as set forth in the Stipulations, provide for payments of $105 million by the Individual Defendants' Contributing Insurers, $85 million by or on behalf of the Underwriter Defendants, and $18.5 million by or on behalf of Deloitte and provide for the release of claims against the Settling Defendants, BOA and their respective related parties (the "Released Defendant Parties").

In the Court's October 12, 2010 Order on Class Certification, the Court certified the Class proposed in the Amended Complaint (and as set forth in Lead Plaintiff's motion for class certification), as modified by the Court's rulings on the motions to dismiss and in the Order on Class Certification.  In the Stipulations, the Settling Parties have set forth the definition of the Class, specifically listing the securities that are included in the Class (referred to as the "WMI Class Securities"), so that potential Class Members who receive a Notice can determine whether they are included in the Class.  The Settling Parties have made a minor change to the scope of the exclusions from the Class to clarify that Investment Vehicles (as defined in the Stipulations), in which an Underwriter Defendant may have a direct or indirect interest or for which an affiliate of an Underwriter Defendant may act as an investment advisor but in which the Underwriter Defendant does not own a majority beneficial interest, are not intended to be excluded from the Class.  If approved by the Court, the Settlements will resolve all claims of Class Members against the Settling Defendants and the other Released Defendant Parties and will conclude the Action.

With respect to the Settlement with the Individual Defendants, in light of the pendency of WMI's bankruptcy proceeding, the inclusion of WMI as a Settling Defendant and the fact that insurance proceeds are being used to fund the Settlement, the parties have agreed that within 10 days of the entry of the Preliminary Approval Order in this Action, WMI will file a motion with

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 10

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

the bankruptcy court for the limited purpose of obtaining authorization for WMI to enter into the Settlement and authorization, to the extent necessary, to use the proceeds of the D&O insurance policies to fund the Settlement.  WMI's motion will be similar to the motion put before and granted by the bankruptcy court in connection with the settlement of the parallel ERISA action, *In re Washington Mutual ERISA Litigation*, Lead Case No. 07-cv-1874.

The $208.5 million total amount of the Settlements is the largest settlement ever achieved in a securities class action in the Western District of Washington and the $85 million settlement reached with the Underwriter Defendants is the second largest settlement ever achieved against a group of underwriter defendants for claims asserted only under the Securities Act (following only *WorldCom*).  Lead Plaintiff and Lead Counsel believe that the Settlements are excellent results and are in the best interests of the Class.

ARGUMENT

**I.    The Proposed Settlements Warrant Preliminary Approval**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of claims brought on a class basis.  Approval of a proposed settlement is a decision committed to the sound discretion of the district court.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  This discretion should be exercised in the context of "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs*, 955 F.2d at 1276; *see also In re Skilled Healthcare Grp., Inc. Sec. Litig.*, No. CV 09-5416, 2011 WL 280991, at *2 (C.D. Cal. Jan. 26, 2011) ("judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

Accordingly, the Ninth Circuit has held that, in making its assessment under Rule 23(e), the Court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 11

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

Approval of class action settlements generally proceed in two stages: preliminary approval, followed by notice to the class, and then final approval.   *See Williams v. Costco Wholesale Corp.*, No. 02cv2003, 2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010); *Pierce v. Novastar Mortg., Inc.*, No. C05-5835 RJB, 2007 WL 1847216, at *3 (W.D. Wash. June 27, 2007).  During the preliminary approval stage, the court need only make a preliminary evaluation of the fairness of the settlements to determine whether they are within the permissible "range of possible judicial approval" and whether notice should be issued to the Class.  *Williams*, 2010 WL 761122, at *5; NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002).   Preliminary approval should be granted if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval." *Williams*, 2010 WL 761122, at *5; *accord Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).

At this point, the Court need not answer the ultimate question: whether the Settlements are fair, reasonable and adequate.  *See* Fed. R. Civ. P. 23(e)(2); *Hanlon*,150 F.3d at 1026.  When the Court makes this ultimate determination during the final approval process, the Court will be asked to consider the following (non-exclusive) factors: the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining a class action through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of Class Members to the Settlements.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1026; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 12

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

The Settling Parties here request only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlements.  The proposed Settlements, which provide a total of $208.5 million in cash for distribution to eligible Class Members, after deduction of Court-awarded fees and expenses, are unquestionably beneficial to the Class.  Given the complexities of this Action and the continued risks if the parties were to proceed, the Settlements represent reasonable resolutions to the parties' disputes and eliminate the risk that the Class might recover less or nothing at all.  The factors supporting approval of the Settlements will be reviewed in greater detail in Lead Plaintiff's final approval papers, but a brief review of the some of the most important factors, set forth below, demonstrates that the Settlements clearly fall within "the range of possible approval."

### A.   The Settlements Were Negotiated At Arms' Length And Are Supported By Lead Plaintiff And Experienced Counsel

The Settlements were negotiated at arms' length, by counsel who are experienced in complex securities litigation and who were acting in an informed manner.  The settlement negotiations here involved multiple sets of defendants represented by well-informed and highly skilled defense counsel and took several months of intense negotiations to reach fruition.  The vigorous and arms'-length nature of the settlement negotiations rebuts any suggestion that the Settlements were the product of collusion and gives rise to a presumption that the Settlements are fair.  *See Riker v. Gibbons*, No. 3:08-cv-00115, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010); *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).  The fact that the Settlements were negotiated with the assistance of an experienced mediator who is a retired judge further strengthens the presumption of fairness.  *See Carter v. Anderson Mech., LP*,  No. EDCV 08-00025, 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (quoting *Satchell v. Fed. Express Corp.*, No. C03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)); *see also In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated with the assistance of Judge Layn Phillips and referring to him as "one of the most prominent and highly

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 13

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1   skilled mediators of complex actions").

2   Moreover, at the time the settlement discussions began, Lead Counsel had already

3   conducted an extensive investigation into the claims asserted, had reviewed millions of pages of

4   produced documents, had taken numerous depositions and consulted extensively with experts in

5   preparation for trial.  As a result, both Lead Plaintiff and Lead Counsel were well informed about

6   the strengths and weaknesses of the case at the time the Settlements were reached, and both Lead

7   Plaintiff and Lead Counsel have endorsed the Settlements as excellent results for the Class.

8   In determining whether to approve the settlements, the Court should give substantial

9   weight to the views of experienced and informed counsel, bearing in mind "the unique ability of

10   class counsel to assess potential risks and rewards of litigation."  *Hughes v. Microsoft Corp.*, No.

11   V98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001); *see Washington Pub.*

12   *Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) ("Counsels' opinions

13   warrant great weight both because of their considerable familiarity with this litigation and

14   because of their extensive experience in similar actions.").  The approval of Lead Plaintiff, a

15   sophisticated institutional investor with a substantial financial stake in the litigation, which was

16   closely involved throughout the litigation and the settlement negotiations, also supports approval

17   of the Settlements.  *See In re Portal Software, Inc. Sec. Litig.*, No. C003-5183, 2007 WL

18   4171201, at *5 (N.D. Cal. Nov. 26, 2007) (lead plaintiff's active involvement in settlement

19   negotiations supported approval of the settlement); *In re Global Crossing Sec. & ERISA Litig.*,

20   225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor

21   plaintiffs in the settlement process supported approval).

**B.     The Substantial Benefits Obtained For The Class, Especially In Light
Of The Risks Of Litigation, Support Approval Of The Settlements**

22
23
24   The Settlements provide for substantial benefits to the class in the form of a total

25   recovery of $208.5 million in cash, plus interest, to be allocated among Class Members after

26   deduction for Court-approved fees and expenses and the costs of providing notice and

27   administering the Settlements.   If the Action had continued, Lead Plaintiff would have

confronted a number of substantial challenges in establishing liability and damages at trial,

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 14

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

including (i) establishing that the Defendants alleged to have violated Section 10(b) of the Exchange Act had acted with *scienter*; (ii) refuting the Underwriter Defendants' and Deloitte's due diligence defenses to Securities Act liability; and (iii) establishing loss causation and damages on all claims, and, in particular, establishing that Class Members' losses were attributable to WMI-specific false statements rather than other news or market-wide changes. With respect to the settlement achieved with the Individual Defendants, Lead Plaintiff also had to consider the fact that WMI was in bankruptcy and that the only pool of available insurance funds for these Defendants was a "wasting asset" that was being rapidly depleted by their substantial defense costs with each passing month of litigation (in this as well as in the several other actions in which these Defendants are named). Accordingly, failure to reach a settlement with the Individual Defendants at this juncture would have certainly have led to a smaller insurance pool from which these Defendants could fund any later settlement or pay any litigated judgment. Indeed, Lead Plaintiff considered there to be a real possibility that the insurance funds would be exhausted if the Action proceeded all the way through to trial.

In addition, litigating this complex securities fraud action to completion through a jury trial (and the resolution of the appeals that would almost certainly be taken from any favorable verdict) would result in significant additional expenses and delay for the Class. Thus, the substantial recovery achieved, in light of the risk of a lesser recovery or no recovery at all, strongly supports preliminary approval of the Settlements.

### C. The Stage Of The Proceedings And The Discovery Completed Support Approval Of The Settlements

The relatively developed stage of the litigation and the extensive fact discovery completed are additional factors that support the Settlements. As discussed above, Lead Plaintiff advanced this case through the drafting of the Consolidated Complaint and Amended Complaint, opposed two rounds of vigorously litigated motions to dismiss, conducted substantial discovery, successfully moved for class certification, opposed a motion for judgment on the pleadings, and prepared for and participated in multiple mediation sessions. Lead Counsel had conducted a thorough investigation of the facts and claims in this case, which was subsequently supplemented

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 15

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

by extensive fact discovery, including review and analysis of over 23 million pages of documents produced by Defendants and third parties and numerous depositions. Accordingly, at the time the parties agreed to the Settlements, Lead Plaintiff and Lead Counsel had a firm understanding of the strengths and weakness of the claims asserted.

### D. The Settlements Are Beneficial to the Class And Do Not Grant Any Preferential Treatment To Class Representatives Or Segments Of The Class

The $208.5 million in total recoveries in the Settlements constitute significant and certain benefits for the Class and the Settlements do not grant any preferential treatment to Class Representatives or segments of the Class. The Class Representatives will receive a distribution from the proceeds of the Settlements in accordance with the Plan of Allocation in the same manner as all other Class Members. The only other consideration that Class Representatives may receive is an award of their costs and expenses incurred directly relating to their representation of the Class as provided under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* 15 U.S.C. §§ 77z-1(a)(4), 78u-4(a)(7). The proposed Plan of Allocation will allocate the Net Settlement Funds to Authorized Claimants on a *pro rata* basis based on an allocation formula that considers the type and number of WMI Class Securities purchased, the dates the WMI Class Securities were purchased and sold, and the prices of the purchases and sales.

\*       \*       \*

In sum, nothing in the course of the settlement negotiations or terms of the Settlements discloses any grounds to doubt the fairness of the Settlements. On the contrary, the substantial recovery for the Class, the extensive investigation, the well developed litigation, the arms'-length nature of the negotiations, and the participation of experienced counsel and an experienced mediator, amply support a finding that the proposed Settlements are "within the range of possible approval" so as to justify notice to the Class and scheduling of a hearing on final approval.

## II. The Proposed Notice To The Class Satisfies All The Requirements Of Rule 23, The PSLRA And Due Process

As set forth in the Preliminary Approval Order, Lead Plaintiff will notify potential Class

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 16

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

Members of the Settlements by mailing the Notice and Claim Form to all potential Class Members who can be identified with reasonable effort.  The Notice will advise Class Members of the essential terms of the Settlements; provide specifics on the date, time and place of the Settlement Hearing and information regarding Lead Counsel's motion attorneys' fees and expenses.  The Notice will also apprise Class members of their rights to exclude themselves from the Class or to object to the Settlements, the Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of expenses, and set forth the procedures for requesting exclusion from the Class and for objecting.  In addition, a Summary Notice of the Settlements will be published once each in *The Seattle Times* and the national edition of *The Wall Street Journal* and will be transmitted over *PR Newswire* within fourteen days of the mailing of the Notice.  Lead Counsel will also post a copy of the Notice on a designated website for settlements, www.WashingtonMutualSecuritiesLitigationSettlement.com, and its own website, www.blbglaw.com.

The proposed form and manner of providing notice to the Class satisfy all the requirements of Rule 23, the PSLRA, and due process.  Notice of a class action settlement is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (the notice should "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").  The proposed Notice satisfies this standard and meets all of the content requirements of Rule 23(c)(2)(B) and the PSLRA, including descriptions of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) information about class members' rights to enter an appearance through an attorney; (v) information about class members' rights to exclude themselves from the class; (vi) the timing and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members who do not exclude themselves; *see* Fed. R. Civ. P. 23(c)(2)(B); as well as

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 17

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

statements of (i) the amount of the proposed settlements, in the aggregate and on average per share basis; (ii) the average amount of damages per share that would be recoverable if plaintiff prevailed or a statement that the parties do not agree on the average amount of recoverable damages per share; (iii) the amount of attorneys' fees and costs that will be sought by plaintiffs' counsel; (iv) the name, telephone number, and address of a representative of class counsel, and (v) a brief statement explaining why the parties are proposing the settlements, *see* 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7).

The Notice and Claim Form will be mailed to all Class Members who can be identified with reasonable effort.  The Notice and Claim Form will also be mailed to brokers and nominees with instructions that the broker or nominee forward those materials to the beneficial owners of WMI Class Securities or provide the Claims Administrator with a list of such owners.  This proposed method for distribution of the Notice to the Class provides "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P.  23(c)(2)(B); and is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Individual mailing by first-class mail to all class members whose names and addresses are reasonably available, supplemented by publication notice in an effort to reach those class members whose identities or addresses may not be available, has routinely been found to constitute the "best notice practicable" to class members in securities class actions.  *See, e.g., Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *In re Portal Software, Inc. Sec. Litig.*, No. C003-5183, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007).

## SCHEDULE OF SETTLEMENT EVENTS

In connection with preliminary approval of the Settlements, the Court must set a date and time for the final approval hearing (the "Settlement Hearing").  Other deadlines in the settlement

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 18

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

approval process, including the deadlines for requesting exclusion from the Class, objecting to the Settlements or submitting a Claim Form will be determined based on the date of the Settlement Hearing or on the date that the Preliminary Approval Order is entered.  Lead Plaintiff proposes the following schedule:

| **Event** | **Date** |
|---|---|
| Deadline for mailing the Notice and Claim Form to Class Members | No later than 21 calendar days after entry of the Preliminary Approval Order (the "Notice Date") |
| Deadline for publishing the Summary Notice | No later than 14 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlements, the Plan of Allocation and Lead Counsel's motion for attorneys' fees and litigation expenses | No later than 40 calendar days prior to the final Settlement Hearing |
| Deadline for submission of objections or requests for exclusion | No later than 25 calendar days prior to the final Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| The Settlement Hearing | To be determined by the Court (at least 100 days after entry of the Preliminary Approval Order) |
| Deadline for submission of Claim Forms | 120 days after the Notice Date |

Lead Counsel proposes a date for the Settlement Hearing on any day that is convenient for the Court in early November 2011.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully moves the Court to enter the proposed Preliminary Approval Order.

Dated: June 30, 2011                              Respectfully submitted,

BERNSTEIN LITOWITZ BERGER &
     GROSSMANN LLP

By:  /s/  *Hannah Ross*
Hannah Ross (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444
Email: hannah@blbglaw.com

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 19

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

katherine@blbglaw.com

-and-

Timothy A. DeLange (*pro hac vice*)
Jon F. Worm (*pro hac vice*)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323

**Counsel for Lead Plaintiff**
**Ontario Teachers' Pension Plan Board and**
**Lead Counsel for the Class**

BYRNES & KELLER LLP
Bradley S. Keller, WSBA# 10665
Jofrey M. McWilliam, WSBA# 28441
1000 Second Avenue, Suite 3800
Seattle, Washington  98104
Tel:    (206) 622-2000
Fax:    (206) 622-2522
Email: bkeller@byrneskeller.com
        jmcwilliam@byrneskeller.com

**Liaison Counsel for the Class**

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
[PLC-19]
Master No: 2:08-md-1919 MJP
Page 20

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2011, I electronically filed the foregoing and all of its attachments with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses on the Court's Electronic Mail Notice list.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

By:  /s/  *Hannah Ross*
Hannah Ross (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444
Email:  hannah@blbglaw.com
          katherine@blbglaw.com

*Counsel for Lead Plaintiff*
*Ontario Teachers' Pension Plan Board*
*and Lead Counsel for the Class*

BYRNES & KELLER LLP
Bradley S. Keller, WSBA# 10665
Jofrey M. McWilliam, WSBA# 28441
1000 Second Avenue, Suite 3800
Seattle, Washington  98104
Tel:    (206) 622-2000
Fax:    (206) 622-2522
Email:  bkeller@byrneskeller.com
          jmcwilliam@byrneskeller.com

*Liaison Counsel for the Class*

LEAD PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT [PLC-
19]
Master No: 2:08-md-1919 MJP

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400