# Exhibit 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION, | No. 2:08-md-1919 MJP Lead Case No. C08-387 MJP |
| This Document Relates to: ALL ACTIONS | |

## STIPULATION AND AGREEMENT OF SETTLEMENT
## WITH INDIVIDUAL OFFICER AND DIRECTOR DEFENDANTS
## AND WITH WASHINGTON MUTUAL, INC.

This Stipulation and Agreement of Settlement (the "Stipulation") is entered into by and among: (i) Ontario Teachers' Pension Plan Board ("Ontario Teachers"), Lead Plaintiff in the consolidated class action styled *In re Washington Mutual, Inc. Securities Litigation*, No. 2:08-md-1919 MJP (W.D. Wash.), Lead Case No. C08-387 MJP (the "Action"[1]), one of the actions that comprises the Multidistrict Litigation captioned *In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation*, Case No. 2:08-md-1919 MJP (W.D. Wash), on behalf of itself and the Class;[2] (ii) Defendants Kerry K. Killinger, Thomas W. Casey, Stephen J. Rotella, Ronald J. Cathcart, David C. Schneider, John F. Woods, Melissa J. Ballenger (collectively, the "Officer Defendants"), Anne V.

---

[1] The term "Action" expressly excludes *Flaherty & Crumrine Preferred Income Fund Inc. v. Killinger et al.*, 09-1756 (W.D. Wash.) and *In re Washington Mutual, Inc. California Securities Litigation*, 09-664 (W.D. Wash.).

[2] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein, unless a contrary indication appears.

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

Farrell, Stephen E. Frank, Thomas C. Leppert, Charles M. Lillis, Phillip D. Matthews, Regina Montoya, Michael K. Murphy, Margaret Osmer McQuade, Mary E. Pugh, William G. Reed, Jr., Orin C. Smith, James H. Stever and Willis B. Wood, Jr. (collectively, the "<u>Outside Director Defendants</u>" and, together with the Officer Defendants, the "<u>Individual Defendants</u>"); and (iii) Defendant Washington Mutual, Inc. ("<u>WMI</u>" or the "<u>Company</u>" and, together with the Individual Defendants the "Settling Defendants") by and through their respective counsel, is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure, and is subject to (a) the approval of the United States District Court for the Western District of Washington (the "<u>District Court</u>"), and (b) entry of the Bankruptcy Court Approval Order by the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").  Subject to the terms expressly provided herein, this Settlement is intended to settle and release all Settled Claims, including without limitation, the Bankruptcy Claims.

WHEREAS:

A.     Beginning in November 2007, three securities class actions, *Koesterer v. Washington Mutual, Inc., et al.*, No. C08-0387 MJP; *Abrams and Roffe v. Washington Mutual, Inc., et al.*, No. C-08-388 MJP; and *Garber v. Washington Mutual, Inc., et al.*, No. C08-465 MJP were commenced in the United States District Court for the Southern District of New York (the "<u>Southern District of New York</u>") against WMI and certain of its officers and directors who are also named as Individual Defendants (collectively, the "<u>Securities Actions</u>").  The Securities Actions alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "<u>Exchange Act</u>"), and Rule 10b-5 promulgated thereunder, with respect to public disclosures concerning the lending practices

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

2

1 and financial condition of WMI.  A fourth putative securities class action, *Nelson v. Woods, et al.*,

2 No. C 07-1809 MJP, was commenced in the District Court and was voluntarily dismissed, without

3 prejudice, on March 3, 2008.

4          B.        On February 21, 2008 and March 17, 2008, the United States Judicial Panel on

5 Multidistrict Litigation ordered that the Securities Actions, together with a number of related

6 derivative and ERISA actions, be centralized for coordinated pretrial proceedings in the District

7 Court and that the Securities Actions pending in the Southern District of New York be transferred to

8 the District Court.

9          C.        On May 7, 2008, the District Court entered an Order consolidating the Securities

10 Actions and any related pending or subsequently filed actions into the Action; appointing Ontario

11 Teachers as Lead Plaintiff, Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel and

12 Byrnes Keller Cromwell LLP as Liaison Counsel in the Action; and ordering Lead Plaintiff to file an

13 amended complaint.

14          D.        On May 13, 2008, Brockton Contributory Retirement System ("Brockton") filed a

15 class action complaint, *Brockton Contributory Retirement System v. Washington Mutual, Inc., et al.*,

16 No. C08-751 MJP,  alleging claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933

17 (the "Securities Act") against certain of the Underwriter Defendants, certain of the Officer

18 Defendants and Outside Director Defendants and Deloitte & Touche LLP ("Deloitte") in connection

19 with (i) the August 2006 offering (the "August 2006 Offering") of $500 million of floating rate notes

20 due August 24, 2009 (the "Floating Rate Notes") and $400 million of 5.50% notes due August 24,

21 2011 (the "5.50% Notes"); (ii) the September 2006 offering (the "September 2006 Offering") of

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

$500 million in Series K perpetual non-cumulative floating rate preferred stock ("Series K Stock");

and (iii) the October 2007 offering (the "October 2007 Offering") of $500 million of 7.250%

subordinated notes due November 1, 2017 (the "7.250% Notes").  Such action was subsequently

consolidated into the Action.

E.     On August 5, 2008, Lead Plaintiff filed the Consolidated Class Action Complaint

(the "Consolidated Complaint"), which included Brockton as an additional named plaintiff.  The

Consolidated Complaint asserted claims against WMI, Killinger, Casey, Cathcart, Rotella, and

Schneider under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and

against Killinger, Casey, Cathcart, Rotella, Schneider, Woods, Ballenger, and certain of the Outside

Director Defendants under Section 20(a) of the Exchange Act.  The Consolidated Complaint alleged

that the named defendants in the Exchange Act claims made, or controlled others who made,

materially false and misleading statements about the effectiveness of WMI's risk management

procedures, the fairness and reliability of the appraisals received in connection with WMI's loans,

the quality of WMI's mortgage underwriting practices and WMI's financial results, including the

appropriate allowances for its loan losses, and that these false and misleading statements caused the

prices of WMI's securities to be artificially inflated during the Class Period.  The Consolidated

Complaint also asserted claims against WMI, Killinger, Casey, Woods, the Outside Director

Defendants, Deloitte, the Underwriter Defendants, Lehman Brothers Inc. ("Lehman") and Banc of

America Securities LLC ("BOA") under Section 11 of the Securities Act; against WMI, the

Underwriter Defendants, Lehman and BOA under Section 12(a)(2) of the Securities Act; and against

Killinger, Casey, Woods, Ballenger, and the Outside Director Defendants under Section 15 of the

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

Securities Act.  The Consolidated Complaint alleged that the named defendants in the Securities Act claims were statutorily liable for materially untrue statements and misleading omissions in the registration statement and offering documents for four public offerings WMI conducted during the Class Period, including the August 2006 Offering, the September 2006 Offering, the October 2007 Offering and WMI's December 2007 offering (the "December 2007 Offering") of $3 billion in 7.75% Series R Non-Cumulative Perpetual Convertible Preferred Stock (the "Series R Stock").

F.     On September 25, 2008, the Office of Thrift Supervision (the "OTS"), by order number 2008-36, closed Washington Mutual Bank ("WMB"), appointed the FDIC Receiver as receiver for WMB and advised that the FDIC Receiver was immediately taking possession of WMB's assets.  Upon its appointment as receiver, the FDIC Receiver sold substantially all the assets of WMB to JPMorgan Chase Bank, National Association, pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008.

G.     On September 26, 2008, WMI and WMI Investment Corp. (together, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court, as jointly administered, *In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW) (the "Chapter 11 Cases").  As a result, all claims against WMI in the Action were stayed pursuant to 11 U.S.C. § 362(a).[3]

H.     On December 16, 2008, the Bankruptcy Court entered an Order Modifying Automatic

---

[3]  On September 19, 2008, the Southern District of New York entered an order commencing a proceeding under the Securities Investor Protection Act of 1970 (SIPA) with respect to Lehman and staying certain proceedings, including the Action, against Lehman pursuant to 11 U.S.C. § 362(a). *SIPC v. Lehman Bros. Inc.*, 08 cv 8119 (S.D.N.Y. Sept. 19, 2008 [Dkt. No. 1].

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

5

Stay to Allow Advancement Under Insurance Policies that, among other things, authorized the Contributing Insurers to advance defense fees and costs incurred by the Officer Defendants and the Outside Director Defendants in the Action.

I.      The Bankruptcy Court established March 31, 2009 at 5:00 p.m. (Eastern Time) (the "Bankruptcy Bar Date") as the deadline for filing proofs of claim against the Debtors and their chapter 11 estates.

J.      Prior to the Bankruptcy Bar Date, Plaintiffs filed the following proofs of claim in the Chapter 11 Cases on their own behalf against WMI with respect to the claims asserted in the Action (the "Individual Claims"):

| Claim No. | Claimant | Debtor | Amount |
|---|---|---|---|
| 2761 | Ontario Teachers' Pension Board | WMI | Unliquidated |
| 2763 | Brockton Contributory Retirement System | WMI | Unliquidated |

K.      Prior to the Bankruptcy Bar Date, Lead Plaintiff also filed the following proof of claim in the Chapter 11 Cases on behalf of the Class with respect to the claims asserted in the Action (the "Class Claim" and, together with the Individual Claims, the "Bankruptcy Claims"):

| Claim No. | Claimant | Debtor | Amount |
|---|---|---|---|
| 2759 | Lead Plaintiff on behalf of the Class in In re Washington Mutual Securities Litigation | WMI | Unliquidated |

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

6

1       L.      On March 18, 2010, the Debtors filed the Debtors' Twenty-Eighth Omnibus

2    (Substantive) Objection to Claims (the "Twenty-Eighth Omnibus Objection") and asserted that (i)

3    the Class Claim should be disallowed because the Lead Plaintiff failed to seek certification on behalf

4    of the putative class pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure (the

5    "Bankruptcy Rules"), and (ii) any recovery on account of the Bankruptcy Claims should be

6    subordinated pursuant to section 510(b) of the Bankruptcy Code.  By stipulation, dated May 17,

7    2010 (the "Claim Stipulation"), the Lead Plaintiff, on its own behalf and on behalf of the Class, as

8    well as Brockton on its own behalf, and the Debtors, agreed (i) to a consensual resolution of the

9    Twenty-Eighth Omnibus Objection whereby the Lead Plaintiff and Brockton would stipulate to the

10    subordination of the Bankruptcy Claims consistent with section 510(b) of the Bankruptcy Code, and

11    (ii) to the withdrawal, without prejudice, of the Twenty-Eighth Omnibus Objection pursuant to the

12    terms of the Claim Stipulation.  By order, dated May 19, 2010, the Bankruptcy Court approved the

13    Claim Stipulation and granted the Twenty-Eighth Omnibus Objection, as modified, thereby

14    subordinating the Bankruptcy Claims, to the extent allowed, consistent with section 510(b) of the

15    Bankruptcy Code.

16       M.     On December 8, 2008, all of the Defendants, other than WMI and Lehman, filed

17    motions to dismiss the Consolidated Complaint, which were fully briefed and argued to the District

18    Court.  On May 15, 2009, the District Court entered an order granting in part and denying in part the

19    motions to dismiss.  The District Court denied Defendants' motions to dismiss the claims under the

20    Securities Act concerning the October 2007 Offering, but granted Defendants' motions to dismiss

21    the Securities Act claims concerning the August 2006 Offering, the September 2006 Offering and

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

the December 2007 Offering.  Additionally, the District Court ordered that the Exchange Act claims be re-pled.

N.      On June 15, 2009, Lead Plaintiff filed the Amended Consolidated Class Action Complaint (the "Amended Complaint").  In addition to Lead Plaintiff Ontario Teachers and named plaintiff Brockton, the Amended Complaint included Pompano Beach Police and Firefighters' Retirement System ("Pompano Beach"), Harlan Seymour ("Seymour"), and Police and Fire Retirement System of the City of Detroit ("Detroit P&F") as named plaintiffs.  Like the Consolidated Complaint, the Amended Complaint asserted claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder; and under Sections 11, 12(a)(2) and 15 of the Securities Act.  The Amended Complaint alleged claims substantially similar to those in the Consolidated Complaint.

O.      On July 17, 2009, all Defendants (except WMI and Lehman, against which the Action had been stayed) filed motions to dismiss the Amended Complaint.  The motions were fully briefed and argued to the District Court.  On October 27, 2009, the District Court sustained the Exchange Act claims against all the Defendants against whom they were asserted and dismissed the Section 11 claims relating to the August 2006 offering of 5.50% Notes and the Section 12(a)(2) claims relating to the 5.50% Notes, the Floating Rate Notes, and the Series K Stock, but sustained all other Securities Act claims asserted.

P.      On January 15, 2010, all Defendants, other than WMI and Lehman, filed answers to the Amended Complaint.

Q.      On April 30, 2010, Lead Plaintiff filed a motion for class certification which was

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

8

fully briefed and argued to the District Court.

R.     On October 12, 2010, the District Court entered an Order (the "October 12, 2010 Order") granting Lead Plaintiff's motion for class certification except with respect to named plaintiff Seymour and the Series K Stock. The District Court certified Lead Plaintiff and additional named plaintiffs Pompano Beach, Brockton and Detroit P&F (collectively, the "Additional Named Plaintiffs") as class representatives and appointed Lead Counsel as Class Counsel. The District Court excluded named plaintiff Seymour and the Series K Stock from the certified class.[4]

S.     On December 1, 2010, the Underwriter Defendants moved for judgment on the pleadings, a motion in which all Defendants (other than WMI and Lehman) joined, contending that the remaining Securities Act claims relating to the August 2006 Offering and the December 2007 Offering were barred by the statute of limitations. The District Court heard oral argument on the motion on January 27, 2011 and denied the motion on January 28, 2011.

T.     Pursuant to the District Court's Order, dated November 25, 2009, the parties were directed to engage in mediation to determine whether a consensual resolution of the Action could be achieved. Lead Plaintiff and the Individual Defendants, through their respective counsel, engaged in extensive arm's-length negotiations that included mediation sessions on February 18, 2011 and March 22 and 23, 2011, with an experienced mediator, former United States District Judge Layn R. Phillips and extensive additional settlement discussions and negotiations during February and March

---

[4] BOA, which was an underwriter for the Series K Stock, was dismissed from the Action pursuant to the District Court's October 12, 2010 Order.

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

9

2011, including the submission of detailed mediation briefs to Judge Phillips.  With Judge Phillips'

assistance, on March 23, 2011, Lead Plaintiff reached an agreement-in-principle to settle with the

Individual Defendants, on terms that include the use of the Directors' and Officers' Liability

Insurance Policies to fund the payment of One Hundred Five Million Dollars ($105,000,000.00), in

cash, to be paid by the Contributing Insurers for the benefit of the Class.

U.       Lead Counsel has conducted an investigation and pursued discovery relating to the

claims and the underlying events and transactions alleged in the Amended Complaint.  Lead Counsel

has analyzed the evidence adduced during its investigation and through discovery, which included

almost 500 witness interviews, review of over 23 million pages of documents produced by

Defendants and others, and dozens of depositions; has consulted with numerous experts, including

experts in accounting and auditing, risk management, loss reserve modeling, statistical analysis and

damages; and has researched the applicable law with respect to the claims of Lead Plaintiff and the

Class against the Settling Defendants and the potential defenses thereto.

V.       Based upon its investigation and what it has learned through its prosecution of the

Action, Lead Counsel has concluded that the terms and conditions of the Settlement are fair,

reasonable and adequate to Lead Plaintiff and the other members of the Class, and in their best

interests.  Based on Lead Plaintiff's direct oversight of the prosecution of the Action, along with the

input of Lead Counsel, Lead Plaintiff has agreed to settle the Action against the Settling Defendants

and to withdraw, with prejudice, the Bankruptcy Claims in the Chapter 11 Cases, pursuant to the

terms and provisions of this Stipulation, after considering (i) the substantial benefits that Lead

Plaintiff and the other members of the Class will receive from the resolution of the Action against

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

the Settling Defendants and the withdrawal, with prejudice, of the Bankruptcy Claims in the Chapter 11 Cases, pursuant to the terms and provisions of this Stipulation; (ii) the attendant risks of litigation; and (iii) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

W.     Each of the Settling Defendants denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Settling Defendants with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Settling Defendants have asserted, or could have asserted, in the Action or in the Chapter 11 Cases with respect to the Bankruptcy Claims or otherwise.  The Settling Parties recognize, however, that the Action and the Bankruptcy Claims have been filed and prosecuted by Lead Plaintiff and defended by the Settling Defendants in good faith under Rule 11 of the Federal Rules of Civil Procedure, and, where applicable,  Rule 9011 of the Bankruptcy Rules, and that the Action is being voluntarily settled and the Bankruptcy Claims withdrawn, with prejudice, with the advice of counsel.  The Settling Parties recognize that the terms of the Settlement are fair, adequate and reasonable.  The Settling Defendants are entering into this Settlement solely to avoid the cost and distraction of further litigation.

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiff of any lack of merit of the Action or the Bankruptcy Claims whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in their defenses whatsoever by any of the Settling Defendants, it is hereby STIPULATED AND AGREED, by and among the parties to this Stipulation, through their respective attorneys, subject to entry of (a) the Bankruptcy Court Approval

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

Order by the Bankruptcy Court, and (b) the Judgment, by the District Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties from the Settlement, that all Settled Claims against the Released Defendant Parties and all Released Claims by Defendants as to Plaintiffs shall be unconditionally, fully, finally and forever compromised, settled, released and dismissed, with prejudice, and the Bankruptcy Claims shall be withdrawn, with prejudice, in their entirety, upon and subject to the following terms and conditions:

## **DEFINITIONS**

1.        As used in this Stipulation, the following terms shall have the following meanings:

(a)        "Alternative Judgment" means a form of final judgment that may be entered by the District Court but in a form other than the form of Judgment provided for in this Stipulation.

(b)        "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim Form to the Claims Administrator, in accordance with the requirements established by the District Court, that is approved for payment from the Net Settlement Fund.

(c)        "Bankruptcy Court Approval Order" means the order of the Bankruptcy Court authorizing WMI to consummate the Settlement contemplated herein, and authorizing, to the extent necessary, the use of the proceeds of the Directors' and Officers' Liability Insurance Policies for the payment and funding of the Settlement Amount.

(d)        "Claim" means a completed and signed Proof of Claim Form submitted to the Claims Administrator in accordance with the instructions on the Proof of Claim Form.

(e)        "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit "2" to Exhibit "A", that a Claimant or Class Member must complete

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1   in order that the Claimant or Class Member may be eligible to share in a distribution of the Net

2   Settlement Fund.

3      (f) "<u>Claimant</u>" means a person or entity that submits a Claim Form to the Claims

4   Administrator seeking to share in the proceeds of the Net Settlement Fund.

5      (g) "<u>Claims Administrator</u>" means the firm retained by Lead Plaintiff and Lead

6   Counsel, subject to approval of the District Court, to provide all notices approved by the District

7   Court to potential Class Members and to administer the Settlement.

8      (h) "<u>Class</u>" means the class defined in paragraph 870 of the Amended Complaint

9   and modified by Orders of the District Court dated, May 15, 2009, October 27, 2009, and October

10   12, 2010.  Specifically, the Class includes all persons and/or entities who purchased or otherwise

11   acquired the WMI Class Securities during the Class Period  and were damaged thereby.  Excluded

12   from the Class are (i) Defendants; (ii) members of the Immediate Family of each Individual

13   Defendant; (iii) any other person who was an officer or director of WMI, Deloitte, any of the

14   Underwriter Defendants, Lehman, or BOA during the Class Period; (iv) any firm, trust, corporation,

15   or other entity in which any Defendant has or had a controlling interest; (v) any person who

16   participated in the wrongdoing alleged in the Action; (vi) TPG Capital and other purchasers of equity

17   securities issued by WMI in connection with the $7 billion capital issuance pursuant to the

18   agreements entered into by and among TPG Capital and WMI and other investors, announced by the

19   Company on April 8, 2008 (the "<u>TPG Deal</u>"), to the extent that such purchasers exercised distinct

20   rights and diligence opportunities afforded them in connection with the TPG Deal; and (vii) the legal

21   representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

excluded party, provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition.  Also excluded from the Class are any persons or entities who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

(i) "Class Distribution Order" means an order entered by the District Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(j) "Class Member" means a person or entity that is a member of the Class, including, without limitation, Lead Plaintiff and the Additional Named Plaintiffs, and does not exclude himself, herself or itself by filing a request for exclusion in accordance with the requirements set forth in the Notice.

(k) "Class Period" means the period from October 19, 2005 to July 23, 2008.

(l) "Contributing Insurers" means those insurers issuing the Directors' and Officers' Liability Insurance Policies, as defined below, and (1) who contribute to the Settlement Amount, and/or (2) whose applicable Directors' and Officers' Liability Insurance Policy proceeds have been exhausted as of the date the Settlement Amount is fully funded, by (a) payment of defense fees and costs or (b) payment of settlements of matters other than the Action on behalf of any insureds under the Directors' and Officers Liability Insurance Policies.

(m) "Defendants" means the Settling Defendants and all other persons or entities that were named as defendants in the Consolidated Complaint or the Amended Complaint.

(n) "Directors' and Officers' Liability Insurance Policies" means the following

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

14

1 policies with a policy period of May 1, 2007 to May 1, 2008:  (i) National Union (AIG) Policy

2 Number 741-98-06 ("National Union Policy") with an aggregate limit of $25,000,000; (ii) XL

3 Specialty Policy Number ELU097687-07 ("XL Specialty Policy") with an aggregate limit of

4 $15,000,000 excess of the National Union Policy; (iii) Twin City Fire (Hartford) Policy Number

5 DA1497374 ("Twin City Fire Policy") with an aggregate limit of $15,000,000 excess of the National

6 Union Policy and the XL Specialty Policy; (iv) ACE American Policy Number DOXG21669994 004

7 ("ACE American Policy") with an aggregate limit of $15,000,000 excess of the National Union

8 Policy, the XL Specialty Policy and Twin City Fire Policy; (v) Arch Insurance Policy Number

9 DOX0006090-02 ("Arch Insurance Policy") with an aggregate limit of $15,000,000 excess of the

10 National Union Policy, the XL Specialty Policy, the Twin City Fire Policy and the ACE American

11 Policy; (vi) Continental Casualty Company (Continental) Policy Number 287127607 ("Continental

12 Policy") with an aggregate limit of $5,000,000 excess of the National Union Policy, the XL

13 Specialty Policy, the Twin City Fire Policy, the ACE American Policy and the Arch Insurance

14 Policy; (vii) Federal Insurance Company Policy Number 8208-3395 ("Federal Policy") with an

15 aggregate limit of $5,000,000 excess of the National Union Policy, the XL Specialty Policy, the

16 Twin City Fire Policy, the ACE American Policy and the Arch Insurance Policy; (viii) St. Paul

17 Mercury Policy Number 590CM2684 ("St. Paul Policy") with an aggregate limit of $15,000,000

18 excess of the National Union Policy, the XL Specialty Policy, the Twin City Fire Policy, the ACE

19 American Policy, the Arch Insurance Policy, the Continental Policy and the Federal Policy; (ix)

20 RSUI Policy Number N-HS625033 ("RSUI Policy") with an aggregate limit of $10,000,000 excess

21 of the National Union Policy, the XL Specialty Policy, the Twin City Fire Policy, the ACE

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

American Policy, the Arch Insurance Policy, the Continental Policy, the Federal Policy and the St. Paul Policy; (x) ACE Westchester Policy Number G23822660-001 ("ACE Westchester Policy") with an aggregate limit of $10,000,000 excess of the National Union Policy, the XL Specialty Policy, the Twin City Fire Policy, the ACE American Policy, the Arch Insurance Policy, the Continental Policy, the Federal Policy and the St. Paul Policy; (xi) AIG Casualty (Starr Excess) Policy Number 347-2092 ("AIG Casualty Policy") with an aggregate limit of $20,000,000 excess of the National Union Policy, the XL Specialty Policy, the Twin City Fire Policy, the ACE American Policy, the Arch Insurance Policy, the Continental Policy, the Federal Policy, the St. Paul Policy, the RSUI Policy and the ACE Westchester Policy; (xii) XL Specialty Side A Policy Number ELU097685-07 ("XL Specialty Side A Policy") with an aggregate limit of $25,000,000 excess of the National Union Policy, the XL Specialty Policy, the Twin City Fire Policy, the ACE American Policy, the Arch Insurance Policy, the Continental Policy, the Federal Policy, the St. Paul Policy, the RSUI Policy, the ACE Westchester Policy, and the AIG Casualty Policy; (xiii) Federal Insurance Side A Policy Number 6802-6117 ("Federal Insurance Side A Policy") with an aggregate limit of $25,000,000 in excess of the National Union Policy, the XL Specialty Policy, the Twin City Fire Policy, the ACE American Policy, the Arch Insurance Policy, the Continental Policy, the Federal Policy, the St. Paul Policy, the RSUI Policy, the ACE Westchester Policy, the AIG Casualty Policy and the XL Specialty Side A Policy; (xiv) Twin City Fire (Hartford) Side A Policy Number DA0218197 ("Twin City Fire Side A Policy") with an aggregate limit of $10,000,000 in excess of the National Union Policy, the XL Specialty Policy, the Twin City Fire Policy, the ACE American Policy, the Arch Insurance Policy, the Continental Policy, the Federal Policy, the St. Paul Policy, the

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1    RSUI Policy, the ACE Westchester Policy, the AIG Casualty Policy, the XL Specialty Side A Policy

2    and the Federal Insurance Side A Policy; (xv) Continental Casualty Company (Continental) Side A

3    Policy Number 287127641-2 ("Continental Side A Policy") with an aggregate limit of $5,000,000 in

4    excess of the National Union Policy, the XL Specialty Policy, the Twin City Fire Policy, the ACE

5    American Policy, the Arch Insurance Policy, the Continental Policy, the Federal Policy, the St. Paul

6    Policy, the RSUI Policy, the ACE Westchester Policy, the AIG Casualty Policy, the XL Specialty

7    Side A Policy, the Federal Insurance Side A Policy and the Twin City Fire Side A Policy; (xvi) Axis

8    Reins Co. Side A Policy Number RNN 713043/01/2007 ("Axis Reins Co. Side A Policy") with an

9    aggregate limit of $10,000,000 in excess of the National Union Policy, the XL Specialty Policy, the

10   Twin City Fire Policy, the ACE American Policy, the Arch Insurance Policy, the Continental Policy,

11   the Federal Policy, the St. Paul Policy, the RSUI Policy, the ACE Westchester Policy, the AIG

12   Casualty Policy, the XL Specialty Side A Policy, the Federal Insurance Side A Policy and the Twin

13   City Fire Side A Policy; and (xvii) those certain Lloyd's Underwriters and Companies severally

14   subscribing to Side A Policy Number 509QA015507 ("Lloyd's Side A Policy") with an aggregate

15   limit of $25,000,000 in excess of the National Union Policy, the XL Specialty Policy, the Twin City

16   Fire Policy, the ACE American Policy, the Arch Insurance Policy, the Continental Policy, the

17   Federal Policy, the St. Paul Policy, the RSUI Policy, the ACE Westchester Policy, the AIG Casualty

18   Policy, the XL Specialty Side A Policy, the Federal Insurance Side A Policy, the Twin City Fire Side

19   A Policy, the Continental Side A Policy and the Axis Reins Co. Side A Policy.

20          (o)    "Effective Date" means the first business day on which, unless otherwise

21   waived by the Settling Parties, all of the events and conditions specified in ¶ 32 of this Stipulation

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

have been met and have occurred.

(p) "Escrow Account" means the account maintained at Valley National Bank to hold the Settlement Fund, which account, subject to the District Court's supervisory authority, shall be under the control of Lead Counsel.

(q) "Escrow Agent" means Valley National Bank.

(r) "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(s) "Final" means, with respect to any order or judgment, including, without limitation, the Bankruptcy Court Approval Order and the Judgment or, if applicable, the Alternative Judgment: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing of any appeal under the Federal Rules of Civil Procedure, i.e., thirty (30) days after entry of the order or judgment; or (ii) if there is an appeal from the order or judgment, the date of (a) final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise to review the order or judgment, or (b) the date the order or judgment is finally affirmed on appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance of the order or judgment following review pursuant to that grant; provided, however, that any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, or (ii) the Plan of Allocation (or such other plan of allocation as the court may approve), shall not in any way delay or preclude the

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

18

1    Judgment or Alternative Judgment from becoming Final.

2              (t)    "Immediate Family" means an individual's spouse, parents, siblings, children,

3    grandparents, grandchildren; the spouses of his or her parents, siblings and children; and the parents

4    and siblings of his or her spouse, and includes step and adoptive relationships.  In this paragraph,

5    "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic partnership or

6    civil union.

7              (u)    "Investment Vehicle" means  any investment company or pooled investment

8    fund, including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and

9    hedge funds, in which any Underwriter Defendant, BOA or Lehman has or may have a direct or

10   indirect interest, or as to which its affiliates may act as an investment advisor but in which the

11   Underwriter Defendant, BOA or Lehman or any of the their respective affiliates is not a majority

12   owner or does not hold a majority beneficial interest.  This definition does not bring into the Class

13   any of the Underwriter Defendants, BOA or Lehman.

14             (v)    "Judgment" means the judgment, substantially in the form attached hereto as

15   Exhibit "B," approving the Settlement, to be entered by the District Court pursuant to Rule 54(b) of

16   the Federal Rules of Civil Procedure.

17             (w)    "Lead Counsel" means the law firm of Bernstein Litowitz Berger &

18   Grossmann LLP.

19             (x)    "Lead Plaintiff" means Ontario Teachers.

20             (y)    "Liaison Counsel" means the law firm of Byrnes Keller Cromwell LLP.

21             (z)    "Litigation Expenses" means costs and expenses incurred in connection with

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

commencing and prosecuting the Action (which may include the costs and expenses of Plaintiffs directly related to their representation of the Class), for which Lead Counsel intends to apply to the District Court for reimbursement from the Settlement Fund.

(aa)    "Net Settlement Fund" means the Settlement Fund less:  (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the District Court; and (iv) any attorneys' fees awarded by the District Court.

(bb)    "Notice" means the Notice of (I) Pendency of Class Action and Proposed Settlements, (II) Settlement Fairness Hearing, and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, which is to be sent to members of the Class, substantially in the form attached hereto as Exhibit "1" to Exhibit "A".

(cc)    "Notice and Administration Costs" means the costs, fees and expenses  that are incurred by the Claims Administrator and/or Lead Counsel in connection with (i) providing notice to the Class; (ii) administering the Claims process; and (iii) the Escrow Account.

(dd)    "Other Defendants" means, for purposes of this Settlement, the Underwriter Defendants, Lehman and Deloitte.

(ee)    "Plaintiffs" means, collectively, Lead Plaintiff and the Additional Named Plaintiffs.

(ff)    "Plaintiffs' Counsel" means, collectively, Lead Counsel, Liaison Counsel and all other legal counsel who, at the direction and under the supervision of Lead Counsel, performed services on behalf of the Class.

(gg)    "Plan of Allocation" means the proposed plan of allocation of the Net

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1   Settlement Fund set forth in the Notice.

2   (hh)   "Preliminary Approval Order" means the order, substantially in the form

3   attached hereto as Exhibit "A", to be entered by the District Court preliminarily approving the

4   Settlement and directing notice be provided to the Class.

5   (ii)   "Related Parties" means, (i) with respect to each Individual Defendant, his or

6   her assigns, attorneys, advisors (other than the Underwriter Defendants), representatives, members of

7   his or her Immediate Family, heirs, executors, estates, administrators, insurers, including, without

8   limitation the Contributing Insurers and reinsurers, (ii) with respect to WMI, its predecessors,

9   successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past or

10  present officers, directors, agents, partners, principals, members, employees, attorneys, advisors

11  (other than the Underwriter Defendants), auditors and accountants (other than Deloitte), insurers,

12  including, without limitation, the Contributing Insurers, and reinsurers; (iii) with respect to all

13  Settling Defendants, any firm, trust, corporation, or other entity in which any of the Settling

14  Defendants has or had a controlling interest; provided, however, that Related Parties do not include

15  any of the Other Defendants (as defined herein) or any of the Other Defendants' Related Parties as

16  defined in the Stipulation and Agreement of Settlement in the Action between Lead Plaintiff and the

17  Underwriter Defendants and in the Stipulation and Agreement of Settlement in the Action between

18  Lead Plaintiff and Deloitte.

19  (jj)   "Released Defendant Parties" means any and all of the Settling Defendants

20  and each of their respective Related Parties, including, without limitation, the Contributing Insurers.

21  (kk)   "Released Claims by Defendants as to Plaintiffs" means any and all claims,

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

rights, demands, liabilities or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorney's fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether known claims or Unknown Claims, that have been or could have been asserted in the Action or in this or any other forum, including, without limitation, in the Chapter 11 Cases, by or on behalf of the Released Defendant Parties or any of them, or the successors and assigns of any of them against Lead Plaintiff, Plaintiffs' Counsel, any other Class Member or any of their respective attorneys, which arise out of or relate in any way to the filing, prosecution, or settlement of the Action (except for claims to enforce the Settlement).

(ll)    "Settled Claims" means any and all claims, rights, demands, liabilities, or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorney's fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), to the fullest extent that the law permits their release in this Action or in the Chapter 11 Cases, by or on behalf of Lead Plaintiff or any other Class Members against any of the Released Defendant Parties that have been alleged or could have been alleged in the Action or in the Chapter 11 Cases, including without limitation, the Bankruptcy Claims, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether known claims or Unknown Claims, whether class or individual in nature, whether fixed or contingent, accrued or un-accrued, liquidated or unliquidated, whether at law or in equity, matured or unmatured, that (i) are based on, relate to or arise out of the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, representations, acts or omissions or failures to act that have been or could

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1    have been alleged in the Action or in the Chapter 11 Cases with respect to the Bankruptcy Claims or

2    otherwise, and/or (ii) relate to or arise out of Lead Plaintiff's or any other Class Member's purchase,

3    acquisition or holding of WMI Released Securities during the Class Period insofar as it relates in any

4    way to any other matter covered in this definition of Settled Claims.  Settled Claims do not include,

5    release, bar, waive, impair or otherwise impact (i) any claims to enforce the Settlement; (ii) any

6    claims of the Class or any Class Member against any of the Other Defendants; (iii) the rights of any

7    Class Members to recover moneys from the settlement of the action styled *In re Washington Mutual*

8    *Inc. ERISA Litig.*, Lead Case No. 07-cv-1874; (iv) any claims asserted in the actions styled: *In re*

9    *Washington Mutual, Inc. California Securities Litigation*, No. 09-664 (W.D. Wash.), *Flaherty &*

10   *Crumrine Preferred Income Fund Incorporated, et al. v. Killinger*, et al., No. C09-1756 MJP (W.D.

11   Wash.), *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass-Through Certificates et*

12   *al.*, 09-37 (W.D. Wash.), and *Allstate Bank, et al. v. JPMorgan Chase Bank, NA, et al.,* Index No.

13   650398/2011 (N.Y. Supreme); (v) any claim or right to recovery of any Class Member individually

14   in the Chapter 11 Cases based solely upon his, her or its status as a holder or beneficial owner of a

15   WMI debt or equity security with respect to  their rights to participate in the distribution of funds in

16   the Chapter 11 Cases upon confirmation of a plan of reorganization or otherwise solely to the extent

17   that such distribution is being made on account of such debt or equity security; or (vi) Lead

18   Plaintiff's and each other Class Member's right to participate in the distribution of any funds

19   recovered from any of the Defendants by any governmental or regulatory agency.

20          (mm)   "Settlement" means the compromise and settlement among the Settling Parties

21   contemplated by this Stipulation.

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

23

1    (nn)   "Settlement Amount" means One Hundred Five Million Dollars

2    ($105,000,000.00), in cash.

3    (oo)   "Settlement Fund" means the Settlement Amount plus any and all interest

4    earned thereon from the date the Settlement Amount is deposited into the Escrow Account.

5    (pp)   "Settlement Hearing" means the hearing set by the District Court under

6    Rule 23(e)(1)(c) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

7    (qq)   "Settling Defendants' Counsel" means as to (i) Defendant Killinger, the law

8    firm of Wilson Sonsini Goodrich & Rosati; (ii) Defendants Casey, Rotella, Cathcart, Schneider, and

9    Woods, the law firms of Simpson Thacher & Bartlett LLP and Davis Wright Tremaine LLP; (iii)

10   Defendant Ballenger, the law firm of Orrick Herrington & Sutcliffe LLP; (iv) Defendants Farrell,

11   Frank, Leppert, Lillis, Matthews, Montoya, Murphy, Osmer McQuade, Pugh, Reed, Smith, Stever,

12   and Wood, the law firm of Perkins Coie LLP; and (v) Defendant WMI, the law firm of Weil, Gotshal

13   & Manges LLP.

14   (rr)   "Settling Parties" means the Settling Defendants and Lead Plaintiff, on behalf

15   of itself and the other Class Members, including, without limitation, the Additional Named

16   Plaintiffs.

17   (ss)   "Summary Notice" means the Summary Notice of (I) Pendency of Class

18   Action and Proposed Settlements, (II) Settlement Fairness Hearing, and (III) Motion for an Award of

19   Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto

20   as Exhibit "3" to Exhibit "A", to be published as set forth in the Preliminary Approval Order.

21   (tt)   "Taxes" means: (i) all federal, state and/or local taxes of any kind on any

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

24

1   income earned by the Settlement Fund after it is deposited into the Escrow Account; and (ii) the

2   expenses and costs incurred by Lead Counsel in connection with determining the amount of, and

3   paying, any federal, state and/or local taxes of any kind owed by the Settlement Fund (including,

4   without limitation, expenses of tax attorneys and accountants).

5   (uu)   "Underwriter Defendants" means Goldman, Sachs & Co., Morgan Stanley &

6   Co., Incorporated (now known as Morgan Stanley & Co. LLC), Credit Suisse Securities (USA)

7   LLC, Deutsche Bank Securities Inc., UBS Securities LLC, J.P. Morgan Securities Inc., Barclays

8   Capital Inc., Keefe, Bruyette & Woods, Inc., Cabrera Capital Markets, LLC, the Williams Capital

9   Group, L.P., Citigroup Global Markets, Inc., Greenwich Capital Markets, Inc.(now known as RBS

10   Securities Inc.), BNY Mellon Capital Markets LLC (successor to BNY Capital Markets, Inc.), and

11   Samuel A. Ramirez & Company, Inc.

12   (vv)   "Unknown Claims" means any Settled Claims which Lead Plaintiff or other

13   Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the

14   Released Defendant Parties, and any Released Claims by Defendants as to Plaintiffs which any

15   Released Defendant Party does not know or suspect to exist in his, her, or its favor at the time of the

16   release of Lead Plaintiff, Plaintiffs' Counsel, the other Class Members and their respective attorneys,

17   which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this

18   Settlement.  With respect to any and all Settled Claims and Released Claims by Defendants as to

19   Plaintiffs, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and

20   each of the Settling Defendants shall expressly waive, and each of the other Class Members and each

21   of the other Released Defendant Parties shall be deemed to have waived, and by operation of the

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

25

Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and each of the Settling Defendants acknowledge, and each of the other Class Members and each of the other Released Defendant Parties shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for as a key element of the Settlement.

(ww)   "WMI Class Securities" means WMI common stock; the Floating Rate Notes (CUSIP 939322AW3); the 7.250% Notes (CUSIP 939322AY9); the 7.75% Series R Stock (CUSIP 939322814); and Washington Mutual Capital Trust 2001's 5.375% Trust Preferred Income Equity Redeemable Securities (PIERS) Units, maturing 7/1/2041 ("Capital Trust Unit Preferred") (CUSIP 939322848).

(xx)   "WMI Released Securities" means, collectively, the WMI Class Securities, the 5.50% Notes (CUSIP 939322AX1) and the Series K Stock (CUSIP 939322830).

## RELEASE OF CLAIMS

2.   The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action against the Settling Defendants and the Bankruptcy Claims against WMI, and shall fully and finally release any and all Settled Claims against all Released Defendant Parties

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

and shall also fully and finally release any and all Released Claims by Defendants as to Plaintiffs against Lead Plaintiff, Plaintiffs' Counsel, each of the other Class Members and each of their respective attorneys.

3.     Upon the Effective Date: (i) Lead Plaintiff and all of the other Class Members, on behalf of themselves, their respective heirs, executors, administrators, predecessors, successors, assigns and agents, shall be deemed by operation of law to have irrevocably, absolutely and unconditionally, fully, finally and forever released, waived, discharged and dismissed, with prejudice, each and every Settled Claim against every Released Defendant Party, including, without limitation, the Bankruptcy Claims against WMI, and shall forever be enjoined from prosecuting any or all Settled Claims against any Released Defendant Party, including, without limitation, the Bankruptcy Claims against WMI; and (ii) the Bankruptcy Claims shall be withdrawn, with prejudice, in their entirety.

4.     Upon the Effective Date, each of the Settling Defendants, and each of the other Released Defendant Parties, on behalf of themselves, their respective heirs, executors, administrators, predecessors, successors, assigns and agents, shall be deemed by operation of law to have irrevocably, absolutely and unconditionally, fully, finally, and forever released, waived, discharged and dismissed, with prejudice, each and every of the Released Claims by Defendants as to Plaintiffs against Lead Plaintiff, Plaintiffs' Counsel and the other Class Members and their respective attorneys, and shall forever be enjoined from prosecuting any or all of the Released Claims by Defendants as to Plaintiffs against Lead Plaintiff, each Plaintiffs' Counsel, each of the other Class Members and each of their respective attorneys.

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

27

1

## THE SETTLEMENT CONSIDERATION

2      5.      In consideration of the Settlement of the Settled Claims, including without limitation

3 claims asserted in the Action under the Securities Act and under the Exchange Act, the Contributing

4 Insurers (which, as represented by the Individual Defendants, have consented to payment of the

5 Settlement Amount pursuant to the terms of the Stipulation) shall pay, in full satisfaction of the

6 monetary obligations under the terms of the Settlement, One Hundred Five Million Dollars

7 ($105,000,000.00), in cash, such amount to be deposited into the Escrow Account within thirty (30)

8 calendar days after the latest of: (a) the Preliminary Approval Order being entered by the District

9 Court, (b) the Bankruptcy Court Approval Order being entered by the Bankruptcy Court provided

10 however, that until the Bankruptcy Court Order becomes Final, no funds may be withdrawn from the

11 Escrow Account other than to pay Taxes and until the Bankruptcy Court Order becomes Final, any

12 instructions to the Escrow Agent shall require the signature of Perkins Coie in addition to Lead

13 Counsel; and (c) receipt by Individual Defendants' Counsel from Lead Counsel of full and complete

14 wiring or other instructions necessary for such payment, an executed W-9 for the Settlement Fund,

15 and payee name and address for delivery of payment by check.

16

## USE OF SETTLEMENT FUND

17      6.      The Settlement Fund shall be used to pay: (i) any Taxes; (ii) any Notice and

18 Administration Costs; (iii) any Litigation Expenses awarded by the District Court; and (iv) any

19 attorneys' fees awarded by the District Court.  The balance remaining in the Settlement Fund, that

20 is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 16-25

21 below.

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

7.       Except as expressly provided herein or pursuant to an Order of the District Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the District Court and shall remain subject to the jurisdiction of the District Court until such time as the Settlement Fund shall be distributed or returned pursuant to the terms of this Stipulation and/or further Order of the District Court.  The Escrow Agent shall invest the Settlement Fund in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balance in the Escrow Account of less than Two Hundred Fifty Thousand Dollars ($250,000.00) may be invested in money market mutual funds comprised exclusively of investments secured by the full faith and credit of the United States.  In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the Settlement Fund held by the Escrow Agent may be deposited in a non-interest bearing account that is fully insured by the FDIC.

8.       The Settling Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k) for the Settlement Fund.  Such returns shall be consistent with this paragraph and, in all events, shall reflect that all taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided below.  Lead Counsel shall also be responsible

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  Upon written request, the Individual Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

9.      All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without prior Order of the District Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Settlement Fund shall indemnify and hold harmless the Released Defendant Parties for federal, state and/or local taxes incurred in connection with the taxation of the Settlement Fund (including, without limitation, taxes paid by reason of any such indemnification).

10.     This is not a claims-made settlement.  Upon the occurrence of the Effective Date, none of the Contributing Insurers or any other person or entity who or which paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants,

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1   the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net

2   Settlement Fund.

3         11.    The Claims Administrator shall discharge its duties under Lead Counsel's supervision

4   and subject to the jurisdiction of the District Court.  Regardless of whether the Effective Date occurs,

5   the Released Defendant Parties shall have no responsibility whatsoever for the administration of the

6   Settlement, and shall have no liability whatsoever to any person or entity, including, but not limited

7   to, Plaintiffs, Plaintiffs' Counsel or any other Class Members or their respective attorneys, in

8   connection with any such administration; provided, however, that the Settling Defendants and their

9   respective counsel shall use their reasonable best efforts to assist Lead Counsel in obtaining the

10  Company's transfer records, consisting of the Class Period WMI Class Securities holders' names

11  and addresses in electronic form (at no cost to the Settlement Fund, Lead Counsel or the Claims

12  Administrator), in order to identify and provide notice to the Class.  Lead Counsel shall cause the

13  Claims Administrator to mail the Notice and Proof of Claim to those members of the Class at the

14  address of each such person as set forth in the records of WMI or its transfer agent (to the extent that

15  it is able to obtain such records) or who otherwise may be identified through further reasonable

16  effort.  Lead Counsel also shall cause the Summary Notice to be published pursuant to the terms of

17  the Preliminary Approval Order or whatever other form or manner might be ordered by the District

18  Court.

19        12.    Lead Counsel may pay from the Settlement Fund, without further approval from

20  Settling Defendants or further Order of the District Court, all reasonable Notice and Administration

21  Costs actually incurred.  Such costs and expenses shall include, without limitation, the actual costs of

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing Notice and processing the submitted claims, and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to the Contributing Insurers, or to any other person or entity who or which paid any portion of the Settlement Amount and the Settling Defendants agree that it shall be deemed to constitute Loss, as that term is defined in the Directors' and Officers' Liability Insurance Policies, which reduces the limits of liability.

## **ATTORNEYS' FEES AND LITIGATION EXPENSES**

13.     Lead Counsel will apply to the District Court for an award of attorneys' fees to Plaintiffs' Counsel, which shall be a percentage of the Settlement Fund to be approved by Lead Plaintiff.  Lead Counsel also will apply to the District Court for reimbursement of Litigation Expenses to be paid from the Settlement Fund.  No Settling Defendant, Contributing Insurer nor any other Released Defendant Party, shall take any position with respect to Lead Counsel's application for an award of such attorneys' fees and/or Litigation Expenses.  Such matters are not the subject of any agreement between Settling Defendants and Lead Plaintiff other than what is set forth in this Stipulation, and this Stipulation shall otherwise be enforceable according to its terms without regard to any modification, denial, appeal or other adverse ruling with respect to Lead Counsel's application for an award of attorneys' fees, costs or Litigation Expenses.

14.     Any attorneys' fees and Litigation Expenses that are awarded by the District Court

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

shall be paid to Lead Counsel from the Settlement Fund immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed.  Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after receiving from the Individual Defendants' Counsel or from a court of appropriate jurisdiction notice of  the termination of the Settlement or notice of any reduction of the award of attorneys' fees and/or Litigation Expenses.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation or this Settlement and is not a condition of this Stipulation or this Settlement. Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the District Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.  Apart from the Individual Defendants' obligation to cause the Contributing Insurers to pay the Settlement Amount to the Escrow Account as set forth in ¶ 5 above, the Released Defendant Parties shall have no liability or obligation whatsoever to any person or entity, including, but not limited to, Lead Plaintiff, Plaintiffs' Counsel, or any other Class Members or their respective counsel, with respect to any attorneys' fees, costs or expenses, or Litigation Expenses, regardless of the amount of any attorneys' fees, costs or expenses or Litigation Expenses approved by the District Court, and regardless of any termination of this Stipulation or the Settlement contained herein.

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

15.     Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the prosecution and settlement of the Action.

## CLAIMS ADMINISTRATION

16.     The Claims Administrator shall administer the process of receiving, reviewing and approving or denying Claims under Lead Counsel's supervision and subject to the jurisdiction of the District Court.  Other than the Settling Defendants' and their respective counsel's obligation to use their reasonable best efforts to assist Lead Counsel in obtaining the Company's transfer records, as provided in ¶ 11 herein, neither the Settling Defendants, their respective counsel nor the Released Defendant Parties shall have any responsibility whatsoever for the administration of the Settlement or the claims process and shall have no liability whatsoever to any person, including, but not limited to, Lead Plaintiff, Plaintiffs' Counsel, or any other Class Members or their respective attorneys in connection with such administration.  The Settling Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

17.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims (as defined in the Plan of Allocation set forth in the Notice, or in such other plan of allocation as the District Court approves) of all Authorized Claimants.

18.     The Plan of Allocation proposed in the Notice is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

approved by the District Court.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the District Court's or any appellate court's ruling with respect to the Plan of Allocation, any modification made to the Plan of Allocation, or any other plan of allocation as may be ordered by the District Court in this Action.  No Settling Defendant, nor any other Released Defendant Party, shall have any involvement in or responsibility or liability whatsoever for the Plan of Allocation or the allocation of the Net Settlement Fund.

19.    Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including, without limitation, the terms of the Judgment and the releases provided for therein or herein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind, including, without limitation, in the Chapter 11 Cases, against any Released Defendant Party concerning any Settled Claims.

20.    Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund.  No Settling Defendant, nor any other Released Defendant Party, shall have any liability, obligation or responsibility whatsoever for the administration of the Settlement or disbursement of the Net Settlement Fund.   No Settling Defendant, nor any other Released Defendant Party, shall be permitted to review, contest or object to any Claim Form or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim Form or Claim for payment by a Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

21.     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.   Each Class Member shall be required to submit a Claim Form, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

b.   All Claim Forms must be submitted by the date set by the District Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the District Court.  Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the District Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including, without limitation, the terms of the Judgment and the releases provided for therein and herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind, including, without limitation, in the Chapter 11 Cases, against any Released Defendant Party concerning the Settled Claims.  Provided that it is received before the motion for the Class Distribution Order is filed, a Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator;

c.   Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1   Stipulation the extent, if any, to which each Claim shall be allowed, subject to review by the District

2   Court pursuant to subparagraph (e) below;

3           d.   Claims that do not meet the submission requirements may be rejected.  Prior to

4   rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant

5   in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form

6   submitted.  The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely

7   fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in

8   whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant

9   whose Claim is to be rejected has the right to a review by the District Court if the Claimant so

10  desires and complies with the requirements of subparagraph (e) below;

11          e.   If any Claimant whose Claim has been rejected in whole or in part desires to

12  contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the

13  notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and

14  statement of reasons indicating the Claimant's grounds for contesting the rejection along with any

15  supporting documentation, and requesting a review thereof by the District Court.  If a dispute

16  concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request

17  for review to the District Court; and

18          f.   The administrative determinations of the Claims Administrator accepting and

19  rejecting Claims shall be presented to the District Court, on notice to Settling Defendants' Counsel,

20  for approval by the District Court in the Class Distribution Order.

21      22.     Each Claimant shall be deemed to have submitted to the jurisdiction of the District

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1   Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and

2   discovery under the Federal Rules of Civil Procedure; provided, however, that such investigation

3   and discovery shall be limited to that Claimant's status as a Class Member and the validity and

4   amount of the Claimant's Claim.  No discovery shall be allowed on the merits of the Action or this

5   Settlement in connection with the processing of Claim Forms.

6        23.   Lead Counsel will apply to the District Court, on notice to Settling Defendants, for a

7   Class Distribution Order: (i) approving the Claims Administrator's administrative determinations

8   concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any

9   administration fees and expenses associated with the administration of the Settlement from the

10  Settlement Fund, and (iii) if the Effective Date has occurred, directing payment of the Net Settlement

11  Fund to Authorized Claimants from the Escrow Account.

12       24.   Payment pursuant to the Class Distribution Order shall be final and conclusive

13  against all Class Members.  All Class Members whose Claims are not approved by the District Court

14  shall be barred from participating in distributions from the Net Settlement Fund.  Whether or not a

15  Class Member submits a Claim, or any Claim is not allowed either in whole or in part, all Class

16  Members shall be bound by all of the terms of this Stipulation and the Settlement, including, without

17  limitation, the terms of the Judgment and the releases provided for therein and herein, and will be

18  permanently barred and enjoined from bringing any action, claim or other proceeding, including,

19  without limitation, in the Chapter 11 Cases, against any and all Released Defendant Parties

20  concerning any Settled Claims.

21       25.   All proceedings with respect to the administration, processing and determination of

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1    Claims and the determination of all controversies relating thereto, including disputed questions of

2    law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the District

3    Court.

4    ## PRELIMINARY APPROVAL OF THE SETTLEMENT

5         26.     As soon as practical after execution of this Stipulation, the Lead Plaintiff and Lead

6    Counsel shall apply to the District Court for entry of the Preliminary Approval Order.

7    ## BANKRUPTCY COURT APPROVAL

8         27.     Within ten (10) business days of entry of the Preliminary Approval Order, WMI shall

9    file a motion with the Bankruptcy Court in the Chapter 11 Cases seeking entry of the Bankruptcy

10   Court Approval Order, which shall contain, in substantially the following form, the following

11   provisions:

12        ORDERED that the Stipulation and Settlement are fair and reasonable as to WMI
          and the Debtors are authorized to take all steps necessary to consummate the
13        Settlement;

14        ORDERED that the automatic stay, extant pursuant to section 362 of the Bankruptcy
          Code, to the extent applicable, is hereby modified so as to permit, and the
15        Contributing Insurers are hereby authorized, to the extent necessary, to pay the
          Settlement Amount from the Directors' & Officers' Liability Policies;
16
          ORDERED that, on and effective as of the date of the payment by the Contributing
17        Insurers of the Settlement Amount into the Escrow Account, consistent with this
          Order, and the Settlement and Stipulation, the Contributing Insurers will be deemed
18        discharged from any liability to any Insureds (as defined by the Directors' &
          Officers' Liability Insurance Policies) or other claimants for having paid the
19        Settlement Amount; it is further

20        ORDERED that, upon the Effective Date, as defined in the Stipulation and
          Settlement, the Bankruptcy Claims shall be deemed withdrawn, with prejudice, in
21        their entirety.

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

28.    The order to be proposed to the Bankruptcy Court shall contain the following language:   "ORDERED that nothing in this Order shall constitute a determination as to whether the proceeds of the insurance policies used in connection with the Settlement are or are not the property of WMI's estate."   Such language shall also be proposed in the Judgment and any Alternative Judgment.

## TERMS OF THE JUDGMENT

29.    If the Settlement contemplated by this Stipulation is approved by the District Court and the Bankruptcy Court Approval Order is entered by the Bankruptcy Court and becomes Final, Lead Counsel and Settling Defendants' Counsel shall request that the District Court enter the Judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

30.     The Judgment shall contain a provision, substantially in the form set forth in Exhibit "B" hereto (the "Bar Order"), barring claims for contribution by or against the Settling Defendants, to the fullest extent permitted by 15 U.S.C. §78u-4(f)(7) and any other applicable law or regulation. Nothing herein is intended to broaden the language of the Private Securities Litigation Reform Act of 1995.

31.    The Judgment shall also contain a provision, substantially in the form set forth in Exhibit "B" hereto, requiring that any final verdict or judgment that may be obtained by or on behalf of the Class or a Class Member against any person or entity subject to the Bar Order as defined herein be reduced by the greater of: (i) an amount that corresponds to the percentage of responsibility of the Settling Defendants for common damages; or (ii) the amount paid pursuant to this Settlement to the Class or Class Member for common damages.

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

## CONDITIONS OF SETTLEMENT AND EFFECT OF TERMINATION

32.     The Effective Date of this Stipulation shall be conditioned on the occurrence or waiver of all of the following events:

(a)     the District Court has entered the Preliminary Approval Order;

(b)     the Bankruptcy Court has entered the Bankruptcy Court Approval Order and that Order has become Final;

(c)     the Individual Defendants have caused the Contributing Insurers to deposit the Settlement Amount in the Escrow Account in accordance with the provisions of ¶ 5 hereof;

(d)     the Individual Defendants have not exercised their option to terminate the Settlement pursuant to ¶¶ 33 or 34 hereof;

(e)     the District Court has entered the Judgment and the Judgment has become Final, or the District Court has entered an Alternative Judgment, the Individual Defendants have not elected to terminate the Settlement and the Alternative Judgment has become Final.

33.     The Individual Defendants (provided they collectively agree) and Lead Plaintiff shall both have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so (the "Termination Notice") to the other parties to this Stipulation within thirty (30) days of: (a) the District Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Bankruptcy Court's declining to enter the Bankruptcy Court Approval Order in any material respect; (c) the District Court's refusal to approve this Stipulation and Settlement or any material part of it; (d) the District Court's declining to enter the Judgment, or any Alternative Judgment to which the Individual Defendants have consented, in any material respect; (e) the date

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1    upon which the Judgment is modified or reversed in any material respect by the Court of Appeals or

2    the Supreme Court; or (f) the date upon which an Alternative Judgment is modified or reversed in

3    any material respect by the Court of Appeals or the Supreme Court.  However, any decision with

4    respect to an application for attorneys' fees or Litigation Expenses, or with respect to any plan of

5    allocation, shall not be considered material to the Settlement, shall not affect the finality of the

6    Judgment, or an Alternative Judgment, and shall not be grounds for termination by any of the

7    Individual Defendants or Lead Plaintiff.

8         34.    In addition to the grounds set forth in ¶ 33, the Individual Defendants (provided they

9    collectively agree) shall have the right to terminate the Settlement and this Stipulation in the event

10   that Class Members requesting exclusion from the Class meet the conditions set forth in a

11   confidential supplemental agreement with Lead Plaintiff that is being executed concurrently with

12   this Stipulation (the "Supplemental Agreement").  The Supplemental Agreement shall not be filed

13   with the District Court and its terms shall not be disclosed in any other manner (other than the

14   statements herein and in the Notice) unless and until the District Court requires the Settling Parties to

15   file the Supplemental Agreement or disclose its terms or a dispute arises between Lead Plaintiff and

16   the Individual Defendants concerning its interpretation or application.  If submission of the

17   Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the

18   District Court, Lead Plaintiff and the Individual Defendants will undertake to have the Supplemental

19   Agreement submitted to the District Court *in camera*.

20        35.    Except as otherwise provided herein, in the event that the Settlement is terminated or

21   the Effective Date otherwise fails to occur: (a) the Settlement and this Stipulation, other than ¶¶ 14,

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

35 and 37, shall be null and void, and without prejudice; (b) none of the terms of the Settlement or this Stipulation, including, without limitation, the releases granted herein, shall be effective or enforceable; and (c) the facts of the Settlement shall not be admissible in any trial of the Action or in the Chapter 11 Cases with respect to the Bankruptcy Claims or otherwise;  (d) the Settling Defendants and Lead Plaintiff shall be deemed to have reverted to their respective status in the Action and the Chapter 11 Cases immediately prior to March 23, 2011 and, except as otherwise expressly provided herein, the Settling Defendants and Lead Plaintiff shall proceed in all respects as if this Stipulation and any related orders had not been entered; and (e) any portion of the Settlement Amount previously paid by the Contributing Insurers, together with any interest earned thereon, less any Taxes paid or due with respect to such income, and less Notice and Administration Costs actually incurred and paid or payable, shall be returned to the Contributing Insurers within fourteen (14) business days after joint written notification of such event by the Individual Defendants' Counsel and Lead Counsel to the Escrow Agent pursuant to the terms of the Escrow Agreement.  In the event that the Settlement is terminated or the Effective Date otherwise fails to occur at any time after the Contributing Insurers have fully funded the Settlement Amount, the Settlement Amount shall be refunded and distributed in accordance with written instructions to be provided by the Individual Defendants' Counsel to Lead Counsel, which written instructions shall provide, among other things, that any shortfall between the Settlement Amount funded by the Contributing Insurers and the amount actually refunded to the Contributing Insurers is deemed to constitute Loss as that term is defined in the Directors' and Officers' Liability Insurance Policies and which reduces the limits of liability.  The content of the written refund instructions provided by the Individual

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1    Defendants' Counsel to Lead Counsel and such instructions' compliance with the terms of this

2    provision shall be the sole obligation and responsibility of the Individual Defendants' Counsel.  Lead

3    Counsel's sole responsibility shall be compliance with the written instructions provided by the

4    Individual Defendants' Counsel and Lead Counsel shall have no other responsibility, obligation or

5    liability with respect to the content of said instructions, including but not limited to, any errors made

6    in connection therewith.

7                          **PRESERVATION OF CLAIMS IN CHAPTER 11 CASES**

8           36.    For the avoidance of doubt:

9                  a.    individual Class Members (including Lead Plaintiff and the Additional Named

10   Plaintiffs) have, or may have, claims in the Chapter 11 Cases based solely upon their status as

11   holders of various debt or equity securities of WMI.  This Stipulation and Settlement shall not in any

12   way release, impair or otherwise impact any claim or right to recovery of  any Class Member

13   individually in the Chapter 11 Cases based solely upon his, her or its status as a holder or beneficial

14   owner of a WMI debt or equity security with respect to the rights to participate in the distribution of

15   funds in the Chapter 11 Cases upon confirmation of a plan of reorganization or otherwise solely to

16   the extent that such distribution is being made on account of such debt or equity security, in addition

17   to any recovery that he, she or it may be entitled to receive pursuant to this Settlement;

18                 b.    except to the extent released pursuant to ¶ 4 hereof, nothing herein shall be

19   deemed to release, bar, waive, impair or otherwise impact any claims belonging to WMI, its

20   affiliates or successors in interest against any Class Members (including Lead Plaintiff and the

21   Additional Named Plaintiffs) or any Individual Defendants; nor shall anything herein be deemed to

22

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

44

release, bar, waive, impair or otherwise impact the defenses of any Class Members (including Lead Plaintiff and the Additional Named Plaintiffs) or any Individual Defendants to any such claims belonging to WMI or its affiliates and asserted against such persons or entities by WMI or its successors in interest; and

   c.  to the extent that any of the Individual Defendants have claims against WMI in the Chapter 11 Cases, other than claims for indemnification with respect to payments made to defend or settle the Action, nothing herein shall be deemed to release, bar, waive, impair or otherwise impact any such claims, or any defenses of WMI with respect thereto; except that to the extent that any insurers who issued any of the Directors' and Officers' Liability Insurance Policies claim subrogation rights against WMI on the basis of the Individual Defendants' indemnification claims, all such claims are preserved, as are WMI's defenses thereto.

## NO ADMISSION OF WRONGDOING

   37.  This Stipulation and Settlement, whether or not consummated, and any actions taken pursuant to it:

   a.  shall not be offered or received against any of the Released Defendant Parties as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission by any of the Released Defendant Parties with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted against any of the Released Defendant Parties in the Action, any other litigation, or in the Chapter 11 Cases with respect to the Bankruptcy Claims or otherwise, or the deficiency of any defense that has been or could have been asserted in the Action, any other litigation, or in the Chapter 11 Cases with respect

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

to the Bankruptcy Claims or otherwise, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendant Parties;

       b.     shall not be offered or received against any of the Released Defendant Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Released Defendant Parties;

       c.     shall not be offered or received against the Lead Plaintiff or any other Class Members as evidence of any infirmity in the claims of Lead Plaintiff or the other Class Members;

       d.     shall not be offered or received against any of the Released Defendant Parties, the Lead Plaintiff or any other Class Members, as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Defendant Parties, the Lead Plaintiff or any other Class Members, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that, if this Stipulation is approved by the District Court in the Judgment or Alternative Judgment, the Settling Defendants, any other Released Defendant Party, Lead Plaintiff and the other Class Members may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement;

       e.     shall not be construed against any of the Released Defendant Parties, Lead Plaintiff or any other Class Members as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

46

recovered after trial; and

     f.  shall not be construed against Lead Plaintiff or any other Class Members as an admission, concession, or presumption that any of their claims are without merit or that damages recoverable under the Amended Complaint would not have exceeded the Settlement Amount.

## MISCELLANEOUS PROVISIONS

   38.  All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

   39.  Each of the Individual Defendants warrants that, as to the payments made on behalf of him or her, at the time of entering into this Stipulation and at the time of such payment that he or she caused or will cause to be made pursuant to the terms above, he or she was not insolvent, nor will the payment required to be made by or on behalf of him or her render him or her insolvent, within the meaning of and/or for the purposes of the Bankruptcy Code, including but not limited to §§ 101 and 547 thereof.  This representation is made by each of the Individual Defendants and not by his or her counsel.

   40.  If a case is commenced in respect of any of the Individual Defendants, any Contributing Insurer, or any other person or entity contributing funds to the Settlement Fund under the Bankruptcy Code, or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof paid for the benefit of the Class to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

47

Settlement Fund by others, then, at the election of Lead Plaintiff, the Settling Parties shall jointly move the District Court to vacate and set aside the releases given and the Judgment or Alternative Judgment, if applicable, entered in favor of the Settling Defendants and the other Released Defendant Parties pursuant to this Stipulation, which releases and Judgment, or Alternative Judgment, shall be null and void as to the Settling Defendants and the other Released Defendant Parties, and the Settling Defendants and Lead Plaintiff shall be restored to their respective positions in the Action and in the Chapter 11 Cases as provided in ¶ 35 (including, without limitation, the reinstatement of the Bankruptcy Claims) and any cash amounts in the Settlement Fund shall be returned as provided in the same paragraph.

41.     Lead Plaintiff and the Settling Defendants intend this Settlement to be a final and complete resolution of all Settled Claims, including, without limitation, the Bankruptcy Claims. Accordingly, Lead Plaintiff and each of the Settling Defendants agree not to assert that the Action or the Bankruptcy Claims were brought by Plaintiffs or defended by Settling Defendants in bad faith or without a reasonable basis.  Neither Lead Plaintiff nor any Settling Defendant shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure or, where applicable, Rule 9011 of the Bankruptcy Rules, relating to the prosecution, defense, or settlement of the Action or the Bankruptcy Claims.  Lead Plaintiff and the Settling Defendants agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the parties, including at a mediation conducted by a former United States District Judge, and reflect a Settlement that was reached voluntarily after consultation with experienced legal counsel.

42.     This Stipulation may not be modified or amended, nor may any of its provisions be

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

waived, except by a writing signed by counsel for Lead Plaintiff and the Settling Defendants or their successors-in-interest.

43.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

44.     The administration and consummation of this Settlement as embodied in this Stipulation shall be under the authority of the District Court (except that the Bankruptcy Court shall retain jurisdiction over the interpretation and enforcement of the Bankruptcy Court Approval Order), and the District Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel and enforcing the terms of this Stipulation.

45.     The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any party of any other prior or subsequent breach of this Stipulation.

46.     This Stipulation, its exhibits and the Supplemental Agreement constitute the entire agreement among Lead Plaintiff and the Settling Defendants concerning the Settlement, and no representations, warranties, or inducements have been made by Lead Plaintiff or any Settling Defendant concerning this Stipulation and its exhibits other than those contained and memorialized in such documents or in the Supplemental Agreement.

47.     This Stipulation may be executed in one or more original and/or faxed counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

48.     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of Lead Plaintiff and the Settling Defendants.

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

49

49.     The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Washington without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

50.     This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations among the parties and all parties have contributed substantially and materially to the preparation of this Stipulation.

51.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or the Supplemental Agreement, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

52.     Lead Counsel and Settling Defendants' Counsel agree to cooperate fully with one another in seeking entry of: (i) the Preliminary Approval Order by the District Court, (ii) the Bankruptcy Court Approval Order by the Bankruptcy Court, and (iii) the Judgment by the District Court, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain such approvals.

53.     If any party is required to give notice to another party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile transmission with confirmation of receipt.  Notice shall be provided as follows:

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

| | | |
|---|---|---|
| 1 | If to Lead Plaintiff or Lead Counsel: | Bernstein Litowitz Berger & Grossmann LLP 1285 Avenue of the Americas |
| 2 | | New York, New York  10019 Telephone:  (212) 554 1400 |
| 3 | | Facsimile:   (212) 554 1444 Attn: Hannah G. Ross, Esq. |
| 4 | | |
| 5 | If to Defendant Killinger: | Wilson Sonsini Goodrich & Rosati Page Mill Road |
| 6 | | Palo Alto, California 94304 Telephone: (650) 493-9300 |
| 7 | | Facsimile:  (650) 493-6811 Attn: Jerome F. Birn, Jr., Esq. |
| 8 | If to the Outside Director Defendants: | Perkins Coie LLP 1201 Third Avenue |
| 9 | | Suite 4800 |
| 10 | | Seattle, Washington 98101-3099 Telephone: (206) 359-8477 Facsimile:  (206) 359-9477 |
| 11 | | Attn:  Ronald L. Berenstain, Esq. |
| 12 | If to Defendant Ballenger: | Orrick Herrington & Sutcliffe LLP 701 5th Avenue |
| 13 | | Suite 5600 |
| 14 | | Seattle, Washington 98104-7097 Telephone: (206) 839-4403 Facsimile:  (206) 839-4301 |
| 15 | | Attn:  George E. Greer, Esq. |
| 16 | If to Defendants Rotella, Casey,  Schneider, | Simpson Thacher & Bartlett LLP 425 Lexington Avenue |
| 17 | Cathcart and Woods: | New York, New York 10017-3954 Telephone: (212) 455-3093 |
| 18 | | Facsimile:  (212) 455-2502 Attn:  Barry R. Ostrager,  Esq. |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

If to Defendant WMI:        Weil, Gotshal & Manges, LLP
                            767 Fifth Avenue
                            New York, New York  10153
                            Telephone:  (212) 310-8000
                            Facsimile:  (212) 310-8007
                            Attn: Brian S. Rosen, Esq.

DATED: June _30_, 2011

**BERNSTEIN LITOWITZ BERGER &**          **WILSON SONSINI GOODRICH & ROSATI**
**GROSSMANN LLP**

By: _Hank R_____                       By: _S. CK_____
    Hannah G. Ross                       (for) Jerome F. Birn, Jr.
    1285 Avenue of the Americas                Page Mill Road
    New York, New York 10019                   Palo Alto, California 94304
    Telephone: (212) 554-1400                  Telephone: (650) 493-9300
    Facsimile: (212) 554-1444                  Facsimile: (650) 493-6811

*Lead Counsel for Lead Plaintiff*        *Counsel for Defendant Kerry Killinger*
*and the Class*

**BYRNES KELLER CROMWELL LLP**           **PERKINS COIE LLP**

By: _Bradley Keller (HR)_                By: _S. CK_____
    Bradley S. Keller, WSBA #10665       (for) Ronald L. Berenstain WSBA #7573
    Jofrey M. McWilliam, WSBA# 28441           1201 Third Avenue
    1000 Second Avenue, Suite 3800             Suite 4800
    Seattle, Washington  98104                 Seattle, Washington 98101-3099
    Telephone: (206) 622-2000                  Telephone: (206) 359-8477
    Facsimile: (206) 622-2522                  Facsimile: (206) 359-9477

*Liaison Counsel for Plaintiffs*         *Counsel for WMI Outside Director Defendants*

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

**SIMPSON THACHER & BARTLETT LLP**

By: _S.Cle_

    Barry R. Ostrager
    425 Lexington Avenue
    New York, New York 10017-3954
    Telephone: (212) 455-3093
    Facsimile: (212) 455-2502

        and

(for) Deborah L. Stein
    1999 Avenue of the Stars, 29th Floor
    Los Angeles, California 90067
    Telephone: (310) 407-7525
    Facsimile: (310) 407-7502

*Counsel for Defendants Rotella, Casey, Schneider, Cathcart and Woods*

**DAVIS WRIGHT TREMAINE LLP**

By: _____

    Stephen M. Rummage, WSBA #11168
    1201 Third Avenue, Suite 2200
    Seattle, Washington 98101-3045
    Telephone: (206) 757-8136
    Facsimile: (206) 757-7136

*Counsel for Defendants Rotella, Casey, Schneider, Cathcart and Woods*

       *and*

*Liaison Counsel for All Defendants*

#543512.11


**ORRICK HERRINGTON & SUTCLIFFE LLP**

By: _____

    George E. Greer
    701 5th Avenue
    Suite 5600
    Seattle, Washington 98104-7097
    Telephone: (206) 839-4403
    Facsimile: (206) 839-4301

*Counsel for Defendant Melissa J. Ballenger*

**WEIL, GOTSHAL & MANGES LLP**

By: _____

    Brian S. Rosen
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

*Counsel for Defendant Washington Mutual, Inc.*


STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

1

**SIMPSON THACHER & BARTLETT LLP**

2

3    By: _____
        Barry R. Ostrager
4        425 Lexington Avenue
        New York, New York 10017-3954
5        Telephone: (212) 455-3093
        Facsimile: (212) 455-2502
6
                and
7
        Deborah L. Stein
8        1999 Avenue of the Stars, 29th Floor
        Los Angeles, California 90067
9        Telephone: (310) 407-7525
        Facsimile: (310) 407-7502
10
*Counsel for Defendants Rotella, Casey,*
11    *Schneider, Cathcart and Woods*

12    **DAVIS WRIGHT TREMAINE LLP**

13

14    By: Steven P. Capla—  *for*
        Stephen M. Rummage, WSBA #11168
15        1201 Third Avenue, Suite 2200
        Seattle, Washington  98101-3045
        Telephone: (206) 757-8136
16        Facsimile: (206) 757-7136

17    *Counsel for Defendants Rotella, Casey,*
    *Schneider, Cathcart and Woods*
18
19            *and*

20    *Liaison Counsel for All Defendants*

21    #543512.11

22

**ORRICK HERRINGTON & SUTCLIFFE LLP**

By: _____
    George E. Greer
    701 5th Avenue
    Suite 5600
    Seattle, Washington 98104-7097
    Telephone: (206) 839-4403
    Facsimile: (206) 839-4301

*Counsel for Defendant Melissa J. Ballenger*

**WEIL, GOTSHAL & MANGES LLP**

By: _____
    Brian S. Rosen
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

*Counsel for Defendant Washington Mutual, Inc.*

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

53

**SIMPSON THACHER & BARTLETT LLP**

By: _____
    Barry R. Ostrager
    425 Lexington Avenue
    New York, New York 10017-3954
    Telephone: (212) 455-3093
    Facsimile: (212) 455-2502

        and

    Deborah L. Stein
    1999 Avenue of the Stars, 29th Floor
    Los Angeles, California 90067
    Telephone: (310) 407-7525
    Facsimile: (310) 407-7502

*Counsel for Defendants Rotella, Casey, Schneider, Cathcart and Woods*

**DAVIS WRIGHT TREMAINE LLP**

By: _____
    Stephen M. Rummage, WSBA #11168
    1201 Third Avenue, Suite 2200
    Seattle, Washington 98101-3045
    Telephone: (206) 757-8136
    Facsimile: (206) 757-7136

*Counsel for Defendants Rotella, Casey, Schneider, Cathcart and Woods*

        *and*

*Liaison Counsel for All Defendants*

#543512.9

**ORRICK HERRINGTON & SUTCLIFFE LLP**

By: _____
    George E. Greer
    701 5th Avenue
    Suite 5600
    Seattle, Washington 98104-7097
    Telephone: (206) 839-4403
    Facsimile: (206) 839-4301

*Counsel for Defendant Melissa J. Ballenger*

**WEIL, GOTSHAL & MANGES LLP**

By: _____
    Brian S. Rosen
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

*Counsel for Defendant Washington Mutual, Inc.*

**SIMPSON THACHER & BARTLETT LLP**

By: _____
    Barry R. Ostrager
    425 Lexington Avenue
    New York, New York 10017-3954
    Telephone: (212) 455-3093
    Facsimile: (212) 455-2502

       and

    Deborah L. Stein
    1999 Avenue of the Stars, 29th Floor
    Los Angeles, California 90067
    Telephone: (310) 407-7525
    Facsimile: (310) 407-7502

*Counsel for Defendants Rotella, Casey, Schneider, Cathcart and Woods*

**DAVIS WRIGHT TREMAINE LLP**

By: _____
    Stephen M. Rummage, WSBA #11168
    1201 Third Avenue, Suite 2200
    Seattle, Washington 98101-3045
    Telephone: (206) 757-8136
    Facsimile: (206) 757-7136

*Counsel for Defendants Rotella, Casey, Schneider, Cathcart and Woods*

      *and*

*Liaison Counsel for All Defendants*

#543512.11

**ORRICK HERRINGTON & SUTCLIFFE LLP**

By: _____
    George E. Greer
    701 5th Avenue
    Suite 5600
    Seattle, Washington 98104-7097
    Telephone: (206) 839-4403
    Facsimile: (206) 839-4301

*Counsel for Defendant Melissa J. Ballenger*

**WEIL, GOTSHAL & MANGES LLP**

By: *Brian S. Rosen*
    Brian S. Rosen
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

*Counsel for Defendant Washington Mutual, Inc.*

STIPULATION AND AGREEMENT OF SETTLEMENT
WITH INDIVIDUAL OFFICER AND DIRECTOR
DEFENDANTS AND WITH WASHINGTON MUTUAL,
INC.

Master No: 2:08-md-1919 MJP

# Exhibit A

1

**EXHIBIT A**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

2

3

4   IN RE WASHINGTON MUTUAL, INC.              No. 2:08-md-1919 MJP
    SECURITIES LITIGATION,                     Lead Case No. C08-387 MJP

5

    This Document Relates to: ALL ACTIONS

6

7

8

### [PROPOSED] ORDER PRELIMINARILY APPROVING
### PROPOSED SETTLEMENTS AND PROVIDING FOR NOTICE

9        WHEREAS, a consolidated class action is pending in this Court entitled *In re Washington*

10   *Mutual, Inc. Securities Litigation,* No. 2:08-md-1919 MJP, Lead Case No. C08-387 MJP (the

11   "Action");

12        WHEREAS, (i) Lead Plaintiff Ontario Teachers' Pension Plan Board ("Lead Plaintiff"), on

13   behalf of itself and the Class, (ii) Defendants Kerry K. Killinger, Thomas W. Casey, Stephen J.

14   Rotella, Ronald J. Cathcart, David C. Schneider, John F. Woods, Melissa J. Ballenger, Anne V.

15   Farrell, Stephen E. Frank, Thomas C. Leppert, Charles M. Lillis, Phillip D. Matthews, Regina

16   Montoya, Michael K. Murphy, Margaret Osmer McQuade, Mary E. Pugh, William G. Reed, Jr.,

17   Orin C. Smith, James H. Stever and Willis B. Wood, Jr. (collectively, the "Individual Defendants")

18   and (iii) Washington Mutual, Inc. ("WMI"), have entered into the Stipulation and Agreement of

19   Settlement with Individual Defendants and with Washington Mutual, Inc. dated June __, 2011 (the

20   "D&O/WMI" Stipulation") providing for the settlement and release of all Settled Claims against the

21   Individual Defendants, WMI, and their respective Related Parties on the terms and conditions set

22   forth in the D&O/WMI Stipulation, subject to approval of this Court (the "D&O/WMI Settlement");

[PROPOSED] ORDER PRELIMINARILY
APPROVING PROPOSED SETTLEMENTS AND
PROVIDING FOR NOTICE

Master No: 2:08-md-1919 MJP

1    WHEREAS, (i) Lead Plaintiff, on behalf of itself and the Class, and (ii) Defendants

2 Goldman, Sachs & Co., Morgan Stanley & Co. Incorporated (now known as Morgan Stanley & Co.

3 LLC), Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., UBS Securities LLC,

4 J.P. Morgan Securities Inc., Barclays Capital Inc., Keefe, Bruyette & Woods, Inc., Cabrera Capital

5 Markets, LLC, The Williams Capital Group, L.P., Citigroup Global Markets, Inc., Greenwich

6 Capital Markets, Inc. (now known as RBS Securities Inc.), BNY Mellon Capital Markets LLC

7 (successor to BNY Capital Markets, Inc.), and Samuel A. Ramirez & Company, Inc. (collectively,

8 the "Underwriter Defendants") have entered into the Stipulation and Agreement of Settlement with

9 the Underwriter Defendants dated June __, 2011 (the "Underwriters Stipulation") providing for the

10 settlement and release of all Settled Claims against the Underwriter Defendants, Banc of America

11 Securities LLC, and their respective Related Parties on the terms and conditions set forth in the

12 Underwriters Stipulation, subject to approval of this Court (the "Underwriters Settlement");

13    WHEREAS, (i) Lead Plaintiff, on behalf of itself and the Class, and (ii) Defendant Deloitte

14 & Touche LLP ("Deloitte") have entered into the Stipulation and Agreement of Settlement with

15 Deloitte & Touche LLP dated June __, 2011 (the "Deloitte Stipulation") providing for the settlement

16 and release of all Settled Claims against Deloitte and its Related Parties on the terms and conditions

17 set forth in the Deloitte Stipulation, subject to approval of this Court (the "Deloitte Settlement");

18    WHEREAS, for the purposes of this Order, (i) the D&O/WMI Stipulation, the Underwriters

19 Stipulation, and the Deloitte Stipulation shall be collectively referred to as the "Stipulations"; (ii) the

20 D&O/WMI Settlement, the Underwriters Settlement, and the Deloitte Settlement shall be

21 collectively referred to as the "Settlements"; (iii) the Individual Defendants, WMI, the Underwriter

22 Defendants and Deloitte shall be collectively referred to as the "Settling Defendants"; (iv) the

[PROPOSED] ORDER PRELIMINARILY
APPROVING PROPOSED SETTLEMENTS AND
PROVIDING FOR NOTICE

Master No: 2:08-md-1919 MJP
Page 2

1   Settling Defendants and Lead Plaintiff shall be collectively referred to as the "Settling Parties"; and

2   (v) unless otherwise defined herein, all other capitalized words contained herein shall have the same

3   meanings as set forth in the respective Stipulations;

4      WHEREAS, in its Order on Class Certification dated October 12, 2010 (Docket No. 759)

5   (the "October 12, 2010 Order"), this Court certified the Action to proceed as a class action on behalf

6   of a class as defined in the Amended Complaint and modified by Orders of this Court dated May 15,

7   2009 (Docket No. 277), and October 27, 2009 (Docket No. 381);

8      WHEREAS, Lead Plaintiff has made an application, pursuant to Rule 23 of the Federal Rules

9   of Civil Procedure, for an order preliminarily approving the Settlements in accordance with the

10   Stipulations and approving notice of the proposed Settlements to Class Members as more fully

11   described herein; and

12      WHEREAS, the Court having read and considered the Stipulations and the respective

13   exhibits thereto, including the proposed (a) Notice; (b) Claim Form; (c) Summary Notice; and (d)

14   Judgments and the submissions relating thereto, and finding that substantial and sufficient grounds

15   exist for entering this Order.

16      NOW THEREFORE, IT IS HEREBY ORDERED:

17      1.   **Definition of the Certified Class** - The definition of the certified Class to be set forth

18   in the Notice is:

19      All persons and/or entities who purchased or otherwise acquired the following
        securities issued by WMI and its subsidiaries: WMI common stock; Floating Rate
20      Notes offered in WMI's August 2006 Offering (CUSIP 939322AW3); the 7.250%
        Notes offered in WMI's October 2007 Offering (CUSIP 939322AY9); the 7.75%
21      Series R Non-Cumulative Perpetual Convertible Preferred Stock offered in WMI's
        December 2007 Offering (CUSIP 939322814); and Washington Mutual Capital Trust
22      2001's 5.375% Trust Preferred Income Equity Redeemable Securities (PIERS) Units,

---

maturing 7/1/2041 ("Capital Trust Unit Preferred") (CUSIP 939322848) (collectively, the "WMI Class Securities") during the period from October 19, 2005 to July 23, 2008 (the "Class Period"), and were damaged thereby.  Excluded from the Class are (i) Defendants; (ii) members of the Immediate Family of each Individual Defendant; (iii) any other person who was an officer or director of WMI, Deloitte, any of the Underwriter Defendants, Lehman, or BOA during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) any person who participated in the wrongdoing alleged in the Action; (vi) TPG Capital and other purchasers of equity securities issued by WMI in connection with the $7 billion capital issuance pursuant to the agreements entered into by and among TPG Capital and WMI and other investors, announced by the Company on April 8, 2008 (the "TPG Deal"), to the extent that such purchasers exercised distinct rights and diligence opportunities afforded them in connection with the TPG Deal; and (vii) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party, provided that any Investment Vehicle (as defined in the Stipulations) shall not be deemed an excluded person or entity by definition.  Also excluded from the Class are any persons or entities who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

2.      **Preliminary Approval of Settlements** – The Court hereby preliminarily approves the Settlements, as embodied in the respective Stipulations, as being fair, reasonable and adequate as to Class Members, subject to further consideration at the Settlement Hearing to be conducted as described below.

3.      **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 2011 at __:__ _.m. at the United States Courthouse, 700 Stewart Street, Courtroom ___, Seattle, Washington, for the following purposes: (a) to determine whether the proposed Settlements on the terms and conditions provided for in the Stipulations are fair, reasonable and adequate, and should be approved by the Court; (b) to determine whether the Judgments substantially in the form attached as Exhibit B to each of the Stipulations should be entered dismissing the Action with prejudice against the respective Settling Defendants; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlements is fair and reasonable

1   and should be approved by the Court; (d) to determine whether the motion by Lead Counsel for an

2   award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (e) to

3   consider any other matters that may properly be brought before the Court in connection with the

4   Settlements.  Notice of the Settlements and the Settlement Hearing shall be given to Class Members

5   as set forth in Paragraph 5 of this Order.

6       4.      The Court may adjourn the Settlement Hearing and approve the proposed Settlements

7   with such modifications as the affected Settling Parties may agree to, if appropriate, without further

8   notice to the Class.

9       5.      **Retention of Claims Administrator and Manner of Notice** – Lead Counsel are

10  hereby authorized to retain The Garden City Group, Inc. (the "Claims Administrator") to supervise

11  and administer the notice procedure as well as the processing of claims as more fully set forth below.

12  Notice of the Settlements and the Settlement Hearing shall be given by Lead Counsel as follows:

13      (a)      not later than twenty-one (21) calendar days after entry of this Order (the

14  "Notice Date"), the Claims Administrator shall cause a copy of the Notice and the Claim Form,

15  substantially in the forms attached hereto as Exhibits "1" and "2", respectively, to be mailed by first-

16  class mail to all members of the Class at the address of each such Class Member as set forth in the

17  records of WMI (to the extent that Lead Counsel is able to obtain such records), or its transfer agent,

18  or who otherwise may be identified through further reasonable effort;

19      (b)      WMI, the Individual Defendants and their respective counsel shall use their

20  reasonable best efforts to assist Lead Counsel in obtaining the Company's transfer records,

21  consisting of the Class Period WMI Class Securities' holders' names and addresses in electronic

22

form (at no cost to the Settlement Funds, Lead Counsel or the Claims Administrator) in order to identify and provide notice to the Class;

(c)     not later than fourteen (14) calendar days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in form attached hereto as Exhibit "3", to be published once each in *The Seattle Times* and the national edition of *The Wall Street Journal*; and to be transmitted once over *PR Newswire*; and

(d)     not later than seven (7) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on Settling Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication.

6.     **Approval of Form and Content of Notice** – The Court: (a) approves, as to form and content, the Notice, the Claim Form, and the Summary Notice, attached hereto as Exhibits "1", "2", and "3", respectively; and (b) finds that the mailing and distribution of the Notice and Claim Form and the publication of the Summary Notice in the manner and form set forth in Paragraph 5 of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Action, the effect of the proposed Settlements (including the releases contained therein) and of their right to object to the proposed Settlements, exclude themselves from the Class and appear at the Settlement Hearing; (iii) constitutes due, adequate and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlements; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1(a)(7), § 78u-

1   4(a)(7), and all other applicable law and rules.  The date and time of the Settlement Hearing shall be

2   included in the Notice and Summary Notice before they are mailed and published, respectively.

3       7.      **Broker and Nominee Procedures** – Brokers and other nominees who purchased or

4   acquired WMI Class Securities during the Class Period for the benefit of another person or entity

5   shall be requested to forward the Notice and Claim Form (together, the "Notice Packet") to all such

6   beneficial owners within fourteen (14) calendar days after receipt thereof, or send a list of the names

7   and addresses of such beneficial owners to the Claims Administrator within fourteen (14) calendar

8   days of receipt thereof in which event the Claims Administrator shall promptly mail the Notice

9   Packet to such beneficial owners.  Upon full compliance with this Order, such brokers or nominees

10  may seek reimbursement of their reasonable expenses actually incurred in complying with this Order

11  by providing the Claims Administrator with proper documentation supporting the expenses for

12  which reimbursement is sought.  Such properly documented expenses incurred by nominees in

13  compliance with the terms of this Order shall be paid from the Settlement Funds in accordance with

14  the provisions of the Stipulations.

15      8.      **Participation in Settlements** – Class Members who wish to participate in the

16  Settlements and receive a distribution from the Net Settlement Funds must complete and submit the

17  Claim Form in accordance with the instructions contained therein.  Unless the Court orders

18  otherwise, all Proof of Claim Forms must be postmarked no later than one hundred and twenty (120)

19  calendar days after the Notice Date.  Notwithstanding the foregoing, Lead Counsel may, at its

20  discretion, accept for processing late claims provided that such acceptance does not delay the

21  distribution of the Net Settlement Funds to the Class.  By submitting a Proof of Claim, a person or

22

1   entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its

2   Claim and the subject matter of the Settlements.

3           9.      Each Proof of Claim submitted must satisfy the following conditions: (a) it must be

4   properly completed, signed and submitted in a timely manner in accordance with the provisions of

5   the preceding paragraph; (b) it must be accompanied by adequate supporting documentation for the

6   transactions reported therein, in the form of broker confirmation slips, broker account statements, an

7   authorized statement from the broker containing the transactional information found in a broker

8   confirmation slip, or such other documentation as is deemed adequate by Lead Counsel or the

9   Claims Administrator; (c) if the person executing the Proof of Claim is acting in a representative

10  capacity, a certification of his, her or its current authority to act on behalf of the Class Member must

11  be included in the Proof of Claim to the satisfaction of Lead Counsel or the Claims Administrator;

12  and (d) the Proof of Claim must be complete and contain no material deletions or modifications of

13  any of the printed matter contained therein and must be signed under penalty of perjury.

14          10.     Any Class Member that does not timely and validly submit a Proof of Claim or whose

15  claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her or its right

16  to share in the Net Settlement Funds; (b) shall forever be barred from participating in any

17  distributions therefrom; (c) shall be bound by the provisions of the Stipulations and the Settlements

18  and all proceedings, determinations, orders and judgments in the Action relating thereto, including,

19  without limitation, the Judgments and the releases provided for therein, whether favorable or

20  unfavorable to the Class; and (d) will be fully and forever barred from commencing, maintaining or

21  prosecuting any of the Settled Claims against each and all of the Released Defendant Parties as

22  defined in the respective Stipulations, as more fully described in the Notice.

11.   **Exclusion From the Class** – Any member of the Class who wishes to exclude himself, herself or itself from the Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that:  (a) any such request for exclusion from the Class must be mailed or delivered such that it is received no later than twenty-five (25) calendar days prior to the Settlement Hearing, to: *In re Washington Mutual, Inc. Securities Litigation,* c/o The Garden City Group, Inc., Claims Administrator, P.O. Box 91310, Seattle, WA 98111-9410; (b) each request for exclusion must: (i) state the name, address and telephone number of the person or entity requesting exclusion; (ii) state that such person or entity "requests exclusion from the Class in *In re Washington Mutual, Inc. Securities Litigation,* No. 2:08-md-1919 MJP, Lead Case No. C08-387 MJP"; (iii) state the number of each WMI Class Security (in terms of shares, notes or units) that the person or entity requesting exclusion purchased and/or sold during the Class Period, as well as the dates and prices of each such purchase and sale; (iv) state whether the person or entity requesting exclusion sold or disposed of any: WMI common stock between July 23, 2008 and October 20, 2008, inclusive; units of Capital Trust Unit Preferred between July 23, 2008 and October 21, 2008, inclusive; and/or Floating Rate Notes, 7.250% Notes or Series R Preferred Stock on or after July 23, 2008, and if so, state the number of shares, units or notes sold, the date(s) of such sale(s) and the amount of money received for each such sale; and (v) be signed by the person or entity requesting exclusion or an authorized representative.  A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above, or is otherwise accepted by the Court.

12.   Any person or entity who or which timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Class shall not be a Class

1 Member, shall not be bound by the terms of the Settlements or any other orders or judgments in the

2 Action and shall have no right to receive any payment out of any of the Net Settlement Funds.

3 13. Any Class Member who or which does not timely and validly request exclusion from

4 the Class in the manner stated in this Order: (a) shall be deemed to have waived his, her or its right

5 to be excluded from the Class in this or any other proceeding; (b) shall be fully and forever barred

6 from requesting exclusion from the Class; (c) shall be bound by the provisions of the Stipulations

7 and Settlements, all proceedings, determinations, orders and judgments in the Action, including, but

8 not limited to, the Judgments and the releases provided for therein, whether favorable or unfavorable

9 to the Class; and (d) will be fully and forever barred from commencing, maintaining or prosecuting

10 any of the Settled Claims, as defined in the respective Stipulations, against any of the Released

11 Defendant Parties, as defined in the respective Stipulations and covered by the Judgments entered, as

12 more fully described in the Notice.

13 14. **<u>Appearance and Objections at Settlement Hearing</u>** – Any Class Member who does

14 not request exclusion from the Class may enter an appearance in the Action, at his, her or its own

15 expense, individually or through counsel of his, her or its own choice, by filing with the Clerk of

16 Court and delivering a notice of appearance to both Lead Counsel and Counsel for the respective

17 Settling Defendants as set forth in Paragraph 15 below such that it is received no later than twenty

18 (20) calendar days prior to the Settlement Hearing, or as the Court may otherwise direct.  Any Class

19 Member who does not enter an appearance will be represented by Lead Counsel.

20 15. Any Class Member who does not request exclusion from the Class may file written

21 objections to the proposed Settlements, the proposed Plan of Allocation, and/or the motion for an

22 award of attorneys' fees and reimbursement of Litigation Expenses and appear and show cause, if

he, she or it has any cause, why the proposed Settlements, the proposed Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses should not be approved; *provided, however*, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlements, the proposed Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses unless that person or entity has filed written objections with the Court and served copies of such objections in the manner provided in the Notice such that it is received no later than twenty-five (25) calendar days prior to the Settlement Hearing on each of the following:

> Hannah G. Ross, Esq.
> Bernstein Litowitz Berger & Grossmann LLP
> 1285 Avenue of the Americas
> New York, NY  10019
>
> Lead Counsel for Lead Plaintiff and the Class

and on counsel for the relevant Settlement(s) as follows:

> Ronald Berenstain, Esq.
> Perkins Coie LLP
> 1201 Third Avenue
> Suite 4800
> Seattle Washington, 98101-3099
>
> Representative Counsel for the
> Individual Defendants
>
> Jonathan C. Dickey, Esq.
> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue
> New York, NY 10166
>
> Counsel for the Underwriter Defendants

Peter A. Wald, Esq.
Latham & Watkins LLP
505 Montgomery Street
San Francisco, CA 94111

Counsel for Deloitte & Touche LLP

Representative Counsel for the Individual Defendants shall provide copies of any such objections and supporting papers to counsel for the other Individual Defendants and WMI with respect to the D&O/WMI Settlement.

16.     Any objections, filings and other submissions by the objecting Class Member must contain a statement of his, her or its objections, as well as the specific reasons for each objection, including the legal and evidentiary support the Class Member wishes to bring to the Court's attention and documents sufficient to prove the number of WMI Class Securities (in terms of shares, notes and units) that the objecting Class Member purchased and sold during the Class Period, as well as the dates and prices of each such purchase and/or sale, and with respect to WMI common stock sold between July 23, 2008 and October 20, 2008 inclusive, Capital Trust Unit Preferred sold between July 23, 2008 and October 21, 2008 inclusive, and Floating Rate Notes, 7.250% Notes or Series R Preferred Stock sold on or after July 23, 2008, state the number of shares, units or notes sold, the date(s) of such sale(s) and the amount of money received for each such sale.

17.     Any Class Member who does not make his, her or its objection in the manner provided herein shall be deemed to have waived his, her or its right to object to the proposed Settlements, the proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses and shall forever be barred and foreclosed from objecting to the fairness, reasonableness or adequacy of the Settlements, the Plan of Allocation or the requested

1    attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlements,

2    the Plan of Allocation or the requested attorneys' fees and Litigation Expenses in this or any other

3    proceeding.

4        18.   **Stay** – Consistent with the Court's April 6, 2011 Order (Docket No. 864) and until

5    otherwise ordered by the Court, the Court stays all proceedings in the Action involving the Settling

6    Defendants other than proceedings necessary to carry out or enforce the terms and conditions of the

7    respective Stipulations.  Pending the Settlement Hearing, the Court enjoins Lead Plaintiff and all

8    other Class Members from commencing or prosecuting, either directly, indirectly, representatively or

9    in any other capacity, any and all of the Settled Claims, as defined in the respective Stipulations, as

10   against each and all of the Released Defendant Parties, as defined in the respective Stipulations.

11       19.   **Settlement Administration Fees and Expenses** – All reasonable costs incurred in

12   identifying and notifying Class Members as well as in administering the Settlement Funds shall be

13   paid as set forth in the respective Stipulations without further order of the Court.

14       20.   **Settlement Funds** – The contents of the Settlement Funds held by Valley National

15   Bank (which the Court approves as the Escrow Agent), shall be deemed and considered to be *in*

16   *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time

17   as they shall be distributed pursuant to the respective Stipulations and/or further order(s) of the

18   Court.

19       21.   **Taxes** – Lead Counsel is authorized and directed to prepare any tax returns and any

20   other tax reporting form for or in respect of the Settlement Funds, to pay from the Settlement Funds

21   any Taxes owed with respect to the Settlement Funds, and to otherwise perform all obligations with

22

---

respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the respective Stipulations.

22.   **Termination** – If any of the Settlements is terminated, or is not approved, or the Effective Date does not occur as to any of the Settlements, this Order shall become null and void as to that Settlement (or Settlements) and shall be without prejudice to the rights of Lead Plaintiff, the Class Members and the affected Settling Defendants, all of whom shall be restored to their respective positions, as provided for in the relevant Stipulation(s).

23.   **Use of this Order** –This Order, the proposed Settlements, the Stipulations and any and all of their respective terms (and all negotiations, discussions and proceedings in connection therewith): (a) shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal other than as may be necessary to enforce the terms of this Order and/or the respective proposed Settlements; (b) shall not be described as, construed as, interpreted as or offered or received against the respective Settling Defendants as evidence of and/or deemed to be evidence of any presumption, concession, or admission of wrongdoing by the respective Settling Defendants as to any liability, negligence or fault, on their part or the validity of any claim by Lead Plaintiff or the merits of any of their defenses; and (c) shall not be described as, construed as, interpreted as, or offered or received against Lead Plaintiff or any other Class Member as evidence of any infirmity in the claims of said Lead Plaintiff and the Class or that the damages recoverable from the respective Settling Defendants would not have exceeded the respective Settlement Amounts.

24.   **Supporting Papers** – Lead Counsel shall file and serve papers in support of the proposed Settlements, the proposed Plan of Allocation, and Lead Counsel's motion for an award of

attorneys' fees and reimbursement of Litigation Expenses no later than forty (40) calendar days prior to the Settlement Hearing; if reply papers are necessary, they are to be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.

25.     The Court retains jurisdiction to consider all further applications arising out of the proposed Settlements.

SO ORDERED this _____ day of _____, 2011.

_____
The Honorable Marsha J. Pechman
United States District Judge

# 550213.6

# Exhibit A-1

**EXHIBIT A-1**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION,<br><br>This Document Relates to: ALL ACTIONS | No. 2:08-md-1919 MJP<br>Lead Case No. C08-387 MJP |

**NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENTS, (II) SETTLEMENT FAIRNESS HEARING, AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court Authorized This Notice.  This is not a solicitation from a lawyer.*[1]

**NOTICE OF PENDENCY OF CLASS ACTION**: Please be advised that your rights may be affected by a class action lawsuit (the "Action") pending in the United States District Court for the Western District of Washington at Seattle (the "Court") if, during the period from October 19, 2005 to July 23, 2008 (the "Class Period"), you purchased or otherwise acquired any of the following securities (the "WMI Class Securities") issued by Washington Mutual, Inc. ("WMI" or the "Company") or its subsidiaries, and were damaged thereby:

- WMI common stock (CUSIP 939322103);

- Floating Rate Notes due August 24, 2009, offered in August 2006 (CUSIP 939322AW3) ("Floating Rate Notes");

- 7.250% Subordinated Notes due November 1, 2017, offered in October 2007 (CUSIP 939322AY9) ("7.250% Notes");

- 7.75% Series R Non-Cumulative Perpetual Convertible Preferred Stock, offered in December 2007 (CUSIP 939322814) ("Series R Stock");

- Washington Mutual Capital Trust 2001's 5.375% Trust Preferred Income Equity Redeemable Securities (PIERS) Units, maturing July 1, 2041 (CUSIP 939322848) ("Capital Trust Unit Preferred")

**NOTICE OF SETTLEMENTS:**  Please also be advised that the Court-appointed Lead Plaintiff, Ontario Teachers' Pension Plan Board, on behalf of itself and the Class (defined in paragraph 28 below), has reached three proposed all-cash settlements of the Action, as follows: (i) a $105 million settlement with

---

[1]  All capitalized terms that are not defined in this Notice have the meaning ascribed to them in the respective Stipulations and Agreements of Settlement (the "Stipulations"), which are available on the website established for the Settlements at www.WashingtonMutualSecuritiesLitigationSettlement.com.com and on Lead Counsel's website www.blbglaw.com.

the Individual Defendants (identified in paragraph 1 below) whereby WMI is also a Settling Defendant (the "D&O/WMI Settlement"); (ii) an $85 million settlement with the Underwriter Defendants (identified in paragraph 1 below) (the "Underwriters Settlement"); and (iii) an $18.5 million settlement with Deloitte & Touche LLP ("Deloitte") (the "Deloitte Settlement") (collectively, the "Settlements").  The total amount of the Settlements is $208.5 million, plus interest thereon.  If all of the Settlements are approved by the Court, they will resolve all claims in the Action by Class Members against the Settling Defendants (including WMI) as well as other Released Defendant Parties, as defined in paragraph 73 below and the Bankruptcy Claims against WMI in the Chapter 11 Cases (as described in paragraphs 13 and 72 below).

**PLEASE READ THIS NOTICE CAREFULLY.  This Notice explains important rights you may have, including the possible receipt of cash from each of the three the Settlements if each is approved by the Court.  If you are a Class Member, your legal rights will be affected whether or not you act.**

1.     **Overview of the Action and the Class**:  This Notice relates to three separate proposed Settlements of claims in a pending class action brought by investors alleging that the prices of WMI's securities were artificially inflated during the Class Period as a result of false statements, non-disclosures, and fraudulent conduct in violation of the federal securities laws.  A more detailed description of the Action is set forth in paragraphs 14 – 27 below.  The "Settling Defendants" are: (a) Kerry K. Killinger, Thomas W. Casey, Stephen J. Rotella, Ronald J. Cathcart, David C. Schneider, John F. Woods, Melissa J. Ballenger, Anne V. Farrell, Stephen E. Frank, Thomas C. Leppert, Charles M. Lillis, Phillip D. Matthews, Regina Montoya, Michael K. Murphy, Margaret Osmer McQuade, Mary E. Pugh, William G. Reed, Jr., Orin C. Smith, James H. Stever and Willis B. Wood, Jr. (the "Individual Defendants"); (b) Goldman, Sachs & Co., Morgan Stanley & Co. Incorporated (now known as Morgan Stanley & Co. LLC), Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., UBS Securities LLC, J.P. Morgan Securities Inc., Barclays Capital Inc., Keefe, Bruyette & Woods, Inc., Cabrera Capital Markets, LLC, The Williams Capital Group, L.P., Citigroup Global Markets, Inc., Greenwich Capital Markets, Inc. (now known as RBS Securities Inc.), BNY Mellon Capital Markets LLC (successor to BNY Capital Markets, Inc.), and Samuel A. Ramirez & Company, Inc. (the "Underwriter Defendants"); (c) Deloitte, and (d) WMI.[2]

The proposed Settlements each provide for the release of claims against the Settling Defendants in the respective Settlements and others as specified in (i) "Stipulation and Agreement of Settlement with Individual Officer and Director Defendants and with Washington Mutual, Inc." dated June __, 2011 (the "D&O/WMI Stipulation"); (ii) "Stipulation and Agreement of Settlement with the Underwriter Defendants" dated June __, 2011 (the "Underwriters Stipulation"); and (iii) "Stipulation and Agreement of Settlement with Defendant Deloitte & Touche LLP" dated June __, 2011 (the "Deloitte Stipulation").  All persons and entities who purchased or otherwise acquired WMI Class Securities during the Class Period and were damaged thereby, except for certain persons and entities who are excluded from the Class by definition (*see* paragraph 28 below) or persons and entities who validly elect to exclude themselves from

---

[2]  WMI was named as a defendant in the Action but, because it filed a petition for bankruptcy, the Action was automatically stayed against it under the Bankruptcy Code, 11 U.S.C. § 362(a).  Lehman Brothers Inc. ("Lehman") was also named as a defendant in the Action, but on September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 (SIPA) with respect to Lehman and, as a result, all proceedings against it have also been stayed.  Lehman is not a Settling Defendant and is not being released pursuant to the terms of the Settlements.

the Class (*see* paragraphs 82 - 84 below), will be affected by the Settlements, if they are approved by the Court, and may be eligible to receive a payment from some or all of the Settlements.

2.   **The Class's Recovery**:   Subject to approval by the Court, and with respect to the D&O/WMI Settlement, entry of the Bankruptcy Court Approval Order by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and such order becoming Final (as discussed in paragraph 13 below) and as described more fully below, Lead Plaintiff, on behalf of itself and the Class, has agreed to settle all claims based on the allegations asserted in the Action that were or could have been asserted against the Settling Defendants and other Released Defendant Parties and/or that relate to the purchase, acquisition or holding during the Class Period of the WMI Class Securities and certain other WMI securities as to which claims were asserted in the Action but were dismissed by the Court,[3] in exchange for a total of $208.5 million in cash.   Lead Plaintiff has agreed to settle with the Individual Defendants and include WMI as a Settling Defendant for $105 million in cash, with the Underwriter Defendants for $85 million in cash, and with Deloitte for $18.5 million in cash.   The claims asserted against the Individual Defendants were brought pursuant to both the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") while the claims against the Underwriter Defendants and Deloitte were asserted pursuant only to the Securities Act.   Subject to certain contingencies explained in the Plan of Allocation set forth below, only those Class Members who are entitled to assert Securities Act claims will be eligible to participate in the Net Settlement Funds created by the Settlements with the Underwriter Defendants and Deloitte, and only those Class Members who are entitled to assert Exchange Act claims will be eligible to participate in the Net Settlement Fund created by the D&O/WMI Settlement.   The Settlement Amounts for each of the Settlements will be deposited into separate interest-bearing escrow accounts for the benefit of Class Members (the "Settlement Funds").   The respective Net Settlement Funds (the Settlement Funds less any Taxes, any Notice and Administration Costs and any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed in accordance with the plan of allocation that is approved by the Court, which will determine how the Net Settlement Funds shall be allocated among members of the Class who, by virtue of the claims they could assert, are eligible to participate in the distribution of the respective Net Settlement Funds and who submit timely and valid Proof of Claim and Release Forms (a "Claim Form").   The proposed plan of allocation (the "Plan of Allocation") is included in this Notice at pages __ to __.

3.   **Estimate of Average Amount of Recovery Per Share or Note**: Lead Plaintiff's damages expert estimates that approximately 1.433 billion shares of WMI common stock, 461,900 Floating Rate Notes, 625,750 7.250% Notes, 10.227 million shares of Series R Stock, and 37,483,400 units of Capital Trust Unit Preferred purchased during the Class Period may have been affected by the conduct at issue in the Action.  Because the number of affected common shares is so large – exceeding 1.4 billion shares – if all eligible Class Members elect to participate in the Settlements and all of the Settlements are approved, the estimated average recovery per eligible share, note or unit would be approximately $0.07 per share of common stock; $0.33 per $100 face value of Floating Rate Notes; $0.47 per $100 face value of 7.250% Notes; $9.68 per share of Series R Stock; and $0.10 per unit of Capital Trust Unit Preferred

---

[3]   The additional securities as to which Class Members' claims are being released with respect to their purchases, acquisitions or holdings during the Class Period are the 5.50% Notes due August 24, 2011 offered in WMI's August 2006 Offering (CUSIP 939322AX1) ("5.50% Notes") and the Series K perpetual non-cumulative preferred stock offered in WMI's September 2006 Offering (CUSIP 939322830) ("Series K Stock").  The WMI Class Securities and the additional securities as to which claims are being released are referred to as the "WMI Released Securities."

before the deduction of Court-awarded attorneys' fees and expenses, and the costs of providing notice and administering the Settlements.  Class Members should note, however, that these are only estimates based on the overall number of potentially affected shares, notes and units.  Some Class Members may recover more or less than these estimated amounts.

4.    **Average Amount of Damages Per Share**:  The parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiff were to prevail in the Action. The Settling Defendants do not agree with the assertion that they engaged in any actionable conduct under the federal securities laws or that any damages were suffered by any members of the Class as a result of their conduct.

5.    **Attorneys' Fees and Expenses Sought**:  Plaintiffs' Counsel, who have been prosecuting this Action on a wholly contingent basis since its inception in 2008, have not received any payment of attorneys' fees for their representation of the Class and they have advanced the funds to pay expenses necessarily incurred to prosecute the Action.  Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in the amount of 22.5% of each Settlement Fund.  In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the prosecution and resolution of the claims against the Settling Defendants, in an amount not to exceed $5.8 million (which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Class).  Any fees and expenses awarded by the Court will be paid from the Settlement Funds.  Class Members are not personally liable for any such fees or expenses.  If all the Settlements are approved, and Lead Counsel's fee and expense application is granted, the average cost per share, note or unit of these fees and expenses will be approximately $0.02 per share of common stock; $0.08 per $100 face value of Floating Rate Notes; $0.12 per $100 face value of 7.250% Notes; $2.45 per share of Series R Stock; and $0.03 per unit of Capital Trust Unit Preferred.[4]

6.    **Identification of Attorneys' Representatives:**  Lead Plaintiff and the Class are being represented by Hannah G. Ross, Esq. of Bernstein Litowitz Berger & Grossmann LLP.  Any questions regarding the Action or the Settlements should be directed to Ms. Ross at Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, NY 10019, (800) 380-8496, blbg@blbglaw.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE SETTLEMENTS: | |
|---|---|
| SUBMIT A CLAIM FORM BY _____, 2011. | This is the only way to be eligible to get a payment from the Settlements.  If you are a Class Member and you remain in the Class, you will be bound by the Settlements as approved by the Court and you will give up any "Settled Claims" (as defined below) that you have against the Settling Defendants and the other "Released Defendant Parties" (as defined below), so, if you remain in the Class, it is in your interest to submit a Claim Form. |

---

[4]  Should the Court approve less than all the Settlements, attorneys' fees will be paid only on the Settlement Funds created by the approved Settlements.  The Litigation Expenses approved by the District Court will be paid from the Settlement Funds created by the approved Settlements.

| | |
|---|---|
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2011.** | If you exclude yourself from the Class, you will not be eligible to get any payment from any of the Settlement Funds.  This is the only option that allows you ever to be part of any other lawsuit against any of the Settling Defendants or the other Released Defendant Parties concerning the Settled Claims. |
| **OBJECT TO THE SETTLEMENTS BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2011.** | If you do not like one or more of the proposed Settlements, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them.  You cannot object to the Settlements, the Plan of Allocation or the fee and expense request unless you are a Class Member and do not exclude yourself. |
| **GO TO A HEARING ON _____, 2011 AT _:___ _.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2011.** | Filing a written objection and notice of intention to appear by _____, 2011 allows you to speak in Court about the fairness of the Settlements, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses.  If you submit a written objection, you may (but you do not have to) attend the hearing and speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Class and you do not submit a Claim Form by _____, 2011, you will not be eligible to receive any payment from any of the Settlements.  You will, however, remain a member of the Class, which means that you give up your right to sue about the claims that are resolved by the Settlements and you will be bound by any Judgments or Orders entered by the Court in this Action. |

**[END OF COVER PAGE]**

| |
|---|
| WHAT THIS NOTICE CONTAINS |

Why Did I Get This Notice?                                                        Page _
What Is The Case About?  What Has Happened So Far?                                 Page _
How Do I Know If I Am Affected By the Settlements?                                 Page _
What Are Lead Plaintiff's Reasons For The Settlements?                            Page _
What Might Happen If There Were No Settlements?                                    Page _
How Much Will My Payment Be?                                                       Page _
What Rights Am I Giving Up By Remaining In The Class?                              Page _

5

Will The Settlements Affect Any Individual Claim That I Might Have
   In The Chapter 11 Cases?                                               Page _
What Payment Are The Attorneys For The Class Seeking?  How Will The Lawyers Be Paid?   Page _
How Do I Participate In The Settlements?  What Do I Need To Do?   Page _
What If I Do Not Want To Participate In The Settlements?  How Do I Exclude Myself?   Page _
When And Where Will the Court Decide Whether To Approve The Settlements?
  Do I Have To Come To The Hearing?
  May I Speak At The Hearing If I Don't Like The Settlements?   Page _
What If I Bought Shares On Someone Else's Behalf?   Page _
Can I See The Court File?  Whom Should I Contact If I Have Questions?   Page _

---

### WHY DID I GET THIS NOTICE?

---

7.      This Notice is being sent to you pursuant to an Order of the United States District Court for the Western District of Washington because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired WMI Class Securities (defined on page 1) during the Class Period.  The Court has directed us to send you this Notice because, as a potential Class Member, you have a right to know about your options before the Court rules on the proposed Settlements.  Additionally, you have the right to understand how a class action lawsuit may generally affect your legal rights.  If the Court approves the Settlements and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlements and the Court-approved plan of allocation after any objections and appeals are resolved.

8.      In a class action lawsuit, the court selects one or more people, known as class representatives, to sue on behalf of all people with similar claims, commonly known as the class or the class members.  A class action is a type of lawsuit in which the claims of a number of individuals are resolved together, thus providing the class members with both consistency and efficiency.  Once the class is certified, the court must resolve all issues on behalf of the class members, except for any persons who choose to exclude themselves from the class.  In this Action, the Court appointed Ontario Teachers' Pension Plan Board to serve as "Lead Plaintiff" under a federal law governing lawsuits such as this one, and approved Lead Plaintiff's selection of the law firm of Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel") to serve as Lead Counsel in the Action.  The Court certified the Action to proceed as a class action and certified Lead Plaintiff and additional named plaintiffs Pompano Beach Police and Firefighters' Retirement System, Brockton Contributory Retirement System, and Police and Fire Retirement System of the City of Detroit (collectively, "Plaintiffs") as representatives for the Class.  (For more information on excluding yourself from the Class, please read "What If I Do Not Want To Be A Part Of The Settlements?  How Do I Exclude Myself?," on page __ below.)

9.      The court in charge of this case is the United States District Court for the Western District of Washington, and the case is known as *In re Washington Mutual, Inc. Securities Litigation*, No 2:08-md-1919 MJP, Lead Case No. C08-387 MJP.  The Judge presiding over this case is the Honorable Marsha J. Pechman, United States District Judge.  The persons or entities that are suing are called plaintiffs, and those who are being sued are called defendants.  If all three proposed Settlements are approved, they will resolve all claims in the Action by Class Members against the Settling Defendants and will bring the Action to an end.

10.     This Notice explains the lawsuit, the Settlements, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The purpose of this Notice is to inform you of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Class if you wish to so do.  It is also being sent to inform you of the terms of the proposed Settlements, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlements, the proposed Plan of Allocation and the motion by Lead Counsel for attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").

11.     The Settlement Hearing will be held on _____, 2011 at _:__ _.m., before the Honorable Marsha J. Pechman at the United States District Court for the Western District of Washington, United States Courthouse, 700 Stewart Street, Seattle, WA 98101 to determine:

(a)     whether the proposed Settlements are fair, reasonable and adequate and should be approved by the Court;

(b)     whether all claims asserted in the Action against the Settling Defendants should be dismissed with prejudice and all Settled Claims against the Settling Defendants and the other Released Defendant Parties should be released as set forth in the respective Stipulations;

(c)     whether the proposed Plan of Allocation is fair and reasonable, and should be approved by the Court; and

(d)     whether Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved by the Court.

12.     This Notice does not express any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve each of the Settlements.  If the Court approves the Settlements and a plan of allocation, payments to Authorized Claimants will be made after any appeals are resolved, and after the completion of all claims processing.  Please be patient.

13.     The D&O/WMI Settlement also is conditioned on the entry of the Bankruptcy Court Approval Order by the Bankruptcy Court (and on such Order becoming Final) which is overseeing WMI's bankruptcy case, jointly administered in the Bankruptcy Court with the bankruptcy case of WMI Investment Corp. as *In re Washington Mutual Inc.*, Case No. 08-12229 (MFW) (collectively the "Chapter 11 Cases").  The Bankruptcy Court Approval Order will, among other things, authorize, to the extent necessary, the use of proceeds from officers' and directors' insurance policies for the payment and funding of the $105,000,000 Settlement Amount of the D&O/WMI Settlement.  If the Bankruptcy Court Approval Order is not entered or does not become Final, the D&O/WMI Settlement will not go forward and the parties to the D&O/WMI Stipulation will be restored to their respective positions as of March 23, 2011.

## WHAT IS THE CASE ABOUT?  WHAT HAS HAPPENED SO FAR?

14.     The Action is a class action alleging violations of the federal securities laws by various persons, including WMI, the Individual Defendants, the Underwriter Defendants, and Deloitte.

15.     Beginning in November 2007, class action complaints on behalf of purchasers of certain WMI securities were filed in the United States District Court for the Southern District of New York

7

against WMI and certain of its officers and directors alleging violations of the Exchange Act with respect to public disclosures concerning the lending practices and financial condition of WMI.  In early 2008, pursuant to an order of the United States Judicial Panel on Multidistrict Litigation, these actions, together with a number of related actions, were transferred to the United States District Court for the Western District of Washington.  On May 7, 2008, the Court entered an Order consolidating the transferred actions and any related pending or subsequently filed securities actions into this Action; appointed Ontario Teachers' Pension Plan Board as Lead Plaintiff, Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel and Byrnes Keller Cromwell LLP as Liaison Counsel for Plaintiffs; and ordered that Lead Plaintiff file an amended complaint.

16.     On August 5, 2008, Lead Plaintiff filed the Consolidated Class Action Complaint (the "Consolidated Complaint"), which included Brockton Contributory Retirement System as an additional named plaintiff.  The Consolidated Complaint asserted claims against WMI and certain of the Individual Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, alleging that these defendants made, or controlled others who made, materially false and misleading statements about the effectiveness of WMI's risk management procedures, the fairness and reliability of the appraisals received in connection with WMI's loans, the quality of WMI's mortgage underwriting practices and WMI's financial results, including the appropriate allowances for its loan losses, and that these false and misleading statements had caused the prices of WMI's securities to be artificially inflated during the Class Period.  The Consolidated Complaint also asserted claims against WMI, the Underwriter Defendants, Deloitte and certain of the Individual Defendants under Section 11 of the Securities Act of 1933 (the "Securities Act"); against WMI and the Underwriter Defendants under Section 12(a)(2) of the Securities Act; and against certain of the Individual Defendants under Section 15 of the Securities Act alleging that the defendants named in the Securities Act claims were statutorily liable for materially untrue statements and misleading omissions in the registration statement and offering documents for several public securities offerings that WMI conducted during the Class Period.

17.     On September 26, 2008, WMI filed a petition for bankruptcy under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, causing the Action to be stayed against it pursuant to 11 U.S.C. § 362(a).

18.     On December 8, 2008, all of the Settling Defendants (other than WMI, against which the Action had been stayed) filed motions to dismiss the Consolidated Complaint.  Lead Plaintiff opposed the motions and, on May 15, 2009, the Court entered an order granting in part and denying in part the motions to dismiss and ordering that certain claims be re-pled.

19.     On June 15, 2009, Lead Plaintiff filed the Amended Consolidated Class Action Complaint (the "Amended Complaint").  In addition to Lead Plaintiff and named plaintiff Brockton Contributory Retirement System, the Amended Complaint included Pompano Beach Police and Firefighters' Retirement System, Mr. Harlan Seymour, and Police and Fire Retirement System of the City of Detroit as additional named plaintiffs.  Like the Consolidated Complaint, the Amended Complaint asserted claims under Sections 10(b), 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder; and under Sections 11, 12(a)(2) and 15 of the Securities Act and alleged claims substantially similar to those in the Consolidated Complaint.

20.     On July 17, 2009, all of the Settling Defendants (other than WMI) moved to dismiss the Amended Complaint.  The motions were fully briefed and argued to the Court and, on October 27, 2009,

the Court entered an Order sustaining the Exchange Act claims against all the Defendants against whom they were asserted but dismissed certain of the Securities Act claims.

21.     On January 15, 2010, all of the Settling Defendants (other than WMI) filed answers to the Amended Complaint.

22.     On April 30, 2010, Lead Plaintiff filed a motion for class certification which was fully briefed and argued to the Court.  On October 12, 2010, the Court entered an Order certifying the Action as a class action, certifying Lead Plaintiff and additional named plaintiffs Pompano Beach Police and Firefighters' Retirement System, Brockton Contributory Retirement System, and Police and Fire Retirement System of the City of Detroit as class representatives, and appointing Lead Counsel as Class Counsel.  The Court excluded one named plaintiff from the class and the Series K Stock from the Class.[5] The definition of the Class is set forth in paragraph 28 below.

23.     On December 1, 2010, the Underwriter Defendants moved for judgment on the pleadings, a motion in which all other Settling Defendants (other than WMI) joined, contending that the remaining Securities Act claims relating to the August 2006 and the December 2007 offerings were barred by the statute of limitations.  The Court, after hearing oral argument, denied the motion on January 28, 2011.

24.     Pursuant to the Court's Order dated November 25, 2009, the parties were directed to engage in mediation to determine whether a consensual resolution of the Action could be achieved.

25.     Lead Plaintiff and the Settling Defendants (other than WMI) engaged in extensive arm's-length negotiations that included participation by their respective counsel in multiple mediation sessions in February and March 2011 with an experienced mediator, a former Federal District Judge, Layn R. Phillips.  With Judge Phillips' assistance, Lead Plaintiff reached agreements-in-principle to settle with the Individual Defendants on March 23, 2011; with Deloitte on March 24, 2011; and with the Underwriter Defendants on March 30, 2011.

26.     Before agreeing to the Settlements, Lead Counsel had conducted an extensive investigation into the events and transactions underlying the claims alleged in the Amended Complaint and had also conducted extensive discovery.  Lead Counsel analyzed the evidence adduced during its investigation and through discovery, which included almost 500 witness interviews, review of over 23 million pages of documents produced by Defendants and others, and dozens of depositions; consulted with numerous experts, including experts in accounting and auditing, risk management, loss reserve modeling, statistical analysis and damages; and researched the applicable law with respect to the claims of Lead Plaintiff and the Class against the Settling Defendants and their potential defenses.  At the time the agreements to settle were reached, Lead Counsel had a thorough understanding of the strengths and weaknesses of Lead Plaintiff's and the Settling Defendants' positions based on the extensive investigation and discovery, the briefing of the multiple motions to dismiss as well as the class certification motion, and the preparation of several detailed mediation statements as well as the review of mediation statements prepared by Settling Defendants.  Lead Counsel and Lead Plaintiff believe that each of the proposed Settlements is fair, reasonable and adequate, and in the best interests of the Class.

27.     On _____, 2011, the Court entered an Order Preliminarily Approving Proposed Settlements and Providing for Notice, which preliminarily approved the Settlements, authorized this

---

[5]   Former defendant Banc of America Securities LLC ("BOA"), which was sued as one of the Underwriter Defendants, underwrote only the Series K Stock offering, was dismissed from the Action as a result of the District Court's October 12, 2010 Order. BOA is a Released Defendant Party in the Underwriters Settlement.

Notice be sent to potential Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlements.

<div style="border:1px solid black; background:#d3d3d3; padding:10px; text-align:center;">

HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENTS?

</div>

28.    If you are a member of the Class, you are subject to the Settlements, unless you timely request to be excluded.  The Class consists of:

> All persons and/or entities who purchased or otherwise acquired the following securities issued by WMI and its subsidiaries: WMI common stock; Floating Rate Notes offered in WMI's August 2006 Offering (CUSIP 939322AW3); the 7.250% Notes offered in WMI's October 2007 Offering (CUSIP 939322AY9); the 7.75% Series R Non-Cumulative Perpetual Convertible Preferred Stock offered in WMI's December 2007 Offering (CUSIP 939322814); and Washington Mutual Capital Trust 2001's 5.375% Trust Preferred Income Equity Redeemable Securities (PIERS) Units, maturing 7/1/2041 ("Capital Trust Unit Preferred") (CUSIP 939322848) (collectively, the "WMI Class Securities") from October 19, 2005 to July 23, 2008 (the "Class Period"), and were damaged thereby.

> Excluded from the Class are (i) Defendants; (ii) members of the Immediate Family of each Individual Defendant; (iii) any other person who was an officer or director of WMI, Deloitte, any of the Underwriter Defendants, Lehman, or BOA during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) any person who participated in the wrongdoing alleged in the Action; (vi) TPG Capital and other purchasers of equity securities issued by WMI in connection with the $7 billion capital issuance pursuant to the agreements entered into by and among TPG Capital and WMI and other investors, announced by the Company on April 8, 2008 (the "TPG Deal"), to the extent that such purchasers exercised distinct rights and diligence opportunities afforded them in connection with the TPG Deal; and (vii) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party, provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition.[6]  Also excluded from the Class are any persons or entities who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.  *See* "What if I Do Not Want to Participate in the Settlements?  How Do I Exclude Myself," on page __ below.

**PLEASE NOTE:  RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENTS.  IF YOU ARE A CLASS MEMBER AND YOU WISH TO BE ELIGIBLE TO**

---

[6]  "Investment Vehicle" means any investment company or pooled investment fund, including but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which any Underwriter Defendant, BOA or Lehman has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor but in which the Underwriter Defendant, BOA or Lehman or any of the their respective affiliates is not a majority owner or does not hold a majority beneficial interest.  This definition does not bring into the Class any of the Underwriter Defendants, BOA or Lehman.

**PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENTS, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED NO LATER THAN _____, 2011.**

---

### WHAT ARE LEAD PLAINTIFF'S REASONS FOR THE SETTLEMENTS?

---

29.     Lead Plaintiff and Lead Counsel believe that the claims asserted against the Settling Defendants have merit.  Lead Plaintiff and Lead Counsel recognize, however, the expense and length of continued proceedings necessary to pursue their claims against these defendants through trial and appeals, as well as the difficulties in establishing liability and damages at trial.  Lead Plaintiff and Lead Counsel have also taken into account the possibility that the claims asserted in the Amended Complaint might have been dismissed in response to the Settling Defendants' anticipated motions for summary judgment, and have considered issues that would have been decided by a jury in the event of a trial of the Action, including whether certain of the Settling Defendants acted with an intent to mislead investors, whether all of Class Members' losses were caused by the alleged misrepresentations or omissions and the amount of damages.  Lead Plaintiff and Lead Counsel have considered the uncertain outcome and trial risk in complex lawsuits like this one, and that, even if they were successful, after the resolution of the appeals that were certain to be taken (which could take years to resolve), certain of the Settling Defendants may not have been able to pay an amount significantly larger than their respective Settlement Amount or even as much as the Settlement Amount.  The Action has been stayed against WMI because of the Company's filing for bankruptcy and the Individual Defendants' ability to pay as well as the limited potential for any recovery from the Bankruptcy Claims asserted in the Chapter 11 Cases were significant factors that Lead Plaintiff had to take into account, given the fact that the insurance coverage provided to these defendants by the directors' and officers' policies was a "wasting asset" which would have continued to be depleted by the costs of this and other ongoing litigation.

30.     In light of the amount of the Settlements and the immediacy of recovery to the Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlements are fair, reasonable and adequate.  Indeed, Lead Plaintiff and Lead Counsel believe that the Settlements achieved are excellent results and in the best interests of the Class.  The Settlements, which total $208.5 million in cash (less the various deductions described in this Notice), individually and collectively provide substantial benefits now as compared to the risk that a similar, smaller, or no recoveries would be achieved after a trial and appeals, possibly years in the future.

31.     The Settling Defendants have denied the claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever.  The Settling Defendants have agreed to the Settlements solely to eliminate the burden and expense of continued litigation.  Accordingly, the Settlements may not be construed as an admission of any wrongdoing by any of the Settling Defendants.

---

### WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENTS?

---

32.     If there were no Settlements and Plaintiffs failed to establish any essential legal or factual element of their claims against the Settling Defendants, neither they nor the Class would recover anything from the Settling Defendants.  Also, if the Settling Defendants were successful in proving any of their defenses, the Class could recover substantially less than the amounts provided in the Settlements, or nothing at all.  Additionally, with respect to the D&O/WMI Settlement in particular, even if Plaintiffs prevailed at trial, and obtained a judgment in excess of the Settlement Amount, recovery on the judgment would have been unlikely.  The insurance coverage available to the Individual Defendants is a wasting asset and any recovery out of the Chapter 11 Cases is unlikely.  The ongoing prosecution of the Action against the Individual Defendants as well as other costs being paid from these policies in connection with other ongoing litigation and investigations is fast depleting the amount of insurance coverage.  Even if Lead Plaintiff prevailed at trial and on the appeal that was sure to follow, by the time Lead Plaintiff could seek to enforce the judgment, the coverage would have been seriously depleted, if not exhausted entirely. Thus, a victory at trial or on appeal against these defendants could well have resulted in a smaller recovery or no recovery at all.

## HOW MUCH WILL MY PAYMENT BE?

33.     At this time, it is not possible to make any determination as to how much a Class Member may receive from the Settlements.

34.     Pursuant to the Settlements, the Contributing Insurers have agreed to pay $105 million in cash with respect to the D&O/WMI Settlement; the Underwriter Defendants have agreed to pay $85 million in cash; and Deloitte has agreed to pay $18.5 million in cash. The Settlement Amounts will be deposited into interest-bearing escrow accounts (the "Settlement Funds").  If the Settlements are approved by the Court, the Net Settlement Funds (*i.e.*, the Settlement Funds less (a) all federal, state and local taxes on any income earned by the Settlement Funds and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Funds (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing Notice to Class Members and administering the Settlements on behalf of Class Members; and (c) any attorneys' fees and expenses awarded by the Court) will be distributed to Class Members as set forth in the proposed plan of allocation (the "Plan of Allocation") or such other plan as the Court may approve.

35.     After approval of the Settlements by the Court and upon satisfaction of the other conditions to the Settlements, the Net Settlement Funds will be distributed to Authorized Claimants in accordance with the plan of allocation approved by the Court.  The Net Settlement Funds will not be distributed until the Court has approved a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

36.     Neither Settling Defendants nor any other person or entity that paid any portion of the Settlement Amounts on any of their behalves are entitled to get back any portion of the respective Settlement Funds once the Court's Order or Judgment approving the relevant Settlement becomes Final. Settling Defendants shall not have any liability, obligation or responsibility for the administration of the Settlements or disbursement of the Net Settlement Funds or the Plan of Allocation.

37.     Approval of the Settlements is independent from approval of the plan of allocation.  Any determination with respect to the plan of allocation will not affect the Settlements, if approved.

38.     Only those Class Members who purchased or otherwise acquired WMI Class Securities during the Class Period **AND WERE DAMAGED AS A RESULT OF SUCH PURCHASES OR ACQUISITIONS**, will be eligible to share in the distribution of the Net Settlement Funds.  Each person wishing to participate in the distribution must timely submit a valid Claim Form establishing membership in the Class, and including all required documentation, postmarked on or before _____, 2011 to the address set forth in the Claim Form that accompanies this Notice.

39.     Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked on or before _____, 2011 shall be fully and forever barred from receiving payments pursuant to the Settlements but will in all other respects remain a Class Member and be subject to the provisions of the Stipulations and Settlements that are approved, including the terms of any Judgments entered and releases given.  This means that each Class Member releases the applicable Settled Claims (as defined in paragraph 73 below) against the applicable Released Defendant Parties (as defined in paragraph 73 below) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the applicable Settled Claims against any of the applicable Released Defendant Parties regardless of whether or not such Class Member submits a Claim Form.

40.     Information Required on the Claim Form:  Among other things, each Claim Form must state and provide sufficient documentation for each Claimant's position in WMI Class Securities as of the beginning of the Class Period, their transactions during the Class Period, and their closing positions on the dates specified in the Claim Form.

41.     Participants and beneficiaries in the WaMu Savings Plan,should not include any information relating to their transactions within the plan in any Claim Form that they may submit in this Action.  Claims based on the WaMu Savings Plan's purchases of WMI Class Securities during the Class Period may be made by the plan's trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Class are participants in the plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from these Settlements by the WaMu Savings Plan.

42.     The Court has reserved jurisdiction to allow, disallow or adjust the Claim of any Class Member on equitable grounds.

43.     Each Claimant shall be deemed to have submitted to the jurisdiction of the United States District Court for the Western District of Washington with respect to his, her or its Claim Form.

44.     Persons and entities that are excluded from the Class by definition or that exclude themselves from the Class will not be eligible to receive a distribution from the Net Settlement Funds and should not submit Claim Forms.

## PROPOSED PLAN OF ALLOCATION[7]

45.     The objective of the Plan of Allocation is to equitably distribute the settlement proceeds to Class Members who suffered economic losses as a result of the alleged violations of the federal securities laws as opposed to losses caused by market or industry factors or Company specific factors unrelated to the alleged violations of law.  The Plan of Allocation reflects Lead Plaintiff's damages expert's analysis

---

[7]  The Settling Defendants take no position on the Plan of Allocation and, as stated above, continue to deny that WMI Class Securities were ever artificially inflated in price, or that any Class Members suffered any damages.

13

undertaken to that end, including a review of publicly available information regarding WMI and statistical analyses of the price movements of the WMI Class Securities and the price performance of relevant market and industry indices during the Class Period.  The Plan of Allocation, however, is not a formal damage analysis.

46.    The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlements.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Funds.

47.    As noted above, claims were asserted under both the Exchange Act and the Securities Act.[8] For purposes of the Exchange Act claims, Lead Plaintiff's damages expert estimated the alleged artificial inflation in the Common Stock and the Capital Trust Unit Preferred which is shown in Table A.  For purposes of the Securities Act claims, the Plan of Allocation is generally based upon application of the statutory damages formula under Section 11 of the Securities Act with respect to transactions in Series R Stock, Floating Rate Notes and 7.250% Notes.

48.    Subject to certain contingencies set forth below, the Net Settlement Fund created by the D&O/WMI Settlement (the "Exchange Act Fund") will be distributed to Authorized Claimants with respect to their Recognized Loss Amounts based on their Class Period purchases of Common Stock and Capital Trust Unit Preferred (their "Exchange Act Loss") and the Net Settlement Funds created by the Settlements with the Underwriter Defendants and Deloitte (the "Securities Act Fund") will be distributed to Authorized Claimants with respect to their Recognized Loss Amounts based on their Class Period purchases of Series R Stock, Floating Rate Notes and 7.250% Notes (their "Securities Act Loss").

49.    A Securities Act Loss or Exchange Act Loss will be calculated for each eligible purchase or acquisition of the WMI Class Securities that is listed in the Claim Form, and for which adequate documentation is provided.  The calculation will depend upon several factors, including (i) which type of WMI Class Securities were purchased or otherwise acquired; (ii) when the WMI Class Securities were purchased or otherwise acquired; and (iii) whether the securities were sold and, if so when they were sold.

50.    Calculation of Exchange Act Losses will be based on the change in the level of alleged artificial inflation in the price of the WMI Common Stock and Capital Trust Unit Preferred at the time of purchase or acquisition and at the time of sale.  In this case, Lead Plaintiff alleges that the Individual Defendants violated the Exchange Act by making false statements and omitting material facts between October 19, 2005 through and including July 22, 2008, which had the effect of artificially inflating the prices of these securities.  Defendants deny all such allegations.

51.    In order to have recoverable damages under the Exchange Act claims, plaintiffs must prove that disclosure of the alleged misrepresentations is the cause of the decline in the price of the security. Alleged corrective disclosures that removed the alleged artificial inflation from the prices of the Common Stock and Capital Unit Trust Preferred occurred on October 18, 2007, November 2, 2007, November 7, 2007, December 11, 2007, December 21, 2007, March 7, 2008 and before the beginning of trading on July 23, 2008.  Accordingly, in order to have a compensable loss:

---

[8]  The determination as to which claims should be brought against any given defendant was based on Plaintiffs' analysis of the relevant law and the facts as known at the time the claims were asserted.

(a)      Common Stock and Capital Trust Unit Preferred purchased or otherwise acquired from October 19, 2005 through October 17, 2007 must have been held until at least the beginning of trading on October 18, 2007, the day of the first corrective disclosure; and

(b)      Common Stock and Capital Trust Unit Preferred purchased or otherwise acquired after the start of trading on October 18, 2007 through and including July 22, 2008, must have been held at least until the next corrective disclosure as listed above.

52.      To the extent an Exchange Act Claimant does not satisfy either of the conditions set forth in the preceding paragraph, his, her or its Recognized Loss Amount for those transactions will be zero.

53.      Calculation of Securities Act Losses will be generally based upon the statutory measure of damages for claims based on material misrepresentations in registration statements.  As noted above, the calculation of Recognized Loss Amounts pursuant to the Plan of Allocation is not intended to be an estimate of, nor indicative of, the amount that a Class Member might have been able to recover after a trial.

## CALCULATION OF SPECIFIC LOSS AMOUNTS

54.      Based on the formulas set forth below, a "Recognized Loss Amount" shall be calculated for each purchase or acquisition of the WMI Class Securities listed in the Proof of Claim form and for which adequate documentation is provided.  If a Recognized Loss Amount results in a negative number, that Recognized Loss Amount shall be zero.

55.      **Exchange Act Claims Recognized Loss Amount Calculations** - For the Common Stock and the Capital Trust Unit Preferred, the Recognized Loss Amount per share or unit shall be calculated as follows:

(a)      **Common Stock**

For each share of Common Stock purchased or acquired between October 19, 2005 and July 22, 2008, inclusive, and:

1)      Sold prior to the close of trading on October 17, 2007, the Recognized Loss Amount is $0.00.

2)      Sold at a loss from October 18, 2007 through the close of trading on July 22, 2008, the Recognized Loss Amount shall be ***the lesser of***:  (i) the amount of artificial inflation per share as set forth in Table A on the date of purchase ***minus*** the amount of artificial inflation per share as set forth in Table A on the date of the sale; or (ii) purchase/acquisition price ***minus*** the sale price.

3)      Sold at a loss from July 23, 2008 through the close of trading on October 20, 2008, the Recognized Loss Amount shall be ***the least of***:  (i) the amount of artificial inflation per share as set forth in Table A on the date of purchase ***minus*** the amount of artificial inflation per share as set forth in Table A on the date of the sale; or (ii) purchase/acquisition price ***minus*** the sale price; or (iii) the purchase price ***minus*** the average closing price between July 23, 2008 and the date of sale as shown in Table B.

4)      Held as of the close of trading on October 20, 2008, the Recognized Loss Amount shall be ***the lesser of***:  (i) the amount of artificial inflation per share as set forth in

15

Table A on the date of purchase; or (ii) the purchase/acquisition price *minus* $2.86, the average closing price for the Common Stock between July 23, 2008 and October 20, 2008 as shown at the end of Table B.

(b) **Capital Trust Unit Preferred**

For each unit of Capital Trust Unit Preferred purchased or acquired between October 19, 2005 and July 22, 2008, inclusive, and:

1) Sold prior to the close of trading on October 17, 2007, the Recognized Loss Amount is $0.00.

2) Sold at a loss from October 18, 2007 through the close of trading on July 23, 2008, the Recognized Loss Amount shall be *the lesser of*: (i) the amount of artificial inflation per unit as set forth in Table A on the date of purchase *minus* the amount of artificial inflation per unit as set forth in Table A on the date of the sale; or (ii) purchase/acquisition price *minus* the sale price.

3) Sold at a loss from July 24, 2008 through the close of trading on October 21, 2008, the Recognized Loss Amount shall be *the least of*: (i) the amount of artificial inflation per unit as set forth in Table A on the date of purchase *minus* the amount of artificial inflation per unit as set forth in Table A on the date of the sale; or (ii) purchase/acquisition price *minus* the sale price; or (iii) the purchase price *minus* the average closing price between July 24, 2008 and the date of sale as shown in Table C.

4) Held as of the close of trading on October 21, 2008, the Recognized Loss Amount shall be *the lesser of*: (i) the amount of artificial inflation per unit as set forth in Table A on the date of purchase; or (ii) the purchase/acquisition price *minus* $13.04, the average closing price for the Capital Unit Trust Preferred between July 24, 2008 and October 21, 2008 as shown at the end of Table C.

56. **Securities Act Claims Recognized Loss Amount Calculations** – For the Series R Stock, the 7.250% Notes and the Floating Rate Notes, the Recognized Loss Amount per share or note shall be calculated as follows:

(a) **Series R Stock**

For each share of Series R Stock purchased or otherwise acquired prior to the close of trading on July 22, 2008, inclusive and:

1) Sold at a loss prior to the close of trading on August 5, 2008 (the date of suit), the Recognized Loss Amount shall be *the lesser of*:

(x) the purchase/acquisition price *minus* the sale price; or

(y) $1,000 (issue price) *minus* the sale price.

2) Sold at a loss from August 6, 2008 through the close of trading on [May 13], 2011, the Recognized Loss Amount shall be *the lesser of*:

(x) the purchase/acquisition price *minus* the greater of (i) the sale price or (ii) $465.00, the closing price on August 5, 2008; or

(y) $1,000 (issue price) *minus* the greater of (i) the sale price or (ii) $465.00,

16

the closing price on August 5, 2008.

3) Held as of close of trading on [May 13], 2011, the Recognized Loss Amount shall be *the lesser of*:

(x) the purchase/acquisition price minus $465.00, the closing price on August 5, 2008 (the date of suit); or

(y) $1,000 (issue price) *minus* $465.00, the closing price on August 5, 2008 (the date of suit).

(b) **Floating Rate Notes**

(i) For each $100 in face value of Floating Rate Notes purchased or otherwise acquired prior to the close of trading on May 13, 2008, and:

1) Sold at a loss prior to the close of trading on May 13, 2008 (the date of suit), the Recognized Loss Amount shall be *the lesser of*:

(x) the purchase/acquisition price *minus* the sale price; or

(y) $100 (issue price) *minus* the sale price.

2) Sold at a loss from May 14, 2008 through the close of trading on [May 13], 2011, the Recognized Loss Amount shall be *the lesser of*:

(x) the purchase/acquisition price *minus* the greater of (i) the sale price or (ii) $93.50, the closing price on May 13, 2008 (the date of suit); or

(y) $100 (issue price) *minus* the greater of (i) the sale price or (ii) $93.50, the closing price on May 13, 2008 (the date of suit).

3) Held as of the close of trading on [May 13], 2011, the Recognized Loss Amount shall be $0.00.

(ii) For each $100 in Floating Rate Notes purchased or otherwise acquired from May 14, 2008 through the close of trading on July 22, 2008, inclusive, and:

1) Sold at a loss prior to the close of trading on [May 13], 2011, the Recognized Loss Amount shall be *the lesser of:*

(x) the purchase/acquisition price *minus* the greater of (i) the sale price or (ii) $93.50, the closing price on May 13, 2008 (the date of suit); or

(y) $100 (issue price) *minus* the greater of (i) the sale price or (ii) $93.50, the closing price on May 13, 2008 (the date of suit).

2) Held as of the close of trading on [May 13], 2011, the Recognized Loss Amount shall be $0.00.

(c) **7.250% Notes**

(i) For each $100 in face value of 7.250% Notes purchased or otherwise acquired prior to the close of trading on May 13, 2008 and:

17

1)     Sold at a loss prior to the close of trading on May 13, 2008 (the date of suit), the Recognized Loss Amount shall be ***the lesser of***:

    (x) the purchase/acquisition price ***minus*** the sale price; or

    (y) $99.377 (issue price) ***minus*** the sale price.

2)     Sold at a loss from May 14, 2008 through the close of trading on [May 13], 2011, the Recognized Loss Amount shall be ***the lesser of***:

    (x) the purchase/acquisition price ***minus*** the greater of (i) the sale price or (ii) $84.47, the closing price on May 13, 2008 (the date of suit); or

    (y) $99.377 (issue price) ***minus*** the greater of (i) the sale price or (ii) $84.47, the closing price on May 13, 2008 (the date of suit).

3)     Held as of the close of trading on [May 13], 2011, the Recognized Loss Amount shall be $0.00.

(ii)     For each $100 in face value of 7.250% Notes purchased or otherwise acquired from May 14, 2008 through the close of trading on July 22, 2008, inclusive, and:

1)     Sold at a loss prior to the close of trading on [May 13], 2011, the Recognized Loss Amount shall be ***the lesser of:***

    (x) the purchase/acquisition price ***minus*** the greater of (i) the sale price or (ii) $84.47, the closing price on May 13, 2008 (the date of suit); or

    (y) $99.377 (issue price) ***minus*** the greater of (i) the sale price or (ii) $84.47, the closing price on May 13, 2008 (the date of suit).

2)     Held as of the close of trading on [May 13], 2011, the Recognized Loss Amount shall be $0.00

57.     The sum of a Claimant's Recognized Loss Amounts based on his, her or its purchases or acquisitions of Common Stock and Capital Trust Unit Preferred (as calculated in paragraph 55 above) shall be the Claimant's Exchange Act Loss. The sum of a Claimant's Recognized Loss Amounts based on his, her or its purchases or acquisitions of Series R Stock, Floating Rate Notes and 7.250% Notes (as calculated in paragraph 56 above) shall be the Claimant's Securities Act Loss. The sum of a Claimant's Securities Act Loss and Exchange Act Loss is referred to as his, her or its Recognized Claim.

## ADDITIONAL PROVISIONS

58.     The Net Settlement Funds will be allocated among all Authorized Claimants whose Distribution Amount (defined below in paragraph 61) is $20.00 or greater.

59.     If the sum total of the Exchange Act Losses of all Authorized Claimants is greater than the Exchange Act Fund, each Authorized Claimant with an Exchange Act Loss shall receive a *pro rata* share of the Exchange Act Fund, which shall be the Authorized Claimant's Exchange Act Loss divided by the total of all Exchange Act Losses, multiplied by the total amount in the Exchange Act Fund. If the sum total of the Securities Act Losses of all Authorized Claimants is greater than the Securities Act Fund, each Authorized Claimant with a Securities Act Loss shall receive a *pro rata* share of that Securities Act Fund,

which shall be the Authorized Claimant's Securities Act Loss divided by the total of all Securities Act Losses, multiplied by the total amount in the Securities Act Fund.

60.     While it is unlikely that the Exchange Act Fund will exceed the total amount of the Exchange Act Losses, should that happen, the excess amount in the Exchange Act Fund shall become available to compensate Authorized Claimants for their Securities Act Losses if the Securities Act Fund is not sufficient to pay the total amount of Securities Act Losses, up to the amount necessary to pay those losses.  Should there be any excess remaining after the total amount of Securities Act Losses have been paid, the excess will be distributed *pro rata* to Authorized Claimants based on their Exchange Act Losses. In like manner, should the amount in the Securities Act Fund exceed the total Securities Act Losses, the excess will become available to compensate Authorized Claimants for their Exchange Act Losses if the amount in that Exchange Act Fund is not sufficient to pay the total amount of the Exchange Act Losses, up to the amount necessary to pay those losses, with any remaining balance being distributed *pro rata* to Authorized Claimants based on their Securities Act Losses.

61.     The Distribution Amount paid to an Authorized Claimant will be the sum of (i) his, her or its *pro rata* share of the Exchange Act Fund; and (ii) his, her or its *pro rata* share of the Securities Act Fund.  If an Authorized Claimant's Distribution Amount calculates to less than $20.00, no distribution will be made to that Authorized Claimant.

62.     If a Class Member has more than one purchase/acquisition or sale of WMI Class Securities during the Class Period, all purchases/acquisitions and sales of like securities shall be matched on a First In, First Out ("FIFO") basis.  Sales will be matched first against any holdings of WMI Class Securities of the same security type held at the beginning of the Class Period, and then against purchases/acquisitions of the same security in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

63.     Purchases or acquisitions and sales of WMI Class Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance or operation of law of WMI Class Securities during the Class Period shall not be deemed a purchase, acquisition or sale of WMI Class Securities for the calculation of an Authorized Claimant's Securities Act Loss or Exchange Act Loss nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of any WMI Class Securities unless (i) the donor or decedent purchased or otherwise acquired such WMI Class Securities during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such WMI Class Securities; and (iii) it is specifically so provided in the instrument of gift or assignment.

64.     The date of covering a "short sale" is deemed to be the date of purchase or acquisition of WMI Class Securities.  The date of a "short sale" is deemed to be the date of sale of WMI Class Securities.  Under the Plan of Allocation, however, the Securities Act Loss and Exchange Act Loss on all "short sales" is zero. In the event that there is an opening short position in any WMI Class Security, the earliest Class Period purchases of like security shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

65.     Option contracts are not securities eligible to participate in the Settlements.  With respect to WMI Class Securities purchased or sold through the exercise of an option, the purchase/sale date of the WMI Class Security is the exercise date of the option and the purchase/sale price of the WMI Class Security is the exercise price of the option.

66.     To the extent a Claimant had a market gain with respect to his, her, or its purchases/acquisitions of WMI Class Securities during the Class Period, the value of the Claimant's Securities Act Loss and Exchange Act Loss will both be zero.  Such Claimants will in any event be bound by the Settlements.  To the extent that a Claimant suffered an overall market loss with respect to his, her, or its purchases/acquisition of WMI Class Securities during the Class Period, but that market loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss and the Claimant's Securities Act Loss and Exchange Act Loss will be reduced proportionally.

67.     For purposes of determining whether a Claimant had a market gain with respect to his, her, or its purchases/acquisitions of WMI Class Securities during the Class Period or suffered a market loss, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[9] and (ii) the sum of the Total Sales Proceeds[10] and Total Holding Value.[11]  This difference will be deemed a Claimant's market gain or loss with respect to his, her, or its overall purchases/acquisitions of WMI Class Securities during the Class Period.

68.     If any funds remain in the Net Settlement Funds because of uncashed distributions or other reasons, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any balance remaining in the Net Settlement Funds one (1) year after the initial distribution of such funds shall be redistributed to Authorized Claimants who have cashed their initial distribution and who would receive at least $20.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the funds, including for such redistribution.  Additional redistributions to Authorized Claimants who have cashed their prior distribution checks and who would receive at least $20.00 on such additional redistributions, subject to the conditions previously noted, may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional redistribution, after the deduction of any additional fees and expenses that would be incurred with respect

---

[9]  The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for all WMI Class Securities purchased or acquired during the Class Period.

[10]  The Claims Administrator shall match any sales of Common Stock and Capital Trust Unit Preferred during the period from October 19, 2005 through and including October 20, 2008 (for Common Stock) and October 21, 2008 (for Capital Trust Unit Preferred), first against the Claimant's opening position in the like security (the proceeds of those sales will not be considered for purposes of calculating market gains or losses).  For Series R Stock, Floating Rate Notes, and 7.250% Notes there are no opening positions since they were issued during the Class Period.  The total amount received (excluding commissions and other charges) for (i) sales of Common Stock sold during the period from October 19, 2005 through and including October 20, 2008 (if the sale can be matched against a Class Period purchase/acquisition); (ii) sales of the Capital Trust Unit Preferred sold during the period from October 19, 2005 through and including October 21, 2008 (if the sale can be matched against a Class Period purchase/acquisition); and (iii) sales of Series R Stock, Floating Rate Notes, and 7.250% Notes sold during the period from the offering date of the security through and including [May 13], 2011 (if the sale can be matched against a Class Period purchase/acquisition) shall be the "Total Sales Proceeds".

[11]  The Claims Administrator shall ascribe a holding value to the WMI Class Securities purchased or acquired during the Class Period and still held as of the close of trading on October 20, 2008 (for Common Stock), October 21, 2008 (for Capital Trust Unit Preferred), and [May 13], 2011 (for Series R Stock, Floating Rate Notes, and 7.250% Notes) (the "Holding Value") as follows: $0.08 per share of WMI Common Stock; $1.10 per unit of Capital Trust Unit Preferred; $14.01 per share of Series R Stock; $100.188 per $100 face value of the Floating Rate Notes; and $114.00 per $100 face value of the 7.250% Notes.

to such redistributions, is cost-effective.  At such time as it is determined that the redistribution of funds remaining in the Net Settlement Funds is not cost-effective, the remaining balance of the Net Settlement Funds shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court.

69.    Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiff, Lead Counsel, Liaison Counsel for Plaintiffs, Settling Defendants and their respective counsel or any of the other Released Defendant Parties, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulations, the plan of allocation approved by the Court, or further Orders of the Court.  Lead Plaintiff, Settling Defendants and their respective counsel, and all other Released Defendant Parties shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Funds, the Net Settlement Funds, the Plan of Allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Funds, or any losses incurred in connection therewith.

70.    The Plan of Allocation set forth herein is the plan that is being proposed by Lead Plaintiff and Lead Counsel to the Court for approval.  The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class.  Any Orders regarding a modification of the Plan of Allocation will be posted on the settlement website, www.WashingtonMutualSecuritiesLitigationSettlement.com.

## WHAT RIGHTS AM I GIVING UP BY REMAINING IN THE CLASS?

71.    If you remain in the Class, you will be bound by any orders issued by the Court.  For example, as to each Settlement that is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against the applicable Settling Defendants and will provide that, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other members of the Class on behalf of themselves, their respective heirs, executors, administrators, predecessors, successors and assigns, shall be deemed by operation of law to have released, waived, discharged and dismissed each and every Settled Claim (as defined in paragraph 73 below) as against all of the applicable Released Defendant Parties (as defined in paragraph 73 below) and shall forever be enjoined from prosecuting any or all Settled Claims against any Released Defendant Parties.

72.    In addition, in the D&O/WMI Settlement (if approved), upon the Effective Date, Lead Plaintiff and all of the other members of the Class on behalf of themselves, their respective heirs, executors, administrators, predecessors, successors, assigns and agents, shall be deemed by operation of law to have irrevocably, absolutely and unconditionally, fully, finally and forever released, waived, discharged and dismissed the Bankruptcy Claims as against WMI.  The "Bankruptcy Claims" are certain claims filed in the Chapter 11 Cases with respect to the claims asserted in this Action.  While the Bankruptcy Claims and the other Settled Claims are being released, the Settlements will *not* release any claims that individual Class Members might have in the Chapter 11 Cases based solely upon their status as holders or owners of various WMI debt or equity securities (as described in paragraph 76 below).

73.    As described in more detail below, the Settled Claims include any claims that (i) were asserted in the Action or that could have been asserted in this Action relating to the various claims and

21

allegations that were or could have been alleged in the Amended Complaint and/or (ii) relate to the purchase, acquisition or holding of any of the WMI Class Securities (listed on page one), 5.50% notes due August 24, 2011 offered in WMI's August 2006 offering or Series K perpetual non-cumulative floating rate preferred stock.[12]

"**Settled Claims**" means: any and all claims, rights, demands, liabilities, or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorney's fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), to the fullest extent that the law permits their release in this Action (or, with respect to D&O/WMI Settlement, in the Chapter 11 Cases), by or on behalf of Lead Plaintiff or any other Class Members against any of the Released Defendant Parties that have been alleged or could have been alleged in the Action (or, with respect to the D&O/WMI Settlement, in the Chapter 11 Cases, including without limitation, the Bankruptcy Claims) whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether known claims or Unknown Claims, whether class or individual in nature, whether fixed or contingent, accrued or un-accrued, liquidated or unliquidated, whether at law or in equity, matured or unmatured, that (i) are based on, relate to or arise out of the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, representations, acts or omissions or failures to act that have been or could have been alleged in the Action (or, with respect to the D&O/WMI Settlement, in the Chapter 11 Cases with respect to the Bankruptcy Claims or otherwise) and/or (ii) relate to or arise out of Lead Plaintiff's or any other Class Member's purchase, acquisition or holding of WMI Released Securities during the Class Period insofar as it relates in any way to any other matter covered in this definition of Settled Claims.[13]

"**Unknown Claims**" means any Settled Claims which Lead Plaintiff or other Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Defendant Parties, and any Released Defendant Parties' Claims which any Released Defendant

---

[12]   The 5.50% notes due August 24, 2011 offered in WMI's August 2006 offering (CUSIP 939322AX1) ("5.50% Notes") and Series K perpetual non-cumulative preferred stock offered in WMI's September 2006 offering (CUSIP 939322830) ("Series K Stock") are not WMI Class Securities, however, if you are a Class Member and purchased those securities, then, as part of the Settlements, you will also be releasing the Settled Claims with respect to those securities.  If you are not a Class Member, your claims with respect to these securities are not affected.

[13]   Settled Claims, generally, do not include, release, bar, waive, impair or otherwise impact (i) any claims to enforce the Settlement; (ii) any claims of the Class or any Class Member against any of the Other Defendants; (iii) the rights of any Class Members to recover moneys from the settlement of the action styled *In re Washington Mutual Inc. ERISA Litig.*, Lead Case No. 07-cv-1874; (iv) any claims asserted in the actions styled: *In re Washington Mutual, Inc. California Securities Litigation*, No. 09-664 (W.D. Wash.), *Flaherty & Crumrine Preferred Income Fund Incorporated, et al. v. Killinger*, et al., No. C09-1756 MJP (W.D. Wash.), *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass-Through Certificates et al.*, 09-37 (W.D. Wash.), and *Allstate Bank, et al. v. JPMorgan Chase Bank, NA, et al.,* Index No. 650398/2011 (N.Y. Supreme); (v) any claim or right to recovery of any Class Member individually in the Chapter 11 Cases based solely upon his, her or its status as a holder or beneficial owner of a WMI debt or equity security with respect to their rights to participate in the distribution of funds in the Chapter 11 Cases upon confirmation of a plan of reorganization or otherwise solely to the extent that such distribution is being made on account of such debt or equity security; or (vi) Lead Plaintiff's and each other Class Member's right to participate in the distribution of any funds recovered from any of the Defendants by any governmental or regulatory agency.

Party does not know or suspect to exist in his, her, or its favor at the time of the release of Lead Plaintiff, Plaintiffs' Counsel, the other Class Members and their respective attorneys, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement.  With respect to any and all Settled Claims and Released Defendant Parties' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and each of the Settling Defendants shall expressly waive, and each of the other Class Members and each of the other Released Defendant Parties shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and each of the Settling Defendants acknowledge, and each of the other Class Members and each of the other Released Defendant Parties shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for as a key element of the Settlement.

**"Released Defendant Parties"** means as to the respective Settlements:

> **The D&O/WMI Settlement**: any and all of the Individual Defendants and WMI pursuant to that Settlement and each of their respective Related Parties, i.e., (i) with respect to each Individual Defendant, his or her assigns, attorneys, advisors (other than the Underwriter Defendants), representatives, members of his or her Immediate Family, heirs, executors, estates, administrators, insurers, including, without limitation the Contributing Insurers and reinsurers, (ii) with respect to WMI, its predecessors, successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past or present officers, directors, agents, partners, principals, members, employees, attorneys, advisors (other than the Underwriter Defendants), auditors and accountants (other than Deloitte), insurers, including, without limitation, the Contributing Insurers, and reinsurers,; (iii) with respect to all Individual Defendants and WMI, any firm, trust, corporation, or other entity in which any of them has or had a controlling interest.

> **The Underwriters Settlement**: any and all of the Underwriter Defendants, BOA and each of their respective Related Parties, i.e., with respect to each Underwriter Defendant and BOA, its predecessors, successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past or present officers, directors, shareholders, agents, partners, principals, members, employees, attorneys, advisors, auditors and accountants (other than Deloitte), insurers and reinsurers, and any firm, trust, corporation, or other entity in which any of the Underwriter Defendants or BOA has or had a controlling interest.

> **The Deloitte Settlement**: Deloitte and each of its Related Parties, i.e., as to Deloitte & Touche LLP, Deloitte LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, Deloitte Tax LLP, Deloitte Services LP, all of their and Deloitte & Touche LLP's respective past, present and future parent companies, subsidiaries, affiliates, divisions, joint venturers, subcontractors, agents, attorneys, insurers, subrogees, co-insurers and reinsurers,

23

and each of their respective past and present officers, directors, employees, members, partners, principals, shareholders and owners.

Notwithstanding the foregoing, as to each individual Settlement, the Related Parties do not include any of the Defendants who are parties to one of the other Settlements or any person or entity that would be a Related Party of one of those Other Defendant parties as defined in the applicable Stipulation.  Thus, if any of the Settlements is not approved, a person or entity who or which is a "Settling Defendant" or a "Related Party" pursuant to the terms of that Settlement will not be released.

74.     The Judgments will also provide that, upon the Effective Date of each Settlement, each of the applicable Settling Defendants and each of the other applicable Released Defendant Parties, on behalf of themselves, their respective heirs, executors, administrators, predecessors, successors and assigns, shall be deemed by operation of law to have released, waived, discharged and dismissed any and all claims, rights, demands, liabilities or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorney's fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or in this or any other forum against Lead Plaintiff, Plaintiffs' Counsel, any other Class Member or any of their respective attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlements), and shall forever be enjoined from prosecuting any such claims against Lead Plaintiff, Plaintiffs' Counsel, every other Class Member and each of their respective attorneys.

75.     In addition, each of the Judgments will provide for a "Bar Order" that will bar certain claims for contribution or other related claims by or against the Settling Defendants or the other Released Defendant Parties.  The specific terms of the Bar Orders that will be sought are set forth in the respective Stipulations.  Each Judgment will further provide that if the Class or any Class Member later obtains a judgment against a person subject to the Bar Order, such judgment shall be reduced by the greater of an amount that corresponds to the percentage of responsibility of the Settling Defendants for common damages or the amount paid by or on behalf of the Settling Defendants to the Class or Class Member for common damages.

---

### WILL THE SETTLEMENTS AFFECT ANY INDIVIDUAL CLAIM THAT I MIGHT HAVE IN THE CHAPTER 11 CASES?

---

76.     The Settlements will affect only the Settled Claims, including the Bankruptcy Claims filed in the Chapter 11 Cases.  The Settlements shall not in any way release, impair or otherwise impact any claim or right to recovery of any Class Member individually in the Chapter 11 Cases based solely upon his, her or its status as a holder or beneficial owner of a WMI debt or equity security with respect to the rights to participate in the distribution of funds in the Chapter 11 Cases upon confirmation of a plan of reorganization or otherwise solely to the extent that such distribution is being made on account of such debt or equity security in addition to any recovery that they may be entitled to receive under these Settlements.

---

**WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING?
HOW WILL THE LAWYERS BE PAID?**

---

77.     Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Settling Defendants on behalf of the Class, nor have they been reimbursed for their out-of-pocket expenses.  Before final approval of the Settlements, Lead Counsel will apply to the Court for an award of attorneys' fees on behalf of all Plaintiffs' Counsel in the amount of 22.5% of each of the Settlement Funds.  At the same time, Lead Counsel also intend to apply for reimbursement of Litigation Expenses to be paid proportionately from the Settlement Funds in an amount not to exceed $5.8 million (which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Class).  Should the Court approve less than all the Settlements, attorneys' fees will be paid only with respect to the Settlements that are approved and the Litigation Expenses approved by the Court will be paid proportionately from the Settlement Funds created by the approved Settlements.

---

**HOW DO I PARTICIPATE IN THE SETTLEMENTS?  WHAT DO I NEED TO DO?**

---

78.     To be eligible for a payment from the proceeds of the Settlements, you must be a member of the Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked no later than _____, 2011**.  A Claim Form is included with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlements, www.WashingtonMutualSecuritiesLitigationSettlement.com, or from Lead Counsel's website, www.blbglaw.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-888-588-3788.  If you request exclusion from the Class or do not submit a timely and valid Claim Form, you will not be eligible to share in any of the Net Settlement Funds.  Please retain all records of your ownership of and transactions in WMI Class Securities, as they may be needed to document your Claim.

79.     As a Class Member you are represented by Lead Plaintiff and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled, "When and Where Will the Court Decide Whether to Approve the Settlements," below.

80.     If you are a Class Member and do not wish to remain a Class Member, you may exclude yourself from the Class by following the instructions in the section entitled, "What If I Do Not Want to Participate in the Settlements?  How Do I Exclude Myself?," below.

81.     If you are a Class Member and you wish to object to any of the Settlements, to the Plan of Allocation, or to Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Class, you may present your objections by following the instructions in the section entitled, "When and Where Will the Court Decide Whether to Approve the Settlements?," below.

25

---

**WHAT IF I DO NOT WANT TO PARTICIPATE IN THE SETTLEMENTS?
HOW DO I EXCLUDE MYSELF?**

---

82.     Each Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Class, addressed to *In re Washington Mutual, Inc. Securities Litigation*, EXCLUSIONS, c/o The Garden City Group, Inc., P.O. Box 91310, Seattle, WA 98111-9410.  The exclusion request must be *received* no later than _____, 2011.  You will not be able to exclude yourself from the Class after that date. Each Request for Exclusion must (a) state the name, address and telephone number of the person or entity requesting exclusion; (b) state that such person or entity "requests exclusion from the Class in *In re Washington Mutual, Inc. Securities Litigation*, No. 2:08-md-1919 MJP, Lead Case No. C08-387 MJP"; (c) state the number of each WMI Class Security (in terms of shares, notes or units) that the person or entity requesting exclusion purchased and/or sold during the Class Period, as well as the dates and prices of each such purchase and sale; (d) state whether the person or entity requesting exclusion sold or disposed of any: WMI common stock between July 23, 2008 and October 20, 2008, inclusive; units of Capital Trust Unit Preferred between July 23, 2008 and October 21, 2008, inclusive; and/or Floating Rate Notes, 7.250% Notes or Series R Preferred Stock on or after July 23, 2008, and if so, state the number of shares, units or notes sold, the date(s) of such sale(s) and the amount of money received for each such sale; and (e) be signed by such person or entity requesting exclusion or an authorized representative.  A Request for Exclusion shall not be effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

83.     If you do not want to be part of the Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Settled Claim against any of the Released Defendant Parties.

84.     If you ask to be excluded from the Class, you will not be eligible to receive any payment out of any of the Net Settlement Funds, or any other benefit provided for in the Stipulations.

85.     The Settling Defendants have the right to terminate their respective Settlements if valid requests for exclusion are received from persons and entities entitled to be members of the Class in an amount that exceeds an amount agreed to by Lead Plaintiff and the applicable Settling Defendants.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE
SETTLEMENTS?
DO I HAVE TO COME TO THE HEARING?
MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENTS?**

---

86.     **Class Members do not need to attend the Settlement Hearing.  The Court will consider any submission made in accordance with the provisions below even if the Class Member does not attend the hearing.  You can participate in the Settlements without attending the Settlement Hearing.**

87.     The Settlement Hearing will be held on _____, 2011 at _:__ _.m. before the Honorable Marsha J. Pechman, at the United States District Court for the Western District of Washington, United States Courthouse, 700 Stewart Street, Seattle, WA 98101.  The Court reserves the right to approve the Settlements at or after the Settlement Hearing without further notice to the members of the Class.

88.     Any Class Member who does not request exclusion may object to one or more of the Settlements, the proposed Plan of Allocation or Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses.  Objections must be in writing.  You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Western District of Washington at the address set forth below on or before _____, 2011.  You must also serve the papers on Lead Counsel for the Class and on counsel for the relevant Settling Defendants at the addresses set forth below for their respective counsel so that the papers are *received* **on or before** _____, 2011.

| **Clerk's Office** | **Lead Counsel for the Class** |
|---|---|
| United States District Court for the | Hannah G. Ross, Esq. |
| Western District of Washington | Bernstein Litowitz Berger |
| Clerk of the Court |     & Grossmann LLP |
| United States Courthouse | 1285 Avenue of the Americas |
| 700 Stewart Street | New York, NY 10019 |
| Seattle, WA 98101 | |

| **Representative Counsel for the Individual Defendants** | **Counsel for the Underwriter Defendants** | **Counsel for Deloitte & Touche LLP** |
|---|---|---|
| Ronald L. Berenstain, Esq. | Jonathan C. Dickey, Esq. | Peter A. Wald, Esq. |
| Perkins Coie LLP | Gibson, Dunn & Crutcher LLP | Latham & Watkins LLP |
| 1201 Third Avenue | 200 Park Avenue | 505 Montgomery Street |
| Suite 4800 | New York, NY 10166 | San Francisco, CA 94111 |
| Seattle Washington, 98101-3099 | | |

89.     Any objection to any of the Settlements (a) must contain a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; and (b) must include documents sufficient to prove the number (in terms of shares, notes or units) of each WMI Class Security that the objecting Class Member purchased and sold during the Class Period, as well as the dates and prices of each such purchase and/or sale, and with respect to WMI common stock sold between July 23, 2008 and October 20, 2008 inclusive, Capital Trust Unit Preferred sold between July 23, 2008 and October 21, 2008 inclusive, and Floating Rate Notes, 7.250% Notes or Series R Preferred Stock sold on or after July 23, 2008, state the number of shares, units or notes sold, the date(s) of such sale(s) and the amount of money received for each such sale.  You may not object to any of the Settlements, the Plan of Allocation or the motion for attorneys' fees and reimbursement of expenses if you excluded yourself from the Class or if you are not a member of the Class.

90.     You may file a written objection without having to appear at the Settlement Hearing.  You may not, however, appear at the Settlement Hearing to present your objection unless you first filed and

27

served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

91.     If you wish to be heard orally at the hearing in opposition to the approval of any of the Settlements, the Plan of Allocation or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses, and if you file and serve a timely written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and counsel for the Settling Defendants at the addresses set forth above so that it is *received* on or before _____, 2011. Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.

92.     You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing.  If you decide to hire an attorney, which will be at your own expense, however, he or she must file a notice of appearance with the Court and serve it on Lead Counsel and Counsel for the Settling Defendants at the set forth addresses above so that the notice is *received* on or before _____, 2011.

93.     The Settlement Hearing may be adjourned by the Court without further written notice to the Class.  If you intend to attend the Settlement Hearing, you should confirm the date and time with Lead Counsel.

**Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlements, the proposed Plan of Allocation or Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses.  Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

| WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF? |
|---|

94.     If you purchased or otherwise acquired any of the WMI Class Securities (listed on page 1 of this Notice) during the Class Period for the beneficial interest of persons or organizations other than yourself, you must either (a) send a copy of this Notice and the enclosed Claim Form to the beneficial owners of such securities, postmarked no later than fourteen (14) days after you receive this Notice, or (b) provide the names and addresses of such persons or entities no later than fourteen (14) days after you receive this Notice to *In re Washington Mutual, Inc. Securities Litigation*, c/o The Garden City Group, Inc., P.O. Box 91310, Seattle, WA 98111-9410.  If you choose the second option, the Claims Administrator will send a copy of the Notice and the Claim Form to the beneficial owners.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice and the Claim Form can be obtained from the website maintained by the Claims Administrator, _____.com, by calling the Claims Administrator toll-free at 1-888-588-3788, or from Lead Counsel's website, www.blbglaw.com.

| CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? |
| --- |

95.     This Notice contains only a summary of the terms of the proposed Settlements.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulations, which may be inspected during regular office hours at the Office of the Clerk, United States District Court, Western District of New York, United States Courthouse, 700 Stewart Street, Seattle, WA 98101.  Additionally, copies of the Stipulations and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.WashingtonMutualSecuritiesLitigationSettlement.com.  All inquiries concerning this Notice should be directed to:

*In re Washington Mutual, Inc. Securities Litigation*
c/o The Garden City Group, Inc.
P.O. Box 91310
Seattle, WA 98111-3788
(888) 588-3788
www.WashingtonMutualSecuritiesLitigationSettlement.com

and/or

Hannah G. Ross, Esq.
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(800) 380-8496
blbg@blbglaw.com

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF THE COURT REGARDING THIS NOTICE.**

Dated: _____, 2011                                        By Order of the Clerk of the Court
                                                                                         United States District Court
                                                                                         Western District of Washington

#551346.10

29

**TABLE A**
**Washington Mutual Inc.**
**WaMu Securities Inflation per share by Period**

| Period | Inflation Per Share | |
| --- | --- | --- |
| | Common Stock | Capital Unit Trust |
| October 19, 2005 to October 17, 2007 | $5.80 | $5.06 |
| October 18, 2007 to November 1, 2007 | $4.87 | $4.15 |
| November 2, 2007 to November 6, 2007 | $4.54 | $4.06 |
| November 7, 2007 to December 10, 2007 | $2.83 | $3.22 |
| December 11, 2007 to December 20, 2007 | $2.38 | $3.74 |
| December 21, 2007 to March 6, 2008 | $1.57 | $1.71 |
| March 7, 2008 to July 22, 2008 | $0.97 | $0.79 |
| July 23, 2008 Onwards | $0.00 | $0.00 |

## TABLE B
## Washington Mutual Inc.
## Common Stock Average 90 Day Lookback Price

| Date | Closing Price | Average Closing Price |
|------|---------------|------------------------|
| 7/23/2008 | $4.64 | $4.64 |
| 7/24/2008 | $4.02 | $4.33 |
| 7/25/2008 | $3.83 | $4.16 |
| 7/28/2008 | $3.94 | $4.11 |
| 7/29/2008 | $4.43 | $4.17 |
| 7/30/2008 | $4.74 | $4.27 |
| 7/31/2008 | $5.33 | $4.42 |
| 8/1/2008 | $5.32 | $4.53 |
| 8/4/2008 | $4.87 | $4.57 |
| 8/5/2008 | $5.22 | $4.63 |
| 8/6/2008 | $5.30 | $4.69 |
| 8/7/2008 | $4.97 | $4.72 |
| 8/8/2008 | $4.58 | $4.71 |
| 8/11/2008 | $4.74 | $4.71 |
| 8/12/2008 | $4.30 | $4.68 |
| 8/13/2008 | $4.12 | $4.65 |
| 8/14/2008 | $4.36 | $4.63 |
| 8/15/2008 | $4.55 | $4.63 |
| 8/18/2008 | $4.21 | $4.60 |
| 8/19/2008 | $4.10 | $4.58 |
| 8/20/2008 | $4.10 | $4.56 |
| 8/21/2008 | $3.90 | $4.53 |
| 8/22/2008 | $3.83 | $4.50 |
| 8/25/2008 | $3.60 | $4.46 |
| 8/26/2008 | $3.59 | $4.42 |
| 8/27/2008 | $3.53 | $4.39 |
| 8/28/2008 | $3.87 | $4.37 |
| 8/29/2008 | $4.05 | $4.36 |
| 9/2/2008 | $4.24 | $4.35 |
| 9/3/2008 | $4.40 | $4.36 |
| 9/4/2008 | $4.04 | $4.35 |
| 9/5/2008 | $4.27 | $4.34 |
| 9/8/2008 | $4.12 | $4.34 |
| 9/9/2008 | $3.30 | $4.31 |
| 9/10/2008 | $2.32 | $4.25 |
| 9/11/2008 | $2.83 | $4.21 |
| 9/12/2008 | $2.73 | $4.17 |

| | | |
|---|---|---|
| 9/15/2008 | $2.00 | $4.11 |
| 9/16/2008 | $2.32 | $4.07 |
| 9/17/2008 | $2.01 | $4.02 |
| 9/18/2008 | $2.99 | $3.99 |
| 9/19/2008 | $4.25 | $4.00 |
| 9/22/2008 | $3.33 | $3.98 |
| 9/23/2008 | $3.20 | $3.96 |
| 9/24/2008 | $2.26 | $3.93 |
| 9/25/2008 | $1.69 | $3.88 |
| 9/26/2008 | $0.16 | $3.80 |
| 9/29/2008 | $0.03 | $3.72 |
| 9/30/2008 | $0.08 | $3.65 |
| 10/1/2008 | $0.14 | $3.58 |
| 10/2/2008 | $0.12 | $3.51 |
| 10/3/2008 | $0.16 | $3.44 |
| 10/6/2008 | $0.14 | $3.38 |
| 10/7/2008 | $0.11 | $3.32 |
| 10/8/2008 | $0.11 | $3.26 |
| 10/9/2008 | $0.09 | $3.20 |
| 10/10/2008 | $0.08 | $3.15 |
| 10/13/2008 | $0.09 | $3.10 |
| 10/14/2008 | $0.10 | $3.05 |
| 10/15/2008 | $0.10 | $3.00 |
| 10/16/2008 | $0.10 | $2.95 |
| 10/17/2008 | $0.09 | $2.90 |
| 10/20/2008 | $0.08 | $2.86 |

**TABLE C**
**Washington Mutual Inc.**
**Capital Unit Trust Average 90 Day Lookback Price**

| Date | Closing Price | Average Closing Price |
|------|---------------|-----------------------|
| 7/24/2008 | $18.25 | $18.25 |
| 7/25/2008 | $18.00 | $18.13 |
| 7/28/2008 | $19.00 | $18.42 |
| 7/29/2008 | $19.00 | $18.56 |
| 7/30/2008 | $20.32 | $18.91 |
| 7/31/2008 | $23.50 | $19.68 |
| 8/1/2008 | $21.50 | $19.94 |
| 8/4/2008 | $22.00 | $20.20 |
| 8/5/2008 | $21.20 | $20.31 |
| 8/6/2008 | $21.50 | $20.43 |
| 8/7/2008 | $20.93 | $20.47 |
| 8/8/2008 | $21.85 | $20.59 |
| 8/11/2008 | $20.72 | $20.60 |
| 8/12/2008 | $20.62 | $20.60 |
| 8/13/2008 | $19.38 | $20.52 |
| 8/14/2008 | $19.38 | $20.45 |
| 8/15/2008 | $20.50 | $20.45 |
| 8/18/2008 | $19.85 | $20.42 |
| 8/19/2008 | $19.00 | $20.34 |
| 8/20/2008 | $18.50 | $20.25 |
| 8/21/2008 | $18.10 | $20.15 |
| 8/22/2008 | $18.30 | $20.06 |
| 8/25/2008 | $18.20 | $19.98 |
| 8/26/2008 | $18.00 | $19.90 |
| 8/27/2008 | $17.50 | $19.80 |
| 8/28/2008 | $17.90 | $19.73 |
| 8/29/2008 | $18.60 | $19.69 |
| 9/2/2008 | $18.50 | $19.65 |
| 9/3/2008 | $18.70 | $19.61 |
| 9/4/2008 | $18.40 | $19.57 |
| 9/5/2008 | $17.75 | $19.51 |
| 9/8/2008 | $18.00 | $19.47 |
| 9/9/2008 | $16.00 | $19.36 |
| 9/10/2008 | $13.00 | $19.17 |
| 9/11/2008 | $14.00 | $19.03 |
| 9/12/2008 | $16.75 | $18.96 |
| 9/15/2008 | $13.00 | $18.80 |

| | | |
|---|---|---|
| 9/16/2008 | $10.25 | $18.58 |
| 9/17/2008 | $10.50 | $18.37 |
| 9/18/2008 | $15.00 | $18.29 |
| 9/19/2008 | $18.00 | $18.28 |
| 9/22/2008 | $16.50 | $18.24 |
| 9/23/2008 | $13.40 | $18.12 |
| 9/24/2008 | $11.05 | $17.96 |
| 9/25/2008 | $6.00 | $17.70 |
| 9/26/2008 | $0.02 | $17.31 |
| 9/29/2008 | $0.70 | $16.96 |
| 9/30/2008 | $0.40 | $16.61 |
| 10/1/2008 | $1.05 | $16.30 |
| 10/2/2008 | $1.10 | $15.99 |
| 10/3/2008 | $1.75 | $15.71 |
| 10/6/2008 | $2.01 | $15.45 |
| 10/7/2008 | $1.95 | $15.20 |
| 10/8/2008 | $1.90 | $14.95 |
| 10/9/2008 | $1.80 | $14.71 |
| 10/10/2008 | $1.75 | $14.48 |
| 10/13/2008 | $1.66 | $14.25 |
| 10/14/2008 | $1.80 | $14.04 |
| 10/15/2008 | $1.50 | $13.83 |
| 10/16/2008 | $1.50 | $13.62 |
| 10/17/2008 | $1.60 | $13.42 |
| 10/20/2008 | $1.60 | $13.23 |
| 10/21/2008 | $1.10 | $13.04 |

# Exhibit A-2

EXHIBIT A-2

<div style="border:1px solid">

**Must Be Postmarked No
Later Than
_____, 2011**

</div>

**In re Washington Mutual, Inc. Securities Litigation
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 91310
Seattle, WA 98111-9410
(Toll-free number) 1-888-588-3788
*www.WashingtonMutualSecuritiesLitigationSettlement.com***

# PROOF OF CLAIM AND RELEASE

*THIS PROOF OF CLAIM MUST BE MAILED TO THE ADDRESS ABOVE
AND POSTMARKED NO LATER THAN _____, 2011.*

**TABLE OF CONTENTS**                                                    **PAGE #**

**PART I – CLAIMANT INFORMATION**

**PART II – GENERAL INSTRUCTIONS**

**PART III – SCHEDULE OF TRANSACTIONS IN WMI CLASS SECURITIES**
      **A.  COMMON STOCK**
      **B.  CAPITAL TRUST UNIT PREFERRED**
      **C.  SERIES R STOCK**
      **D.  FLOATING RATE NOTES**
      **E.  7.250% NOTES**

**PART IV – RELEASE OF CLAIMS AND SIGNATURE**

## PART I – CLAIMANT INFORMATION

LAST NAME (CLAIMANT)

FIRST NAME (CLAIMANT)

Last Name (Beneficial Owner if Different From Claimant)

First Name (Beneficial Owner)

Last Name (Co-Beneficial Owner)

First Name (Co-Beneficial Owner)

Company/Other Entity (If Claimant Is Not an Individual)

Contact Person (if Claimant is Not an Individual)

Trustee/Nominee/Other

Account Number (If Claimant Is Not an Individual)

Trust/Other Date (If Applicable)

Address Line 1

Address Line 2 (If Applicable)

City

State

Zip Code

-

Foreign Province

Foreign Country

Foreign Zip Code

Telephone Number (Day)

(          )          -

Telephone Number (Night)

(          )          -

Beneficial Owner's Employer Identification Number or Social Security Number [1]

Email Address  (*Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.*)

**Are you or were you an affiliate of or related to TPG Capital?**          Yes [     ]   No [     ] (check one)

**Did you or someone on your behalf exercise both distinct rights (including the appointment of a member to the WMI Board of Directors) and diligence opportunities in connection with the TPG Capital Deal?  Yes [     ]   No [     ] (check one)**

---

[1]  The taxpayer identification number (TIN), consisting of a valid Social Security number (SSN) for individuals or employer identification number (EIN) for business entities, trusts, estates, etc., and telephone number of the beneficial owner(s) may be used in verifying this claim.

IDENTITY OF CLAIMANT (check only one box)

○ Individual  ○Joint Owners  ○Estate  ○Corporation  ○Trust  ○Partnership  ○ Private Pension Fund
○ IRA, Keogh, or other type of individual retirement plan (indicate type of plan, mailing address, and name of current custodian) _ ○ Legal Representative  ○ Other (specify, describe on separate sheet)

## PART II – GENERAL INSTRUCTIONS

**A.** It is important that you completely read and understand the Notice of (I) Pendency of Class Action and Proposed Settlements, (II) Settlement Fairness Hearing, and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") that accompanies this Proof of Claim and Release form ("Claim Form"), including the Plan of Allocation of the Net Settlement Funds set forth in the Notice.  The Notice describes the proposed Settlements, how Class Members are affected by the Settlements, and the manner in which the Net Settlement Funds will be distributed if the Settlements and Plan of Allocation are approved by the Court.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

**B.** TO BE ELIGIBLE TO RECEIVE A DISTRIBUTION IN THE SETTLEMENTS, YOU MUST MAIL YOUR COMPLETED AND SIGNED CLAIM FORM TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, POSTAGE PREPAID, **POSTMARKED BY _____, 2011,** ADDRESSED AS FOLLOWS:

*In re Washington Mutual, Inc. Securities Litigation*
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 91310
Seattle, WA 98111-9410

If you fail to file a timely, properly addressed, and completed Claim Form, your claim may be rejected and you may be precluded from receiving any proceeds from the Settlements.

**C.** This Proof of Claim is directed to all persons and/or entities who, from October 19, 2005 to July 23, 2008 (the "Class Period"), purchased or otherwise acquired any of the following securities issued by Washington Mutual, Inc. ("WMI" or the "Company") and its subsidiaries:  (i) WMI common stock (CUSIP 939322103); (ii) Floating Rate Notes due August 24, 2009, offered in WMI's August 2006 Offering (CUSIP 939322AW3) ("Floating Rate Notes"); (iii) 7.250% Subordinated Notes due November 1, 2017, offered in WMI's October 2007 Offering (CUSIP 939322AY9) ("7.25% Notes"); (iv) 7.75% Series R Non-Cumulative Perpetual Convertible Preferred Stock, offered in WMI's December 2007 Offering (CUSIP 939322814) ("Series R Stock"); or (v) Washington Mutual Capital Trust 2001's 5.375% Trust Preferred Income Equity Redeemable Securities (PIERS) Units, maturing 7/1/2041 (CUSIP 939322848) ("Capital Trust Unit Preferred") (collectively, the "WMI Class Securities"), and were damaged thereby (the "Class").

**D.** "Class Members" means any persons and entities who purchased or otherwise acquired WMI Class Securities during the Class Period and who were damaged thereby and who are not excluded by

definition from the Class and do not timely submit a proper request for exclusion in accordance with the requirements set forth in the Notice.  Persons and entities excluded from the Class by definition are (i) Defendants; (ii) members of the Immediate Family of each Individual Defendant; (iii) any other person who was an officer or director of WMI, Deloitte, any of the Underwriter Defendants, Lehman, or BOA during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) any person who participated in the wrongdoing alleged in the Action; (vi) TPG Capital and other purchasers of equity securities issued by WMI in connection with the $7 billion capital issuance pursuant to the agreements entered into by and among TPG Capital and WMI and other investors, announced by the Company on April 8, 2008 (the "TPG Deal"), to the extent that such purchasers exercised distinct rights and diligence opportunities afforded them in connection with the TPG Deal; and (vii) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party, provided that any Investment Vehicle (as defined in the Stipulations) shall not be deemed an excluded person or entity by definition.

**E.**  IF YOU ARE NOT A CLASS MEMBER, OR IF YOU FILED A REQUEST FOR EXCLUSION FROM THE CLASS, DO NOT SUBMIT A CLAIM FORM. YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENTS IF YOU ARE NOT A CLASS MEMBER OR IF YOU SUBMIT A VALID AND TIMELY REQUEST FOR EXCLUSION.

**F.**   Class Members will be bound by the terms of any judgments or orders entered in the Action WHETHER OR NOT A CLAIM FORM IS SUBMITTED, unless a valid request for exclusion from the Class is received by _____, **2011.**  As described in the Notice, the Judgments will release and enjoin the filing or continued prosecution of the Settled Claims against the Released Defendant Parties.

**G.  Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlements.**  Distribution of the Net Settlement Funds will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.

**H.**  Use Section III of this Claim Form entitled "SCHEDULE OF TRANSACTIONS IN WMI CLASS SECURITIES" to supply all required details of your transaction(s) in the WMI Class Securities.  On these schedules, provide all of the requested information with respect to (i) your position in WMI Common Stock and Capital Trust Unit Preferred as of the close of trading on October 18, 2005, the day before the Class Period begins; (ii) all transactions in WMI Class Securities, including all purchases or other acquisitions (including free receipts) and all sales (including free deliveries), made from October 19, 2005 through and including October 20, 2008 (for Common Stock), from  October 19, 2005 through and including October 21, 2008 (for Capital Trust Unit Preferred) and from October 19, 2005 through and including [May 13], 2011 (for Series R Stock, Floating Rate Notes, and 7.250% Notes); and (iii) your closing positions in Common Stock and Capital Trust Unit Preferred as of the close of trading on October 20, 2008 and October 21, 2008, respectively; and your closing position in Series R Stock, Floating Rate Notes, and 7.250% Notes as of the close of trading on [May 13], 2011.  **Failure to report all transactions during the requested periods may result in the rejection of your claim.**

**I.**  You are required to submit genuine and sufficient documentation for all your transactions in and holdings of WMI Class Securities as set forth in the Schedule of Transactions in Part III. Documentation may consist of copies of brokerage confirmations or monthly statements.  IF SUCH

DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER.  FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN REJECTION OF YOUR CLAIM.  DO NOT SEND ORIGINAL DOCUMENTS.  **Please keep a copy of all documents that you send to the Claims Administrator.**

**J.** Participants and beneficiaries in the WaMu Savings Plan should not include any information relating to their transactions within the plan in any Claim Form that they may submit in this Action.  Claims based on the WaMu Savings Plan's purchases of WMI Class Securities during the Class Period may be made by the plan's trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Class are participants in the plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from these Settlements by the WaMu Savings Plan.

**K.** Separate Claim Forms should be submitted for each separate legal entity (e.g., a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name).  Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (e.g., a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

**L.** All joint beneficial owners must each sign this Claim Form.  If you purchased or acquired WMI Class Securities during the Class Period and held the securities in your name, you are the beneficial owner as well as the record owner.  If, however, you purchased or acquired WMI Class Securities during the Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities, but the third party is the record owner.

**M.** Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

      (a)    expressly state the capacity in which they are acting;

      (b)    identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the WMI Class Securities; and

      (c)    furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting.  (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

**N.** By submitting a signed Claim Form, you will be swearing that you:

      (a)    own(ed) the WMI Class Securities you have listed in the Claim Form; or

      (b)    are expressly authorized to act on behalf of the owner thereof.

**O.** By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America. The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

**P.** NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the mandatory electronic filing requirements and file layout, you may visit the settlement website at www.WashingtonMutualSecuritiesLitigationSettlement.com or you may email the Claims Administrator's electronic filing department at eClaim@gcginc.com Any file not in accordance with the required electronic filing format will be subject to rejection. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email after processing your file with your claim numbers and respective account information. Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filling department at eClaim@gcginc.com to inquire about your file and confirm it was received and acceptable.

**Q.** If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, The Garden City Group, Inc., at the above address or by toll-free phone at 1-888-588-3788, or you may download the documents from www.WashingtonMutualSecuritiesLitigationSettlement.com.

## PART III – SCHEDULE OF TRANSACTIONS IN WMI CLASS SECURITIES

Failure to provide proof of all beginning holdings, purchases or acquisitions, sales, and ending holdings information requested below will impede proper processing of your claim and may result in rejection of your claim.  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph I, above.

### A. __COMMON STOCK__ (CUSIP No. 939322103):

| | | | |
|---|---|---|---|
| **1. Beginning Holdings**– State the number of shares of WMI common stock you held as of the close of trading on **October 18, 2005**.  If none, write "zero" or "0". | | _____ shares | Proof of holding enclosed ○ Y   ○ N |
| **2. Purchases/Acquisitions** – Separately list each and every purchase and/or acquisition, including free receipts, of WMI common stock during the period **October 19, 2005** through and including the close of trading on **October 20, 2008.**[2] | | **IF NONE, CHECK HERE** ○ | |
| Date(s) of purchase or acquisition (List chronologically) MM      DD      YYYY | Number of shares purchased/acquired | Purchase price per share (excluding taxes, commissions and fees) | Proof of purchase enclosed |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| **3. Sales –** Separately list each and every sale, including free deliveries, of WMI common stock during the period **October 19, 2005** through and including the close of trading on **October 20, 2008**. | | **IF NONE, CHECK HERE** ○ | |
| Date(s) of sales (List chronologically) MM       DD       YYYY | Number of shares sold | Sale price per share (excluding taxes, commissions and fees) | Proof of sale enclosed |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| **4. Ending Holdings –** State the number of shares of WMI common stock you held as of the close of trading on **October 20, 2008**.  If none, write "zero" or "0". | | _____ shares | Proof of holding enclosed ○ Y    ○ N |

---

[2] **Please note**:  Information requested with respect to your purchases/acquisitions of WMI common stock from July 23, 2008 through and including October 20, 2008 is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible under the Settlements and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

B. **CAPITAL TRUST UNIT PREFERRED** (CUSIP No. 939322848)**:**

| | | |
|---|---|---|
| **1. Beginning Holdings** – State the number of units of Washington Mutual Capital Trust 2001's 5.375% Trust Preferred Income Equity Redeemable Securities (PIERS) Units, maturing 7/1/2041 ("Capital Trust Unit Preferred") you held as of the close of trading on **October 18, 2005**. If none, write "zero" or "0". | _____ units | Proof of holding enclosed ○Y   ○N |

| **2. Purchases** – Separately list each and every purchase and/or acquisition, including free receipts, of Capital Trust Unit Preferred during the period **October 19, 2005** through and including the close of trading on **October 21, 2008.**[3] | | **IF NONE, CHECK HERE** ○ | |
|---|---|---|---|
| Date(s) of purchase or acquisition (List chronologically) MM      DD      YYYY | Number of units purchased/acquired | Purchase price per unit (excluding taxes, commissions and fees) | Proof of purchase enclosed |
| /      / | | $ | ○ Y   ○ N |
| /      / | | $ | ○ Y   ○ N |
| /      / | | $ | ○ Y   ○ N |
| /      / | | $ | ○ Y   ○ N |
| /      / | | $ | ○ Y   ○ N |
| **3. Sales** – Separately list each and every sale, including free deliveries, of Capital Trust Unit Preferred during the period **October 19, 2005** through and including the close of trading on **October 21, 2008**. | | **IF NONE, CHECK HERE** ○ | |
| Date(s) of sales (List chronologically) MM      DD      YYYY | Number of units sold | Sale price per unit (excluding taxes, commissions and fees) | Proof of sale enclosed |
| /      / | | $ | ○ Y   ○ N |
| /      / | | $ | ○ Y   ○ N |
| /      / | | $ | ○ Y   ○ N |
| /      / | | $ | ○ Y   ○ N |
| /      / | | $ | ○ Y   ○ N |
| **4. Ending Holdings** – State the number of units of Capital Trust Unit Preferred you held as of the close of trading on **October 21, 2008**. | _____ units | Proof of holding enclosed ○Y   ○N |

[3] **Please note**: Information requested with respect to your purchases/acquisitions of Capital Trust Unit Preferred from July 23, 2008 through and including October 21, 2008 is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible under the Settlements and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

C. **SERIES R STOCK** (CUSIP No. 939322814)**:**

| **1. Purchases** – Separately list each and every purchase and/or acquisition, including free receipts, of 7.75% Series R Non-Cumulative Perpetual Convertible Preferred Stock, offered in WMI's December 2007 Offering ("Series R Stock") at any time prior to the close of trading on **[May 13], 2011.**[4] | | **IF NONE, CHECK HERE**<br>○ | |
|---|---|---|---|
| Date(s) of purchase or acquisition<br>(List chronologically)<br>MM      DD      YYYY | Number of shares purchased/acquired | Purchase price per share (excluding taxes, commissions and fees) | Proof of purchase enclosed |
| ___/___/___ | | $ | ○ Y  ○ N |
| ___/___/___ | | $ | ○ Y  ○ N |
| ___/___/___ | | $ | ○ Y  ○ N |
| ___/___/___ | | $ | ○ Y  ○ N |
| ___/___/___ | | $ | ○ Y  ○ N |
| **2. Sales** – Separately list each and every sale, including free deliveries, of Series R Stock at any time prior to the close of trading on **[May 13], 2011**. | | **IF NONE, CHECK HERE**<br>○ | |
| Date(s) of sales<br>(List chronologically)<br>MM      DD      YYYY | Number of shares sold | Sale price per share (excluding taxes, commissions and fees) | Proof of sale enclosed |
| ___/___/___ | | $ | ○ Y  ○ N |
| ___/___/___ | | $ | ○ Y  ○ N |
| ___/___/___ | | $ | ○ Y  ○ N |
| ___/___/___ | | $ | ○ Y  ○ N |
| ___/___/___ | | $ | ○ Y  ○ N |
| **3. Ending Holdings** – State the number of shares of Series R Stock you held as of the close of trading on **[May 13], 2011**.  If none, write "zero" or "0". | | _____ shares | Proof of holding enclosed<br>○Y    ○N |

---

[4] **Please note**:  Information requested with respect to your purchases/acquisitions of Series R Stock from July 23, 2008 through and including [May 13], 2011 is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible under the Settlements and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

**D.  FLOATING RATE NOTES** (CUSIP No. 939322AW3)**:**

| **1.  Purchases/Acquisitions –** Separately list each and every purchase and/or acquisition, including free receipts, of Floating Rate Notes due August 24, 2009, offered in WMI's August 2006 Offering  ("Floating Rate Notes") at any time prior to the close of trading on **[May 13], 2011.**[5] | | **IF NONE, CHECK HERE**  ○ | |
|---|---|---|---|
| Date(s) of purchase or acquisition (List chronologically)  MM      DD      YYYY | Face value purchased/acquired | Purchase price per note (excluding taxes, commissions and fees) | Proof of purchase enclosed |
| /       / | | $ | ○ Y  ○ N |
| /       / | | $ | ○ Y  ○ N |
| /       / | | $ | ○ Y  ○ N |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y  ○ N |
| **2.  Sales –** Separately list each and every sale, including free deliveries, of Floating Rate Notes at any time prior to the close of trading on **[May 13], 2011**. | | **IF NONE, CHECK HERE**  ○ | |
| Date(s) of sales (List chronologically)  MM      DD      YYYY | Face value sold | Sale price per note (excluding taxes, commissions and fees) | Proof of sale enclosed |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| /       / | | $ | ○ Y   ○ N |
| **3.  Ending Holdings –** State the face value of Floating Rate Notes you held as of the close of trading on **[May 13], 2011**.  If none, write "zero" or "0". | | $ | Proof of holding enclosed  ○Y      ○N |

---

[5] **Please note**:  Information requested with respect to your purchases/acquisitions of Floating Rate Notes from July 23, 2008 through and including [May 13], 2011 is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible under the Settlements and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

**E. 7.250% NOTES** (CUSIP No. 939322AY9)**:**

| **1. Purchases/Acquisitions –** Separately list each and every purchase and/or acquisition, including free receipts, of 7.250% Subordinated Notes due November 1, 2017, offered in WMI's October 2007 Offering ("7.250% Notes") at any time prior to the close of trading on **[May 13], 2011.**[6] | | **IF NONE, CHECK HERE**<br>○ | |
|---|---|---|---|
| Date(s) of purchase or acquisition<br>(List chronologically)<br>MM     DD     YYYY | Face value<br>purchased/acquired | Purchase price per note<br>(excluding taxes,<br>commissions and fees) | Proof of purchase enclosed |
| /     / | | $ | ○ Y  ○ N |
| /     / | | $ | ○ Y  ○ N |
| /     / | | $ | ○ Y  ○ N |
| /     / | | $ | ○ Y  ○ N |
| /     / | | $ | ○ Y  ○ N |
| **2. Sales –** Separately list each and every sale, including free deliveries, of 7.250% Notes at any time prior to the close of trading on **[May 13], 2011**. | | **IF NONE, CHECK HERE**<br>○ | |
| Date(s) of sales<br>(List chronologically)<br>MM     DD     YYYY | Face value sold | Sale price per note<br>(excluding taxes,<br>commissions and fees) | Proof of sale enclosed |
| /     / | | $ | ○ Y  ○ N |
| /     / | | $ | ○ Y  ○ N |
| /     / | | $ | ○ Y  ○ N |
| /     / | | $ | ○ Y  ○ N |
| /     / | | $ | ○ Y  ○ N |
| **3. Ending Holdings –** State the face value of 7.250% Notes you held as of the close of trading on **[May 13], 2011**. If none, write "zero" or "0". | | $ | Proof of holding enclosed<br>○ Y    ○ N |

**IF YOU REQUIRE ADDITIONAL SPACE FOR ANY OF THE SCHEDULES ABOVE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT.  PRINT THE BENEFICIAL OWNER'S FULL NAME AND TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE.  IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX □**

---

[6] **Please note**:  Information requested with respect to your purchases/acquisitions of 7.250% Notes from July 23, 2008 through and including [May 13], 2011 is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible under the Settlements and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

## PART IV - RELEASE OF CLAIMS AND SIGNATURE

**YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGE __ OF THIS CLAIM FORM.**

I (we) hereby acknowledge that as of the Effective Date of the respective Settlements, pursuant to the terms set forth in the relevant Stipulation(s), I (we) shall have and be deemed to have released, waived, discharged and dismissed each and every Settled Claim (as defined in the applicable Stipulation(s)) as against all of the applicable Released Defendant Parties (as defined in the applicable Stipulation(s)), including, without limitation, the Bankruptcy Claims as against WMI (if applicable), and shall forever be enjoined from prosecuting any or all Settled Claims against any Released Defendant Parties, including, without limitation, the Bankruptcy Claims as against WMI (if applicable), with respect to those Settlements as to which the Effective Date has occurred.

## V.   CERTIFICATION

By signing and submitting this Claim Form, the claimant(s) or the person(s) who represents the claimant(s) certifies, as follows:

1.    that I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlements;

2.    that the claimant(s) is a (are) Class Member(s), as defined in the Notice, and is (are) not excluded by definition from the Class;

3.    that the claimant **has not** submitted a request for exclusion from the Class;

4.    that I (we) own(ed) the WMI Class Securities identified in the Claim Form and have not assigned the claim against the Released Defendant Parties to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

5.    that the claimant has not submitted any other claim covering the same purchases, sales, or holdings of WMI Class Securities and knows of no other person having done so on his/her/its behalf;

6.    that the claimant submits to the jurisdiction of the Court with respect to his/her/its claim and for purposes of enforcing the releases set forth herein;

7.    that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator or the Court may require;

8.    that the claimant waives the right to trial by jury, to the extent it exists, and agrees to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

9.    that I (we) acknowledge that the claimant will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

10.    that the claimant is NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the claimant is exempt from backup withholding or (b) the claimant has not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the claimant that he/she/it is no longer subject to backup withholding.  **If the IRS has notified the claimant that he, she or it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of claimant                                                                    Date

_____

Print your name here

_____

Signature of joint claimant, if any                                              Date

_____

Print your name here

**If the claimant is other than an individual, or is not the person completing this form, the following also must be provided:**

_____

Signature of person signing on behalf of claimant                 Date

_____

Print your name here

_____

Capacity of person signing on behalf of claimant, if other than an individual, e.g., executor, president, custodian, etc.

THIS PROOF OF CLAIM MUST BE POSTMARKED NO LATER THAN _____, 2011, AND MUST BE MAILED TO:

<div align="center">

In re Washington Mutual, Inc. Securities Litigation
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 91310
Seattle, WA 98111-9410

</div>

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by _____, 2011 and if a postmark is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

<div align="center">

**<u>REMINDER CHECKLIST:</u>**

</div>

1. Please sign the above release and certification.  If this Claim Form is being made on behalf of joint claimants, then both must sign.

2. Remember to attach only **copies** of acceptable supporting documentation.

3. Please do not highlight any portion of the Claim Form or any supporting documents.

4. Do not send original stock certificates or documentation.  These items cannot be returned to you by the Claims Administrator.

5. Keep copies of the completed Claim Form and documentation for your own records.

6. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days.  Your claim is not deemed filed until you receive an acknowledgement postcard.  If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at 1-888-588-3788.

7. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address.  If you change your name, please inform the Claims Administrator.

8. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the above address or at 1-888-588-3788, or visit www.WashingtonMutualSecuritiesLitigationSettlement.com.

#543087.9

# Exhibit A-3

EXHIBIT A-3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION, This Document Relates to: ALL ACTIONS | No. 2:08-md-1919 MJP Lead Case No. C08-387 MJP |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENTS, (II) SETTLEMENT FAIRNESS HEARING, AND (III) MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO:** **All persons and entities who purchased or acquired any of the following securities (the "WMI Class Securities") issued by Washington Mutual, Inc. ("WMI") or its subsidiaries during the period from October 19, 2005 to July 23, 2008 and were damaged thereby:**

- **WMI common stock (CUSIP 939322103);**

- **Floating Rate Notes due August 24, 2009, offered in August 2006 (CUSIP 939322AW3);**

- **7.250% Subordinated Notes due November 1, 2017, offered in October 2007 (CUSIP 939322AY9);**

- **7.75% Series R Non-Cumulative Perpetual Convertible Preferred Stock, offered in December 2007 (CUSIP 939322814); and**

- **Washington Mutual Capital Trust 2001's 5.375% Trust Preferred Income Equity Redeemable Securities (PIERS) Units, maturing July 1, 2041 (CUSIP 939322848)**

**PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Western District of Washington, (i) that the above-captioned litigation (the "Action") has been certified as a class action on behalf of all persons and entities who purchased any WMI Class Securities from October 19, 2005 to July 23, 2008 and were damaged thereby (the "Class"), except for certain persons and entities who are excluded from the Class by definition as set forth in the Stipulations of Settlement in the Action; and (ii) that Lead Plaintiff in the Action has reached proposed settlements with the Individual Defendants for $105 million in cash whereby WMI is also a Settling Defendant; with the Underwriter Defendants for $85 million in cash; and with WMI's former auditor, Deloitte & Touche LLP for $18.5 million in cash for a total settlement amount of $208.5 million in cash, plus interest thereon if all the Settlements are approved by the Court (collectively, the "Settlements").

A hearing will be held on _____, 2011 at _:__ _.m before the Honorable Marsha J. Pechman, at the United States District Court for the Western District of Washington, United States Courthouse, 700 Stewart Street, Seattle, Washington, to determine (i) whether the proposed Settlements should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against the Settling Defendants in the respective Settlements, and the releases specified and described in the respective Stipulations of Settlement should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for attorneys' fees and reimbursement of expenses should be approved.

**If you are a member of the Class, your rights will be affected by the pending Action and the Settlements, and you may be entitled to share in the Settlement Funds.**  If you have not yet received the full printed Notice of (I) Pendency of Class Action and Proposed Settlements, (II) Settlement Fairness Hearing, and (III) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), and the Proof of Claim Form, you may obtain copies of these documents by contacting the Claims Administrator:  *In re Washington Mutual, Inc. Securities Litigation*, c/o The Garden City Group, Inc., Claims Administrator, P.O. Box 91310, Seattle, WA 98111-9410, 1-888 588-3788.  Copies of the Notice and Claim Form can also be downloaded from the website maintained by the Claims Administrator, www.WashingtonMutualSecuritiesLitigationSettlement.com, or from Lead Counsel's website, www.blbglaw.com.

If you are a Class Member, in order to be eligible to receive a payment under the proposed Settlements, **you must submit a Claim Form postmarked no later than _____, 2011**.  If you are a Class Member and do not submit a proper Claim Form, you will not share in the distribution of the net proceeds of any of the Settlements but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a Class Member and wish to exclude yourself from the Class, you must submit a request for exclusion such that it is *received* no later than _____, 2011, in accordance with the instructions set forth in the Notice.  If you properly exclude yourself from the Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of any of the Settlements,

Any objections to the proposed Settlements, the proposed Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and counsel for the Settling Defendants such that they are *received* no later than _____, 2011, in accordance with the instructions set forth in the Notice.

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.  Inquiries, other than requests for the Notice, may be made to Lead Counsel:

Hannah G. Ross, Esq.
BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(800) 380-8496

www.blbglaw.com

Dated: _____               By Order of the Court

#550224.6

# Exhibit B

1

**EXHIBIT B**

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3

4

IN RE WASHINGTON MUTUAL, INC.
SECURITIES LITIGATION,

No. 2:08-md-1919 MJP
Lead Case No. C08-387 MJP

5

6

This Document Relates to: ALL ACTIONS

7

8

**JUDGMENT APPROVING CLASS ACTION SETTLEMENT WITH
INDIVIDUAL OFFICER AND DIRECTOR DEFENDANTS
AND WITH WASHINGTON MUTUAL, INC.**

9

10

WHEREAS, Lead Plaintiff Ontario Teachers' Pension Plan Board ("Lead Plaintiff"), on

11

behalf of itself and the Class; Defendants Kerry K. Killinger, Thomas W. Casey, Stephen J. Rotella,

12

Ronald J. Cathcart, David C. Schneider, John F. Woods, Melissa J. Ballenger, Anne V. Farrell,

13

Stephen E. Frank, Thomas C. Leppert, Charles M. Lillis, Phillip D. Matthews, Regina Montoya,

14

Michael K. Murphy, Margaret Osmer McQuade, Mary E. Pugh, William G. Reed, Jr., Orin C. Smith,

15

James H. Stever and Willis B. Wood, Jr. (collectively, the "Individual Defendants"); and

16

Washington Mutual, Inc. ("WMI" or the "Company" and, together with the Individual Defendants

17

the "Settling Defendants"), entered into the Stipulation and Agreement of Settlement with Individual

18

Officer and Director Defendants and with Washington Mutual, Inc. dated June __, 2011 (the

19

"Stipulation") that provides for a complete dismissal with prejudice of the claims asserted in the

20

above-referenced litigation (the "Action") against the Settling Defendants and the release of the

21

Settled Claims as against the Settling Defendants and other Released Defendant Parties on the terms

22

and conditions set forth in the Stipulation, subject to entry of the Bankruptcy Court Approval Order

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

1   by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and

2   such order becoming Final, and the approval of this Court (the "Settlement");

3   WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall

4   have the same meaning as they have in the Stipulation;

5   WHEREAS, in its Order on Class Certification dated October 12, 2010, this Court certified

6   the Action to proceed as a class action;

7   WHEREAS, in the Preliminary Approval Order, this Court (a) preliminarily approved the

8   Settlement; (b) ordered that notice of the proposed Settlement be provided to potential Class

9   Members; (c) provided Class Members with the opportunity either to exclude themselves from the

10  Class or to object to the proposed Settlement, and (d) scheduled a hearing regarding final approval of

11  the Settlement;

12  WHEREAS, due and adequate notice has been given to the Class;

13  WHEREAS, the Bankruptcy Court has entered the Bankruptcy Court Approval Order and

14  such order has become Final;

15  WHEREAS, the Court conducted a hearing on _____, 2011 (the "Settlement

16  Hearing") to consider, among other things, (i) whether the terms and conditions of the Settlement are

17  fair, reasonable and adequate and should therefore be approved; and (ii) whether a judgment should

18  be entered dismissing the Action with prejudice as against the Settling Defendants; and

19  WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and

20  proceedings held herein in connection with the Settlement, all oral and written comments received

21  regarding the proposed Settlement, and the record in the Action, and good cause appearing therefor;

22

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

2

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. **Jurisdiction:** The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Settling Parties and each of the Class Members.

2. **Incorporation of Settlement Documents:** This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on _____, 2011; and (b) the Notice and the Summary Notice, both of which were filed with the Court on _____, 2011.

3. **Notice:** The Court finds that the distribution of the Notice and the publication of the Summary Notice: (i) were implemented in accordance with the Preliminary Approval Order; (ii) constituted the best notice reasonably practicable under the circumstances; (iii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, of the effect of the Settlement (including the releases provided for therein), of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, of their right to object to the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, of their right to exclude themselves from the Class, and of their right to appear at the Settlement Hearing; (iv) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice of the proposed Settlement; and (v) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 77z-1(a)(7) and § 78u-4(a)(7)) (the "PSLRA"), and all other applicable law and rules.

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

3

4.    **Final Settlement Approval and Dismissal of Claims:**   Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the releases provided for therein, including the release of the Settled Claims as against the Released Defendant Parties, and the dismissal with prejudice of claims against the Settling Defendants), and finds that the Settlement is, in all respects, fair, reasonable and adequate, and is in the best interests of Lead Plaintiff and the Class.  The Settling Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

5.    The Action and all of the claims against the Settling Defendants by Class Members and Lead Plaintiff are hereby dismissed on the merits and with prejudice as against the Settling Defendants, as of the Effective Date.  The Settling Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

6.    **Binding Effect:**  The terms of the Stipulation and of this Judgment shall be forever binding on the Settling Defendants, Lead Plaintiff and all other Class Members (regardless of whether or not any individual Class Member submits a Proof of Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective heirs, executors, administrators, predecessors, successors and assigns.

7.    [No persons or entities have submitted valid requests for exclusion.] OR [The persons listed on Exhibit 1 annexed hereto have submitted valid requests for exclusion from the Class, by virtue of such requests are deemed not to be members of the Class, and have no rights to participate

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

4

1   in the Settlement or to receive any distributions from the Settlement Fund.  Except for those persons

2   listed on Exhibit 1, no other persons have submitted valid requests for exclusion from the Class in

3   compliance with this Court's orders and the Notice.  The persons listed on Exhibit 1 are the only

4   persons within the Class who have requested exclusion in compliance with this Court's prior orders

5   and the Notice, and, as a consequence, these persons are not bound by the terms of the Stipulation

6   and this Judgment.]

7        8.    **Releases:**  The releases as set forth in Paragraphs 3 and 4 of the Stipulation (the

8   "Releases"), together with the definitions contained in Paragraph 1 of the Stipulation relating thereto,

9   are expressly incorporated herein in all respects.  The Releases are effective as of the Effective Date.

10   Accordingly, this Court orders that, as of the Effective Date:

11        (a)    (i) Lead Plaintiff and all of the other Class Members, on behalf of themselves,

12   their respective heirs, executors, administrators, predecessors, successors, assigns and agents, shall

13   be deemed by operation of law to have irrevocably, absolutely and unconditionally, fully, finally and

14   forever released, waived, discharged and dismissed, with prejudice, each and every Settled Claim

15   against every Released Defendant Party, including, without limitation, the Bankruptcy Claims

16   against WMI, and shall forever be enjoined from prosecuting any or all Settled Claims against any

17   Released Defendant Party, including, without limitation, the Bankruptcy Claims against WMI; and

18   (ii) the Bankruptcy Claims shall be withdrawn with prejudice, in their entirety; and

19        (b)    Each of the Settling Defendants, and each of the other Released Defendant

20   Parties, on behalf of themselves, their respective heirs, executors, administrators, predecessors,

21   successors, assigns and agents, shall be deemed by operation of law to have irrevocably, absolutely

22

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

5

and unconditionally, fully, finally, and forever released, waived, discharged and dismissed, with prejudice, each and every of the Released Claims by Defendants as to Plaintiffs against Lead Plaintiff, Plaintiffs' Counsel and the other Class Members and their respective attorneys, and shall forever be enjoined from prosecuting any or all of the Released Claims by Defendants as to Plaintiffs against Lead Plaintiff, each Plaintiffs' Counsel, each of the other Class Members and each of their respective attorneys.

9.      **Bar Order:**  Upon the Effective Date, any and all claims for contribution, however denominated, arising out of or related in any way to the Action (a) by any person or entity against any Settling Defendant or (b) by any Settling Defendant against any person or entity, other than a person or entity whose liability to the Class has been extinguished pursuant to the Settlement, are permanently barred, enjoined and finally discharged to the fullest extent provided 15 U.S.C. § 78u-4(f)(7) and any other applicable law or regulation (the "Bar Order").

10.      **Judgment Reduction:**  Any final verdict or judgment that may be obtained by or on behalf of the Class or a Class Member against any person or entity subject to the Bar Order shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of the Settling Defendants for common damages; or (b) the amount paid by or on behalf of the Settling Defendants to the Class or Class Member for common damages.

11.      **Rule 11 Findings:**  The Court finds and concludes that the Settling Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the commencement, maintenance, prosecution, defense and settlement of the Action.  The Court further finds that Lead Plaintiff and Lead Counsel

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

6

1    adequately represented the Class Members for purposes of entering into and implementing the

2    Settlement.

3          12.    **No Admissions:**  This Judgment, the Stipulation, any of their terms and provisions,

4    any of the negotiations, proceedings or agreements connected therewith, any matters arising in

5    connection with settlement negotiations, proceedings, or agreements;

6          (a)    shall not be offered or received against any of the Released Defendant Parties

7    as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or

8    admission by any of the Released Defendant Parties with respect to the truth of any fact alleged by

9    Plaintiffs or the validity of any claim that was or could have been asserted against any of the

10   Released Defendant Parties in this Action, any other litigation, or in the Chapter 11 Cases with

11   respect to the Bankruptcy Claims or otherwise, or the deficiency of any defense that has been or

12   could have been asserted in the Action, any other litigation, or in the Chapter 11 Cases with respect

13   to the Bankruptcy Claims or otherwise, or of any liability, negligence, fault, or other wrongdoing of

14   any kind of any of the Released Defendant Parties;

15         (b)    shall not be offered or received against any of the Released Defendant Parties

16   as evidence of a presumption, concession or admission of any fault, misrepresentation or omission

17   with respect to any statement or written document approved or made by any of the Released

18   Defendant Parties;

19         (c)    shall not be offered or received against the Lead Plaintiff or any other Class

20   Members as evidence of any infirmity in the claims of Lead Plaintiff or the other Class Members;

21

22

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

7

1

(d)        shall not be offered or received against any of the Released Defendant Parties,

2 the Lead Plaintiff or any other Class Members, as evidence of a presumption, concession or

3 admission of wrongdoing with respect to any liability, negligence, or fault of any kind, or in any way

4 referred to for any other reason as against any of the Released Defendant Parties, the Lead Plaintiff

5 or any other Class Members in any other civil, criminal or administrative action or proceeding, other

6 than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided,

7 however, that, the Settling Defendants, any other Released Defendant Party, Lead Plaintiff and the

8 other Class Members may refer to the Stipulation to effectuate the protections from liability granted

9 thereunder or otherwise to enforce the terms of the Settlement;

10

(e)        shall not be construed against any of the Released Defendant Parties, Lead

11 Plaintiff or any other Class Members as an admission, concession, or presumption that the

12 consideration to be given thereunder represents the amount which could be or would have been

13 recovered after trial; and

14

(f)        shall not be construed against Lead Plaintiff or any other Class Members as an

15 admission, concession, or presumption that any of their claims are without merit or that damages

16 recoverable under the Amended Complaint would not have exceeded the Settlement Amount.

17            13.      **No Finding Regarding Insurance Proceeds**:  Nothing in this Judgment shall

18 constitute a determination as to whether the proceeds of the insurance policies used in connection

19 with this Settlement are or are not the property of WMI's estate.

20            14.      **Retention of Jurisdiction:**  Without affecting the finality of this Judgment in any

21 way, this Court retains continuing and exclusive jurisdiction over:  (a) the Settling Parties for

22

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

8

purposes of the administration, interpretation, implementation and enforcement of the Settlement (except that the Bankruptcy Court shall retain jurisdiction over the interpretation and enforcement of the Bankruptcy Court Approval Order);  (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation and the Class Distribution Order; and (e) the Class Members for all matters relating to the Action.

15.    Separate orders shall be entered regarding approval of a plan of allocation and the motion of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses. Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

16.    **Modification of Settlement Agreement:**  Without further approval from the Court, Lead Plaintiff and the Settling Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate this Settlement that: (i) are not materially inconsistent with this Judgment; and (ii) do not materially limit the rights of Class Members in connection with the Settlement.  Without further order of the Court, Lead Plaintiff and the Settling Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

17.    **Entry of Final Judgment:**   There is no just reason to delay the entry of this Judgment as a final judgment as against the Settling Defendants.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment as against the Settling Defendants pursuant to Federal Rule of Civil Procedure 54(b).

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP

9

18.   **Termination:**  If the Effective Date does not occur or the Settlement is terminated as provided in the Stipulation, then this Judgment (and any orders of the Court relating to the Settlement) shall be vacated, rendered null and void and be of no further force or effect, except as otherwise provided by the Stipulation.

SO ORDERED this _____ day of _____, 2011.

_____
The Honorable Marsha J. Pechman
United States District Judge

# 551747

JUDGMENT APPROVING CLASS ACTION
SETTLEMENT WITH INDIVIDUAL OFFICER AND
DIRECTOR DEFENDANTS AND WITH WASHINGTON
MUTUAL, INC.

Master No: 2:08-md-1919 MJP