# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • LOUISIANA

ROCHELLE FEDER HANSEN
rochelle@blbglaw.com
212-554-1407

April 27, 2012

**VIA FEDEX**

Mr. Albert W. Hughes, Jr.
6285 Weatherly Drive, N.W.
Atlanta, Georgia 30328

      Re:    In re Washington Mutual, Inc. Securities Litigation

Dear Mr. Hughes:

      I am an attorney with Bernstein Litowitz Berger & Grossmann LLP, the Court-appointed Lead Counsel for the Class in the Washington Mutual, Inc. Securities Litigation. We received a copy of your letter to the Court dated April 11, 2012 and are very sorry that you have found the administration process so difficult. I have reviewed your letter to the Court as well as the earlier correspondence attached to it and have communicated with The Garden City Group, Inc. ("GCG") to get a better understanding of the responses provided to your inquiries. I will address your questions and concerns in this letter but also suggest that we have a follow-up telephone call to discuss any further questions that you might have and to see if there is any way that we can further assist you.

      **Receipt of Multiple Notices**: The notices that were sent to your family were sent pursuant to an order of the Court preliminarily approving the proposed settlements that required us to provide notice of the pendency of the action and the then proposed settlement to all members of the class at the address of each such person as set forth in the records of Washington Mutual (to the extent that Lead Counsel was able to obtain such records), or its transfer agent, or who otherwise may be identified through further reasonable effort (the "Notice Order"). The goal, and the legal requirement, is to make all reasonable efforts to reach as many potential class members as possible so that they will be advised of how the their rights will be affected by the pendency and settlement of the action and to afford them the opportunity to submit a claim form. As set forth in the notice, receipt of a notice does not mean that there has been a determination that the recipient is, in fact, a member of the class, but only that he, she or it may be a class member.

      Neither Lead Counsel nor the Claims Administrator, GCG, has any records that identify who potential class members are. As required by the Notice Order, we obtained lists from Washington Mutual Inc.'s counsel identifying persons and entities who may be class members. Additionally, brokers and other nominees were requested to provide copies of the notice and claim form to their customers whom they believed may be members of the class (*see* paragraph 94 of the notice).

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Mr. Albert W. Hughes, Jr.
April 27, 2012
Page 2

We recognize the potential for persons to be on more than one list and GCG makes reasonable efforts to remove duplicates. However, in order to be sure that a person who should receive notice is not inadvertently removed from the mailing list, only exact duplicates are removed. Thus, where an individual is identified in multiple capacities, such as appears to have occurred in the case of your family, a mailing of the notice goes to each such capacity. Not only does this serve as an assurance that notice will reach as many potential class members as possible; but, to the extent the person has, or represents, accounts that are separate legal entities, a separate claim form must be submitted for each. Additionally, since the list of potential class members is compiled from multiple sources, it is possible that a later received record will be an exact duplicate of one previously generated. While, as noted, GCG makes reasonable efforts to remove exact duplicates, the process is performed on each group of records as they are received. Finally, since some nominees (e.g., brokerage firms) elect to send the notice directly to their customers, we have no way of knowing if those mailings are in any way duplicative.

From the "names" on each of the mailing records for your family, it does not appear that any are exact duplicates and, as such, each of the five notices was properly sent under the procedures in place. However, as noted, the fact that the notices were sent only means that these persons were identified as *possible* class members, not that they are, in fact, class members.

**Late Receipt of Notices**: In your letter you note that you just recently received two more copies of the notice and claim form, well after the deadline for the submission of claims. This is an issue that, unfortunately, we sometimes encounter. The Court-approved notice directs brokers and nominees who purchased the relevant securities for the beneficial interest of persons or entities other than themselves to provide names and addresses to the Claims Administrator or to mail the notice and claim form directly to such beneficial owners. The notice directs that the information be provided or the mailing be effected in a specified time frame to assure the timely receipt of the materials by potential class members (*see* paragraph 94 of the notice).

The notice program was properly designed and implemented by Lead Counsel and GCG (on August 10, 2011, GCG mailed notices and claim forms to everyone identified by Washington Mutual, Inc. as a potential class member and to 2,271 brokers and nominees and, as of September 18, 2011, over 950,000 copies of the notice and claim form had been disseminated by GCG). However, despite the explicit language of the notice with respect to the time frame for the submission of names and addresses or the mailing of the notice, it does happen that names and addresses are not provided to the Claims Administrator or the direct mailing by the nominee does not timely occur, sometimes not until well after the claim submission deadline.

Neither Lead Counsel nor the Claims Administrator has the power to compel brokers and other nominees to respond in a timely fashion. However, because we are aware that late receipt of the notice does occur, it is our practice to have the Claims Administrator process late claims. If, but for the fact that it was submitted after the claim filing deadline, the claim is otherwise eligible, our practice is to

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Mr. Albert W. Hughes, Jr.
April 27, 2012
Page 3

ask the Court to approve the claim for payment so that a class member is not penalized by the fact that notice did not reach him, her or it in a timely fashion.

**Lack of Trading Records**:  Just as Lead Counsel and the Claims Administrator do not have the names and addresses of potential class members unless and until they are provided to them; they also do not have any trading records nor the ability to access trading records of class members.  The documentation necessary to support a claim must be provided by the claimant.

I am sorry that we cannot be more helpful in this respect.  GCG's advice to you that it had no knowledge of specific ownership records is the case.  I contacted GCG to review the history of their communications with you.  They confirmed, as you note in your November 17 letter, that GCG advised you that they had received the mailing records for the five claims sent to your family members from First Clearing Corp and, in an attempt to further assist you, they contacted First Clearing and obtained the document retrieval phone number which they provided to you in a subsequent phone call.

While we work with claimants to assist them in perfecting their claims, as noted above, and as GCG advised you, we do not have access to any trading records nor do we have the ability to make a broker (or Wells Fargo) produce them for their clients.  GCG contacted First Clearing on your behalf in order to put you in contact with an individual from the firm that originally provided your mailing records but beyond that there is really nothing that they could do in terms of obtaining trading documentation from your broker.

Based on your brokers' inability or refusal (without payment by you) to supply the records of transactions in the respective accounts, it is not possible for us to determine if, in fact, you could establish a right to a recovery.  However, based on the information set forth in your letter, you correctly conclude that, notwithstanding the fact that you do not have any purchase information with respect to the shares owned by the Edith B. Hughes Trust and the Albert W. Hughes (Sr.) Trust, given that those shares were sold before October 18, 2007, under the Court-approved Plan of Allocation, even if they had been purchased during the Class Period, there could not be any recovery with respect to those shares (*see* notice paragraph 51).

As noted above, I would be very happy to talk with you to address any further questions that you may have and to see if there is any way in which we can provide additional assistance to you.  I will try to reach you within the next week or, if you would prefer, please let me know what would be a convenient time for you to speak.

Very truly yours,

*Rochelle Feder Hansen*
Rochelle Feder Hansen

cc:  The Honorable Marsha J. Pechman