1

2　　　　　　　　　　　　　　　　　　　　　　　　The Honorable Marsha J. Pechman

3

4

5　　　　　　　　　　　　UNITED STATES DISTRICT COURT
　　　　　　　　　　　　　WESTERN DISTRICT OF WASHINGTON
　　　　　　　　　　　　　　　　　　AT SEATTLE

6

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES & ERISA LITIGATION | No.  2:08-md-1919 MJP |
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION | Lead Case No. C08-387 MJP |
| This Document Relates to:  ALL CASES | PLC-25 |
| | **LEAD PLAINTIFF'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN** |
| | NOTE ON MOTION CALENDAR August 16, 2013 |

---

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

Lead Plaintiff Ontario Teachers' Pension Plan Board ("Ontario Teachers" or "Lead Plaintiff"), respectfully submits this Motion for entry of the [Proposed] Order Approving Distribution Plan (the "Distribution Order") in the above-captioned action (the "Action"). The instant Motion is supported by the accompanying Declaration of Jennifer M. Keough in Support of Lead Plaintiff's Motion for Approval of Distribution Plan (the "Keough Declaration" or "Keough Decl."), submitted on behalf of the Court-appointed Claims Administrator, The Garden City Group, Inc. ("GCG").[1]

If entered by the Court, the Distribution Order will, among other things, (i) approve GCG's administrative recommendations accepting and rejecting Proofs of Claim submitted herein; (ii) direct the distribution of the Net Settlement Funds to Class Members whose Proofs of Claim have been accepted as valid and approved by the Court; and (iii) approve GCG's fees and expenses incurred and to be incurred in connection with the administration of the Settlements.

### I.   BACKGROUND

The Court has approved the Stipulations entered into by Lead Plaintiff and Defendants, (collectively, the "Settlements"). Together, the Settlements represent a complete resolution of the Action. Pursuant to the terms of the Settlements, Settlement Amounts totaling $208.5 million were deposited in escrow for the benefit of the Class.

In accordance with the Preliminary Approval Order (ECF No. 875), GCG, the Court-approved Claims Administrator, has mailed the Notice of (I) Pendency of Class Action and

---

[1] Unless otherwise noted, capitalized terms shall have the meaning set out in the Keough Declaration or in the Stipulation and Agreement of Settlement with Individual Officer and Director Defendants and with Washington Mutual, Inc. (ECF No. 874-1) (the "D&O/WaMu Stipulation"), the Stipulation and Agreement of Settlement with the Underwriter Defendants (ECF No. 874-2) (the "Underwriters Stipulation"), and the Stipulation and Agreement of Settlement with Defendant Deloitte & Touche LLP (ECF No. 874-3) (the "Deloitte Stipulation") (collectively, the "Stipulations").

1  Proposed Settlements, (II) Settlement Fairness Hearing, and (III) Motion for Attorneys' Fees and
2  Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release form
3  (the "Proof of Claim" and, together with the Notice, the "Claim Packet") to potential Class
4  Members and to brokers and other nominees. As set forth in the accompanying Keough
5  Declaration, GCG mailed approximately 1,146,900 Claim Packets to potential Class Members
6  and nominees. Keough Decl. ¶ 3 The Notice informed Class Members that if they wished to be
7  eligible to participate in the distribution of the Net Settlement Funds, they were required to
8  submit Proofs of Claim by mail, postmarked no later than December 8, 2011.

9  The Court granted final approval to the Settlements and the Effective Dates have
10 occurred. Accordingly, the Net Settlement Funds may be distributed to Authorized Claimants.
11 Pursuant to the Stipulations (s*ee* D&O/WaMu Stipulation; Underwriters Stipulation; and Deloitte
12 Stipulation at ¶ 23), Lead Plaintiff respectfully asks the Court to enter the Distribution Order
13 approving the distribution plan.

14 **II.   CLAIMS ADMINISTRATION**

15 As detailed in the accompanying Keough Declaration, through July 23, 2013, GCG
16 received 244,282 Proofs of Claim. Keough Decl. ¶ 6. GCG has completed processing the vast
17 majority of the Claims submitted. As discussed below and in the Keough Declaration, there are
18 some Proofs of Claim that are still being processed ("Claims-in-Process") and some additional
19 Proofs of Claim with outstanding requests for Court review of the rejection of the Claim (the
20 "Disputed Claims"). Under the proposed distribution plan, part of the Net Settlement Funds will
21 be kept in reserve to pay any of these Claims that may be approved by the Court as well as to
22 address any contingencies that may arise.

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP                                    2

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1  Many of the Proofs of Claim initially submitted were incomplete, not signed, not
2  properly documented or were otherwise deficient. Keough Decl. ¶ 24. To the extent that a Proof
3  of Claim was wholly deficient (for example, if the Proof of Claim was missing documentation
4  for the entire Proof of Claim, if the Claimant did not sign the Proof of Claim or did not provide
5  enough information to calculate the Claim, or if the Proof of Claim was determined to have no
6  Recognized Claim when calculated under the Court-approved Plan of Allocation), GCG sent a
7  rejection letter to the Claimant describing the defect(s) with his, her or its Proof of Claim and
8  stating what, if anything, was necessary to cure the Proof of Claim. *Id*. ¶ 25. GCG also mailed
9  rejection letters to each Claimant whose Proof of Claim was determined to be partially deficient
10 (for example, if the Claimant was missing documentation for part of the Proof of Claim, or did
11 not supply some transactional information), advising the Claimant of the defect(s) in the Proof of
12 Claim and stating what was necessary to cure such defect(s). *Id*. ¶ 26. Copies of sample
13 rejection letters are attached as Exhibit A to the Keough Declaration. *Id*. ¶ 27 and Exhibit A
14 thereto.

15 GCG carefully reviewed Claimants' responses to the rejection letters and worked with
16 Claimants to resolve deficiencies where possible. Keough Decl. ¶¶ 28-33. After responses to
17 the deficiency letters were received and processed, GCG called Claimants with still-deficient
18 Proofs of Claim with potential Recognized Claims of $100,000 or greater to assist them in curing
19 the deficiencies (*id*. ¶¶ 29-31), and coordinated an automated calling campaign to those
20 Claimants with potential Recognized Claims of less than $100,000 and greater than $500 (*id*.
21 ¶ 32).

22 Consistent with the terms of the Stipulations, all rejection letters specifically advised the
   Claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP                    3

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1  letter, to contest the rejection of the Claim and request Court review of the disposition of the

2  Claim.  Keough Decl. ¶¶ 27, 34 and Exhibit A thereto.

3  GCG received letters from 1,242 Claimants contesting the administrative rejection of

4  their Proofs of Claim in whole or in part.  Keough Decl. ¶ 34.  A significant number of those

5  Claimants simultaneously provided GCG with adequate documentation or information to

6  complete their Proof of Claim and cure any remaining deficiencies, and those Claims are now

7  being recommended for acceptance.  *Id*.  A number of other Claimants affirmatively withdrew

8  their requests for Court review after GCG contacted them and explained the basis for its

9  administrative determination.  *Id*.  As a result, of the 1,242 originally disputed Claims, only 92

10  Claimants have outstanding requests for this Court's review of GCG's administrative

11  determination to reject their Proofs of Claim (each a "Disputed Claim").  *Id*. ¶ 35.  GCG's

12  communications with certain of these Claimants are still ongoing and these further

13  communications may result in the mooting or withdrawal of additional Disputed Claims.  So as

14  not to delay the distribution to Claimants whose Claims have been fully processed and are being

15  recommended for acceptance, Lead Counsel and GCG recommend that consideration of the

16  Disputed Claims be deferred until after the Initial Distribution.

17  There are two (2) Disputed Claims that are partially acceptable and potentially eligible

18  for payment now from the Net Settlement Funds so long as their Distribution Amounts calculate

19  to the Court-approved $20.00 *de minimis* threshold.  Keough Decl. ¶ 36.  Lead Plaintiff requests

20  that the undisputed, accepted part of those Claims be approved and paid now pursuant to the

21  proposed Distribution Order, with only the disputed, rejected part of the Claim to be subject to

22  future payment from the cash reserve if the disputed, rejected part of the Claim is ultimately

accepted by this Court.  Should the currently accepted portions of the Claims not meet the *de*

1  *minimis* threshold, if the disputed portions are ultimately determined to be eligible, the Claims
2  will be considered in the entirety for purposes of determining if the threshold requirement is met.
3  Conversely, if payment is now made on the currently accepted portions of the Claims and if the
4  disputed portions are ultimately accepted but they, standing alone, do not meet the *de minimis*
5  threshold, we will ask the Court to waive that requirement as to either or both of the Claims as
6  necessary so as not to prejudice these Claimants.

7  As set forth in the Keough Declaration, of the 244,157 Claims received and fully
8  processed as of July 23, 2013,[2] GCG has determined that 130,484 are acceptable in whole or in
9  part, and that 113,673 should be wholly rejected because they are ineligible for recovery from
10 the Net Settlement Funds. Keough Decl. ¶ 46.

11 The 244,157 Proofs of Claim that were fully processed as of July 23, 2013 include 11,200
12 Proofs of Claim that were postmarked after the Court-approved Claim filing deadline of
13 December 8, 2011, of which 4,317 were, but for the late submission, otherwise eligible. Keough
14 Decl. ¶ 39. While these 4,317 Claims were late, they were received while the processing of
15 timely Claims was ongoing, and due to the amount of time needed to process the timely Claims
16 received, the processing of these late Claims did not delay the completion of the claims
17 administration process or the distribution of the Net Settlement Funds. *Id*. The Court has
18 discretion to accept Claims submitted after the filing deadline. *See* Notice ¶ 39 ("*Unless the*
19 *Court otherwise orders*, any Class Member who fails to submit a Claim Form postmarked on or
20 before December 8, 2011, shall be fully and forever barred from receiving payments pursuant to
21 the Settlements . . .") (emphasis added); *see also* D&O/WaMu Stipulation; Underwriters

---

22 [2] The 244,157 Proofs of Claims that are designated "fully processed" as of July 23, 2013 include the two partially eligible Claims, but do not include the 35 Claims-in-Process and 90 wholly rejected Disputed Claims. Keough Decl. ¶ 46, n.2.

1   Stipulation; and Deloitte Stipulation at ¶ 21.b.). It is respectfully submitted that, when the

2   equities are balanced, it would be unfair to prevent an otherwise eligible Claim from

3   participating in the Net Settlement Funds solely because it was submitted after the Court-

4   approved Claim filing deadline, when it was submitted while timely Claims were still being

5   processed.

6   Lead Plaintiff requests that the Court approve GCG's administrative determinations

7   accepting and rejecting Claims as set forth in the Keough Declaration.

### III. CLAIMS-IN-PROCESS

As described above, GCG spent a significant amount of time working with Claimants to complete their Claims. GCG has completed the processing of all Claims received before June 28, 2013, but has not yet completed its review of the 37 Claims received on or after that date through July 23, 2013. Keough Decl. ¶ 37. Two of those Claims were found to be in good standing and are included in the Claims recommended for payment. *Id.* However, 35 of those Claims are wholly deficient or otherwise ineligible for recovery from the Net Settlement Funds, but the processing of those Claims (referred to as the "Claims-in-Process"), including the provision of an opportunity for the Claimant to cure any curable deficiency, has not yet been completed. *Id.* Lead Counsel and GCG recommend that consideration of the Claims-in-Process be deferred until after the Initial Distribution so as not to delay distribution to the Claimants whose Claims have been fully processed and are recommended for approval.

To the extent that any of the Claims-in Process are ultimately determined to be eligible to participate in the Settlements, they, along with any Disputed Claims (including any additional disputed Claims that may arise from the Claims-in-Process) that may ultimately be determined to be eligible, will be paid from the reserve that is proposed to be established as part of the

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP                    6

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

1  distribution plan in what is referred to below as the "Claims-in-Process Distribution."  Pursuant
2  to the proposed distribution plan, when GCG has completed the processing of the Claims-in-
3  Process and Disputed Claims, Lead Plaintiff will move the Court for approval of GCG's
4  determinations with respect to those Claims.  Under the proposed Distribution Plan, payments to
5  any approved Claims-in-Process and/or Disputed Claims will bring those Claimants into a state
6  of parity with the Claimants who will be paid in the proposed Initial Distribution.

7  In order to facilitate the efficient distribution of the Net Settlement Funds, however, there
8  must be a final cut-off after which no other Proofs of Claim may be accepted.  Accordingly,
9  Lead Plaintiff respectfully requests that the Court order that any new Claims and any adjustments
10  to previously filed Claims that are postmarked or received through and including five (5)
11  business days after entry of an order approving a distribution plan for the Net Settlement Funds
12  (the "Claims-in-Process Cut-off Date") shall be treated as Claims-in-Process; any new Claim and
13  any adjustment to a previously filed Claims that is postmarked or received after that date shall be
14  barred subject to the provision of ¶ 51(f) of the Keough Declaration which provides that, if
15  Proofs of Claim are received or modified after the Claims-in-Process Cut-off Date that would
16  have been eligible for payment or additional payment under the Court-approved Plan of
17  Allocation if timely received then, at the time that Lead Counsel, in consultation with GCG,
18  determines that a redistribution is not cost effective as provided in subparagraph 51(e)(2) of the
19  proposed Distribution Plan, such Claimants may be paid the Distribution Amounts or additional
20  Distribution Amounts on a *pro rata* basis that would bring them into parity with other
21  Authorized Claimants who have cashed all their prior distribution checks to the extent possible.
22

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP                    7

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

## IV. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with GCG's agreement with Lead Counsel to act as the Claims Administrator for this Settlement, GCG was responsible for, among other things, mailing and publishing notice to the Class, creating and maintaining a settlement website and toll-free telephone helpline, processing the Proofs of Claim, and allocating and distributing the Net Settlement Funds to Authorized Claimants. As set forth in the Keough Declaration, GCG's fees and expenses for its work performed and estimated to be performed on behalf of the Class in connection with the Initial Distribution of the Net Settlement Funds total $4,342,135.63. Keough Decl. ¶ 49. As set forth in the Keough Declaration, $1,824,154.53, or 42% of GCG's fees and expenses were for printing, postage, publishing and nominee fees. *Id*.

Under the terms of the Stipulations, Lead Counsel was authorized to pay the reasonable costs and expenses incurred in identifying and notifying Class Members and administering the Settlements without further order of the Court. *See* D&O/WaMu Stipulation ¶ 12; Underwriters Stipulation ¶ 12; Deloitte Stipulation ¶ 12; *see also*, Preliminary Approval Order ¶ 19 ("[a]ll reasonable costs incurred in identifying and notifying Class Members as well as in administering the Settlement Funds shall be paid as set forth in the respective Stipulations without further order of the Court."). To date, GCG has received payment of its fees and out-of-pocket expenses in the amount of $3,968,594.82.

Accordingly, there is an outstanding balance due to GCG of $373,540.81, which amount includes GCG's anticipated fees and expenses for the Initial Distribution. Keough Decl. ¶ 50. Lead Plaintiff respectfully requests that the Court approve all of GCG's fees and expenses.

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP

8

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

## V.     DISTRIBUTION PLAN OF THE NET SETTLEMENT FUNDS

As set forth in detail in the Keough Declaration, GCG has completed the processing of all Proofs of Claim received through July 23, 2013, except for the resolution of the Disputed Claims and the Claims-in-Process. Lead Plaintiff, on notice to counsel for Defendants, now respectfully moves the Court for an order approving GCG's determinations concerning the acceptance and rejection of the Claims submitted herein and approving the proposed plan for distribution of the Net Settlement Funds as set forth in the Keough Declaration (the "Distribution Plan").[3]

**Initial Distribution of Net Settlement Funds**

Pursuant to the proposed Distribution Plan, GCG will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Funds, after deducting the payments previously allowed and requested herein, and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees. In the Initial Distribution, GCG will determine a Distribution Amount for each Authorized Claimant which is the sum of his, her or its *pro rata* share of the respective funds. *See* Keough Decl. ¶ 51(b)(1). Pursuant to the Court-approved Plan of Allocation, GCG will eliminate from the distribution any Authorized Claimant whose Distribution Amount calculates to less than $20.00, and then re-calculate the Distribution Amounts for Authorized Claimants who are entitled to receive $20.00 or more. *Id.* ¶¶ 51(b)(2) and (b)(3). In connection with the Initial Distribution, Authorized Claimants whose re-calculated Distribution Amount is less than $100 will receive their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id.* ¶ 51(b)(4). Authorized Claimants whose re-calculated

---

[3] Under the terms of the Stipulations, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Funds. *See* D&O/WaMu Stipulation; Underwriters Stipulation; and Deloitte Stipulation at ¶¶ 11, 16, 18, and 20.

LEAD PLAINTIFF'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN [PLC-25]
Master No: 2:08-md-1919 MJP                    9

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

Distribution Amount is $100 or more shall be paid 95% of their Distribution Amounts, with the remaining 5% held in reserve (the "Reserve") to address any contingencies that may arise, including the payment of any Claims-in-Process and/or Disputed Claims that ultimately may be determined to be eligible to participate in the Settlements. *Id.* ¶ 51(b)(5).

In order to encourage Authorized Claimants to cash their checks promptly and to avoid or reduce future expenses relating to uncashed checks, Lead Plaintiff proposes that the Initial Distribution and Claims-in-Process Distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." In an effort to have as many Authorized Claimants as possible cash their checks, GCG will perform extensive follow up with Authorized Claimants who initially fail to cash their checks. Keough Decl. ¶ 51(b)(7). Authorized Claimants who do not cash their checks within the time allotted or on the conditions set forth in paragraph 51(b)(7) of the Keough Declaration will irrevocably forfeit all recovery from the Settlements, and the funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants in the "Second Distribution" described below. *Id.* ¶ 51(b)(8).

**Resolution of Claims-in-Process and Disputed Claims**

When GCG has completed the processing of the Claims-in-Process and Disputed Claims, Lead Plaintiff will move the Court for approval of GCG's determinations with respect to those Claims; and upon entry of an order approving Claims-in-Process and/or Disputed Claims for payment (if any), GCG will make a distribution to any Claimants whose Claims-in-Process or Disputed Claims are accepted for payment that will bring them into parity with the Claimants approved for payment pursuant to Lead Plaintiff's instant motion (the "Claims-in-Process Distribution"). *See* Keough Decl. ¶ 51(c).

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP

10

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

**Second/Additional Distribution(s) of Net Settlement Funds**

Pursuant to the proposed Distribution Plan, no earlier than one (1) year after the Claims-in-Process Distribution, GCG will conduct a second distribution (the "Second Distribution") of the Net Settlement Funds, pursuant to which any amounts remaining in the Net Settlement Funds after the Initial Distribution and the Claims-in-Process Distribution (including the Reserve and the funds for all void stale-dated checks), after deducting GCG's costs and expenses incurred in connection with administering the Settlements for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants from the Initial Distribution and Claims-in-Process Distribution who (1) were not Claims Paid in Full and (2) cashed their Initial Distribution check or Claims-in-Process Distribution check. Keough Decl. ¶ 51(d). If cost effective, subsequent distributions of the funds remaining in the Net Settlement Funds will take place in six-month intervals thereafter. *Id.* ¶ 51(e)(1). At such time as Lead Counsel, in consultation with GCG, determines that further redistribution is not cost-effective, the balance of the Net Settlement Funds, after payment of any unpaid costs or fees and taxes and payment of any otherwise valid Claims received or adjusted after the Claims-in-Process Cut-off Date, shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court. *Id.* ¶ 51(e)(2).

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP

11

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

## VI. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Funds, it is necessary to bar any further claims against the Net Settlement Funds beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds from any and all claims arising out of the such involvement, and bar all Class Members, whether or not they receive payment from the Net Settlement Funds, from making any further claims against the Net Settlement Funds, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Funds or the Net Settlement Funds beyond the amounts allocated to Authorized Claimants.

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP — 12

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

## VII. CONCLUSION

For the foregoing reasons, it is respectfully submitted that Lead Plaintiff's Motion for Approval of Distribution Plan should be approved, and the proposed Order Approving Distribution Plan attached hereto as Exhibit 1 should be entered.

Dated: July 26, 2013

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

By: /s/ *Hannah Ross*
Hannah Ross (pro hac vice)
Katherine M. Sinderson (pro hac vice)
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444
Email: hannah@blbglaw.com
         katherine@blbglaw.com

**Counsel for Lead Plaintiff**
**Ontario Teachers' Pension Plan Board and Lead Counsel for the Class**

BYRNES & KELLER LLP
Bradley S. Keller, WSBA# 10665
Jofrey M. McWilliam, WSBA# 28441
1000 Second Avenue, Suite 3800
Seattle, Washington 98104
Tel: (206) 622-2000
Fax: (206) 622-2522
Email: bkeller@byrneskeller.com
         jmcwilliam@byrneskeller.com

**Liaison Counsel for the Class**

LEAD PLAINTIFF'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP

13

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

1  **CERTIFICATE OF SERVICE**

2  I hereby certify that on July 26, 2013, I electronically filed the foregoing with the Clerk

3  of the Court using the CM/ECF system, which will send notification of such filing to the e-mail

4  addresses on the Court's Electronic Mail Notice list.

BERNSTEIN LITOWITZ BERGER &
     GROSSMANN LLP

By: /s/ *Hannah Ross*
Hannah Ross (pro hac vice)
Katherine M. Sinderson (pro hac vice)
1285 Avenue of the Americas
New York, New York  10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444
Email: hannah@blbglaw.com
            katherine@blbglaw.com

**Counsel for Lead Plaintiff
Ontario Teachers' Pension Plan Board
and Lead Counsel for the Class**

BYRNES & KELLER LLP
Bradley S. Keller, WSBA# 10665
Jofrey M. McWilliam, WSBA# 28441
1000 Second Avenue, Suite 3800
Seattle, Washington  98104
Tel:    (206) 622-2000
Fax:    (206) 622-2522
Email: bkeller@byrneskeller.com
            jmcwilliam@byrneskeller.com

**Liaison Counsel for the Class**

#735259

LEAD PLAINTIFF'S MOTION FOR APPROVAL
OF DISTRIBUTION PLAN
[PLC-25]
Master No: 2:08-md-1919 MJP

14

Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400