# EXHIBIT 1

1
2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3
4

IN RE WASHINGTON MUTUAL, INC.
SECURITIES LITIGATION,

No. 2:08-md-1919 MJP
Lead Case No. C08-387 MJP

5

This Document Relates to: ALL ACTIONS

6

7

### [PROPOSED] ORDER APPROVING DISTRIBUTION PLAN

8

        Lead Plaintiff, on notice to Defendants' Counsel, moved this Court for an order approving a

9

distribution plan for the Net Settlement Funds in the above-captioned class action (the "Action"),

10

and the Court having considered all the materials and arguments submitted in support of the motion,

11

including the Declaration of Jennifer M. Keough in Support of Lead Plaintiff's Motion for Approval

12

of Distribution Plan (the "Keough Declaration"), submitted therewith;

13

        **NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

14

        1.      This Order incorporates by reference the definitions in the Stipulation and Agreement

15

of Settlement with Individual Officer and Director Defendants and with Washington Mutual, Inc.

16

(ECF No. 874-1), the Stipulation and Agreement of Settlement with the Underwriter Defendants

17

(ECF No. 874-2), and the Stipulation and Agreement of Settlement with Defendant Deloitte &

18

Touche LLP (ECF No. 874-3) (collectively, the "Stipulations") and the Keough Declaration, and all

19

terms used herein shall have the same meanings as set forth in the Stipulations or in the Keough

20

Declaration.

21

        2.      This Court has jurisdiction over the subject matter of the Action and over all parties to

22

the Action, including all Class Members.

3.    Lead Plaintiff's plan for distribution of the Net Settlement Funds to Authorized Claimants is **APPROVED**.  Accordingly,

(a)    The administrative recommendations of the Court-approved Claims Administrator, The Garden City Group, Inc. ("GCG"), to accept the Timely Eligible Claims set forth in Exhibit B-1 to the Keough Declaration and the Late But Otherwise Eligible Claims set forth in Exhibit B-2 to the Keough Declaration, are adopted;

(b)    The Claims Administrator's administrative recommendations to reject wholly ineligible Claims, as set forth in Exhibit B-3 to the Keough Declaration, are adopted;

(c)    Rather than delay distribution to Authorized Claimants until the Claims-in-Process and Disputed Claims are fully resolved, any distribution to Claims-in-Process and Disputed Claims, to the extent they ultimately may be determined to be eligible to participate in the Settlements, shall await what is defined below as the "Claims-in-Process Distribution;"

(d)    GCG is directed to conduct an initial distribution (the "Initial Distribution") of the Net Settlement Funds, after deducting the payments previously allowed and authorized herein, and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, as set forth in paragraph 51(b) of the Keough Declaration. Specifically, as set forth in paragraph 51(b) of the Keough Declaration, (1) any Authorized Claimant whose Distribution Amount calculates to less than $20.00 shall not receive any payment from the Net Settlement Funds; (2) Authorized Claimants whose calculated Distribution Amount (after removing from the calculation all Claims that fall under the $20.00 minimum payment threshold) is less than $100 shall be paid their full Distribution

Amount ("Claims Paid in Full") and shall not be eligible for payment in subsequent distributions of the Net Settlement Funds; and (3) after deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Funds shall be distributed on a *pro rata* basis to Authorized Claimants whose calculated Distribution Amount (after removing from the calculation all Claims that fall under the $20 minimum payment threshold) is $100 or more, with the remaining 5% held in reserve (the "Reserve") to address any contingencies that may arise, including the payment of any Claims-in-Process and Disputed Claims that ultimately may be determined to be eligible to participate in the Settlements;

(e)     In order to encourage Authorized Claimants to cash their checks promptly, and to avoid or reduce future expenses relating to unpaid checks, all Initial Distribution checks (and Claims-in-Process Distribution checks issued pursuant to subparagraph (g) below) shall bear the following notation: "CASH PROMPTLY.  VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." Lead Counsel and GCG are authorized to take appropriate action to locate and/or contact any Authorized Claimant who has not cashed his, her, or its check within said time as detailed in paragraph 51(b)(7) of the Keough Declaration;

(f)     Authorized Claimants who do not cash their Initial Distribution checks (or, as applicable, Claims-in-Process Distribution checks) within the time allotted or on the conditions set forth in paragraph 51(b)(7) of the Keough Declaration shall irrevocably forfeit all recovery from the Settlements, and the funds allocated to all such stale-dated checks shall be available to be redistributed to other Authorized Claimants in the Second Distribution of

1   the Net Settlement Funds described below.  Similarly, Authorized Claimants who do not

2   cash subsequent distributions within the time allotted or on the conditions set forth in

3   paragraph 51(b)(7) of the Keough Declaration shall irrevocably forfeit any further recovery

4   from the Net Settlement Funds;

5           (g)     When GCG has completed the processing of the Claims-in-Process and

6   Disputed Claims, Lead Plaintiff shall move the Court for approval of GCG's determinations

7   with respect to those Claims; and upon entry of an order approving Claims-in-Process and/or

8   Disputed Claims for payment (if any), GCG shall make a distribution to any Claimants

9   whose Claims-in-Process or Disputed Claims are accepted for payment that will bring them

10  into parity with the Claimants approved for payment pursuant to this Order (the "Claims-in-

11  Process Distribution");

12          (h)     After GCG has made reasonable and diligent efforts to have Authorized

13  Claimants cash their Initial Distribution and Claims-in-Process Distribution checks (as set

14  forth in paragraph 51(b)(7) of the Keough Declaration), but no earlier than one (1) year after

15  the Claims-in-Process Distribution, GCG shall conduct a second distribution (the "Second

16  Distribution") of the Net Settlement Funds, pursuant to which any amounts remaining in the

17  Net Settlement Funds after the Initial Distribution and the Claims-in-Process Distribution

18  (including the Reserve and the funds for all void stale-dated checks), after deducting GCG's

19  fees and expenses incurred in connection with administering the Settlements for which it has

20  not yet been paid (including the costs of the Claims-in-Process Distribution and the

21  estimated costs of such Second Distribution), and after payment of any estimated taxes, the

22  costs of preparing appropriate tax returns, and any escrow fees, shall be distributed to all

Authorized Claimants from the Initial Distribution and the Claims-in-Process Distribution who (1) were not Claims Paid in Full and (2) cashed their Initial Distribution check or Claims-in-Process Distribution check;

(i)     In order to allow a final distribution of any funds remaining in the Net Settlement Funds after completion of the Second Distribution, whether by reason of uncashed checks, returned funds, tax refunds, or otherwise:

(1)     If cost effective, not less than six (6) months after the Second Distribution is conducted, GCG shall conduct a further distribution of the Net Settlement Funds, pursuant to which the funds remaining in the Net Settlement Funds, after deducting GCG's fees and expenses incurred in connection with administering the Settlements for which it has not yet been paid (including the estimated costs of such distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be distributed to Authorized Claimants who cashed their Second Distribution checks and who would receive at least $20.00 from such redistribution, with additional redistributions thereafter in six-month intervals, subject to the conditions previously noted, until Lead Counsel, in consultation with GCG, determines that further redistribution is not cost-effective; and

(2)     At such time as Lead Counsel, in consultation with GCG, determines that the redistribution of funds remaining in the Net Settlement Funds is not cost-effective, any otherwise valid Claims received or adjusted after the Claims-in-Process Cut-off Date shall be paid in accordance with subparagraph (k) below.  If

any funds shall remain in the Net Settlement Funds after payment of such late or late adjusted Claims, the remaining balance of the Net Settlement Funds shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court;

(j)     All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds, are hereby released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they receive payment from the Net Settlement Funds, are hereby barred from making any further claims against the Net Settlement Funds, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Funds or the Net Settlement Funds beyond the amount allocated to Authorized Claimants;

(k)     No further Proofs of Claims may be accepted, and no further adjustments to Proofs of Claim may be made for any reason, after the Claims-in-Process Cut-off Date, subject to the following exception.  If Proofs of Claim are received or modified after that date that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation had they been timely received, then, at the time that Lead Counsel, in consultation with GCG, determines that a redistribution is not cost effective as provided in subparagraph (i)(2) above, such Claims may be paid the Distribution Amounts or additional Distribution Amounts on a *pro rata* basis that would bring them into parity with

other Authorized Claimants who have cashed all their prior distribution checks to the extent possible;

(l)     All of GCG's fees and expenses incurred in connection with the administration of the Settlements and to be incurred in connection with the Initial Distribution of the Net Settlement Funds as set forth in the invoices attached as Exhibit C to the Keough Declaration are approved, and Lead Counsel is directed to pay $373,540.81 out of the Settlement Funds to GCG for the unpaid balance of such fees and expenses; and

(m)     Unless otherwise ordered by the Court, one year after the Second Distribution, GCG shall destroy the paper copies of the Proofs of Claim and all supporting documentation and, one year after all funds in the Net Settlement Funds have been distributed, GCG shall destroy electronic copies of the same.

4.     This Court retains jurisdiction to consider any further applications concerning the administration of the Settlements, and such other and further relief as this Court deems appropriate.

SO ORDERED this _____ day of _____, 2013.


_____
The Honorable Marsha J. Pechman
United States District Judge

#716888

[PROPOSED] ORDER APPROVING
DISTRIBUTION PLAN

Master No: 2:08-md-1919 MJP                    7